Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK CULLEN, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>RYVYL INC. F/K/A GREENBOX POS, BEN ERREZ, FREDI NISAN, J DREW BYELICK, BENJAMIN CHUNG, EF HUTTON F/K/A KINGSWOOD CAPITAL MARKETS, A DIVISION OF BENCHMARK INVESTMENTS, INC., and R.F. LAFFERTY & CO.,<br><br>    Defendants. | No. '23CV0185 GPC AGS<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>CLASS ACTION</u><br><br>JURY TRIAL DEMANDED |

0

Plaintiff Mark Cullen ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, public filings, announcements, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Ryvyl Inc. ("Ryvyl" or the "Company") f/k/a Greenbox POS ("Greenbox"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Ryvyl securities: (1) pursuant and/or traceable to the registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's January 29, 2021 public offering (the "Offering"); and/or (2) between January 29, 2021 and January 20, 2023, inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the Securities Act of 1933 (the "Securities Act") and violations of Section 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5, promulgated thereunder.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act (15 U.S.C. §§77k, 77l(a)(2) and 77o) and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

1

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §22 of the Securities Act and 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and §22(a) of the Securities Act (15 U.S.C. §77v(a)) as a significant portion of the Defendants' actions, and the subsequent damages took place within this District and §27 of the Exchange Act (15 U.S.C. §78aa) as the alleged misstatements entered and subsequent damages took place within this District. Further, the Company maintains an office in San Diego, California.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Ryvyl securities during the Class Period and was economically damaged thereby.

7. Defendant Ryvyl Inc. f/k/a GreenBox POS ("Ryvyl") is incorporated in Nevada and maintains an office in San Diego, California, 92108. Ryvyl stock began trading on the NASDAQ on February 17, 2021 under the ticker symbol "RVYL."  Ryvyl had previously been known as GreenBox POS until October 2022 when it changed its name.  Ryvyl is a crypto company focused on developing, marketing and selling blockchain-based payment solutions.

8. Defendant Ben Errez ("Errez") has served as the Company's Chairman and Co-Founder since 2017.

9. Defendant Fredi Nisan ("Nisan") has served as the Company's Chief Executive Officer ("CEO"), and Co-Founder since 2017.

10. Defendant J Drew Byelick ("Byelick") has served as the Company's Chief Financial Officer since August 2022.

11. Defendant Benjamin Chung ("Chung") served as the Company's Chief Financial Officer from May 2021 until August 2022.

12. Defendants Errez, Nisan, Byelick, and Chung are collectively referred to herein as the "Individual Defendants."

13. Each of the Individual Defendants:

(a) directly participated in the management of the Company;

(b) was directly involved in the day-to-day operations of the Company at the highest levels;

(c) was privy to confidential proprietary information concerning the Company and its business and operations;

(d) was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f) was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g) approved or ratified these statements in violation of the federal securities laws.

14. The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

15.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Ryvyl under *respondeat superior* and agency principles.

16.    Defendant EF Hutton f/k/a Kingswood Capital Markets, a division of Benchmark Investments, Inc. ("EF Hutton") is a stock brokerage firm that acted as an underwriter of the Company's Offering. EF Hutton's address is 590 Madison Avenue, 39th Floor, New York, NY, 10022.

17.    Defendant R.F. Lafferty & Co. ("R.F. Lafferty") is an investment brokerage firm that acted as an underwriter of the Company's Offering. R.F. Lafferty's address is 40 Wall Street, 29th Floor, New York, NY, 10005.

18.    Defendants named in ¶¶ 16-17 are referred to herein as the "Underwriter Defendants."

19.    Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the Registration Statement as follows:

(a)    The Underwriter Defendants are investment banking houses that specialize in, among other things, underwriting public offerings of securities. They served as the underwriters of the Offering and shared substantial fees from the Offering collectively. The Underwriter Defendants arranged a roadshow prior to the Offering during which they, and representatives from the Company, met with potential investors and presented highly favorable information about the Company, its operations and its financial prospects.

(b)    The Underwriter Defendants also obtained an agreement from the Company and the Individual Defendants that the Company would indemnify and hold the Underwriter Defendants harmless from any liability under the federal securities laws.

(c)    Representatives of the Underwriter Defendants also assisted the Company and the Individual Defendants in planning the Offering, and purportedly conducted an adequate and reasonable investigation into the business and operations of the Company, an undertaking known as a "due diligence" investigation. The due diligence investigation

was required of the Underwriter Defendants in order to engage in the Offering. During the course of their "due diligence," the Underwriter Defendants had continual access to internal, confidential, and current corporate information concerning the Company's most up-to-date operational and financial results and prospects.

20.     The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with the offers and sales of securities registered thereby, including those to Plaintiff and the other members of the Class.

21.     The Company, the Individual Defendants, and the Underwriter Defendants, are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements Issued During the Class Period

22.     On January 29, 2021 the Company filed with the SEC a Registration Statement on Form S-1, which in combination with a February 10, 2021 amendment on Form S-1/A, declared effective on February 12, 2021, and filed pursuant to Rule 424(b)(4) are collectively referred to as the Registration Statement and issued in connection with the Offering. Defendant Nisan and Errez signed or authorized the signing of the Company's Registration Statement.

23.     On February 18, 2021, the Company filed with the SEC the final prospectus for the Offering on Form 424B4, which forms part of the Registration Statement. In the Offering, the Company sold 4,150,000 shares at $10.50 per share.

24.     The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

25.     However, throughout the Registration Statement, the Company improperly downplayed the seriousness of the Company's internal control weaknesses, that rendered

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

the Registration Statement materially inaccurate. The Registration Statement states in relevant part:

> Ensuring that we have adequate internal financial and accounting controls and procedures in place so that we can produce accurate financial statements on a timely basis is a costly and time-consuming effort that will need to be evaluated frequently. As of December 31, 2019, the Company's Principal Executive Officer and Principal Financial and Accounting Officer have concluded that, as of the end of such period, the Company's disclosure controls and procedures were not effective to provide reasonable assurance that information that it is required to disclose in reports that the Company files with the SEC is recorded, processed, summarized, and reported within the time periods specified by the Exchange Act rules and regulations.

26.     The statement contained in ¶ 25 was materially false and/or misleading because it misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, the Registration Statement was false and/or misleading and/or failed to disclose that: (1) the Company would restate certain financials; (2) the Company's internal controls were inadequate; (3) the Company downplayed and obfuscated its internal controls issues; and (4) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

27.     The same statement was repeated in the Prospectus filed with the SEC on February 18, 2021.

28.     On March 31, 2022, the Company filed with the SEC its 2021 Annual Report on Form 10-K for the year ended December 31, 2021 (the "2021 Annual Report"). Attached to the 2021 Annual Report were SOX certifications signed by Defendants Nisan and Chung attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

6

29.     The Company reported a net revenue of $26,304,502 and net loss of $26,453,512 in the 2021 Annual Report. The Company also reported total assets of $115,690,180 and total stockholders' equity of $45,505,423.

30.     The 2021 Annual Report downplayed the serious issues with the Company's internal controls. The 2021 Annual Report states in relevant part:

**Controls and Procedures**

Our management has evaluated, under the supervision and with the participation of our Chief Executive Officer and Chief Financial Officer, the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934) as of the end of the period covered by this report. ***Based upon that evaluation, our Chief Executive Officer and Chief Financial Officer has concluded that, as of December 31, 2021, our disclosure controls and procedures were effective in ensuring that information required to be disclosed by us in the reports that we file or submit under the Securities Exchange Act of 1934 is (i) recorded, processed, summarized, and reported within the time periods specified in the rules and forms of the SEC and (ii) accumulated and communicated to our management, including our principal executive and principal accounting officers, or persons performing similar functions, as appropriate to allow timely decisions regarding required disclosure.***

**Changes in Internal Control Over Financial Reporting**

There have been ***no changes in our internal controls over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act or in other factors that materially affected or are reasonably likely to materially affect our internal controls and procedures over financial reporting during the fourth quarter of the year ended December 31, 2021.***

(Emphasis added.)

31.     On May 16, 2022, the Company filed with the SEC its first quarter report on Form 10-Q for the period ended March 31, 2022 (the "1Q22 Report"). Attached to the 1Q22 Report were SOX certifications signed by Defendants Nisan and Chung attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

7

32.    The Company reported a net revenue of $4,895,526, and a net loss of $21,315,987 in the 1Q22 Report. The Company also reported total assets of $84,350,603 and total stockholders' equity of $23,361,142.

33.    The 1Q22 Report downplayed the serious issues with the Company's internal controls by stating the following, in pertinent part, regarding its internal controls:

**Controls and Procedures**

Our management has evaluated, under the supervision and with the participation of our Chief Executive Officer and Chief Financial Officer, the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934) as of the end of the period covered by this Quarterly Report on Form 10-Q. ***Based upon that evaluation, our Chief Executive Officer and Chief Financial Officer has concluded that, as of March 31, 2022, our disclosure controls and procedures were effective in ensuring that information required to be disclosed by us in the reports that we file or submit under the Securities Exchange Act of 1934 is (i) recorded, processed, summarized, and reported within the time periods specified in the rules and forms of the SEC and (ii) accumulated and communicated to our management, including our principal executive and principal accounting officers, or persons performing similar functions, as appropriate to allow timely decisions regarding required disclosure.***

There were ***no changes in our internal control over financial reporting (as such term is defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) that occurred during the three months ended March 31, 2022, that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.***

(Emphasis added.)

34.    On August 15, 2022, the Company filed with the SEC its second quarter report on Form 10-Q for the period ended June 30, 2022 (the "2Q22 Report"). Attached to the 2Q22 Report were SOX certifications signed by Defendants Nisan and Chung attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

8

35.     The Company reported a net revenue of $6,965,578 three months ended June 30, 2022 and $10,905,902 six months ended June 30, 2022, and a net loss of $10,410,085 three months ended June 30, 2022 and $10,905,902 six months ended June 30, 2022 in the 2Q22 Report. The Company also reported total assets of $139,781,295 and total stockholders' equity of $39,949,337.

36.     The 2Q22 Report downplayed the serious issues with the Company's internal controls by stating the following, in pertinent part, regarding its internal controls:

**Controls and Procedures**

Our management has evaluated, under the supervision and with the participation of our Chief Executive Officer and Chief Financial Officer, the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934) as of the end of the period covered by this Quarterly Report on Form 10-Q. ***Based upon that evaluation, our Chief Executive Officer and Chief Financial Officer has concluded that, as of June 30, 2022, our disclosure controls and procedures were effective in ensuring that information required to be disclosed by us in the reports that we file or submit under the Securities Exchange Act of 1934 is (i) recorded, processed, summarized, and reported within the time periods specified in the rules and forms of the SEC and (ii) accumulated and communicated to our management, including our principal executive and principal accounting officers, or persons performing similar functions, as appropriate to allow timely decisions regarding required disclosure.***

There were ***no changes in our internal control over financial reporting (as such term is defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) that occurred during the three and six months ended June 30, 2022, that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.***

(Emphasis added.)

37.     On November 21, 2022, the Company filed with the SEC its third quarter report on Form 10-Q for the period ended September 30, 2022 (the "3Q22 Report"). Attached to the 3Q22 Report were SOX certifications signed by Defendants Nisan and

9

Byelick attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

38.    The Company reported a net revenue of $10,629,691 three months ended September 30, 2022 and $22,490,824 nine months ended September 30, 2022, and a net loss of $15,170,277 three months ended September 30, 2022 and $26,076,181 nine months ended September 30, 2022 in the 3Q22 Report. The Company also reported total assets of $122,401,080 and total stockholders' equity of $34,705,946.

39.    The 3Q22 Report downplayed the serious issues with the Company's internal controls by stating the following, in pertinent part, regarding its internal controls:

**Controls and Procedures**

Our management has evaluated, under the supervision and with the participation of our Chief Executive Officer and Chief Financial Officer, the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934) as of the end of the period covered by this Quarterly Report on Form 10-Q. ***Based upon that evaluation, our Chief Executive Officer and Chief Financial Officer has concluded that, as of September 30, 2022, our disclosure controls and procedures were effective in ensuring that information required to be disclosed by us in the reports that we file or submit under the Securities Exchange Act of 1934 is (i) recorded, processed, summarized, and reported within the time periods specified in the rules and forms of the SEC and (ii) accumulated and communicated to our management, including our principal executive and principal accounting officers, or persons performing similar functions, as appropriate to allow timely decisions regarding required disclosure***

There were ***no changes in our internal control over financial reporting (as such term is defined in Rules 13a-15(f) and 15d-15(f) under the Exchange Act) that occurred during the three and nine months ended September 30, 2022, that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.***

(Emphasis added.)

10

40.     The statements contained in ¶¶ 28-39 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Ryvyl downplayed its serious issues with its internal controls; (2) Ryvyl's financial statements for December 31, 2021 through and including interim periods ended September 30, June 30, and March 31, 2022 contained errors resulting in overstatements of revenue, assets, and stockholders' equity and understatements of losses; (3) as a result, Ryvyl would need to restate its previously issued financial statements for those periods; and (4) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

### THE TRUTH BEGINS TO EMERGE

41.     On January 20, 2023 the Company filed an 8-K with the SEC announcing that its previously issued financial statements as of December 31, 2021, for the year ended December 31, 2021, as of and for the interim periods within the year ended December 31, 2021 and as of and for the interim periods ended September 30, June 30 and March 31, 2022 should no longer be relied upon and had to be restated. The 8-K also identified additional internal control weaknesses and a remediation plan. The 8-K states in relevant part:

> Based on discussions between the audit committee (the "Audit Committee") of the board of directors of RYVYL Inc. (the "Company") and the Company's new independent registered public accounting firm, Simon & Edward, LLP ("Simon & Edward"), **the Company concluded on January 13, 2023 that the Company's previously issued financial statements as of December 31, 2021, for the year ended December 31, 2021, as of and for the interim periods within the year ended December 31, 2021 and as of and for the interim periods ended September 30, June 30 and March 31, 2022 (collectively the "Previously Issued Financial Statements"), and the related audit report of the Company's previous independent registered public accounting firm, BF**

11

***Borgers CPA, PC, can no longer be relied upon. It is expected that the restatement of the financial statements for the annual and interim periods referred to above will result in decreases to total revenue, increased net losses, decreases to total assets, and decreased total stockholders' equity.***

***The Audit Committee of the Company and its management concluded that the Company's Previously Issued Financial Statements should be restated to correct the aforementioned financial statements and that, accordingly, such Previously Issued Financial Statements should no longer be relied upon to that extent.*** Related press releases, investor presentations or other communications describing the Company's financial statements for these periods should no longer be relied upon to that extent.

The Company anticipates filing the restatements of the Previously Issued Financial Statements as soon as practicable. The Company plans on filing the restated financial statements in its Annual Report on Form 10-K for the year ended December 31, 2022 and in any other filings that may be necessary or appropriate.

***In connection with such restatements, the Company has reassessed its conclusions regarding the effectiveness of the Company's internal control over financial reporting as of December 31, 2021 and has determined that one or more material weaknesses exist in the Company's internal control including a material weakness related to accounting for certain complex business transactions. The Company expects to report one or more material weaknesses as of December 31, 2021, as well as its related remediation efforts including having engaged, as of August 2022, third party technical accounting experts to support proper accounting for complex accounting transactions. As a result of the material weakness, the Company's management concluded its disclosure controls and procedures were not effective as of December 31, 2021, and September 30, June 30, and March 31, 2022.***

The Company's management and the Audit Committee have discussed the matters described herein with Simon & Edward.

(Emphasis added.)

42.    On this news, Ryvyl's share price fell 14.63% to close at $0.77 per share on January 23, 2023, damaging investors.

43.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

44.     Plaintiff brings this action as a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Ryvyl securities: (1) pursuant and/or traceable to the registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's January 29, 2021 public offering (the "Offering"); and/or (2) between January 29, 2021 and January 20, 2023, inclusive (the "Class Period"). Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

45.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

46.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS

47.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether Defendants violated the federal securities laws;

(b) whether the Registration Statement contained false or misleading statements of material fact and omitted material information required to be stated therein; and to what extent the members of the Class have sustained damages and the proper measure of damages;

(c) whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

(d) whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(e) whether Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

(f) whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

(g) whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(h) to what extent the members of the Class have sustained damages and the proper measure of damages.

48.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of

14

the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action:

49.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

50.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a)      the Company's shares met the requirements for listing, and were listed and actively traded on NASDAQ, an efficient market;

b)      as a public issuer, the Company filed periodic public reports;

c)      the Company regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

d)      the Company's securities were liquid and traded with moderate to heavy volume during the Class Period; and

e)      the Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

51.     Based on the foregoing, the market for the Company's securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

15

52.   Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I

### Violations of Section 11 of the Securities Act

### Against All Defendants

53.   Plaintiff incorporates ¶¶ 1-49 by reference.

54.   This Count is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

55.   The Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

56.   Defendants are strictly liable to Plaintiff and the Class for the misstatements and omissions.

57.   None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

58.   By reason of the conduct herein alleged, each Defendant violated or controlled a person who violated §11 of the Securities Act.

59.   Plaintiff acquired the Company's securities pursuant to the Registration Statement.

60.   At the time of their purchases of Ryvyl securities, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful

conduct alleged herein and could not have reasonably discovered those facts prior to the disclosures herein.

61.     This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Offering. It is therefore timely.

## COUNT II

### Violation of Section 12(a)(2) of the Securities Act

### Against All Defendants

62.     Plaintiff incorporates ¶¶ 1-49 by reference.

63.     By means of the defective Registration Statement, Defendants promoted, solicited, and sold Ryvyl securities to Plaintiff and other members of the Class.

64.     The Registration Statement for the Offering contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above. Defendants owed Plaintiff and the other members of the Class who purchased the Company's securities pursuant to the Registration Statement the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Registration Statement as set forth above.

65.     Plaintiff did not know, nor in the exercise of reasonable diligence could Plaintiff have known, of the untruths and omissions contained in the Registration Statement at the time Plaintiff acquired Ryvyl securities.

66.     By reason of the conduct alleged herein, Defendants violated §12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2). As a direct and proximate result of such violations, Plaintiff and the other members of the Class who purchased Ryvyl securities pursuant to

17

the Registration Statement sustained substantial damages in connection with their purchases of the shares. Accordingly, Plaintiff and the other members of the Class who hold the securities issued pursuant to the Registration Statement have the right to rescind and recover the consideration paid for their shares, and hereby tender their securities to Defendants sued herein. Class members who have sold their securities seek damages to the extent permitted by law.

67. This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering that should have been made and/or corrected through the exercise of reasonable diligence, and within three years of the effective date of the Offering. It is therefore timely.

## COUNT III
### Violation of Section 15 of the Securities Act
### Against the Individual Defendants

68. Plaintiff incorporates ¶¶ 1-49 by reference.

69. This cause of action is brought pursuant to §15 of the Securities Act, 15 U.S.C. §77o against all Defendants except the Underwriter Defendants.

70. The Individual Defendants were controlling persons of Ryvyl by virtue of their positions as directors and/or senior officers of the Company. The Individual Defendants each had a series of direct and indirect business and personal relationships with other directors and officers and major shareholders of the Company. The Company controlled the Individual Defendants and all of Ryvyl employees.

71. The Company and the Individual Defendants were culpable participants in the violations of §§11 and 12(a)(2) of the Securities Act as alleged above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the Offering to be successfully completed.

72. This claim is brought within one year after discovery of the untrue statements and/or omissions in the Offering that should have been made and/or corrected through the

18

exercise of reasonable diligence, and within three years of the effective date of the Offering. It is therefore timely.

## COUNT IV

### Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

73.     Plaintiff repeats and realleges ¶¶ 1-53 contained above as if fully set forth herein.

74.     This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

75.     During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

76.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

    (a) employed devices, schemes and artifices to defraud;

    (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

77.     Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the

19

securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

78.    Individual Defendants, who are the senior officers of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or any other of the Company's personnel to members of the investing public, including Plaintiff and the Class.

79.    As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

80.    Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

81.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

82.    By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the

other members of the Class for substantial damages which they suffered in connection with their purchase of the Company's securities during the Class Period.

## COUNT V

### Violations of Section 20(a) of the Exchange Act

### Against the Individual Defendants

83.    Plaintiff repeats and realleges ¶¶ 1-53 contained above as if fully set forth herein.

84.    During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's false financial statements.

85.    As officers of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's' financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

86.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

87.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

### PRAYER FOR RELIEF

21

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

(a)     declaring this action to be a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating Plaintiff's counsel as Lead Counsel;

(b)     awarding damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, together with interest thereon;

(c)     awarding Plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated: February 1, 2023             **THE ROSEN LAW FIRM, P.A.**
                                     By: /s/ Laurence M. Rosen
                                     Laurence M. Rosen (SBN 219683)
                                     355 South Grand Avenue, Suite 2450
                                     Los Angeles, CA 90071
                                     Telephone: (213) 785-2610
                                     Facsimile: (213) 226-4684
                                     Email: lrosen@rosenlegal.com

                                     *Counsel for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS