ROBERT V. PRONGAY (#270796)
  *rprongay@glancylaw.com*
EX KANO S. SAMS II (#192936)
  *esams@glancylaw.com*
CHARLES LINEHAN (#307439)
  *clinehan@glancylaw.com*
PAVITHRA RAJESH (#323055)
  *prajesh@glancylaw.com*
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Lead Plaintiff*
*Scot S. Cook*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK CULLEN, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>        v.<br><br>RYVYL INC. F/K/A GREENBOX POS, BEN ERREZ, FREDI NISAN, J DREW BYELICK, BENJAMIN CHUNG, EF HUTTON F/K/A KINGWOOD CAPITAL MARKETS, A DIVISION OF BENCHMARK INVESTMENTS, INC. and R.F. LAFFERTY & CO.,<br><br>              Defendants. | Case No. 3:23-cv-00185-GPC-WVG<br><br>**PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>DATE:          November 17, 2023<br>TIME:          1:30 p.m.<br>CTRM:          2D<br>JUDGE:         Hon. Gonzalo P. Curiel |

# TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................................. 1

II.  STATEMENT OF FACTS ..................................................................................... 2

   A.   Background ................................................................................................. 2

   B.   Defendants' IPO Representations ............................................................... 3

   C.   The Company's Class Period Representations ........................................... 4

   D.   The Truth Emerges..................................................................................... 4

III. STANDARD OF REVIEW .................................................................................. 5

IV.  PLAINTIFF ADEQUATELY ALLEGES VIOLATIONS OF THE SECURITIES ACT ................................................................................................ 5

   A.   The Standards Governing Securities Act Claims .................................... 5

   B.   The Heightened Pleading Standards of Rule 9(b) and the PSLRA Do Not Apply Because Plaintiff's Securities Act Claims Do Not Sound in Fraud .......................................................................................................... 6

   C.   Plaintiff Adequately Alleges that the Company's Registration Statement Was False and Misleading ........................................................................ 8

   D.   The PSLRA's Safe Harbor Provision Does Not Protect Defendants' False and Misleading Statements ............................................................... 11

   E.   Plaintiff Adequately Alleges Standing to Pursue the Securities Act Claims ...................................................................................................... 13

V.   PLAINTIFF ADEQUATELY ALLEGES VIOLATIONS OF THE EXCHANGE ACT .............................................................................................. 14

   A.   Plaintiff Adequately Alleges that the Exchange Act Defendants Made Materially False and Misleading Statements ........................................... 14

      1.   The Company Defendants' Misrepresentations Regarding the Company's IPO Were False and Misleading .............................. 14

      2.   The Company's Financial Reporting Throughout the Class Period Was False ................................................................................... 15

PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS
Case No. 3:23-CV-0185-GPC-SBC

3. The Company Defendants' SOX Certifications Were False and Misleading ..................................................................15

4. The Company Defendants' Statements Minimizing Issues Related to the Company's Internal Controls Were False and Misleading ..................................................................16

B. Plaintiff Adequately Alleges that the Company Defendants Acted With Scienter.......................................................................17

1. The CW Accounts Support a Strong Inference of Scienter........18

2. The Severity of the Company's Internal Control Problems Supports a Strong Inference of Scienter ...................................21

3. The Company's Resignations Support a Strong Inference of Scienter ...................................................22

4. The Company Defendants' False SOX Certifications Bolster the Strong Inference of Scienter Alleged .........................................23

5. The Core Operations Inference Adds to the Strong Inference of Scienter Alleged.................................................................24

6. The Small Size of the Company Adds to the Strong Inference of Scienter Alleged.................................................................24

V. CONCLUSION.................................................................25

# TABLE OF AUTHORITIES

CASES

*Alaska Elec. Pension Fund v. Adecco S.A.*,
   371 F. Supp. 2d 1203 (S.D. Cal. 2005) ...................................................................22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................................5

*Backe v. Novatel Wireless, Inc.*,
   642 F. Supp. 2d 1169 (S.D. Cal. 2009) ...................................................................24

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................5, 20

*Bielousov v. GoPro, Inc.*,
   No. 16-cv-06654-CW, 2017 WL 3168522 (N.D. Cal. July 26, 2017) ...........22, 23

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
   No. 19-CV-06361-RS, 2020 WL 4569846 (N.D. Cal. Aug. 7, 2020) .....................7

*Crews v. Rivian Auto., Inc.*, No. 2:22-CV-01524-JLS-E,
   2023 WL 4361098 (C.D. Cal. July 3, 2023) ....................................................14, 25

*Curry v. Hansen Medical, Inc.*,
   No. 4:09-cv-05094-CW, 2012 WL 3242447 (N.D. Cal. Aug. 10, 2012) ..............24

*Cutler v. Kirchner*,
   696 F. App'x 809 (9th Cir. 2017) ...................................................................11, 21

*E. Ohman J:or Fonder AB v. NVIDIA Corp.*,
   No. 21-15604, 2023 WL 5496507 (9th Cir. Aug. 25, 2023) .....................10, 17, 18

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014)........................................................................................18

*Eminence Capital, L.L.C. v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003).....................................................................................25

*Hildes v. Arthur Andersen LLP,*
   734 F.3d 854 (9th Cir. 2013)........................................................................5, 6, 11, 12

*In re Allied Nevada Gold Corp. Sec. Litig.,*
   743 F. App'x 887 (9th Cir. 2018) ...............................................................................12

*In re Alphabet, Inc. Sec. Litig.,*
   1 F.4th 687 (9th Cir. 2021)....................................................................................11, 24

*In re Arthrocare Corp. Sec. Litig.,*
   726 F. Supp. 2d 696 (W.D. Tex. 2010)..........................................................................9

*In re Atossa Genetics Inc. Sec. Litig.,*
   868 F.3d 784 (9th Cir. 2017)........................................................................................13

*In re Bare Escentuals, Inc. Sec. Litig.,*
   745 F. Supp. 2d 1052 (N.D. Cal. 2010) .........................................................................8

*In re Century Aluminum Co. Sec. Litig.,*
   729 F.3d 1104 (9th Cir. 2013).................................................................................13, 14

*In re Charles Schwab Corp. Sec. Litig.,*
   257 F.R.D. 534 (N.D. Cal. 2009) ...................................................................................6

*In re Commtouch Software Ltd. Sec. Litig.,*
   No. C 01-00719 WHA, 2002 WL 31417998 (N.D. Cal. July 24, 2002) .................25

*In Re CommVault Sys., Inc. Sec. Litig.,*
   No. 14-CV-5628 (PGS), 2016 WL 5745100 (D.N.J. Sept. 30, 2016) ...................20

*In re Cornerstone Propane Partners, L.P.,*
   355 F. Supp. 2d 1069 (N.D. Cal. 2005) .......................................................................23

*In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.,*
   932 F. Supp. 2d 1095 (C.D. Cal. 2013)..........................................................................7

*In re Cylink Sec. Litig.,*
   178 F. Supp. 2d 1077 (N.D. Cal. 2001) .......................................................................15

*In re CytRx Corp. Sec. Litig.,*
   No. CV141956GHKPJWX, 2015 WL 5031232 (C.D. Cal. July 13, 2015) ....13, 14

PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS
Case No. 3:23-CV-0185-GPC-SBC

*In re Dothill Sys. Corp. Sec. Litig.*,
No. 06-CV-228 JLS (WMC), 2009 WL 734296 (S.D. Cal. Mar. 18, 2009) .........23

*In re Downey Sec. Litig.*,
No. CV 08-3261-JFW(RZX), 2009 WL 2767670
(C.D. Cal. Aug. 21, 2009) ...............................................................................18, 24

*In re Eargo, Inc. Sec. Litig.*,
No. 21-CV-08597-CRB, 2023 WL 1997918 (N.D. Cal. Feb. 14, 2023)................8

*In re Extreme Networks, Inc. Sec. Litig.*,
No. 15-CV-04883-BLF, 2018 WL 1411129 (N.D. Cal. Mar. 21, 2018)..............19

*In re Immune Response Sec. Litig.*,
375 F. Supp. 2d 983 (S.D. Cal. 2005) ....................................................................8

*In re Impax Laboratories, Inc. Sec. Litig.*,
No. C 04-04802 JW, 2007 WL 7022753 (N.D. Cal. July 18, 2007) ..............22, 25

*In re Morgan Stanley Info. Fund Sec. Litig.*,
592 F.3d 347 (2d Cir. 2010)..................................................................................13

*In re Quality Sys., Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017).....................................................................5, 11, 19

*In re Rigel Pharms., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012)............................................................................8, 18

*In re STEC Inc. Sec. Litig.*,
No. CV09-08536-JVS MLGX, 2011 WL 2669217 (C.D. Cal. June 17, 2011) ....12

*In re UTStarcom, Inc. Sec. Litig.*,
617 F. Supp. 2d 964 (N.D. Cal. 2009) ..................................................................23

*In re Velti PLC Sec. Litig.*,
No. 13-CV-03889-WHO, 2015 WL 5736589 (N.D. Cal. Oct. 1, 2015) ..............13

*In re VeriFone Holdings, Inc. Sec. Litig.*,
704 F.3d 694 (9th Cir. 2012)......................................................................17, 21, 23

*In Re Violin Memory Sec. Litig.*,
   No. 13-CV-5486 YGR, 2014 WL 5525946 (N.D. Cal. Oct. 31, 2014) ...................8

*In re Vivendi, S.A. Sec. Litig.*,
   838 F.3d 223 (2d Cir. 2016) ..................................................................................12

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
   No. 2672 CRB (JSC), 2017 WL 66281 (N.D. Cal. Jan. 4, 2017) .........................22

*In re Wash. Mut., Inc. Sec., Deriv. & ERISA Litig.*,
   694 F. Supp. 2d 1192 (W.D. Wash. 2009) ............................................................22

*Lloyd v. CVB Fin. Corp.*,
   811 F.3d 1200 (9th Cir. 2016) ...............................................................................19

*Lormand v. US Unwired, Inc.*,
   565 F.3d 228 (5th Cir. 2009) .................................................................................12

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011) .................................................................................................18

*Mehedi v. View, Inc.*,
   No. 21-CV-06374-BLF, 2023 WL 3592098 (N.D. Cal. May 22, 2023) ..............14

*Middlesex Retirement Sys. v. Quest Software Inc.*,
   527 F. Supp. 2d 1164 (C.D. Cal. 2007) .................................................................16

*Miller v. Thane Int'l, Inc.*,
   519 F.3d 879 (9th Cir. 2008) .................................................................................11

*Mulderrig v. Amyris, Inc.*,
   492 F. Supp. 3d 999 (N.D. Cal. 2020) ................................................10, 16, 17, 21

*Nguyen v. New Link Genetics Corp.*,
   297 F. Supp. 3d 472 (S.D.N.Y. 2018) ...................................................................20

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.*,
   320 F.3d 920 (9th Cir. 2003) .................................................................................18

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015) .................................................................................5, 6, 12

*Pino v. Cardone Cap., LLC*,
    No. 21-55564, 2023 WL 2158802 (9th Cir. Feb. 22, 2023) .................................12

*Rafton v. Rydex Series Funds*,
    No. 10-CV-01171-LHK, 2011 WL 31114 (N.D. Cal. Jan. 5, 2011) ......................6

*Reese v. Malone*,
    747 F.3d 557 (9th Cir. 2014)...............................................................................21

*Robb v. Fitbit Inc.*,
    No. 16-CV-00151-SI, 2017 WL 219673 (N.D. Cal. Jan. 19, 2017).....................21

*Roberts v. Zuora, Inc.*,
    No. 19-CV-03422-SI, 2020 WL 2042244 (N.D. Cal. Apr. 28, 2020)...................19

*Rubke v. Capitol Bancorp Ltd.*,
    551 F.3d 1156 (9th Cir. 2009)................................................................................6

*S. Ferry LP, No. 2 v. Killinger*,
    542 F.3d 776 (9th Cir. 2008)...........................................................17, 19, 20, 24

*Scott v. ZST Digital Networks, Inc.*,
    No. CV 11-03531 GAF (JCx), 2012 WL 538279 (C.D. Cal. Feb. 14, 2012)........24

*Slack Techs., LLC v. Pirani*,
    598 U.S. 759 (2023) ............................................................................................14

*Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*,
    243 F. Supp. 3d 1109 (E.D. Cal. 2017).................................................................14

*Sudunagunta v. NantKwest, Inc.*,
    No. CV1601947MWFJEMX, 2017 WL 8811116 (C.D. Cal. May 16, 2017).........7

*Tarapara v. K12 Inc.*,
    No. 16-CV-4069-PJH, 2017 WL 3727112 (N.D. Cal. Aug. 30, 2017) .................24

*Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*,
    No. 220CV02553STATMP, 2022 WL 989240 (W.D. Tenn. Mar. 31, 2022).......13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ...................................................................................5, 17, 18, 25

*Thomas v. Magnachip Semiconductor Corp.*,
  167 F. Supp. 3d 1029 (N.D. Cal. 2016) ...............................................................14

*Tsirekidze v. Syntax-Brillian Corp.*,
  No. CV-07-02204-PHX-FJM, 2009 WL 275405 (D. Ariz. Jan. 30, 2009) .............7

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003).................................................................................6

*Webb v. Solarcity Corp.*,
  884 F.3d 844 (9th Cir. 2018).................................................................................18

*Yanek v. Staar Surigcal Co.*,
  388 F. Supp. 2d 1110 (C.D. Cal. 2005)..................................................................12

*Zaghian v. Farrell*,
  675 F. App'x 718 (9th Cir. 2017) ..........................................................................11

*Zamir v. Bridgepoint Educ., Inc*.,
  274 F. Supp. 3d 1057 (S.D. Cal. 2017) .................................................................24

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009)..................................................................................19

STATUTES

15 U.S.C. §77k(a) .........................................................................................................5

15 U.S.C. §77k(b) .........................................................................................................5

15 U.S.C. §78u-4(b)(2) ...............................................................................................17

15 U.S.C. §78u-5(c)(1)(A)...........................................................................................11

Plaintiff Scot S. Cook ("Plaintiff") files this omnibus opposition to: (1) the Ryvyl Defendants' Motion to Dismiss Plaintiff's Amended Company ("Company Motion," collectively the "Company Defendants"); (2) the Underwriter Defendants' Motion to Dismiss Amended Class Action Complaint ("Underwriter Motion," collectively "Underwriter Defendants"); and (3) Defendant J. Drew Byelick's Re-Filed Motion to Dismiss Plaintiffs' [sic] Amended Complaint for Violation of Securities Laws ("Byelick Motion," individually Chief Financial Officer ("CFO") Byelick) collectively "Defendants."

## I.    INTRODUCTION

This is a securities class action brought on behalf of all persons and/or entities who: (1) purchased or otherwise acquired the securities of Ryvyl, Inc. ("Ryvyl" or the "Company") pursuant or traceable to the Registration Statement, Prospectus, and Offering Documents (collectively "Registration Statement") issued in connection with the Company's Initial Public Offering ("IPO") held on or about January 29, 2021, pursuant to the Securities Act of 1933 ("Securities Act"); and (2) purchased or otherwise acquired the Company's securities between January 29, 2021 and January 20, 2023, inclusive ("Class Period"), pursuant to the Securities Exchange Act of 1934 ("Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder.

Within the Registration Statement for the IPO, Defendants made numerous representations purporting to convey risks to investors. These representations, however, were false and misleading because of the existence of facts that undermined the accuracy of Defendants' statements, including information from former Company employees that contradicted Defendants' public statements. Moreover, during the Class Period, the Company Defendants attested to the accuracy of the Company's financial reporting and internal controls. These representations were rendered false by, among other things, the Company's later restatement in which it admitted that certain financial statements and related information should no longer be relied upon.

The Court should deny each of Defendants' motions to dismiss.  First, Defendants fail to recognize that Plaintiff's Securities Act claims do not sound in fraud, and therefore are governed by the notice pleading standard.  Second, Plaintiff adequately alleges that Defendants made material misrepresentations and omissions in the Registration Statement, and therefore has adequately alleged claims under the Securities Act.  Third, Plaintiff has also alleged scienter for the misrepresentations made by the Company Defendants, and has therefore stated a claim under the Exchange Act.  For these reasons and those stated below, the Court should deny Defendants' motions.

## II.   STATEMENT OF FACTS

### A.   Background

Ryvyl is a crypto company that develops, markets, and sells blockchain-based payment solutions.  ¶31.[1]  The Company's core focus is to develop and monetize disruptive blockchain-based applications, integrated within an end-to-end suite of financial products.  *Id.*  The Company claims that payment processing in the blockchain world only requires recording a ledger without the movement of money.  ¶33.  According to Ryvyl, secure tokens are used where users need an immediate transaction in a secure environment and where traditional banks may not work effectively.  *Id.*  The Company claims to generate revenue from: (1) payment processing services; (2) licensing fees; and (3) equipment sales.  ¶34.  According to Ryvyl, payment processing revenue can come from merchant services, banking services, issuing, foreign exchange, and ACH programs (¶35), licensing revenue is paid in advance and is recorded as unearned income, which is amortized monthly over the period of the licensing agreement (¶36), and equipment revenue is generated from the sale of POS products, which is recognized when goods are shipped.  ¶37.

---

[1]   Unless otherwise indicated, all paragraph references ("¶") are to Plaintiff's Amended Class Action Complaint for Violations of the Federal Securities Laws ("Complaint"), all emphasis is added, all quotations and internal citations are omitted, and all references to "Rules" are to the Federal Rules of Civil Procedure.

## B.      Defendants' IPO Representations

On January 29, 2021, the Company filed a Registration Statement with the SEC which in combination with a February 10, 2021 amendment declared effective on February 12, 2021 are collectively the "Registration Statement" issued in connection with the Company's IPO.  ¶41.  On February 18, 2021, the Company filed the Final Prospectus for the Offering.  ¶43.  In the IPO, the Company sold 4,150,000 shares at $10.50 per share.  *Id*.

Within the Registration Statement, Defendants represented, among other things, that: (1) the Company's "consolidated financial statements are prepared and presented in accordance with United States generally accepted accounting principles, or U.S. GAAP;" (2) "[w]e have a limited operating history and may not be able to operate our business successfully or generate sufficient revenue to make or sustain distributions to our shareholders;" (3) "our future operating results and financial data may vary materially from the historical operating results and financial data as well as the pro forma operating results and financial data because of a number of factors, including costs and expenses associated with being a public company;" (4) "[o]ur financial statements may be materially affected if our estimates prove to be inaccurate as a result of our limited experience in making critical accounting estimates;" (5) "[i]f we fail to comply with the rules and regulations under the Sarbanes-Oxley Act, our operating results, our ability to operate our business and investors' views of us may be harmed;" (6) "[e]nsuring that we have adequate internal financial and accounting controls and procedures in place so that we can produce accurate financial statements on a timely basis is a costly and time-consuming effort that will need to be evaluated frequently; and (7) "[o]ur failure to maintain the effectiveness of our internal controls in accordance with the requirements of the Sarbanes-Oxley Act could have a material adverse effect on our business."  ¶42.

## C. The Company's Class Period Representations

During the Class Period, the Company Defendants issued certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") attesting to the accuracy of the Company's financial reporting and internal controls.  ¶¶90-91, 93, 95, 97, 100, 103, 106.  The Company Defendants also made representations regarding the Ryvyl's net revenue, net loss, total assets, and total stockholders' equity (¶¶92, 94, 96, 98, 101, 104, 107) and minimized issues related to internal controls.  ¶¶99, 102, 105, 108.

## D. The Truth Emerges

On January 20, 2023, Ryvyl announced that "the Company's previously issued financial statements as of December 31, 2021, for the year ended December 31, 2021, as of and for the interim periods within the year ended December 31, 2021 and as of and for the interim periods ended September 30, June 30 and March 31, 2022 . . . and the related audit report of the Company's previous independent registered public accounting firm, BF Borgers CPA, PC, can no longer be relied upon.  It is expected that the restatement of the financial statements for the annual and interim periods referred to above will result in decreases to total revenue, increased net losses, decreases to total assets, and decreased total stockholders' equity."  ¶118.  The Company announced further that "[i]n connection with such restatements, the Company has reassessed its conclusions regarding the effectiveness of the Company's internal control over financial reporting as of December 31, 2021 and has determined that one or more material weaknesses exist in the Company's internal control including a material weakness related to accounting for certain complex business transactions. The Company expects to report one or more material weaknesses as of December 31, 2021, as well as its related remediation efforts including having engaged, as of August 2022, third party technical accounting experts to support proper accounting for complex accounting transactions. As a result of the material weakness, the Company's management concluded its disclosure controls and procedures were

PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS
Case No. 3:23-CV-0185-GPC-SBC

not effective as of December 31, 2021, and September 30, June 30, and March 31, 2022." *Id.* On this news, Ryvyl's share price plummeted 15%. ¶119.

## III.   STANDARD OF REVIEW

A plaintiff's allegations need only be "plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts must "accept all factual allegations in the complaint as true," consider "the complaint in its entirety" (*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)), and construe the facts "in the light most favorable to the nonmoving party." *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017).

## IV.   PLAINTIFF ADEQUATELY ALLEGES VIOLATIONS OF THE SECURITIES ACT

### A.   The Standards Governing Securities Act Claims

Section 11 of the Securities Act creates a private remedy for any purchaser of a security if "any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading . . . ." 15 U.S.C. §77k(a). "The section was designed to assure compliance with the disclosure provisions of the Act by imposing a stringent standard of liability on the parties who play a direct role in a registered offering." *Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 859 (9th Cir. 2013). "As long as a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish his *prima facie* case." *Id.*; 15 U.S.C. §77k(b).

"Section 11 thus creates two ways to hold issuers liable for the contents of a registration statement—one focusing on what the statement says and the other on what it leaves out." *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 179 (2015). "Either way, the buyer need not prove . . . that the defendant

acted with any intent to deceive or defraud." *Id*. "Liability against the issuer of a security is virtually absolute, even for innocent misstatements." *Hildes*, 734 F.3d at 859. "Section 11 lacks a scienter requirement" (*id*. at 860), and the heightened pleading requirement of the Private Securities Litigation Reform Act of 1995 ("PSLRA") does not apply to Section 11 claims. *Rubke v. Capitol Bancorp Ltd*., 551 F.3d 1156, 1161 (9th Cir. 2009). Thus, "Section 11 places a relatively minimal burden on a plaintiff." *Hildes*, 734 F.3d at 859.

Section 12 of the Securities Act "establishes liability for persons who offer or sell securities by means of prospectuses or oral communications that include untrue or misleading statements or omissions." *Rafton v. Rydex Series Funds*, No. 10-CV-01171-LHK, 2011 WL 31114, at *7 (N.D. Cal. Jan. 5, 2011). Like a Section 11 claim, "a claim under Section 12(a)(2) does not require a showing of intent or knowledge, as even negligent misrepresentations or material omissions are actionable." *Id*.

**B.      The Heightened Pleading Standards of Rule 9(b) and the PSLRA Do Not Apply Because Plaintiff's Securities Act Claims Do Not Sound in Fraud**

Defendants assert that Plaintiff's Securities Act claims sound in fraud. Company Motion at 8-9; Underwriter Motion at 7-8. Defendants are wrong. A claim is subject to the heightened pleading requirement of Rule 9(b) only if it "sound[s] in fraud." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-05 (9th Cir. 2003). Because Plaintiff's Securities Act claims sound in strict liability and negligence, they are subject to the notice pleading standard of Rule 8.

The factors that courts consider demonstrate that the Complaint does not sound in fraud. First, Plaintiff alleges the Securities Act claims in the first portion of the Complaint (¶¶1-88) and the Exchange Act claims in the latter portion of the Complaint.  ¶¶89-144.  Importantly, Plaintiff has not incorporated the fraud allegations in the Exchange Act claims into the Securities Act claims. Such a clear delineation supports a determination that the Section 11 claim does not sound in fraud. *See, e.g.*, *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 546 (N.D. Cal.

2009) ("Courts generally apply Rule 8 to Section 11 claims where *only* non-fraud bases for liability are pled or where such claims are adequately distinguished from fraud claims.") (italics in original); *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-02204-PHX-FJM, 2009 WL 275405, at *7 (D. Ariz. Jan. 30, 2009) ("plaintiffs have carefully crafted the complaint so that their negligence-based claims are wholly separate from their allegations of fraud").

Second, the allegations are carefully couched in the language of strict liability and negligence, not fraud. *See, e.g.*, ¶¶54-55, 59, 64, 75, 82; *see also Sudunagunta v. NantKwest, Inc.*, No. CV1601947MWFJEMX, 2017 WL 8811116, at *6 (C.D. Cal. May 16, 2017) (Rule 8 applied where "Plaintiffs allege that Defendants failed to conduct a reasonable investigation or possessed no reasonable basis for their belief that the statements in the Registration Statement were true"); *In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 932 F. Supp. 2d 1095, 1107 n.5 (C.D. Cal. 2013) (allegations that defendants "failed to exercise due diligence and failed conduct a reasonable investigation" are "terms of strict liability or negligence, not fraud").[2]

Third, Plaintiff has disclaimed all allegations of fraud. ¶¶72, 80, 86. "While defendants are correct that a disclaimer alone is insufficient . . . here [plaintiff] made an effort to plead a non-fraudulent basis for Section 11 liability" and thus "the heightened Rule 9(b) standard thus will not apply." *Bos. Ret. Sys. v. Uber Techs.,*

---

[2] *See, e.g.*, ¶75 ("None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading"); ¶82 ("Defendants owed Plaintiff and the other members of the Class who purchased the Company's securities pursuant to the Registration Statement the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading. Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Registration Statement as set forth above.").

7

*Inc.*, No. 19-CV-06361-RS, 2020 WL 4569846, at *4 (N.D. Cal. Aug. 7, 2020). Thus, Rule 9(b) and the PSLRA do not apply to Plaintiff's Securities Act claims.[3]

### C. Plaintiff Adequately Alleges that the Company's Registration Statement Was False and Misleading

The Company's Registration Statement was false and misleading. Within the Registration Statement, Defendants represented, among other things, that: (1) the Company's "consolidated financial statements are prepared and presented in accordance with United States generally accepted accounting principles, or U.S. GAAP;" (2) "[w]e have a limited operating history and may not be able to operate our business successfully or generate sufficient revenue to make or sustain distributions to our shareholders;" (3) "our future operating results and financial data may vary materially from the historical operating results and financial data as well as the pro forma operating results and financial data because of a number of factors, including costs and expenses associated with being a public company;" (4) "[o]ur financial statements may be materially affected if our estimates prove to be inaccurate as a result of our limited experience in making critical accounting estimates;" (5) "[i]f we fail to comply with the rules and regulations under the Sarbanes-Oxley Act, our operating results, our ability to operate our business and investors' views of us may be harmed;" (6) "[e]nsuring that we have adequate internal financial and accounting

---

[3] Defendants' authority is inapposite. (Company Motion at 9 & n.3; Underwriter Motion at 7). In *In re Eargo, Inc. Sec. Litig.*, No. 21-CV-08597-CRB, 2023 WL 1997918 (N.D. Cal. Feb. 14, 2023), the court found that Plaintiffs incorporated fraud-based allegations from Exchange Act claims into Securities Act claims. *Id.* at *6. Plaintiff has not done so here. Similarly, *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869 (9th Cir. 2012), *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052 (N.D. Cal. 2010), and *Rubke* are inapplicable because plaintiffs did not delineate Securities Act claims from Exchange Act claims or allege different misrepresentations as Plaintiff has done here. The Company Defendants also cite *In Re Violin Memory Sec. Litig.*, No. 13-CV-5486 YGR, 2014 WL 5525946 (N.D. Cal. Oct. 31, 2014), but *Violin supports* Plaintiff's position. *Id.* at *8. Even if it were deemed that Plaintiff's Securities Act claims sounded in fraud (and they do not), Plaintiff has alleged these claims with particularity. *See In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1038 (S.D. Cal. 2005) (because the complaint "gives details about the contents of the [registration] statement and contains information on why it was false" it "meets the requirements of Rule 9(b)").

controls and procedures in place so that we can produce accurate financial statements on a timely basis is a costly and time-consuming effort that will need to be evaluated frequently; and (7) "[o]ur failure to maintain the effectiveness of our internal controls in accordance with the requirements of the Sarbanes-Oxley Act could have a material adverse effect on our business. We could lose investor confidence in the accuracy and completeness of our financial reports, which could have an adverse effect on the price of our Common Stock." ¶42.

These statements were false and misleading. First, contrary to the Company's representation that it complied with GAAP, it announced that: (1) certain of its financial statements could no longer be relied upon; (2) the restatement would result in decreases to total revenue, increased net losses, decreases to total assets, and decreased total stockholders' equity; and (3) it had determined that one or more material weaknesses exist in the Company's internal control and that its disclosure controls and procedures were not effective. ¶118. While Defendants attempt to confine the scope of the restatement, a "Restatement may show the falsity of prior information, even non-financial information." *In re Arthrocare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 710 (W.D. Tex. 2010). Moreover, the accounts of CWs also demonstrate falsity. *See, e.g*, ¶¶46, 47 (CW2's account that: (1) CFO Chung did not properly follow accounting procedures; (2) CFO Byelick had numerous discussions about the improper accounting practices that existed at the Company, which included improper accounting relating to revenue, debt, and depreciation value; and (3) CFO Byelick acknowledged that Ryvyl's numbers were inaccurate, including the Company's quarterly financial statements and year-end financial statements, and that the Company failed to follow proper accounting procedures).

Second, the Company's representation that it may not be able to operate its business successfully or generate sufficient revenue to make or sustain distributions to its shareholders was false and misleading because of the existence of facts that undermined the accuracy of this representation. *See, e.g*, ¶¶46, 47, 50. For instance,

CW4 stated that based upon attendance at weekly meetings with CEO Nisan, CFO Chung, Chairman Errez, and others, the Company's accounting, including accounting for wires that were received and sent to other companies, was inaccurate.  ¶50.

Third, the Company's contention that its future operating results and financial data may vary materially from the historical operating results and financial data was false and misleading for similar reasons.  *See, e.g*, ¶¶46, 47, 50. "[A] statement is misleading if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists" and "[e]ven if a statement is not false, it may be misleading if it omits material information."  *E. Ohman J:or Fonder AB v. NVIDIA Corp.*, No. 21-15604, 2023 WL 5496507, at *7 (9th Cir. Aug. 25, 2023).

Fourth, Rvyvl's claim that its financial statements may be materially affected if its estimates proved to be inaccurate as a result of its limited experience in making critical accounting estimates was false and misleading.  The representation of "limited experience in making critical accounting estimates" masked the true state of affairs, which included a severe lack of accounting personnel and the Company relying on its receptionist to perform financial and accounting work.  ¶48.

Fifth, the Company's representation that if it failed to comply with SOX regulations its operating results may be harmed was false and misleading because it subsequently admitted that it "has determined that one or more material weaknesses exist in the Company's internal control including a material weakness related to accounting for certain complex business transactions."  ¶118.  Thus, the Company's statements "representing to investors and the SEC that there were no changes reasonably likely to materially affect [the Company's] internal control over financial reporting satisfy the pleading standard with respect to being objectively false . . . ." *Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d 999, 1024 (N.D. Cal. 2020).

Sixth, the Company's representation that it was ensuring that it had adequate internal financial and accounting controls and procedures so that it could produce

accurate financial statements was belied by, among other things, the Company's admission that "the Company's management concluded its disclosure controls and procedures were not effective as of December 31, 2021, and September 30, June 30, and March 31, 2022."  ¶118; *see also* ¶¶46, 47, 50 (CW accounts showing falsity).

Finally, Rvyvl's claim that its failure to maintain the effectiveness of its internal controls could have a material adverse effect on its business was false and misleading because, as noted above, these risks had already materialized and were greater in magnitude than portrayed.  Statements are misleading when "they disclosed a risk in the abstract but omitted the fact that it had already come to fruition."  *Cutler v. Kirchner*, 696 F. App'x 809, 813 (9th Cir. 2017); *see also In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 703 (9th Cir. 2021) ("Risk disclosures that speak[ ] entirely of as-yet-unrealized risks and contingencies and do not alert[ ] the reader that some of these risks may already have come to fruition can mislead reasonable investors.").  Thus, Plaintiff has adequately alleged falsity.[4]

**D.    The PSLRA's Safe Harbor Provision Does Not Protect Defendants' False and Misleading Statements**

Contrary to Defendants' assertions (Company Motion at 13-14; Underwriter Motion at 17-18), the safe harbor provision of the PSLRA is inapplicable.  "Adequate cautionary language under the PSLRA must identify important factors that could cause actual results to differ materially from those in the forward-looking statement." *Quality Sys.*, 865 F.3d at 1148; 15 U.S.C. §78u-5(c)(1)(A).  "The cautionary language also must have consisted of non-boilerplate warnings that were tailored to the forward-looking statements."  *Zaghian v. Farrell*, 675 F. App'x 718, 720 (9th Cir.

---

[4]    The Underwriter Defendants assert that several representations were purportedly literally true (Underwriter Motion at 14), while failing to appreciate that "the disclosure required by the securities laws is measured not by literal truth, but by the ability of the material to accurately inform rather than mislead prospective buyers."  *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008).  They also incorrectly assert that there are no facts alleged to show their knowledge (Underwriter Motion at 15) when scienter is not required.  *Hildes*, 734 F.3d at 859-60.  The challenges that Defendants make regarding the CW allegations are discussed *infra*.

PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS
Case No. 3:23-CV-0185-GPC-SBC

2017).  "Defendants bear the burden of demonstrating that their statements are protected by the safe harbor."  *In re STEC Inc. Sec. Litig.*, No. CV09-08536-JVS MLGX, 2011 WL 2669217, at *9 (C.D. Cal. June 17, 2011); *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 247 (2d Cir. 2016).

Defendants cite only three warnings that they claim constitute meaningful cautionary language.  Company Motion at 14, Underwriter Motion at 17.  Each disclaimer, however, fails to constitute meaningful cautionary language.[5]  These disclaimers are insufficient because they constitute "factors that are so broad that they apply to ***any*** business that sells products to consumers."  *Yanek v. Staar Surigcal Co.*, 388 F. Supp. 2d 1110, 1123 (C.D. Cal. 2005) (emphasis in original); *see also Lormand v. US Unwired, Inc.*, 565 F.3d 228, 244 (5th Cir. 2009) (disclaimer that a company's statements "are not guarantees of future performance . . . and involve known and unknown risks and other factors that could cause actual results to be materially different from any future results expressed or implied by them" was inadequate).  And while the Company Defendants claim that Plaintiff has not alleged Defendants' knowledge (Motion at 11), Securities Act claims lack a scienter requirement (*Hildes*, 734 F.3d at 860) and under *Omnicare*, opinions, though sincerely held and otherwise true, may nonetheless be actionable if the speaker omits information whose omission makes the statement misleading.  575 U.S. at 194.  Such is the case here.[6]

[5]    The Company Defendants point to the following disclaimers: (1) "[t]hese statements are only predictions; uncertainties and other factors may cause our actual results, levels of activity, performance, or achievements to be materially different from any future results, levels or activity, performance, or achievements expressed or implied by these forward-looking statements" (*See* Declaration of Sean T. Prosser in Support of Ryvyl Defendants' Motion to Dismiss Plaintiff's Amended Complaint ("Prosser Decl."), Ex. 2 at 19 & Ex. 3 at 9); (2) "we cannot guarantee future results, levels of activity, performance, or achievements" *id*.; and (3) warning investors to consider the Company's "ability to evaluate and measure the Company's business, prospects and performance metrics." *Id.*

[6]    The Company Defendants misinterpret the decision in *Pino v. Cardone Cap., LLC*, No. 21-55564, 2023 WL 2158802 (9th Cir. Feb. 22, 2023) (Company Motion at 11 n.4). *Pino* did not alter the principle that "statements of opinion may be actionably false where investors identify particular (and material) facts going to the basis for the issuer's opinion." *In re Allied Nevada Gold Corp. Sec. Litig.*, 743 F. App'x 887, 887 (9th Cir. 2018).  Additionally, "Defendants' argument that the accounting judgments

12

Finally, dismissal under the safe harbor defense "requires a stringent showing" by Defendants. *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784, 798 (9th Cir. 2017). "There must be sufficient cautionary language or risk disclosure such that reasonable minds could not disagree that the challenged statements were not misleading." *Id.* Similarly, the Underwriter Defendants' due diligence fails (Underwriter Motion at 18-20) because "defendants bear the burden of demonstrating the applicability of each of these defenses, which are therefore unavailing as a means of defeating a motion to dismiss pursuant to Rule 12(b)(6)." *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 360 (2d Cir. 2010); *see also In re CytRx Corp. Sec. Litig.*, No. CV141956GHKPJWX, 2015 WL 5031232, at *16 (C.D. Cal. July 13, 2015) ("We cannot say from the face of Plaintiffs' Complaint that it is clear the Underwriter Defendants conducted a reasonable investigation or that they reasonably believed the statements contained within the Registration Statement were not misleading."). And despite the Underwriter Defendants' claim of a lack of red flags, where, as here, Plaintiff alleges that underwriters relied upon management, dismissal is unwarranted. *CytRx*, 2015 WL 5031232, at *17; ¶¶55-64; *see also In re Velti PLC Sec. Litig.*, No. 13-CV-03889-WHO, 2015 WL 5736589, at *12 (N.D. Cal. Oct. 1, 2015) ("In most cases, due diligence is a jury question unsuitable for determination on a motion to dismiss.").

**E.    Plaintiff Adequately Alleges Standing to Pursue the Securities Act Claims**

Plaintiff has also adequately alleged standing under the Securities Act. "Plaintiffs could satisfy this requirement in one of two ways." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1106 (9th Cir. 2013). First, plaintiffs could prove that they purchased shares directly in a particular offering. *Id.* Second,

were merely inactionable opinions is not persuasive." *Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, No. 220CV02553STATMP, 2022 WL 989240, at *28 (W.D. Tenn. Mar. 31, 2022).

PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS
Case No. 3:23-CV-0185-GPC-SBC

plaintiffs could prove that their shares, although purchased in an aftermarket, can be traced back to a particular offering. *Id.*; *see also Slack Techs., LLC v. Pirani*, 598 U.S. 759, 770 (2023) (a plaintiff is required "to plead and prove that he purchased shares traceable to the allegedly defective registration statement").

As reflected by Plaintiff's certification which was incorporated by inference into the Complaint (¶11), Plaintiff purchased numerous shares of the Company's stock on several dates, including a purchase of 2,500 shares at $10.50 – the same price as the shares offered in the Registration Statement. Doc. 7-4; ¶43. In alleging that plaintiffs "purchased shares during the offering period at the secondary offering price, Plaintiffs have met that burden." *CytRx*, 2015 WL 5031232, at *15.[7]

## V. PLAINTIFF ADEQUATELY ALLEGES VIOLATIONS OF THE EXCHANGE ACT

### A. Plaintiff Adequately Alleges that the Exchange Act Defendants Made Materially False and Misleading Statements

#### 1. The Company Defendants' Misrepresentations Regarding the Company's IPO Were False and Misleading

As demonstrated above, the statements that Defendants made in connection with the Company's IPO were false and misleading. Thus, these statements also support falsity for Plaintiff's Exchange Act claim.

---

[7] Defendants contend that tracing will pose a "daunting problem" for Plaintiff because millions of shares of Ryvyl stock were trading in the market through other offerings. Company Motion at 23-24; Underwriter Motion at 8-12. But this situation does not distinguish the Company's offering from any other offering registered pursuant to a specific registration statement when there were already existing shares outstanding. Additionally, the Underwriter Defendants' reliance on *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029 (N.D. Cal. 2016), is misplaced because that case was based on a misreading of *Century Aluminum. See e.g., Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*, 243 F. Supp. 3d 1109, 1114 (E.D. Cal. 2017) ("*Magnachip's* analysis . . . is of limited value [as] this Court is not convinced that *Magnachip's* reading of *Century Aluminum* is wholly correct."); *see also Mehedi v. View, Inc.*, No. 21-CV-06374-BLF, 2023 WL 3592098, at *7 (N.D. Cal. May 22, 2023) (granting leave to amend if necessary to allege tracing). Finally, contrary to Defendants' contention, Plaintiff has adequately pled a primary violation under the Securities Act and the Individual Defendants' control. ¶¶13-22; 86-88; *Crews v. Rivian Auto., Inc.*, No. 2:22-CV-01524-JLS-E, 2023 WL 4361098, at *17 (C.D. Cal. July 3, 2023).

### 2. The Company's Financial Reporting Throughout the Class Period Was False

The Company Defendants also misrepresented the Company's net revenue, net loss, total assets, and total stockholders' equity. ¶¶92, 94, 96, 98, 101, 104, 107. For instance, for 1Q21, the Company reported net revenue of $4,749,441, a net loss of $13,329,432, total assets of $53,029,116, and total stockholders' equity of $46,885,338. ¶92. The Company made similar representations for 2Q21 (¶94), 3Q21 (¶96), FY21 (¶98), 1Q22 (¶101), 2Q22 (¶104), and 3Q22 (¶107).

These representations were false. The Company announced that its "previously issued financial statements as of December 31, 2021, for the year ended December 31, 2021, as of and for the interim periods within the year ended December 31, 2021 and as of and for the interim periods ended September 30, June 30 and March 31, 2022" can "no longer be relied upon" and that "[i]t is expected that the restatement of the financial statements for the annual and interim periods referred to above will result in decreases to total revenue, increased net losses, decreases to total assets, and decreased total stockholders' equity." ¶118. "[T]he existence of restated financial results is sufficient to support plaintiffs' belief that the statements were misstated." *In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077, 1084 (N.D. Cal. 2001). The Company Defendants do not – and cannot – dispute falsity regarding these statements.

### 3. The Company Defendants' SOX Certifications Were False and Misleading

The Company Defendants also issued false SOX certifications. ¶¶90-91, 93, 95, 97, 100, 103, 106. Specifically, the Company Defendants represented, among other things, that the Company had disclosed "[a]ll significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information." *Id*. The Company, however, subsequently announced that it "has determined that one or more material weaknesses exist in the Company's internal control including a material weakness

related to accounting for certain complex business transactions" and that "[a]s a result of the material weakness, the Company's management concluded its disclosure controls and procedures were not effective as of December 31, 2021, and September 30, June 30, and March 31, 2022." ¶118. Thus, the Company's statements "representing to investors and the SEC that there were no changes reasonably likely to materially affect [the Company's] internal control over financial reporting satisfy the pleading standard with respect to being objectively false, misleading, and undisclosed throughout the Class Period." *Mulderrig*, 492 F. Supp. 3d at 1024. "For these certifications to have any substance, signatories to the certifications must be held accountable for the statements." *Middlesex Retirement Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1189-1190 (C.D. Cal. 2007).

### 4. The Company Defendants' Statements Minimizing Issues Related to the Company's Internal Controls Were False and Misleading

The Company Defendants also made misrepresentations minimizing issues related to the Company's internal controls. ¶¶99, 102, 105, 108. For instance, the Company Defendants represented that its CEO and CFO had "concluded that, as of December 31, 2021, our disclosure controls and procedures were effective" and that "[t]here have been no changes in our internal controls over financial reporting . . . or in other factors that materially affected or are reasonably likely to materially affect our internal controls and procedures over financial reporting . . . ." ¶99. The Company made similar representations for 1Q22 (¶102), 2Q22 (¶105), and 3Q22 (¶108). As noted above, however, the Company subsequently announced that because of material weaknesses that existed, "the Company's management concluded its disclosure controls and procedures were not effective as of December 31, 2021, and September 30, June 30, and March 31, 2022." ¶118. Indeed, contrary to these representations – and as reflected by the CW accounts – the Company's accounting department "was experiencing near constant turnover; was staffed predominately by inexperienced temporary employees in both regular staff and senior management

positions; and was struggling to function." *Amyris*, 492 F. Supp. 3d at 1023; ¶¶48-50. These statements "left investors with the false or misleading impression that [the Company] was curing its prior internal controls weaknesses and no new concerns needed to be disclosed . . . ." *Amyris*, 492 F. Supp. 3d at 1024. Thus, Plaintiff has adequately alleged falsity under the Exchange Act.

**B. Plaintiff Adequately Alleges that the Company Defendants Acted With Scienter**

The PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §78u-4(b)(2); *Tellabs*, 551 U.S. at 314. "In this circuit, the required state of mind is a mental state that not only covers intent to deceive, manipulate, or defraud, but also deliberate recklessness." *NVIDIA*, 2023 WL 5496507, at *13. Importantly, "courts must consider the complaint in its entirety . . . . The inquiry is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 322-23 (italics in original). "Thus, *Tellabs* counsels us to consider the totality of circumstances, rather than to develop separately rules of thumb for each type of scienter allegation." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008). "Vague or ambiguous allegations are now properly considered as a part of a holistic review when considering whether the complaint raises a strong inference of scienter." *Id*. In assessing scienter allegations, often "the sum is greater than the parts." *In re VeriFone Holdings, Inc. Sec. Litig*., 704 F.3d 694, 698 (9th Cir. 2012).

A strong inference of scienter arises if, "[w]hen the allegations are accepted as true and taken collectively," a "reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324-26. "The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the smoking-gun genre, or even the most plausible of competing inferences" – the inference need only be

equally plausible to any non-culpable inference. *Tellabs*, 551 U.S. at 324. Moreover, "a tie goes to the plaintiffs when there are multiple plausible theories at the pleadings stage of litigation." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 999 n.8 (9th Cir. 2014).[8]

### 1. The CW Accounts Support a Strong Inference of Scienter

Plaintiff can establish a strong inference of scienter through CW accounts by satisfying two pleading requirements. "First, the confidential witnesses whose statements are introduced to establish scienter must be described with sufficient particularity to establish their reliability and personal knowledge." *NVIDIA*, 2023 WL 5496507, at *13. "Second, those statements which are reported by confidential witnesses . . . must themselves be indicative of scienter." *Id*.

Such is the case here. First, the CWs are described with sufficient particularity to establish their reliability and personal knowledge. ¶¶46-50; 110-17. Second, the CW statements are indicative of scienter. *Id*. In addition to the accounts of CW2, CW3, and CW4 detailed above, the account of CW1 demonstrates the Company Defendants' scienter. CW1, who served as an HR Generalist at the Company from June 2021 to February 2022, stated that Co-Founder and Chairman Errez and CEO Nisan misrepresented the Company's revenue. ¶111. CW1 knew that the statements were wrong because there was no volume to support the claimed revenue. *Id*. CW1 stated further that CW1 knew about the Company's volume because CW1 was trained on the Company's system for chargebacks, which represented the volume for

---

[8] The Company Defendants suggest that a lack of alleged stock sales negates scienter. Company Motion at 16-17. The Supreme Court, however, declared that "the absence of a motive allegation is not fatal." *Tellabs*, 551 U.S. at 325; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011) (the "absence of a motive allegation" is "not dispositive"). Although the Company Defendants cite *Webb v. Solarcity Corp.*, 884 F.3d 844 (9th Cir. 2018), *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869 (9th Cir. 2012), and *In re Downey Sec. Litig.*, No. CV 08-3261-JFW(RZX), 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009), those cases merely hold that a lack of stock sales may be relevant – not dispositive. Thus, "[s]cienter can be established even if the officers who made the misleading statements did not sell stock during the class period." *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.*, 320 F.3d 920, 944 (9th Cir. 2003).

PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS
Case No. 3:23-CV-0185-GPC-SBC

anything that would come into Ryvyl and everything that the Company paid out. *Id*. CW1 stated that based upon the volume information, the revenue was nowhere close to the representations that Chairman Errez and CEO Nisan made regarding the Company's revenue. *Id*. The fact that "the CWs corroborate each other . . . further supports the reliability of their statements." *In re Extreme Networks, Inc. Sec. Litig*., No. 15-CV-04883-BLF, 2018 WL 1411129, at *27 (N.D. Cal. Mar. 21, 2018).

Defendants' arguments to the contrary fail. First, they claim that CWs must have been employed at the Company during the Class Period. Company Motion at 18-19; Underwriter Motion at 16. However, confidential witnesses who were "not at [the company] during the Class Period" can nevertheless add to a strong inference of scienter. *Quality Sys.*, 865 F.3d at 1145; *see also Roberts v. Zuora, Inc.*, No. 19-CV-03422-SI, 2020 WL 2042244, at *11 (N.D. Cal. Apr. 28, 2020) ("[t]hat none of the CWs was employed at [the company] during the *entire* Class Period does not in itself render their statements unreliable as a matter of law.") (italics in original).[9]

Second, the Company Defendants suggest that the CW accounts rely upon hearsay or vague statements. Company Motion at 2, 13, 18-21. However, "the fact that a confidential witness reports hearsay does not automatically disqualify his statement from consideration in the scienter calculus." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1208 (9th Cir. 2016). And even if there were vague statements (and there are not) "[v]ague or ambiguous allegations are now properly considered as a part of a holistic review when considering whether the complaint raises a strong inference of scienter." *S. Ferry*, 542 F.3d at 784.

Third, the Company Defendants' suggestion that a CW must be employed a certain amount of time before the CW can possess reliable information fails.

---

[9] Although the Company Defendants cite *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009), *as amended* (Feb. 10, 2009), *Zucco* did not hold that witnesses employed outside of a class period can never support an inference of scienter. *Zucco* held that the witnesses in that case lacked sufficient information to support an inference of scienter.

Company Motion at 6, 20-22. There is "no baseline requirement of such contact in order to allege sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Nguyen v. New Link Genetics Corp.*, 297 F. Supp. 3d 472, 484 (S.D.N.Y. 2018). The Company Defendants cite no authority suggesting that a witness must have been employed a particular amount of time to be deemed reliable. And the Company Defendants' assertion that the CWs are unreliable because they were purportedly "lower-level employees" also fails. *See In Re CommVault Sys., Inc. Sec. Litig.*, No. 14-CV-5628 (PGS), 2016 WL 5745100, at *7 (D.N.J. Sept. 30, 2016) (rejecting "Defendants' argument that the CW's, as low level employees, would not have first-hand knowledge of the information and were relying on gossip.").

Finally, the Company Defendants' arguments regarding each CW are meritless. For instance, they challenge the basis for CW1's knowledge while ignoring the allegations that CW1 was trained on the Company's system for chargebacks, which represented the volume for anything that would come into Ryvyl and everything that the Company paid out. ¶111. The Company Defendants also improperly urge the Court to disbelieve these allegations by characterizing them as "nonsensical." Company Motion at 20. A court cannot dismiss based on its "disbelief of a complaint's factual allegations." *Twombly*, 550 U.S. at 555-56. Similarly, the Company Defendants attempt to cast CW2 as unreliable based upon CW2's marketing positions while ignoring CW2's position as a Project Manager. ¶46. The Company Defendants also describe CW2's account as "vague," when "[v]ague or ambiguous allegations are now properly considered as a part of a holistic review . . . ." *S. Ferry*, 542 F.3d at 784.

The Company Defendants also attempt to undermine the basis of CW3's account while ignoring that as an accountant, CW3 would have been in a position to know about the information alleged, including fake wires that the Company generated. ¶115. And even in situations where "plaintiffs' allegations do not directly

20
PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS
Case No. 3:23-CV-0185-GPC-SBC

connect the dots between a CW's knowledge and the individual defendants," this circumstance is not "fatal" and "will not be grounds for dismissing the complaint" if a strong inference of scienter is alleged based upon "a holistic evaluation of the allegations." *Robb v. Fitbit Inc.*, No. 16-CV-00151-SI, 2017 WL 219673, at *6 (N.D. Cal. Jan. 19, 2017). The Company Defendants also contend that CW4's account was unreliable (Company Motion at 22) while ignoring that CW4 attended weekly meetings with CFO Chung, CEO Nisan, Chairman Errez, salesperson Jacqueline Reynolds, and Director of Finance Reid Granados, and learned that Company was generating fake wires. ¶117.

Moreover, CFO Byelick's arguments fare no better. Although he attempts to limit the scope of his involvement, he admits involvement in financial filings alleged to be false and misleading. Byelick Motion at 3, 16. Additionally, CFO Byelick's Motion is self-serving and conclusory, and focuses upon issues that do not relate to this action, such as abuse of control and gross mismanagement. Byelick Motion at 5. Also, CFO Byelick's claim that scienter cannot be based upon his access to information (Byelick Motion at 33) is incorrect. *See, e.g.*, *Reese v. Malone*, 747 F.3d 557, 572 (9th Cir. 2014) (where a defendant makes "a detailed factual statement, contradicting important data to which she had access, a strong inference arises that she knowingly misled the public as to its clear meaning"). Thus, the Complaint describes "specific allegation[s] about management's exposure to factual information[] needed for a strong inference of scienter." *Cutler*, 696 F. App'x at 815.

**2.     The Severity of the Company's Internal Control Problems Supports a Strong Inference of Scienter**

The severity of the Company's internal control problems also supports a strong inference of scienter. Allegations regarding internal control deficiencies – along with a company's admission regarding "numerous material weaknesses in its internal control over financial reporting" – add to a strong inference of scienter. *VeriFone*, 704 F.3d at 708-10; *see also Mulderrig*, 492 F. Supp. 3d at 1027–28 ("defendants'

alleged failure to maintain an effective control environment, and their attestations to the contrary, supports a strong inference of scienter"); *In re Wash. Mut., Inc. Sec., Deriv. & ERISA Litig.*, 694 F. Supp. 2d 1192, 1213 (W.D. Wash. 2009) ("allegations regarding financial statements and internal controls raise a strong inference of scienter").  Here, the Company admitted that it had material weaknesses in the Company's internal control including a material weakness related to accounting for certain complex business transactions.  ¶118.  And while Defendants claim that Ryvyl's financial statements in the Offering Documents were not restated (*see, e.g.*, Company Motion at 11), "[t]he lack of a restatement is not dispositive when a plaintiff has otherwise met the PSLRA's pleading requirements." *Alaska Elec. Pension Fund v. Adecco S.A.*, 371 F. Supp. 2d 1203, 1220 (S.D. Cal. 2005).

### 3.    The Company's Resignations Support a Strong Inference of Scienter

The departure of several of the Company's key executives also bolsters the strong inference of scienter alleged.  *See, e.g.*, *Bielousov v. GoPro, Inc.*, No. 16-cv-06654-CW, 2017 WL 3168522, at *6 (N.D. Cal. July 26, 2017) (holding that resignation of the company's president bolstered the strong inference of scienter alleged); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 66281, at *14 (N.D. Cal. Jan. 4, 2017) ("Plaintiffs have pled sufficient facts to compel the inference that the [company] resignations, firings, and suspensions are strongly indicative of scienter").  On March 8, 2023, the Company announced that CFO Byelick had resigned.  ¶120.  The Company appointed Mary Lay Hoitt ("Hoitt") as its Interim CFO effective March 9, 2023. ¶121. On June 6, 2023 – less than three months later – the Company appointed Gene Jones as the Company's interim CFO, replacing Hoitt who left the Company the same day.  ¶125.  As courts have recognized, resignations that occur in tandem with financial restatements "add one more piece to the scienter puzzle." *In re Impax Laboratories, Inc. Sec. Litig.*, No. C 04-04802 JW, 2007 WL 7022753, at *9-*10

(N.D. Cal. July 18, 2007); *see also In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 975-976 (N.D. Cal. 2009) ("the timing of Defendants' departures might suggest that the Company believed Defendants had been involved in wrongdoing with respect to corporate finances").[10]

### 4. The Company Defendants' False SOX Certifications Bolster the Strong Inference of Scienter Alleged

Defendants' SOX certifications also add to the strong inference of scienter alleged because such certifications require executives "to access sufficient reporting information to certify that the information provided did not omit any material facts to make the report not misleading." *Bielousov*, 2017 WL 3168522, at *7; *VeriFone*, 704 F.3d at 707-08. During the Class Period, the Company Defendants represented, among other things, that Rvyvl had disclosed "[a]ll significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information." ¶¶90-91, 93, 95, 97, 100, 103, 106. The Company, however, subsequently announced that "one or more material weaknesses exist in the Company's internal control including a material weakness related to accounting for certain complex business transactions" and that "[a]s a result of the material weakness, the Company's management concluded its disclosure controls and procedures were not effective as of December 31, 2021, and September 30, June 30, and March 31, 2022." ¶118. Thus, "the Individual Defendants' signatures certifying the Company's financial statements, along with the critical importance of the financial information being certified, support a finding of

---

[10] The Company Defendants' authorities do not help them. (Company Motion at 22). For instance, *In re Dothill Sys. Corp. Sec. Litig.*, No. 06-CV-228 JLS (WMC), 2009 WL 734296 (S.D. Cal. Mar. 18, 2009), and *In re Cornerstone Propane Partners, L.P.*, 355 F. Supp. 2d 1069 (N.D. Cal. 2005), did not have the particularized facts alleged here, such as CW accounts that are indicative of scienter.

scienter." *Scott v. ZST Digital Networks, Inc.*, No. CV 11-03531 GAF (JCx), 2012 WL 538279, at *9 n.2 (C.D. Cal. Feb. 14, 2012).[11]

### 5. The Core Operations Inference Adds to the Strong Inference of Scienter Alleged

The facts alleged also support a strong inference of scienter because they relate to the Company's core operations. *See, e.g.*, *Alphabet*, 1 F.4th at 706 (finding a strong inference of scienter was alleged where "numerous allegations in the complaint raise the strong inference that [the defendant] was vitally concerned with [the company's] operations"); *S. Ferry*, 542 F.3d at 785-86 (holding that "allegations may be used in any form along with other allegations that, when read together, raise an inference of scienter that is cogent and compelling, thus strong in light of other explanations" and that "such allegations may independently satisfy the PSLRA where they are particular and suggest that defendants had actual access to the disputed information"). Here, many of Plaintiff's allegations focus upon issues related to Ryvyl's payment processing revenue, which is the Company's primary source of revenue. ¶35. "Courts in the Ninth Circuit have imputed scienter where the matters at issue relate to the core operations of the company." *Tarapara v. K12 Inc.*, No. 16-CV-4069-PJH, 2017 WL 3727112, at *23 (N.D. Cal. Aug. 30, 2017).

### 6. The Small Size of the Company Adds to the Strong Inference of Scienter Alleged

The Company's small size bolsters the strong inference of scienter alleged. *See, e.g.*, *Curry v. Hansen Medical, Inc.*, No. 4:09-cv-05094-CW, 2012 WL 3242447, at *11-*12 (N.D. Cal. Aug. 10, 2012) (holding that the fact that the company was "small" with "less than 200 employees" contributed to a strong inference of scienter); *Backe v. Novatel Wireless, Inc.*, 642 F. Supp. 2d 1169, 1173, 1186 (S.D. Cal. 2009)

---

[11]     The Company Defendants' citations to *Zucco*, *Zamir v. Bridgepoint Educ., Inc.*, 274 F. Supp. 3d 1057 (S.D. Cal. 2017), and *In re Downey Sec. Litig.*, No. CV 08-3261-JFW(RZX), 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) are unavailing because these cases merely held that SOX certifications alone cannot constitute a strong inference of scienter. But, as Plaintiff contends here, they bolster other allegations that support a strong inference of scienter.

(holding that the company's small size of 300 employees supported a strong inference of scienter); *Impax*, 2007 WL 7022753, at *10 (holding that the small size of the company – 453 employees – added to a strong inference of scienter).  Here, as of December 31, 2022, the Company had approximately 110 full-time employees.  ¶40.  Thus, "it is unlikely that transactions of this scope would fly below the radar of top management, particularly the CEO and CFO."  *In re Commtouch Software Ltd. Sec. Litig*., No. C 01-00719 WHA, 2002 WL 31417998, at *9 (N.D. Cal. July 24, 2002).  Considering these allegations collectively as required (*Tellabs*, 551 U.S. at 322-22), Plaintiff has adequately alleged scienter under the Exchange Act.[12]

## V.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motions.  Alternatively, if the Court grants any portion of the Motions, Plaintiff requests leave to amend.  *See Eminence Capital, L.L.C. v. Aspeon, Inc*., 316 F.3d 1048, 1052 (9th Cir. 2003) ("In this technical and demanding corner of the law, the drafting of a cognizable complaint can be a matter of trial and error.").

DATED:  September 28, 2023          **GLANCY PRONGAY & MURRAY LLP**

By:    *s/ Ex Kano S. Sams II*

Robert V. Prongay
Ex Kano S. Sams II
Charles Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email:  info@glancylaw.com

*Attorneys for Lead Plaintiff Scot S. Cook*

---

[12]     As demonstrated above, Plaintiff has adequately pled a primary violation under the Exchange Act.  Plaintiff has also adequately alleged the Individual Defendants' control. ¶¶13-22; 141-44.  Thus, Plaintiff has adequately alleged control person liability.  *Crews*, 2023 WL 4361098, at *14.

## <u>PROOF OF SERVICE BY ELECTRONIC POSTING</u>

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On September 28, 2023, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of California, for receipt electronically by the parties listed on the Court's Service List.

And by overnight delivery: By causing the document to be sent to the parties listed below via overnight delivery at the address listed below on September 28, 2023.

J. Drew Byelick
Defendant pro se
7700 Jefferson Circle
Colleyville, Texas 76034

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 28, 2023.

<i>s/ Ex Kano S. Sams II</i>
Ex Kano S. Sams II