Sean T. Prosser (SBN 163903)
stprosser@mintz.com
Cesar M. Dulanto (SBN 318650)
cmdulanto@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
3580 Carmel Mountain Road Suite 300
San Diego, CA 92130
Telephone: 858 314 1500
Facsimile: 858 314 1501

Attorneys for Defendants
RYVYL INC., BEN ERREZ, FREDI NISAN
AND BENJAMIN CHUNG

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

MARK CULLEN, Individually and on behalf of all others similarly situated,

Plaintiff,

v.

RYVYL INC. F/K/A GREENBOX POS, BEN ERREZ, FREDI NISAN, J DREW BYELICK, BENJAMIN CHUNG, EF HUTTON F/K/A KINGSWOOD CAPITAL MARKETS, A DIVISION OF BENCHMARK INVESTMENTS, INC., and R.F. LAFFERTY & CO.,

Defendants.

Case No. 3:23-cv-00185-GPC-SBC

**RYVYL DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

DATE: November 17, 2023
TIME: 1:30 p.m.
CTRM.: 2D
JUDGE: Hon. Gonzalo P. Curiel

# Table of Contents

I. PRELIMINARY STATEMENT ....... 1

II. ARGUMENT ....... 2

A. Rule 9(b) Applies to All Claims and Plaintiff Fails to Satisfy It ....... 2

B. The Alleged Misstatements Are Not Actionable ....... 3

C. The AC Does Not Support a Strong Inference of Scienter ....... 4

1. Plaintiff's CWs Do Not Support an Inference of Scienter ....... 5

2. Alleged "Severe" Internal Control Issues Do Not Support Scienter ....... 7

3. Resignations Do Not Support a Strong Inference of Scienter ....... 8

4. SOX Certifications Do Not Support a Strong Inference of Scienter ....... 8

5. Plaintiff Is Not Entitled to the "Core Operations" Inference ....... 9

6. The Company's Size Does Not Support an Inference of Scienter ....... 9

D. Plaintiff's 1933 Act Claims Also Fail for Independent Reasons ....... 10

# TABLE OF AUTHORITIES

**CASES**

*Backe v. Novatel Wireless, Inc.*,

642 F. Supp. 2d 1169 (S.D. Cal. 2009)....................10

*Batwin v. Occam Networks, Inc.*,

2008 U.S. Dist. LEXIS 52365 (C.D. Cal. 2008)....................10

*Bielousov v. GoPro, Inc.*,

2017 WL 3168522 (N.D. Cal. July 26, 2017)....................8

*Curry v. Yelp Inc.*,

875 F.3d 1219 (9th Cir. 2017) ....................4

*E. Ohman J v. NVIDIA Corp.*

2023 U.S. App. LEXIS 22473 (9th Cir. 2023) ....................5

*In re Century Aluminum Co., Sec. Litig.*,

729 F.3d 1104 (9th Cir. 2013) ....................10

*In Re CommVault Sys., Inc. Sec. Litig.*,

2016 WL 5745100, ECF No. 75 (D.N.J. 2016) ....................7

*In re Downey Sec. Litig.*,

2009 WL 2767670 (C.D. Cal. Aug. 21, 2009)....................8

*In re Extreme Networks, Inc.*,

2018 U.S. Dist. LEXIS 46638 (N.D. Cal. 2018) ....................6

*In re Facebook, Inc. Sec. Litig.*,

2023 WL 6857600 (9th Cir. Oct. 18, 2023)....................4

*In re Gold Res. Corp. Sec. Litig.*,

957 F. Supp. 2d 1284 (D. Colo. 2013)....................10

*In re Impax Lab'ys, Inc. Sec. Litig.*,

2007 WL 7022753 (N.D. Cal. July 18, 2007)....................8

*In re Psychemedics Corp. Sec. Litig.*,

2017 U.S. Dist. LEXIS 183955 (D. Mass. Nov. 7, 2017)....................9

*In re Rigel Pharms., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012)....................................................................................3

*In re Stac Elecs. Sec. Litig.*,
89 F.3d 1399 (9th Cir. 1996)....................................................................................2

*In re UTStarcom, Inc. Sec. Litig.*,
617 F. Supp. 2d 964 (N.D. Cal. 2009) .....................................................................8

*In re Verifone Holdings, Inc.*
704 F.3d 694 (9th Cir. 2012) ....................................................................................7

*In re Wash. Mut., Inc. Sec., Deriv. & ERISA Litig.*,
694 F. Supp. 2d 1192 (W.D. Wash. 2009)................................................................7

*Jackson v. Abernathy*,
960 F.3d 94 (2d Cir. 2020)........................................................................................9

*Jedrzejczyk v. Skillz Inc.*,
2022 WL 2441563 (N.D. Cal. July 5, 2022)...........................................................10

*Lighthouse Fin. Grp. v. Royall Bank of Scotland Grp., PLC*,
902 F. Supp. 2d 329 (S.D.N.Y. 2012)......................................................................3

*Lloyd v. CVB Fin. Corp.*
811 F.3d 1200 (9th Cir. 2016) ..................................................................................6

*Nguyen v. New Link Genetics Corp.*,
297 F. Supp. 3d 472 (S.D.N.Y. 2018)......................................................................7

*S. Ferry LP, No. 2 v. Killinger*,
542 F.3d 776 (9th Cir. 2008) ....................................................................................6

*Slack Techs., LLC v. Pirani*,
598 U.S. 759 (2023)................................................................................................10

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003)...................................................................................2

*Woolgar v. Kingstone Cos.*,
477 F. Supp. 3d 193 (S.D.N.Y. 2020)......................................................................9

*Yates v. Mun. Mort. & Equity LLC*,
44 F.3d 874 (4th Cir. 2014) ....................................................................................9

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ...............................................................................5, 8

## I. PRELIMINARY STATEMENT

Plaintiff's opposition ("Opp.") reiterates the same deficient conclusory allegations of fraud in the Amended Complaint ("AC") while attempting to avoid application of the heightened pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"). For example, it is clear from the AC that his claims under 1933 Act Sections 11 and 12 (Counts I and II) are premised on the same factual allegations and course of conduct as his securities fraud claim under 1934 Act Section 10(b) (Count IV), and he cannot evade Rule 9(b) by "disclaiming" fraud for 1933 Act claims or sticking those allegations in a separate section of the AC. All claims are subject to Rule 9(b), which Plaintiff fails to satisfy.

Plaintiff also does not offer any compelling response to RYVYL Defendants' arguments demonstrating his failure to plead scienter to support his Section 10(b) claim. In fact, Plaintiff offers no motive to commit fraud whatsoever. Moreover, he cannot point to any specific facts in the AC indicating, as he must, both the falsity and scienter for <u>each</u> alleged misrepresentation. Instead, he speculates that Individual Defendants knew the Company's internal controls were deficient simply because years later it reached that conclusion after consultation with a new auditor.

Plaintiff cannot support his scienter theory by relying on the confidential witnesses ("CWs"). RYVYL's opening brief demonstrates that all CWs were lower-level former employees without personal knowledge of the allegedly misstated or omitted facts. They were not in the position to know the details underlying the Company's financial statements and controls, which is required to credit such allegations. No CW was at the Company at the time of the Offering, and their allegations are never connected to any specific statement or restatement category.

Plaintiff also cannot escape the fact that the AC does not contain a single false or misleading material statement as it only points to forward-looking risk factor disclosures by the Company that transparently warned investors of potential risks moving forward. The AC does not allege <u>any</u> specific contemporaneously-existing

facts that contradict or undermine those disclosures, much less that any Individual Defendant knew at the time. Rather, Plaintiff improperly relies on hindsight speculation to argue that certain control-related factors identified in 2023 existed, and were known to exist, years earlier. As RYVYL Defendants' authorities make clear, such speculation not supported by specific contemporaneous facts cannot state a claim. Finally, Plaintiff's Securities Act claims fail for the independent reasons that Plaintiff has not, and cannot, allege the required elements of privity and standing.

## II. ARGUMENT

### A. Rule 9(b) Applies to All Claims and Plaintiff Fails to Satisfy It

Plaintiff does not dispute that Securities Act claims that "sound[] in fraud" are subject to Rule 9(b)'s heightened pleading requirements. (Opp. at 6). Plaintiff's authority recognizes that where a plaintiff pleads both Securities Act and Exchange Act claims "through allegations . . . of a unified course of fraudulent conduct[,]" all claims must satisfy Rule 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (citing, *e.g.*, *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1404-05 (9th Cir. 1996)). This is exactly what Plaintiff has done.

Plaintiff argues that he separated the Securities Act and Exchange Act claims (Opp. at 6) but such gamesmanship puts form over substance. Plaintiff says he has not incorporated fraud allegations in the Exchange Act claims (*id.*), but he does incorporate the allegations supporting the Securities Act claims into his Section 10(b) claim. (AC ¶¶ 89, 135 (incorporating prior allegations)). Both the Securities Act and Exchange Act claims allege the same omissions based on the same "unified course of conduct," and both should be held to the more stringent pleading standard.

As explained in RYVYL Defendants' opening brief ("RYVYL Br."), Plaintiff attempts to support both Securities Act and Exchange Act claims with the same statements in the Company's Registration Statement. (RYVYL Br. at 4 (listing the seven statements)). The only additional alleged misstatement relates to the SOX certifications by two Individual Defendants but the basis of those allegations is the

same as for all claims – that is, RYVYL published false financial statements while allegedly knowing its internal controls were deficient. Accordingly, there is a complete overlap between the Securities Act and Exchange Act claims.

Nominal attempts to disclaim fraud with respect to the Section 11 and 12 claims fail where the gravamen is fraud. *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 885 (9th Cir. 2012)). Plaintiff's cases do not address situations where there is a substantial overlap or a uniform course of conduct, as do a litany in this Circuit.[1] Plaintiff's attempt to "carefully couch" (Opp. at 7) his pleading to dedicate a separate section to Exchange Act claims to escape Rule 9(b) for the Securities Act claims, must fail. Simply creating separate sections cannot result in "two distinct pleading standards." *Lighthouse Fin. Grp. v. Royall Bank of Scotland Grp., PLC*, 902 F. Supp. 2d 329, 338-39 (S.D.N.Y. 2012), *aff'd sub nom.*, 783 F. 3d 383 (2d Cir. 2015).

Plaintiff does not satisfy Rule 9(b), including failing to plead any specific contemporaneous facts indicating that any Individual Defendant knew or consciously disregarded that the risk disclosure statements were false when made. Rather, he only alleges in boilerplate fashion that the "purported risks" in the disclosures "had already materialized and the magnitude of such risks were far greater than Defendants portrayed" (AC ¶ 12), but only refers to supposed "accounts" from former employees (AC at 12:7-13), <u>none of whom were employed by the Company at the time of the statements</u>. (*See* RYVYL Br. at 5-7 & 12-13).

**B. The Alleged Misstatements Are Not Actionable**

The alleged misstatements are all risk disclosures in the Company' Offering Documents filed in early 2021 (AC ¶ 42; RYVYL Br. at 4-5), and such opinion statements about future risks are not actionable because (1) they are forward-looking

---

[1] *Compare* Opp. at 6-7 *with Rigel*, 697 F.3d at 885-86 (Section 11 claim does not allege different misrepresentations than those "central to the Section 10(b)" claim); *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009); *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1067-68 (N.D. Cal. 2010); *In re STEC Inc. Sec. Litig.*, 2011 WL 4442822, at *2 (C.D. Cal. Jan. 10, 2011).

under the PSLRA's safe harbor and (2) Plaintiff fails to allege any specific <u>then-existing</u> facts demonstrating their falsity at the time or that the potential warned-against events already existed. (RYVYL Br. at 10-13). Plaintiff continues to rely on the restatement decision two years later as supposed proof that the original statements were false at the time. <u>But the financial statements in the Offering Documents were not among those restated in 2023</u>. (*Id*. at 12). Also, no CW was at the Company at the time of the Offering or otherwise alleges facts indicating the risk disclosure statements were false when filed in early 2021. (*Id*. at 12-13).

In fact, Plaintiff's recent "supplemental authority" [ECF. No. 59] highlights the AC's deficiencies, as it stands for the unremarkable proposition that risk disclosures (and forward-looking statement safe harbors) are ineffective if they warn against risks <u>already known to exist</u>. *In re Facebook, Inc. Sec. Litig.*, No. 22-15077, 2023 WL 6857600 (9th Cir. Oct. 18, 2023).[2] But unlike in *Facebook*, Plaintiff fails to plead a single adverse fact existing as of February 2021 indicating that the potential issues warned against already had materialized. (*See* generally RYVYL Br. at 10-15).

### C. The AC Does Not Support a Strong Inference of Scienter

The PSLRA requires Plaintiff to plead "detailed and specific allegations" establishing "a nexus between the [allegedly] wrongful behavior and Individual Defendants' knowledge." *Curry v. Yelp Inc.*, 875 F.3d 1219, 1227-28 (9th Cir. 2017). Plaintiff fails to plead any specific facts demonstrating any Individual Defendant's knowledge or actions in connection with the Company's risk disclosures or accounting controls. Nor does the AC offer any cogent theory of scienter for each Individual Defendant or each alleged misstatement. For example, Plaintiff offers no answer to his inability to allege that any Individual Defendant sold stock during the purported class period, which not only negates an inference but also supports the opposite inference. (RYVYL Br. at 16 (citing cases)). Rather, Plaintiff

[2] The Ninth Circuit highlighted multiple adverse facts known to exist related to Facebook's later risk disclosures. *Facebook*, 2023 WL 6857600, at *9.

attempts to support his blanket conclusion that "Defendants engaged in a scheme to deceive the market and a course of conduct that . . . operated as a fraud or deceit" (AC ¶127) with a variety of unconvincing and meritless arguments.

1. Plaintiff's CWs Do Not Support an Inference of Scienter

Courts do not give much credibility to confidential witnesses who were not employed during the relevant period, worked in positions that would not provide them the necessary personal knowledge, or provide vague accounts based on hearsay. (RYVYL Br. at 18-19 (citing *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d at 996-98 (9th Cir. 2009)). The CWs' lack of employment contemporaneous with the alleged events underscores the failure to satisfy pleading obligations. *Id.*, at 996. Plaintiff admits he must establish the witnesses' "reliability and personal knowledge" (Opp. at 18) but fails to do so.

Instead, Plaintiff cherry-picks from distinguishable cases. (Opp. at 18). For instance, the witnesses in *E. Ohman J v. NVIDIA Corp.* are starkly different than the CWs here. One (i) had been employed for over ten years as a Senior Account Manager; (ii) worked very closely with high-ranking executives; and (iii) personally prepared presentations and emails about the topics at issue. 2023 U.S. App. LEXIS 22473 at *43, 49 (9th Cir. 2023). The second witness (i) was a Senior Products Director; (ii) closely worked and regularly met with defendant; and (iii) provided specific details that showed how defendant "would have behaved and what he would have known during the immediately following Class Period." *Id.* at *45-49. In sharp contrast here, the CWs were (CW1) an "HR Generalist"; (CW2) a marketing employee; (CW3) a 3-month staff accountant in mid-2022 with no personal knowledge about what two persons supposedly said about some wires of unknown nature or amounts, which are not connected to any Individual Defendant; and (CW4) a 5-month Executive Assistant. (RYVYL Br. at 5-7). They do not possess specific or personal knowledge of the alleged accounting issues.

Plaintiff's reliance on *In re Extreme Networks, Inc.* to argue the CWs "corroborate each other" (Opp. at 19) is misplaced. He omits important facts that do not exist among the CWs, including (1) a Senior Systems Engineer employed for over 10 years, reported directly to and had personal conversations with the defendant; (2) a Senior executive employed throughout and after the Class Period who attended calls with upper management and the Board, and had personal knowledge of the facts at issue; and (3) a sales manager who "would have known" if defendant lied based on attendance at sales calls and sales conference where he personally observed sales personnel question the defendant], had personal conversations with defendant, "was clear [defendant] was aware" of the issues, and personally observed defendant make admissions and contradict himself. 2018 U.S. Dist. LEXIS 46638 *82-88 (N.D. Cal. 2018).[3]

Plaintiff also quotes *Lloyd v. CVB Fin. Corp.* and *S. Ferry LP, No. 2 v. Killinger* to argue it allows CWs' accounts to be vague and based on hearsay. They does not. *Lloyd* only accepted a hearsay report because it was "sufficiently reliable, plausible, or coherent," especially since the statements "were specific in time, context, and details, and involved important communications from a chief executive officer to his Board." 811 F.3d 1200, 1208 (9th Cir. 2016). Similarly, in *S. Ferry* the Court explained that while vague allegations may be considered, the totality of the allegations must "raise an inference of scienter that is cogent and compelling [and] strong in light of other explanations." 542 F.3d 776, 784 (9th Cir. 2008).[4]

---

[3] Plaintiff also relies on *In re Quality Sys., Inc. Sec. Litig.* and *Roberts v. Zuora, Inc.* to argue that CWs can be reliable despite not being at the company during the class period (Opp. at 19) but those situations are inapposite as the witnesses were (1) high ranking officers with personal knowledge, or (2) at the company most of the class period and possessed reliable personal knowledge. 865 F.3d 1130, 1145 (9th Cir. 2017); *Roberts*, 2020 WL 2042244 *35-36 (N.D. Cal. Apr. 28, 2020) (noting witnesses' personal knowledge and high rank).

[4] *Robb v. Fitbit Inc.* does not support Plaintiff's suggestion that it is not important for CW3 to "connect the dots" between his "knowledge and the individual defendants." (Opp. at 21.) But the witnesses in *Fitbit* personally generated and managed the exact data at issue and provided highly specific accounts. 2017 WL 219673, at *5 (N.D. Cal. Jan. 19, 2017).

Finally, Plaintiff quotes out-of-circuit decisions *Nguyen v. New Link Genetics Corp.* and *In Re CommVault Sys., Inc. Sec. Litig.* to suggest that a CW's tenure or "low level" rank does not matter. This gross generalization ignores the detailed witness accounts in those cases, where the court found the witness (i) spoke personally with defendant about the data and details of the statement in question; (ii) personally observed pervasive violations regarding the handling of the relevant data; and (iii) personally observed defendant's behavior, which suggested foul play. 297 F. Supp. 3d 472, 484 (S.D.N.Y. 2018). In *CommVaul* (unpublished), witnesses were high-level executives with firsthand knowledge. 2016 WL 5745100 (D.N.J. Sept. 30, 2016) ("very difficult to believe [they were] relying solely on gossip").

2. Alleged "Severe" Internal Control Issues Do Not Support Scienter

Plaintiff argues the Company's 2023 disclosure of weaknesses in internal controls "add[]" to an inference of scienter but also admits the financial statements in the Offering Documents were never restated. (Opp. at 21-22). Moreover, his cited cases make clear that additional facts not present here are required to support such an inference. In *In re Verifone Holdings, Inc.* internal control weaknesses were a small part of the court's holistic review of factors found to support an inference of scienter, including that "[t]hree consecutive times, VeriFone's CEO and CFO supervised accounting staff as they made baseless multimillion-dollar adjustments that brought reported results in line with expectations." 704 F.3d 694, 697 (9th Cir. 2012). No similar facts are remotely present here. In *Mulderrig v. Amyris, Inc.*, the control failure combined with other facts, including substantial financial motives to commit fraud and admissions that defendants had "no visibility" on royalty amounts and made a "material error" for "recognizing revenue for royalty payments." 492 F. Supp. 3d 999, 1028-30 (N.D. Cal. 2020).[5]

[5] In *In re Wash. Mut., Inc. Sec., Deriv. & ERISA Litig.*, 694 F. Supp. 2d 1192, 1213 (W.D. Wash. 2009) (Opp. at 22), plaintiff pled "great detail" the falsity of WaMu's representations about financials and internal controls, including "ample red flags."

3. Resignations Do Not Support a Strong Inference of Scienter

The post-class period resignation of CFO Byelick – months after the restatement announcement and years after the Company's statements at issue – does not support an inference of scienter, as courts in the Ninth Circuit do not presume that officer resignations represent a cogent theory of scienter. (RYVYL Br. at 22).[6] Plaintiff's distinguishable cases involve multiple contemporaneous resignations and/or facts that support a strong inference of scienter.[7] Further, the resignation of a disclosed "interim CFO" hired while a permanent CFO was identified adds nothing to support scienter. Plaintiff cannot point to any facts suggesting the CFOs stepped down under suspicious circumstances. *See Zucco*, 552 F.3d at 1002.

4. SOX Certifications Do Not Support a Strong Inference of Scienter

Plaintiff's theory that scienter can be inferred from SOX certifications fails. *See, e.g., Zucco*, 552 F.3d at 1004 ("[SOX] certifications are not enough to create a strong inference of scienter and do not make [plaintiff's] otherwise insufficient allegations more compelling by their presence in the same complaint."); *Zamir v. Bridgepoint Educ., Inc.*, 274 F. Supp. 3d 1057, 1072 (S.D. Cal. 2017) ("giv[ing] no weight" to SOX certifications).[8]

---

[6] *See also Zucco*, 552 F.3d at 1002 (where resignation not uncharacteristic or otherwise suspicious, inference employee resigned because of knowledge or role in fraud "will never be as cogent or as compelling as the inference that employee resigned for unrelated personal or business reasons").

[7] *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2017 WL 66281, at *14-15 (N.D. Cal. Jan. 4, 2017) ("Volkswagen has replaced virtually all of its prior management, some of whom "expressly admitted wrongdoing"); *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 975-76 (N.D. Cal. 2009) (multiple executives left contemporaneously with SEC fraud recommendation); *In re Impax Lab'ys, Inc. Sec. Litig.*, 2007 WL 7022753, at *9-10 (N.D. Cal. July 18, 2007) (proximate resignation of CEO and CFO; board committee minutes note CFO was interfering in company's internal investigation); *Bielousov v. GoPro, Inc.*, 2017 WL 3168522, at *6 (N.D. Cal. July 26, 2017) ("particularly strong" inference of scienter excluding resignation).

[8] If "simply alleging that [defendants'] signatures . . . creates a strong inference of scienter, scienter would be established in every case where there was an accounting error . . . thereby eviscerating the [PSLRA] pleading requirements for scienter." *In re Downey Sec. Litig.*, 2009 WL 2767670, at *9 (C.D. Cal. Aug. 21, 2009)

5. Plaintiff Is Not Entitled to the "Core Operations" Inference

As addressed in the RYVYL Br., Plaintiff cannot rely on the "core operations theory" to support his weak allegations of scienter. That theory applies where a company's core product or operation is involved. Standing alone, however (as it does here), the core operations theory is generally not sufficient to support an inference of scienter. *See, e.g., Jackson v. Abernathy*, 960 F.3d 94, 99 (2d Cir. 2020) (naked assertions based solely on core importance of disputed issues plainly insufficient to raise strong inference of scienter); *In re Psychemedics Corp. Sec. Litig.*, 2017 U.S. Dist. LEXIS 183955, at *15 (D. Mass. Nov. 7, 2017) ("plaintiff's 'core operations' theory stands naked, unadorned by . . . any evidence purporting to establish the essential 'plus' factor - guilty knowledge [by defendants]").

Allegations fail when not accompanied by particularized facts demonstrating that a defendant was aware of problem affecting core operations. *See Yates v. Mun. Mort. & Equity LLC*, 744 F.3d 874, 890 (4th Cir. 2014). Otherwise, "'bare allegations [of] knowledge of key facts relating to the business's 'core operations' are rarely enough to support a strong inference of scienter." *Id.* (quoting *Zucco*, 552 F.3d at 991). Plaintiff also offers no support for his claim that internal accounting controls are within RYVYL's "core operations" as opposed to material transactions.

6. The Company's Size Does Not Support an Inference of Scienter

Plaintiff's argument that "[t]he Company's small size bolsters the strong inference of scienter" is not supported by the cited cases or the allegations here related to internal control deficiencies that require specialized knowledge of accounting rules and were signed off on by the Company's original auditor that consented to the Company's financial statements. It does not follow that a company's "small size" made complex accounting and control deficiencies any easier to detect or understand. *See, e.g., Woolgar v. Kingstone Cos.*, 477 F. Supp. 3d 193, 230 (S.D.N.Y. 2020) (rejecting argument that executives knew controls were weak where prior auditor had reviewed and approved the internal controls); *In re*

*Gold Res. Corp. Sec. Litig.*, 957 F. Supp. 2d 1284, 1300-01 (D. Colo. 2013) (rejecting where allegations involved accounting errors and weak internal controls); *Batwin v. Occam Networks, Inc.*, 2008 U.S. Dist. LEXIS 52365, *54 (C.D. Cal. 2008) ("scienter requires more than a misapplication of accounting principles").

Plaintiff's cited cases all involved easily observable transactions that a small team would undoubtedly be aware of, which does not apply to the allegations here. (*See* Opp. at 24-25, citing *Curry v. Hansen Medical, Inc.*, 2012 WL 3242447, at *11 (N.D. Cal. Aug. 10, 2012) (company sold only one product so defendants would know). *Backe v. Novatel Wireless, Inc.*, 642 F. Supp. 2d 1169, 1185-87 (S.D. Cal. 2009), emphasized defendants' positions and size of company alone do not establish a strong inference of scienter. Plaintiff's allegations do not involve any identified transactions and RYVYL's size does not support an inference of scienter.

**D. Plaintiff's 1933 Act Claims Also Fail for Independent Reasons**

Plaintiff cannot satisfy the Securities Act's standing requirement. (RYVYL Br. at 24-25). *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 768 (2023), made clear that Plaintiff must demonstrate that his purchase is traceable to the registration statement at issue (the one effective in February 2021). Plaintiff does not adequately explain how he traces purchases to registration statement when RYVYL had filed prior registration statements and shares were trading before the Offering. Plaintiff does not challenge that "tracing shares in this fashion is often impossible." (RYVYL Br. at 24, citing *In re Century Aluminum Co., Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013)). Rather, Plaintiff hangs his hat on two decisions from almost a decade ago. (Opp. at 14 n.7). Yet, Plaintiff ignores recent decisions where that district court found "[t]he reasoning in *Magnachip* [cited by Underwriters] . . . is persuasive" and "even alleging that someone bought shares on [the same day as the offering] at the offering price is inadequate to establish statutory standing[.]" *Jedrzejczyk v. Skillz Inc.*, 2022 WL 2441563, at *7 (N.D. Cal. July 5, 2022).

The Amended Complaint should be dismissed.

DATED: October 27, 2023

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.

By: */s/Sean T. Prosser*

Sean T. Prosser
Cesar Dulanto

Attorneys for Defendants RYVYL Inc., Ben Errez, Fredi Nisan, and Benjamin Chung