SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ROBERT D. WEBER, Cal Bar No. 165992
NOLAN WALTER, Cal. Bar. No. 325021
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-6055
Telephone:   310.228.3700
Facsimile:   310.228.3701
E mail       rweber@sheppardmullin.com

Attorneys for Defendants
EF HUTTON F/K/A KINGSWOOD
CAPITAL MARKETS, A DIVISION OF
BENCHMARK INVESTMENTS, INC.
and R.F. LAFFERTY & CO.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK CULLEN, Individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>RYVYL INC. F/K/A GREENBOX POS, BEN ERREZ, FREDI NISAN, J DREW BYELICK, BENJAMIN CHUNG, EF HUTTON F/K/A KINGSWOOD CAPITAL MARKETS, A DIVISION OF BENCHMARK INVESTMENTS, INC., and R.F. LAFFERTY & CO.,<br><br>    Defendants. | Case No. 3:23-cv-0185-GPC-SBC<br><br>*Judge: Hon. Gonzalo P. Curiel*<br><br><u>CLASS ACTION</u><br><br>**REPLY BRIEF IN SUPPORT OF UNDERWRITER DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**<br><br>Date:    November 17, 2023<br>Time:    1:30 p.m.<br>Courtroom:  2-D |

Case No. 3:23-cv-0185-GPC-SBC
REPLY BRIEF IN SUPPORT OF UNDERWRITER DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................1

II.     ARGUMENT .......................................................................................................3

    A.   Lead Plaintiff Lacks Statutory Standing to Bring Section 11 and Section 12 Claims. ................................................................................3

    B.   The Opposition Offers No Meaningful Rebuttal to The Underwriter Defendants' "Due Diligence" Defense. ............................7

    C.   Lead Plaintiff Fails To Plead Facts Establishing That the Offering Documents Were False or Misleading. ..................................8

    D.   The PSLRA Requires the Court to Conduct a Mandatory Review for Abusive Litigation at the Time of Final Adjudication....................10

III.    CONCLUSION..................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

<u>Cases</u>

*In re Century Aluminum Co. Sec. Litig.*
    729 F.3d 1104 (9th Cir. 2013)......................................................................4, 6, 7

*In re Countrywide Fin. Corp. Sec. Litig.*
    588 F. Supp. 2d 1132 (C.D. Cal. 2008) ..............................................................8

*In re CytRx Corp. Sec. Litig.*
    No. CV 14-1956-GHK, 2015 U.S. Dist. LEXIS 91447 (C.D. Cal. July 13, 2015) ...............................................................................................5, 6, 8

*DeMarco v. Depotech Corp.*
    131 F. Supp. 2d 1185 (S.D. Cal. 2001), *aff'd*, 32 F. App'x 260 (9th Cir. 2002) ....................................................................................................10

*In re: Facebook Inc. Sec. Litig.*
    No. 22-15011, 2023 WL 6857600 (9th Cir. Oct. 18, 2023) ..............................8

*Feyko v. Yuhe Int'l, Inc.*
    No. 11-cv5511, 2013 WL 816409 (C.D. Cal. Mar. 5, 2013)..............................8

*Jedrzejczyk v. Skillz Inc.*
    No. 21-cv-03450-RS, 2022 U.S. Dist. LEXIS 117803 (N.D. Cal. July 5, 2022) ..............................................................................................5

*Slack Technologies, LLC v. Pirani*
    598 U.S. 759, 143 S.Ct. 1433 (2023) ................................................................3

*In re Software Toolworks Inc.*
    50 F.3d 615 (9th Cir. 1994)................................................................................7

*Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc.*
    243 F. Supp. 3d 1109 (E.D. Cal. 2017) .............................................................6

*Thomas v. Magnachip Semiconductor Corp.*
    167 F. Supp. 3d 1029 (N.D. Cal. 2016).....................................................3, 4, 6

*In re Velti PLC Sec. Litig.*
    2015 WL 5736589 (N.D. Cal. Oct 1, 2015) ......................................................8

Statutes

Private Securities Litigation Reform Act ("PSLRA") ...................................*passim*

15 U.S.C. § 77k(b)(3)(C) ...............................................................................7

15 U.S.C. § 78u-4(c)(1)–(2) .......................................................................2, 10

Other Authorities

Federal Rule of Procedure
    Rule 8(a) ...............................................................................................8
    Rule 11 ...............................................................................................6, 10
    Rule 11(b) ...........................................................................................10, 11

SMRH:4869-9429-4664

Case No. 3:23-cv-0185-GPC-SBC
REPLY BRIEF IN SUPPORT OF UNDERWRITER DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT

Defendants EF Hutton and R.F. Lafferty & Co. (the "**Underwriter Defendants**") respectfully submit this reply brief in support of their motion to dismiss Lead Plaintiff's Amended Class Action Complaint (the "**AC**").

## I.  INTRODUCTION

Lead Plaintiff's Opposition Brief ("**Opposition**" or "**Opp.**") affirms that he lacks statutory standing to pursue claims under Sections 11 and 12(a)(2) of the Securities Act. Those causes of action must be dismissed.

To establish statutory standing for a Section 11 claim, a complaint must plead either that a plaintiff purchased his shares directly in the challenged offering (versus the aftermarket), or that the chain of title for the shares can be traced back to the registration statement for the challenged offering. For a Section 12(a)(2) claim, statutory standing lies only where a plaintiff bought shares directly in the challenged offering. Facts detailing the provenance of a plaintiff's shares must be specifically pleaded in the complaint; courts dismiss complaints for lack of standing where a plaintiff merely recites boilerplate allegations, such as alleging that shares were bought "pursuant to and/or traceable to" a particular registration statement.[1]

Vague boilerplate is all that the Amended Complaint offers. That is because Lead Plaintiff obviously <u>knows</u> that he did <u>not</u> purchase his shares directly in the Company's February 2021 Offering (the "**Offering**"), or from any of the defendants. Lead Plaintiff's PSLRA certification shows 46 separate purchases, at 36 different prices, on 17 dates, most of which occurred weeks or months after the Offering – purchase activity that is indicative of buying in the aftermarket, <u>not</u> directly in the Offering.[2] But even though Lead Plaintiff almost certainly purchased all of his shares in the aftermarket, he makes no attempt to trace any of his shares

---

[1] *See* cases cited in Underwriter Defendants' Opening Brief, and Section II.A., *infra*.

[2] The Opposition continues to inexplicably refer to the February 2021 Offering as an <u>Initial</u> Public Offering, despite the judicially noticeable fact that the Company and its predecessor had previously conducted several public offerings.

Case No. 3:23-cv-0185-GPC-SBC
REPLY BRIEF IN SUPPORT OF UNDERWRITER DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT

back to the specific registration statement for the Offering, as required to establish standing. This is likely because it is impossible for him to distinguish the shares he bought from the more than 33 million older, circulating Company shares that had been issued pursuant to earlier, unchallenged registration statements.

The Opposition's meager rebuttal on the standing point is limited to two sentences which note that one of Lead Plaintiff's forty-six purchases was at the Offering price, implying, but not actually saying, that this purchase was made "directly in the Offering." As shown below, however, that purchase was made **four days after the Offering closed**; it is simply a coincidence that the price Lead Plaintiff paid for shares on that particular day matched the Offering price.

Plaintiff's lack of standing alone requires dismissal, but as an additional ground, the Opposition fails to identify a single fact contained in the Amended Complaint that explains why any of the statements contained in the Offering Documents were false or misleading. The Amended Complaint alleges that certain "risk factors" in the Offering Documents were misleading, because, Lead Plaintiff avers, the risks of which the statements warned had already come to fruition. But the Amended Complaint is completely vague about which risks "had already materialized" by the time of the February 2021 Offering. And a careful reading of each and every "materialized risk" identified in the Opposition reveals that they concern financial statements issued subsequent to the Offering, or alleged accounting errors that led to restatements of later financial statements. None of the financial statements incorporated into the Offering Documents were ever restated, and Lead Plaintiff cannot identify a single statement within them that was wrong.

Respectfully, Lead Plaintiff's two causes of action against the Underwriter Defendants for alleged violation of Sections 11 and 12(a)(2) should be dismissed with prejudice, and this Court should proceed to conduct the mandatory review for abusive litigation required by 15 U.S.C. § 78u-4(c)(1)–(2). *See* Section II.D., *infra*.

## II.  ARGUMENT

### A.   Lead Plaintiff Lacks Statutory Standing to Bring Section 11 and Section 12 Claims.

"To bring a claim under §11, the securities held by the plaintiff must be traceable to the particular registration statement alleged to be false or misleading." *Slack Technologies, LLC v. Pirani*, 598 U.S. 759, 768, 143 S.Ct. 1433, 1440 (2023). Statutory standing under Section 12(a)(2) may be established only by a showing that plaintiff purchased shares directly in the challenged offering, as opposed to the secondary market. *Thomas v. Magnachip Semiconductor Corp.*, 167 F. Supp. 3d 1029, 1054 (N.D.Cal. 2016).

To understand precisely what it means to buy securities "directly in an offering," some brief background is necessary. In *Slack Technologies*, the Supreme Court summarized a typical offering process as follows:

> [When a public company] issues new shares pursuant to a registration statement[,] [t]hat registration statement is filed with the SEC and made available to the public. Investment banks underwrite the offering, usually by buying these new registered shares at a negotiated price and then selling them to investors at a higher price. In this way, underwriters often carry the risk of loss should they fail to sell the shares at a profit.

*Slack Techs,* 598 U.S. at 763, 143 S.Ct. at 1438 (*citing* 1 L. Loss, J. Seligman, & T. Paredes, Securities Regulation 738–748 (6th ed. 2019)).

This is the method by which Ryvyl's February 2021 Offering was conducted. As described in the judicially noticeable Prospectus, the Company agreed to sell <u>all</u> of the Offering shares to the two Underwriter Defendants, not to individual investors. (*see* Prospectus, Weber Reply Declaration Ex. 3, at 53). The Underwriter Defendants next built a "book of orders," consisting of investors interested in purchasing offering shares. Then, after the Registration Statement for the Offering was declared effective by the SEC (AC ¶ 41), the Underwriter Defendants sold the Offering shares to those customers at the offering price of $10.50/share. The closing date of the Offering – i.e., the date by which the Underwriter Defendants promised

SMRH:4869-9429-4664

to sell the Offering shares to those preestablished investors – was February 19, 2021 (*see* Weber Reply Declaration Ex. 3, at 1).[3]

Thus, any person who purchased shares "directly in the Ryvyl offering," bought their shares (a) directly from one of the Underwriter Defendants, (b) at the $10.50/share Offering price, (c) prior to the closing on February 19, 2021.

Lead Plaintiff surely knows from whom he bought his shares, and that he did not buy them from the Underwriter Defendants. This is likely why the Amended Complaint does not specifically identify the source of the shares, and why Lead Plaintiff dances around the issue in his Opposition. The factual details of whether a plaintiff purchased shares directly in an offering, and whether the shares are traceable to a specific registration statement must be specifically pleaded in the complaint. *See Century Aluminum*, 729 F.3d at 1107. The Amended Complaint fails to allege the requisite details, instead alleging vague boilerplate that Lead Plaintiff purchased shares "pursuant to or traceable to the Company's Registration Statement." (AC ¶¶ 11, 74). Courts consistently dismiss complaints for lack of standing that contain non-specific allegations just like this. *See, e.g.*, *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013)(affirming dismissal of Section 12 claim in which plaintiffs alleged they "purchased . . . stock directly traceable to the Company's Secondary Offering"); *Thomas v. Magnachip Semiconductor*, 167 F.Supp.3d 1029, 1055 (N.D.Cal. 2016) (dismissing Section section 11 and 12(a)(2) claims in which plaintiffs alleged they purchased "stock pursuant and/or traceable to the [challenged] Registration Statement").

In the Opposition, Lead Plaintiff mentions that on February 23, 2021 he purchased 2,500 shares at "the same price as the shares offered in the Registration Statement" (Opp. at 13), craftily <u>implying</u> that buying shares at the Offering price

---

[3] The Company also issued a press release on February 19, 2021, announcing that the offering closed on that date. *See*, Weber Reply Declaration, Ex. 1)(note that the Company was still named "Greenbox POS" at that point in time).

establishes that they were purchased "directly in the offering." Not so. As noted above, and established by judicially noticeable fact, the Offering closed four days prior to this purchase. Also, both the Amended Complaint and Opposition carefully <u>avoid</u> saying that Plaintiff purchased his shares from either Underwriter Defendant, the only source from which shares could be purchased "directly in the offering."[4]

The fact that securities were purchased on the open market at a price coincidentally matching a secondary offering price is not sufficient alone to allege standing. *See,Jedrzejczyk v. Skillz Inc.*, No. 21-cv-03450-RS, 2022 U.S. Dist. LEXIS 117803, at *21-22 (N.D. Cal. July 5, 2022) ("Given the volume of other shares on the market from the prior offering, even alleging that someone bought shares on the day of the [] Offering at the offering price is inadequate to establish statutory standing at this stage, due to a significant possibility that the shares purchased originated from the prior offering but were being traded at the secondary offering price."). The Opposition cites only *In re CytRx Corp. Sec. Litig.*, No. CV 14-1956-GHK (PJWx), 2015 U.S. Dist. LEXIS 91447 (C.D. Cal. July 13, 2015), but that case is plainly distinguishable on the facts. There, the court found that plaintiffs had sufficient facts to establish statutory standing by pleading in their complaint that they had purchased shares "pursuant to and/or traceable to [a] Secondary Offering . . . at the Secondary Offering price," and most importantly "**before** CytRx **announced the closing** of the Secondary Offering." *Id.* at 49 (emphasis added). Here, by contrast, the Lead Plaintiff's PSLRA certification shows that the two purchases he made on February 17, 2021 while the Offering was open were <u>not</u> made at the $10.50/share, and the one purchase he made coincidentally at the Offering price occurred the week after the Offering closed. Those allegations are insufficient even under the standard applied in *CytRx*.

---

[4] The Underwriter Defendants could have, but did not, submit evidentiary affidavits regarding whether Lead Plaintiff was a customer for Offering shares, in recognition that courts typically do not consider extrinsic evidence on a motion to dismiss.

Case No. 3:23-cv-0185-GPC-SBC
REPLY BRIEF IN SUPPORT OF UNDERWRITER DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT

Lead Plaintiff takes issue with the Underwriter Defendants' citation of *Thomas v. Magnachip*, 167 F. Supp. 3d 1029, arguing that it is based on a misreading of *Century Aluminum*. (Opp. at 14, fn. 7). Lead Plaintiff relies on *Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc*., 243 F. Supp. 3d 1109, 1114 (E.D. Cal. 2017), which noted that *Thomas* incorrectly said that *Century Aluminum* addressed allegations that plaintiffs bought sharers at the offering price, when *Century Aluminum* only dealt with allegations that shares were purchased on the date of the offering.  But for this case's purposes, that distinction is irrelevant because Lead Plaintiff does not allege that he purchased shares at the Offering price when the Offering was open, meaning this case is much more analogous to *Jedrzejczky*, *Thomas*, and *Century Aluminum*.

Lead Plaintiff did not purchase shares from the Underwriter Defendants, and thus did not purchase "directly in the offering." He knows it. The Underwriter Defendants know it. He does not have statutory standing to pursue a Section 12(a)(2) claim.

The only way then for Lead Plaintiff to establish Section 11 standing is to plead facts showing that his shares are "directly traceable" to the February 2021 Offering's registration statement. But "[w]hen a company has issued shares in multiple offerings under more than one registration statement, ... a greater level of factual specificity will be needed before a court can reasonably infer that shares purchased in the aftermarket are traceable to a particular offering." *In re Century Aluminum*, 729 F.3d at 1107. And the Ninth Circuit recognized that "experience and common sense tell us that when a company has offered shares under more than one registration statement, aftermarket purchasers usually will not be able to trace their shares back to a particular offering." *Id.* at 1107-08 (emphasis in original). In that case, the Ninth Circuit stated that "the conclusory allegation that plaintiffs 'purchased Century Aluminum common stock directly traceable to the Company's Secondary Offering' does not allow us to draw a reasonable inference about

anything because it is devoid of factual content." *Id.* The allegation here is similarly conclusory. Lead Plaintiff does not provide any specific allegations tracing his purchase of shares to the February 2021 registration statement as distinct from the Company's earlier registration statements. Plaintiff therefore has not alleged statutory standing.

### B.   The Opposition Offers No Meaningful Rebuttal to The Underwriter Defendants' "Due Diligence" Defense.

As noted in the Opening Brief, underwriters are exempted from Section 11 liability for alleged falsity contained in any audited financial statements incorporated into a registration statement, as long as the underwriters "had no reasonable ground to believe and did not believe" that the audited financials were untrue or contained a material omission. *See* 15 U.S.C. § 77k(b)(3)(C); *In re Software Toolworks Inc.*, 50 F.3d 615, 621 (9th Cir. 1994).

The Amended Complaint did not identify what was false about the financial statements incorporated into Ryvyl's registration statement, and the Opposition does not offer any clarification. Defendants' opening briefs also noted that the financial statements incorporated into the Registration Statement have never been restated, only later financial statements were restated; Lead Plaintiff tacitly admits this fact by his silence on the point in the Opposition. And neither the Amended Complaint nor the Opposition alleges a single fact to support the notion that the Underwriter Defendants were actually aware, or should have suspected via the presence of "red flags," that there was something amiss with the financial statements (again, these are financial statements that have <u>not</u> been restated).

The Opposition's weak argument that dismissal is unwarranted because "Plaintiff alleges that underwriters relied upon management" (Opp. at 13) is inconsistent with the provision of Section 11 that expressly allows underwriters to rely upon audited financial statements offered by management in a registration statement. "[A]bsent red flags that the underwriters were in a position to see," the

-7-

Case No. 3:23-cv-0185-GPC-SBC
REPLY BRIEF IN SUPPORT OF UNDERWRITER DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT

Underwriter Defendants were entitled by law to rely on the audited financial statements and the accounting judgments and decisions of the auditors. *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1175 (C.D. Cal. 2008). "[C]ourts look to plaintiffs to point to red flags that should have indicated to the underwriter that the financial statements were not trustworthy." *Feyko v. Yuhe Int'l, Inc.*, No. 11-cv5511, 2013 WL 816409, at *8 (C.D. Cal. Mar. 5, 2013) (emphasis added). The lone case the Opposition cites as contrary authority, *In re CytRx*, is distinguishable on the facts, because in that case the defendant underwriters did not attempt to assert the due diligence defense to their reliance upon audited financial statements, but rather to their reliance upon management's assurances that they were not manipulating stock. Id. at *17.[5]

Where a plaintiff fails to allege the existence of red flags, courts have dismissed Section 11 claims at the pleading state. *See Countrywide*, 588 F. Supp. 2d at 1181–82; *Feyko*, 2013 WL 816409 at *9. This Court should do that here.

**C.      Lead Plaintiff Fails To Plead Facts Establishing That the Offering Documents Were False or Misleading.**

In their Opening Brief, the Underwriting Defendants detailed how the Amended Complaint failed to provide detailed facts showing why any of the seven alleged misstatements or omissions flagged by Lead Plaintiff were false. (Opening Brief at § IV.C). In response, the Opposition simply regurgitates those statements, and states in conclusory fashion that they were misleading, again without pointing to any facts which explain <u>why</u> those statements were misleading. (Opp. at 9-11).

Examining just one example, the Opposition argues that the Offering Documents' statement that the Company "may not be able to operate our business

---

[5] The Opposition also curiously cites *In re Velti PLC Sec. Litig.*, 2015 WL 5736589 (N.D. Cal. Oct 1, 2015), a decision which granted underwriters' motion to dismiss section 11 and 12(a)(2) claims due to plaintiff's failure to allege statutory standing and failure to articulate a cognizable claim under the pleading standards of Rule 8(a). The Court did not even get to the underwriters' asserted due diligence defense. The decision does not support Lead Plaintiff's argument in any way.

successfully or generate sufficient revenue" was false because an executive assistant who joined the Company one year after the Offering (CW4) claimed to have heard that the Company's "accounting for wires" during some undescribed time period "was inaccurate." (Opp. at 10, referencing AC ¶¶ 44, 50). What CW4 overheard in 2022 provides no basis for the contention that the Company's 2019 and 2020 financials that were incorporated into the February 2021 Offering Documents, or rendered misleading those Offering Documents' warning that the Company "may not be able to operate our business successfully or generate sufficient revenue" in the future. A similar analysis applies to each of the six other statements in the Offering Documents which Lead Plaintiff alleges were false; none of the post-Offering facts identified by Lead Plaintiff provides any support for the notion that any risks of which the Offering Documents warned had actually materialized prior to the February 2021 Offering. *See* Opening Brief at § IV.C.

The allegations in the Amended Complaint are far less specific and detailed than those made in the recent *In re: Facebook Inc. Sec. Litig.* decision which Lead Plaintiff submitted via a notice of supplemental authority. 2023 WL 6857600 (9th Cir. Oct. 18, 2023). There, the Ninth Circuit found that statements made by Facebook which represented the risk of third parties improperly accessing and using Facebook users' data as "purely hypothetical" were adequately alleged to be misleading, because the 258-page complaint alleged detailed facts establishing that Facebook personnel undeniably <u>knew</u> for months that identified third parties already had accessed and misused user data. In short, the plaintiffs there adequately pleaded falsity of the risk disclosure by setting forth excruciatingly detailed facts establishing that Facebook knew that the "hypothetical" risk it warned about already existed. That is a far cry from the vague statements offered by the Lead Plaintiff's CWs here, which provide zero detail as to when supposed accounting issues existed, and most importantly, whether they were known to the Underwriter Defendants when the Offering Documents were published.

SMRH:4869-9429-4664

**D.    The PSLRA Requires the Court to Conduct a Mandatory Review for Abusive Litigation at the Time of Final Adjudication.**

All parties agree that the Amended Complaint is subject to the provisions of the Private Securities Litigation Reform Act ("**PSLRA**"), 15 U.S.C. § 78u, *et seq*. *See* Opp. at 17, Underwriter Defendants' Opening Brief at 17, Ryvyl Defendants' Opening Brief at 7. The PSLRA requires a Court to conduct a mandatory review for abusive litigation at the time of final adjudication, as follows:

(1) Mandatory review by court

> In any private action arising under this chapter, upon final adjudication of the action, the court **shall include in the record** specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion.

(2) Mandatory sanctions

> If the court makes a finding under paragraph (1) that a party or attorney violated any requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion, the court **shall** impose sanctions on such party or attorney in accordance with Rule 11 of the Federal Rules of Civil Procedure. Prior to making a finding that any party or attorney has violated Rule 11 of the Federal Rules of Civil Procedure, the court shall give such party or attorney notice and an opportunity to respond.

15 U.S.C. § 78u-4(c)(1)–(2)(emphasis added). *See generally DeMarco v. Depotech Corp.*, 131 F.Supp.2d 1185 (S.D. Cal. 2001), *aff'd*, 32 F. App'x 260 (9th Cir. 2002). The Courts should make the required findings upon dismissal of Plaintiff's claims.

### III.  CONCLUSION

For the reasons cited above and in the Underwriter Defendants' Opening Brief, the Underwriter Defendants respectfully ask the Court to grant their motion, dismiss the Amended Complaint's First and Second Causes of Action against the Underwriter Defendants with prejudice, and include in its order the specific findings required by 15 U.S.C. § 78u-4(c)(1)–(2) regarding the compliance of Lead Plaintiff and Lead Counsel with Federal Rule of Procedure Rule 11(b).

Dated:  October 27. 2023        SHEPPARD. MULLIN. RICHTER & HAMPTON LLP


By:_____s/Robert D. Weber_____
ROBERT D. WEBER
NOLAN WALTER
Attorneys for Defendants
EF Hutton and R.F. Lafferty & Co.

SMRH:4869-9429-4664

Case No. 3:23-cv-0185-GPC-SBC
REPLY BRIEF IN SUPPORT OF UNDERWRITER DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT