ROBERT V. PRONGAY (#270796)
  *rprongay@glancylaw.com*
EX KANO S. SAMS II (#192936)
  *esams@glancylaw.com*
CHARLES LINEHAN (#307439)
  *clinehan@glancylaw.com*
PAVITHRA RAJESH (#323055)
  *prajesh@glancylaw.com*
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Lead Plaintiff*
*Scot S. Cook*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK CULLEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RYVYL INC. F/K/A GREENBOX POS, BEN ERREZ, FREDI NISAN, and BENJAMIN CHUNG,<br><br>Defendants. | Case No. 3:23-cv-00185-GPC-SBC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**<br><br>DATE:      October 4, 2024<br>TIME:      1:30 p.m.<br>CTRM:    2D<br>JUDGE:    Hon. Gonzalo P. Curiel |

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................ 1

II.     STATEMENT OF FACTS ......................................................................... 3

III.    STANDARD OF REVIEW .......................................................................... 4

IV.     PLAINTIFF ADEQUATELY ALLEGES VIOLATIONS OF THE EXCHANGE ACT ........................................................................................ 4

        A.      Defendants Concede That Plaintiff Adequately Alleges Falsity ............ 4

        B.      Plaintiff Adequately Alleges Scienter .................................................... 5

                1.      The Court Has Already Held that CFO Chung and Ryvyl Acted With Scienter ................................................................... 6

                2.      All Defendants Acted With Scienter Throughout the Class Period ........................................................................................ 7

                        (a)     The CW Allegations Support a Strong Inference of Scienter ........................................................................ 7

                        (b)     The Severity of the Company's Internal Control Problems and Defendants' SOX Certifications Support a Strong Inference of Scienter ................................................ 15

                        (c)     Defendants' Hands-on Management Style Supports a Strong Inference of Scienter ...................................... 16

                        (d)     CFO Chung's Resignation Supports a Strong Inference of Scienter .......................................................................... 17

                        (e)     The Core Operations Inference and the Company's Small Size Add to the Strong Inference of Scienter Alleged ...... 18

        C.      The Court Properly Held that Plaintiff Adequately Alleged Control Person Liability With Respect to Chairman Errez, CEO Nisan, and CFO Chung ...................................................................................... 20

V.      CONCLUSION .......................................................................................... 21

# TABLE OF AUTHORITIES

CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................4

*Backe v. Novatel Wireless, Inc.*,
642 F. Supp. 2d 1169 (S.D. Cal. 2009) .....................................................19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................4

*Bielousov v. GoPro, Inc.*,
No. 16-cv-06654-CW, 2017 WL 3168522 (N.D. Cal. July 26, 2017) ...........16, 17

*Brendon v. Allegiant Travel Co.*,
412 F. Supp. 3d 1244 (D. Nev. 2019) ........................................................13

*Carlton v. Cannon*,
184 F. Supp. 3d 428 (S.D. Tex. 2016) .......................................................13

*City of Miami Gen. Employees' & Sanitation Employees' Ret. Tr. v. RH, Inc.*,
No. 17-CV-00554-YGR, 2018 WL 1046892 (N.D. Cal. Feb. 26, 2018) ...........17

*Cullen v. RYVYL Inc.*,
No. 3:23-CV-0185-GPC-SBC, 2024 WL 898206 (S.D. Cal. Mar. 1, 2024) ..*passim*

*Curry v. Hansen Medical, Inc.*,
No. 4:09-cv-05094-CW, 2012 WL 3242447 (N.D. Cal. Aug. 10, 2012) .............19

*Cutler v. Kirchner*,
696 F. App'x 809 (9th Cir. 2017) ..............................................................19

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014)......................................................................6

*Eminence Capital, L.L.C. v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003)...................................................................21

*Flynn v. Sientra, Inc.*,
No. CV1507548SJORAOX, 2016 WL 3360676 n.8 (C.D. Cal. June 9, 2016).....14

*Hollinger v. Titan Cap. Corp.*,
914 F.2d 1564 (9th Cir. 1990)................................................................................21

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000)...............................................................................21

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021)....................................................................................18

*In re Commtouch Software Ltd. Sec. Litig.*,
No. C 01-00719 WHA, 2002 WL 31417998 (N.D. Cal. July 24, 2002) ...............19

*In Re CommVault Sys., Inc. Sec. Litig.*,
No. 14-CV-5628 (PGS), 2016 WL 5745100 (D.N.J. Sept. 30, 2016) ...................14

*In re Cornerstone Propane Partners, L.P.*,
355 F. Supp. 2d 1069 (N.D. Cal. 2005) ................................................................18

*In re Diamond Foods, Inc., Sec. Litig.*,
No. C 11-05386 WHA, 2012 WL 6000923 (N.D. Cal. Nov. 30, 2012)................18

*In re Dothill Sys. Corp. Sec. Litig.*,
No. 06-CV-228 JLS (WMC), 2009 WL 734296 (S.D. Cal. Mar. 18, 2009) .........18

*In re Downey Sec. Litig.*,
No. CV 08-3261-JFW(RZX), 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ......15

*In re Fibrogen, Inc.*,
No. 21-CV-02623-EMC, 2022 WL 2793032 (N.D. Cal. July 15, 2022) ..............13

*In re Impax Laboratories, Inc. Sec. Litig.*,
No. C 04-04802 JW, 2007 WL 7022753 (N.D. Cal. July 18, 2007) ...............18, 19

*In re Quality Sys., Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017)........................................................................*passim*

*In re Rigel Pharms., Inc. Sec. Litig.*,
697 F.3d 869 (9th Cir. 2012)..................................................................................15

*In re UTStarcom, Inc. Sec. Litig.*,
617 F. Supp. 2d 964 (N.D. Cal. 2009) ...................................................................18

4

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
Case No. 3:23-CV-0185-GPC-SBC

*In re VeriFone Holdings, Inc. Sec. Litig.*,
  704 F.3d 694 (9th Cir. 2012)............................................................5, 15, 16

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
  No. 2672 CRB (JSC), 2017 WL 66281 (N.D. Cal. Jan. 4, 2017)........................17

*In re Wash. Mut., Inc. Sec., Deriv. & ERISA Litig.*,
  694 F. Supp. 2d 1192 (W.D. Wash. 2009)..........................................................15

*Institutional Investors Grp. v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009)..............................................................................7

*Lloyd v. CVB Fin. Corp.*,
  811 F.3d 1200 (9th Cir. 2016)..........................................................................13

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011) ..........................................................................................15

*McIntire v. China MediaExpress Holdings, Inc.*,
  No. 11 Civ. 0804 VM, 2013 WL 752954 (S.D.N.Y. Feb. 28, 2013)....................18

*Mueller v. San Diego Ent. Partners, LLC*,
  No. 16-cv-2997, 2017 WL 3387732 (S.D. Cal. Aug. 7, 2017).............................20

*Mulderrig v. Amyris, Inc.*,
  492 F. Supp. 3d 999 (N.D. Cal. 2020) ...............................................................14

*Niantic, Inc. v. Global++*,
  No. 19-CV-03425-JST, 2020 WL 8620002 (N.D. Cal. Sept. 2, 2020) .................20

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.*,
  320 F.3d 920 (9th Cir. 2003)............................................................................15

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
  380 F.3d 1226 (9th Cir. 2004)..........................................................................16

*Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*,
  No. 3:19-CV-04744-WHA, 2020 WL 2559939 (N.D. Cal. May 20, 2020)............8

*Robb v. Fitbit Inc.*,
   No. 16-CV-00151-SI, 2017 WL 219673 (N.D. Cal. Jan. 19, 2017) ..................... 13

*Roberts v. Zuora, Inc.*,
   No. 19-CV-03422-SI, 2020 WL 2042244 (N.D. Cal. Apr. 28, 2020) .................. 13

*S. Ferry LP, No. 2 v. Killinger*,
   542 F.3d 776 (9th Cir. 2008) .................................................................... 5, 13, 18

*Scott v. ZST Digital Networks, Inc.*,
   No. CV 11-03531 GAF (JCx), 2012 WL 538279 n.2 (C.D. Cal. Feb. 14, 2012).. 16

*Tarapara v. K12 Inc.*,
   No. 16-CV-4069-PJH, 2017 WL 3727112 (N.D. Cal. Aug. 30, 2017) ................. 19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) .............................................................................passim

*Turocy v. El Pollo Loco Holdings, Inc.*,
   No. SACV151343DOCKESX, 2017 WL 3328543 (C.D. Cal. Aug. 4, 2017) ...... 17

*Webb v. Solarcity Corp.*,
   884 F.3d 844 (9th Cir. 2018)..................................................................... 13, 15

STATUTES

15 U.S.C. §78u-4(b)(2) ............................................................................................ 5
15 U.S.C. § 78t(a) ................................................................................................. 20

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
Case No. 3:23-CV-0185-GPC-SBC

Plaintiff Scot S. Cook ("Plaintiff") files this opposition to the motion to dismiss ("Motion") filed by: (1) Ryvyl Inc. ("Ryvyl" or the "Company"); (2) Ben Errez ("Errez"), Co-Founder of the Company who served as Chairman of the Company's Board of Directors ("Board"), Executive Vice President, Principal Financial Officer, and Principal Accounting Officer; (3) Fredi Nisan, Co-Founder of the Company who served as Ryvyl's Chief Executive Officer ("CEO"); and (4) Benjamin Chung, who served as the Company's Chief Financial Officer ("CFO") (collectively "Defendants").

## I.    INTRODUCTION

This is a securities class action brought on behalf of all persons and/or entities who purchased or otherwise acquired the Company's securities between May 13, 2021, and January 20, 2023, inclusive ("Class Period"), pursuant to the Securities Exchange Act of 1934 ("Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder.  Ryvyl is a crypto company focused on developing, marketing, and selling blockchain-based payment solutions.  Throughout the Class Period, Defendants made materially false and misleading statements and/or misleading half-truths that: (1) Ryvyl misrepresented its serious issues with its internal controls; (2) Ryvyl's financial statements contained errors resulting in overstatements of revenue, assets, and stockholders' equity and understatements of losses; (3) Ryvyl would need to restate its previously issued financial statements; and (4) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.  When Defendants disclosed this information to the market, the Company's stock price plummeted, causing significant losses for investors.

The Court should deny Defendants' Motion for several reasons.  First, as was the case previously, Defendants do not dispute that their statements were false and misleading.  Accordingly, Defendants have conceded the element of falsity under the Exchange Act.  Second, Defendants ignore the fact that in the Court's previous order

(*Cullen v. RYVYL Inc.*, No. 3:23-CV-0185-GPC-SBC, 2024 WL 898206 (S.D. Cal. Mar. 1, 2024)), the Court found that Plaintiff adequately alleged scienter with respect to CFO Chung and Ryvyl. Specifically, the Court held that Plaintiff's allegations provide:

> strong support for the assertion that Chung acted with at least deliberate recklessness in signing off on the false or misleading financial data in the 2021 and 2022 financial statements, and certifying that Ryvyl had disclosed "all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting." Chung was the CFO and according to CW3, only five employees, including Chung and CW3, worked in the accounting division. Furthermore, the allegations of wrongdoing have to do with improper accounting, specifically charging third parties incorrectly under a different name, not paying third parties money they were entitled to, and generating fake wires. Given Chung's role as CFO and his responsibility to maintain proper internal controls, it would be "absurd" to suggest that Chung was unaware of the accounting problems. As such, these considerations strongly suggest the finding that Chung was deliberately reckless or acted intentionally.

*Id.* at *17.[1] The Court concluded that Plaintiff "***sufficiently alleges scienter as to Chung and therefore as to Ryvyl for the financial data and statements regarding internal controls in the 2021 annual report and the first two 2022 interim financial reports and the accompanying SOX certifications***." *Id.* at *19. As demonstrated below, moreover, Plaintiff's Second Amended Complaint ("SAC") alleges additional facts and detail that compel the conclusion that scienter is adequately alleged for all Defendants during the entire Class Period.

Finally, although Defendants failed to make the argument previously – and thus have waived it – Defendants now seek to disturb the Court's holding that Defendants Errez, Nisan, and Chung are liable as control persons under the Exchange Act. Defendants' argument fails both procedurally and substantively. For these reasons and those stated below, the Court should deny Defendants' Motion.

---

[1]    Unless otherwise indicated, all emphasis is added and all internal citations and quotations are omitted.

## II.   STATEMENT OF FACTS

Ryvyl is a crypto company that develops, markets, and sells blockchain-based payment solutions. ¶21.[2] The Company's core focus is to develop and monetize disruptive blockchain-based applications, integrated within an end-to-end suite of financial products, capable of supporting a multitude of industries. *Id*. The Company's proprietary, blockchain-based systems are designed to facilitate, record, and store a virtually limitless volume of tokenized assets, representing cash or data, on a secured, immutable blockchain-based ledger. *Id*.

On January 20, 2023, the Company announced that its previously issued financial statements as of December 31, 2021, for the year ended December 31, 2021, as of and for the interim periods within the year ended December 31, 2021 and as of and for the interim periods ended September 30, June 30 and March 31, 2022, should no longer be relied upon and had to be restated. ¶¶3, 74. The Company also identified additional internal control weaknesses and a remediation plan. *Id*.; *see also* ¶¶79, 82. On this news, Ryvyl's share price fell 14.63% to close at $0.70 per share on January 23, 2023, damaging investors. ¶¶3, 75.

Additionally, on March 26, 2024, the Company announced the following:

> During the preparation of its 2022 Annual Report, the Company determined that it had not appropriately accounted for certain historical transactions under GAAP. In accordance with the SEC's Staff Accounting Bulletin ("SAB") 99, Materiality, and SAB 108, Considering the Effects of Prior Year Misstatements when Quantifying Misstatements in Current Year Financial Statements, the Company evaluated the materiality of the errors from qualitative and quantitative perspectives, individually and in aggregate, and concluded that the errors were material to the Consolidated Statements of Operations for the quarters ending March 31, 2021, June 30, 2021, September 30, 2021, March 31, 2022, June 30, 2022, and September 30, 2022, and for the annual period ending December 31, 2021. Based on this evaluation, on January 13, 2023, the Company's Audit Committee, with the concurrence of management, concluded that the Company's previously issued consolidated financial statements for the aforementioned periods would need to be restated and could no longer be relied upon. The Company has restated the impacted financial statements for each of these

---

[2] Unless otherwise indicated, all paragraph ("¶") references are to Plaintiff's SAC.

periods and presented the effects of the restatement adjustments in its 2022 Annual Report.

¶¶4, 85-86.  The Company further announced the following:

*Material Weakness in Internal Control over Financial Reporting*

In connection with their evaluation for the year ended December 31, 2023, management identified a material weakness in internal control over financial reporting resulting from not having a complete process in place to fully reconcile the transactions between its operating system (a Company-developed platform) and its general ledger system, at the individual transaction level, which hampers the Company's ability to timely and accurately identify differences that may require adjustment to its consolidated financial statements. As a result, we did not maintain effective controls over the reconciliation of transactions between the Company's operating system and its general ledger system, at the individual transaction level.

¶5.

## III.  STANDARD OF REVIEW

A plaintiff's allegations need only be "plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Courts must "accept all factual allegations in the complaint as true," consider "the complaint in its entirety" (*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)), and construe the facts "in the light most favorable to the nonmoving party."  *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017).

## IV.  PLAINTIFF ADEQUATELY ALLEGES VIOLATIONS OF THE EXCHANGE ACT

### A.  Defendants Concede That Plaintiff Adequately Alleges Falsity

As was the case with the previous complaint, Defendants do not dispute – and thereby concede – that Plaintiff has adequately alleged falsity.  *See Cullen*, 2024 WL 898206, at *11 ("The Ryvyl Defendants do not respond to any of these arguments."). The Court previously held that "the financial data in the 2021 and 2022 interim reports and in the 2021 annual report, the SOX certifications accompanying the 2021 annual

report and the 2022 interim reports, and the statement regarding internal controls in the 2021 annual report and the 2022 interim reports are false or misleading." *Id*. at *13. Because Defendants again fail to dispute that their statements were false and misleading, Plaintiff has adequately alleged falsity.

**B.    Plaintiff Adequately Alleges Scienter**

Plaintiff has also adequately alleged that Defendants acted with scienter. The Private Securities Litigation Reform Act of 1995 ("PSLRA") requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. §78u-4(b)(2); *Tellabs*, 551 U.S. at 314. "In this circuit, the required state of mind is a mental state that not only covers intent to deceive, manipulate, or defraud, but also deliberate recklessness." *Quality Sys.*, 865 F.3d at 1144.

Importantly, "courts must consider the complaint in its entirety . . . . The inquiry is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 322-23 (italics in original). "Thus, *Tellabs* counsels us to consider the totality of circumstances, rather than to develop separately rules of thumb for each type of scienter allegation." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008). "Vague or ambiguous allegations are now properly considered as a part of a holistic review when considering whether the complaint raises a strong inference of scienter." *Id*. In assessing scienter allegations, often "the sum is greater than the parts." *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 698 (9th Cir. 2012).

A strong inference of scienter arises if, "[w]hen the allegations are accepted as true and taken collectively," a "reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324-26. "The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the smoking-gun genre,

or even the most plausible of competing inferences" – the inference need only be equally plausible to any non-culpable inference. *Tellabs*, 551 U.S. at 324. Moreover, "a tie goes to the plaintiffs when there are multiple plausible theories at the pleadings stage of litigation." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 999 n.8 (9th Cir. 2014).

## 1. The Court Has Already Held that CFO Chung and Ryvyl Acted With Scienter

The Court has already held that Plaintiff has adequately alleged scienter with respect to CFO Chung and Ryvyl. Specifically, Court held that Plaintiff alleged:

> strong support for the assertion that Chung acted with at least deliberate recklessness in signing off on the false or misleading financial data in the 2021 and 2022 financial statements, and certifying that Ryvyl had disclosed "all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting." Chung was the CFO and according to CW3, only five employees, including Chung and CW3, worked in the accounting division. Furthermore, the allegations of wrongdoing have to do with improper accounting, specifically charging third parties incorrectly under a different name, not paying third parties money they were entitled to, and generating fake wires. Given Chung's role as CFO and his responsibility to maintain proper internal controls, it would be "absurd" to suggest that Chung was unaware of the accounting problems. As such, these considerations strongly suggest the finding that Chung was deliberately reckless or acted intentionally.

*Cullen*, 2024 WL 898206, at *17. The Court added that:

> [A]s to the later false or misleading statements attributable to him, the AC sufficiently alleges scienter for Chung. Given the nature of the alleged fraud—false and misleading accounting—Chung's role as CFO, the tiny size of the accounting division, and the statements of the CWs, Chung must have known of these accounting problems. CW2 relayed concrete statements by Byelick, Chung's successor as CFO, that Chung engaged in improper accounting. CW3 described how Chung's subordinates in a five-person department directed CW3 to enter inaccurate financial data, even after CW3 objected. And CW4 stated that CW4 attended meetings, which Chung also attended, in which the accounting problems and allegedly fraudulent practices were discussed. Considering these allegations together, it is absurd for Chung to suggest that he was uninformed. Having been aware of these problems, Chung's certifications of the data in the financial reports and that the accounting practices were sound were made with the required scienter. ***The Court therefore concludes that the AC sufficiently alleges scienter as to Chung and therefore as to Ryvyl for the financial data and statements regarding internal controls in the 2021 annual report and the first two 2022 interim financial reports and the accompanying SOX certifications.***

*Id.* at \*19. As demonstrated below, because the SAC makes similar allegations, Plaintiff again adequately alleges that CFO Chung and Ryvyl acted with scienter.[3]

### 2. All Defendants Acted With Scienter Throughout the Class Period

#### (a) The CW Allegations Support a Strong Inference of Scienter

Plaintiff can establish a strong inference of scienter through CW accounts by satisfying two pleading requirements. "First, the confidential witnesses whose statements are introduced to establish scienter must be described with sufficient particularity to establish their reliability and personal knowledge. Second, those statements which are reported by confidential witnesses with sufficient reliability and personal knowledge must themselves be indicative of scienter." *Quality Sys.*, 865 F.3d at 1144-45.

Plaintiff has satisfied this standard and have shown that all Defendants acted with scienter throughout the Class Period. First, the SAC describes the CWs with sufficient particularity to establish their reliability and personal knowledge. ¶¶60, 64, 70, 72. The SAC, moreover, provided additional detail sought by the Court to further demonstrate the reliability and personal knowledge for each CW. *See* Doc. 80-1 at 37-43 (redline of SAC). "Having provided each witness's job title, description, and

---

[3] Based largely upon the dates of employment of the CWs, the Court found that Plaintiff adequately alleged scienter for Defendants' statements in 2022, but not prior. *Id.* at \*18. However, Plaintiff has alleged additional information for CW1, who was employed in June 2021 (¶¶60-63), that demonstrates that CW1 had personal knowledge relevant to Defendants' 2021 statements. Additionally, for the reasons discussed below, Plaintiff contends that the other facts alleged, and even subsequent CW statements, all shed light on Defendants' scienter for their 2021 statements. *See, e.g., Institutional Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 249 n.13 (3d Cir. 2009) ("both post-class-period data and pre-class data could be used to confirm what a defendant should have known during the class period because [a]ny information that sheds light on whether class period statements were false or materially misleading is relevant").

responsibilities, plaintiff's complaint has met the PSLRA's requirements for confidential witnesses." *Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*, No. 3:19-CV-04744-WHA, 2020 WL 2559939, at *4 (N.D. Cal. May 20, 2020).

Second, the CW accounts are indicative of scienter. For instance, CW1, who started at the Company as an onboarding specialist and served as an HR Generalist from June 2021 to February 2022, stated that Co-Founder and Chairman Errez and CEO Nisan misrepresented the Company's revenue. ¶¶60-62. CW1 knew that the statements were wrong because there was no volume for the Company's merchants to support the claimed revenue. *Id.* CW1 stated further that CW1 knew about the Company's volume because CW1 was trained on the Company's system for chargebacks, which represented the volume for anything that would come into Ryvyl and everything that the Company paid out. *Id.* CW1 stated that based upon the volume information, the revenue was nowhere close to the representations that Chairman Errez and CEO Nisan made regarding the Company's revenue. *Id.* Specifically, CW1 stated that the volumes that CW1 saw were nowhere close to the millions of dollars that the Company represented, and that the volume was not even close to a million. *Id.* CW1 reported the issue to CW1's boss, Viviana Estrada, but Estrada did not know why the Company's representations were not supported by the volume information that CW1 discovered. *Id.* CW1 also said that CEO Nisan was informed about the discrepancies that CW1 discovered between the representations that Chairman Errez and CEO made regarding the Company's revenue and the volume information that CW1 observed. *Id.*[4]

The account of CW2, who served as a Marketing Specialist, Marketing Manager, and Project Manager at Ryvyl from August 2021 to February 2023, is also

---

[4] Defendants attempt to dispute these allegations by suggesting that the Company's post-restatement audited financial statements reflected net revenue of certain amounts. Motion at 19. Defendants, however, are not only improperly attempting to create factual disputes at the pleading stage, but, more fundamentally, their contention does not address CW1's allegations regarding *volume*.

indicative of scienter. ¶64. CW2 stated that Ryvyl was a small company, that everyone talked, and that there was a series of events that led the Company to hire CFO Byelick. ¶65. Specifically, CW2 stated that CFO Byelick's predecessor, CFO Chung, required the Company to use his software as part of his deal, and that CFO Chung did not properly follow accounting procedures as a publicly traded company. *Id.* CW2 stated further that CFO Chung created his own accounting software, that the software was horrible, and that the Company should never have been using it. *Id.* CW2 also stated that CFO Chung was not doing his job, and that more people discovered this fact after CFO Chung's departure, including CFO Byelick and CW2. *Id.*

Moreover, CW2 and CFO Byelick had numerous discussions about the improper accounting practices that existed at the Company because of CFO Chung's failures, which included improper accounting relating to revenue, debt, and depreciation value. ¶66. CW2 stated that CW2 had daily – if not weekly – conversions with CFO Byelick and that CW2 had a good working relationship with CFO Byelick. *Id.* CW2 stated that CW2 and CFO Byelick spoke about these issues primarily in the office together, and also spoke occasionally while golfing together. *Id.*

CW2 stated that CFO Byelick acknowledged to CW2 that Ryvyl's numbers were made up (including the Company's quarterly financial statements and year-end financial statements), that the Company failed to follow proper accounting procedures, and that information was hidden and disguised. ¶67. CW2 stated that based upon CW2's conversations with CFO Byelick, CW2 was 100% certain that the Company was manipulating numbers related to the Company's quarterly financial statements and year-end financial statements. *Id.* CW2 stated that CW2 believes that CFO Byelick became aware of the accounting improprieties around the time that CFO Byelick started, and that the more CFO Byelick investigated, the more accounting improprieties he discovered. *Id.* CW2 also stated that CFO Byelick informed CW2

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
Case No. 3:23-CV-0185-GPC-SBC

that had CFO Chung followed the correct accounting process, CFO Chung would have discovered that the Company's quarterly financial statements and year-end financial statements were incorrect because there was no way to logically arrive at the incorrect results. *Id.*

For example, CW2 stated that at the end of 2022, CW2 had discussions with other Company employees regarding CFO Chung's failure to implement and follow proper accounting procedures at the Company and CW2 learned that CEO Nisan discovered that CFO Chung was making up numbers. ¶68. CW2 learned this information by speaking with personnel in the Company's accounting department, including R. Clay Gilreath ("Gilreath"), who served as a Senior Treasury Analyst. *Id.* According to CW2, personnel in the accounting department had to perform an audit of the Company's financial results every quarter during CW2's tenure because the quarterly filings were always incorrect and always had to be amended. *Id.*

CW2 also stated that the Company did not have enough personnel working in the accounting department to properly manage what they needed to do. ¶69. CW2 indicated that there was a high degree of turnover in the accounting department, with the average time for personnel in the department being approximately three to five months. *Id.* CW2 stated further that sometimes Ryvyl would rely upon its receptionist to perform financial and accounting work for the Company and that the receptionist was not qualified to perform financial and accounting work. *Id.* CW2 stated that the Company assigned tasks such as expense reporting to the receptionist, and that the receptionist would ask CW2 how do to the work because the receptionist did not know how to do it. *Id.*

The account of CW3, who served as a Staff Accountant from May 2022 to July 2022, also supports a strong inference of scienter. ¶70. CW3 noted that Gilreath worked as Senior Treasury Analyst and Kineret Rubin ("Rubin") worked as Controller, and that Rubin was a family friend of Co-Founder and Chairman Errez. *Id.* CW3 stated that Gilreath and Rubin told CW3 what information to enter into the

system, including wires for other companies. *Id*. CW3 said that money came into Ryvyl and that the Company was supposed to wire it out to other companies and take a percentage, but that the Company was making it seem like it was making much more money than it was. *Id*. CW3 stated that a lot of the wires that the Company was generating were fake, and that Ryvyl was keeping money in its accounts that was meant to be transferred onward to other companies. *Id*. According to CW3, people from other companies began to contact the Company to complain about not receiving the money to which they were entitled. *Id*. CW3 stated that CW3 would show Gilreath and Rubin that documentation did not support the numbers that Gilreath and Rubin demanded to be entered into the system, but that Gilreath and Rubin told CW3 to just do what they said. *Id*. CW3 stated that Gilreath and Rubin would have Co-Founder and Chairman Errez renegotiate it on the back end and that paperwork would subsequently follow, but that never occurred. *Id*.

CW3 stated further that after CW3 entered the information onto the system, CW3 would go back several days later to ask for documentation to support the changes and that Gilreath claimed that he would upload the documentation into the system, but that never happened. ¶71. CW3 stated that Gilreath and Rubin were responsible for setting up the wires, and that Chairman and Co-Founder Errez, Senior Treasury Analyst Gilreath and Controller Rubin would inform CW3 that the numbers had changed based upon conversations that Chairman Errez had with clients. *Id*. CW3 stated, however, that CW3 saw no documentation to support the changes that Errez, Gilreath, and Rubin were purporting to make. *Id*. CW3 stated further that Ryvyl's accounting department consisted solely of Gilreath, Rubin, Reid Granados ("Granados," Ryvyl's former Director of Finance), CFO Chung, and CW3. *Id*.

CW4's account also bolsters the strong inference of scienter alleged. CW4 served as the Executive Assistant to both Chairman Errez and Chief Operating Officer ("COO") Min Wei ("Wei") from February 2022 to July 2022. ¶72. CW4 attended weekly meetings with CFO Chung (who attended many meetings remotely from

South Korea), CEO Nisan, Co-Founder and Chairman Errez, Jacqueline Reynolds (a salesperson at the time), and former Director of Finance Granados. *Id*. CW4 confirmed that based upon CW4's attendance at weekly meetings with CEO Nisan, CFO Chung, Chairman Errez, and others, the Company's accounting, including accounting for wires that were received and sent to other companies, was inaccurate. ¶73. CW4 confirmed that the Company was generating fake wires and keeping money that was meant to be transferred onward to other companies. *Id*. CW4 stated further that red flags regarding the Company's accounting were absolutely raised during the executive meetings. *Id*. For example, CW4 stated that COO Wei informed participants at a meeting in March, April, or May of 2022 that some of the information regarding the Company's financials was incorrect and that the participants needed to review it. *Id*. CW4 said that CFO Chung agreed during that meeting that the information was incorrect. *Id*.

The Court previously held that although the accounts of CW2, CW3, and CW4 did not individually support a strong inference of scienter, they contributed to a holistic analysis in which the Court did find that a strong inference of scienter was alleged. *Cullen*, 2024 WL 898206, at *14-20. And with respect to CW4, the Court held, "[g]iven that CW4 was present at meetings with Nisan and Errez where accounting problems were raised and discussed, CW4 is in the unique position to provide additional details to the second amended complaint as to the what, when, where and how the accounting problems were raised and addressed." *Cullen*, 2024 WL 898206, at *19 n.10. Thus, these allegations again contribute to support a strong inference of scienter.

Defendants' arguments to the contrary fail. First, Defendants argue that CW allegations can never relate to a period for which the CW was not employed. Motion at 16-18. Defendants are incorrect. The Ninth Circuit has recognized that confidential witnesses can provide relevant information regarding issues during periods for which they were not employed. *See Quality Sys.*, 865 F.3d at 1145 (finding that a

confidential witness had sufficient knowledge of executive-level management's access to forecasting reports even though she was not at the company during the class period); *Webb v. Solarcity Corp.*, 884 F.3d 844, 851 (9th Cir. 2018) (considering statements from confidential witnesses even where "the majority of the CWs were not employed during the Class Period"); *see also In re Fibrogen, Inc.*, No. 21-CV-02623-EMC, 2022 WL 2793032, at *22 (N.D. Cal. July 15, 2022) ("a confidential witness need not be involved in the [alleged] process itself to have personal knowledge regarding the allegations"); *Roberts v. Zuora, Inc.*, No. 19-CV-03422-SI, 2020 WL 2042244, at *11 (N.D. Cal. Apr. 28, 2020) ("[t]hat none of the CWs was employed at [the company] during the *entire* Class Period does not in itself render their statements unreliable as a matter of law.") (italics in original); *Brendon v. Allegiant Travel Co.*, 412 F. Supp. 3d 1244, 1260 (D. Nev. 2019) ("Confidential witness accounts from before the class period [are] relevant because it can confirm what a defendant should have known during the class period.").

Second, Defendants suggest that the CW accounts rely upon hearsay or vague statements. Motion at 2, 17. However, "the fact that a confidential witness reports hearsay does not automatically disqualify his statement from consideration in the scienter calculus." *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1208 (9th Cir. 2016). And even if there were vague statements, "[v]ague or ambiguous allegations are now properly considered as a part of a holistic review when considering whether the complaint raises a strong inference of scienter." *S. Ferry*, 542 F.3d at 784. Additionally, unlike the situation here, moreover, courts have held that when "plaintiffs' allegations do not directly connect the dots between a CW's knowledge and the individual defendants," this circumstance is not "fatal" and "will not be grounds for dismissing the complaint" if a strong inference of scienter is alleged based upon "a holistic evaluation of the allegations." *Robb v. Fitbit Inc.*, No. 16-CV-00151-SI, 2017 WL 219673, at *6 (N.D. Cal. Jan. 19, 2017); *see also Carlton v. Cannon*, 184 F. Supp. 3d 428, 473-74 (S.D. Tex. 2016), *amended on denial of*

13

*reconsideration,* No. CV H-15-012, 2016 WL 3959164 (S.D. Tex. July 22, 2016) (rejecting defendants' argument that the court could not rely upon the accounts of confidential witnesses because the witnesses were purportedly "several levels removed from any operational authority"); *Flynn v. Sientra, Inc.*, No. CV1507548SJORAOX, 2016 WL 3360676, at *14 n.8 (C.D. Cal. June 9, 2016) ("Although it is true that Plaintiffs do not allege with particularity how or why the confidential witness had personal knowledge regarding Zeini and Pigeon's activities, the Court finds that Plaintiffs have included sufficient allegations to demonstrate why the witness knew that it was important for Sientra to monitor Silimed's manufacturing process.").

Third, Defendants' contention that a CW must be employed a certain amount of time before the CW can possess reliable information also fails. Motion at 17-18, 20-21. There is "no baseline requirement of such contact in order to allege sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Nguyen v. New Link Genetics Corp.*, 297 F. Supp. 3d 472, 484 (S.D.N.Y. 2018). And Defendants' assertion that the CWs are unreliable because they were purportedly "lower-level employees" (Motion at 2, 6, 17) similarly fails. *See In Re CommVault Sys., Inc. Sec. Litig.*, No. 14-CV-5628 (PGS), 2016 WL 5745100, at *7 (D.N.J. Sept. 30, 2016) (rejecting "Defendants' argument that the CW's, as low level employees, would not have first-hand knowledge of the information and were relying on gossip."). Indeed, as this Court determined citing *Quality Sys.*, the Ninth Circuit "has also noted that there is no rule that confidential witnesses must have been employed during the class period at all, let alone for the whole time . . . . CW3 and CW4 were employed during the class period, simply for short periods of time and in somewhat lower-level positions, and the Ryvyl Defendants do not explain why this matters or cite any such authority." *Cullen*, 2024 WL 898206, at *16 n.8.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
Case No. 3:23-CV-0185-GPC-SBC

Fourth, Defendants repeatedly assert that a lack of alleged stock sales negates scienter. Motion at 12-13, 15, 24. The Supreme Court, however, declared that "the absence of a motive allegation is not fatal." *Tellabs*, 551 U.S. at 325; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011) (the "absence of a motive allegation" is "not dispositive"). Although the Company Defendants cite *Webb v. Solarcity Corp.*, 884 F.3d 844 (9th Cir. 2018), *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869 (9th Cir. 2012), and *In re Downey Sec. Litig.*, No. CV 08-3261-JFW(RZX), 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009), those cases merely hold that a lack of stock sales may be relevant – not dispositive. Thus, "[s]cienter can be established even if the officers who made the misleading statements did not sell stock during the class period." *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.*, 320 F.3d 920, 944 (9th Cir. 2003). Thus, the CW allegations support a strong inference of scienter.

> **(b)** **The Severity of the Company's Internal Control Problems and Defendants' SOX Certifications Support a Strong Inference of Scienter**

The severity of the Company's internal control problems also supports a strong inference of scienter. Allegations regarding internal control deficiencies – along with a company's admission regarding "numerous material weaknesses in its internal control over financial reporting" – add to a strong inference of scienter. *VeriFone*, 704 F.3d at 708-10; *see also Mulderrig v. Amyris, Inc.*, 492 F. Supp. 3d 999, 1027–28 (N.D. Cal 2020) ("defendants' alleged failure to maintain an effective control environment, and their attestations to the contrary, supports a strong inference of scienter"); *In re Wash. Mut., Inc. Sec., Deriv. & ERISA Litig.*, 694 F. Supp. 2d 1192, 1213 (W.D. Wash. 2009) ("allegations regarding financial statements and internal controls raise a strong inference of scienter"). Additionally, Defendants' SOX certifications also add to the strong inference of scienter alleged because such certifications require executives "to access sufficient reporting information to certify

that the information provided did not omit any material facts to make the report not misleading." *Bielousov*, 2017 WL 3168522, at *7; *VeriFone*, 704 F.3d at 707-08. Thus, "the Individual Defendants' signatures certifying the Company's financial statements, along with the critical importance of the financial information being certified, support a finding of scienter." *Scott v. ZST Digital Networks, Inc.*, No. CV 11-03531 GAF (JCx), 2012 WL 538279, at *9 n.2 (C.D. Cal. Feb. 14, 2012).

Here, the Company admitted that it had material weaknesses in the Company's internal control including a material weakness related to accounting for certain complex business transactions. ¶74. As this Court held, "[t]hat Ryvyl announced one or more material weaknesses . . . in the Company's internal control," after "certifying the lack of internal control problems throughout 2021 and 2022," "supports the inference that defendants were aware of matters relevant to their certifications or recklessly failed to make themselves aware." *Cullen*, 2024 WL 898206, at *16. The Court cautioned that "[t]o be clear, this is only a minor part of the puzzle, and does not create an inference of scienter on its own," but held that holistically it added to the scienter calculus. *Id.*

### (c)   Defendants' Hands-on Management Style Supports a Strong Inference of Scienter

Allegations that defendants "were hands-on managers with respect to operational details and financial statements" also support a strong inference of scienter. *VeriFone*, 704 F.3d 694, 710; *see also Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1234 (9th Cir. 2004) ("It is reasonable to infer that the [company] executives' detail-oriented management style led them to become aware of the allegedly improper revenue recognition of such significant magnitude that the company would have missed its quarterly earnings projection but for the adjustments."). Here, CW2 stated that CEO Nisan was a hands-on manager and participated in the day-to-day decisions at the Company, and that CEO Nisan oversaw

many of the accounting responsibilities at the Company because of the lack of time that CFO Chung spent in the office. ¶68. Plaintiff also alleges that shortly after J. Drew Byelick became CFO, the Company tasked CFO Byelick to interact with Simon & Edwards – the Company's new independent registered public accounting firm. ¶49. The Company's Board had requested Simon & Edwards to perform a re-audit of the Company's financial results for the year ending December 31, 2021. *Id.* Additionally, the Company's Board also had requested that Simon & Edwards begin to review the sufficiency of the Company's internal controls. *Id.* Chairman Errez and CEO Nisan both served as members of the Company's Board. ¶¶13-14. These allegations regarding Defendants' "hands on management style" similarly support a strong inference of scienter. *City of Miami Gen. Employees' & Sanitation Employees' Ret. Tr. v. RH, Inc.*, No. 17-CV-00554-YGR, 2018 WL 1046892, at *10-11 (N.D. Cal. Feb. 26, 2018); *see also Turocy v. El Pollo Loco Holdings, Inc.*, No. SACV151343DOCKESX, 2017 WL 3328543, at *17 (C.D. Cal. Aug. 4, 2017) (same).

### (d) CFO Chung's Resignation Supports a Strong Inference of Scienter

CFO Chung's resignation also bolsters the strong inference of scienter alleged. *See, e.g.*, *Bielousov v. GoPro, Inc.*, No. 16-cv-06654-CW, 2017 WL 3168522, at *6 (N.D. Cal. July 26, 2017) (holding that resignation of the company's president bolstered the strong inference of scienter alleged); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 66281, at *14 (N.D. Cal. Jan. 4, 2017) ("Plaintiffs have pled sufficient facts to compel the inference that the [company] resignations, firings, and suspensions are strongly indicative of scienter"). On August 22, 2022, the Company announced that "[o]n August 16, 2022, Mr. Benjamin Chung resigned as Chief Financial Officer of GreenBox POS (the 'Company'), effective immediately. ¶48. CFO Chung's resignation occurred merely a few months after the Company announced that it had

dismissed BF Borgers CPA, PC as its independent registered public accounting firm, (¶41), and only a few months before the Company announced that it had to restate its financial statements.  ¶¶3, 74.  As courts have recognized, resignations that occur in tandem with financial restatements "add one more piece to the scienter puzzle." *In re Impax Laboratories, Inc. Sec. Litig.*, No. C 04-04802 JW, 2007 WL 7022753, at *9-*10 (N.D. Cal. July 18, 2007); *see also In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964, 975-976 (N.D. Cal. 2009) ("the timing of Defendants' departures might suggest that the Company believed Defendants had been involved in wrongdoing with respect to corporate finances").[5]

### (e)   The Core Operations Inference and the Company's Small Size Add to the Strong Inference of Scienter Alleged

The facts alleged also support a strong inference of scienter because they relate to the Company's core operations.  *See, e.g.*, *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 706 (9th Cir. 2021) (finding a strong inference of scienter was alleged where "numerous allegations in the complaint raise the strong inference that [the defendant] was vitally concerned with [the company's] operations"); *S. Ferry*, 542 F.3d at 785-

---

[5]     Defendants' authorities do not help them.  (Motion at 23).  For instance, *In re Dothill Sys. Corp. Sec. Litig.*, No. 06-CV-228 JLS (WMC), 2009 WL 734296 (S.D. Cal. Mar. 18, 2009), and *In re Cornerstone Propane Partners, L.P.*, 355 F. Supp. 2d 1069 (N.D. Cal. 2005), did not have the particularized facts alleged here, such as CW accounts that are indicative of scienter.  Defendants also attempt to implicate the Company's auditor and suggest that it somehow exonerates Defendants.  Motion at 5 n.1, 15.  First, Defendants are improperly seeking judicial notice of documents (Doc. 85-6) for the truth of the matter asserted.  *See Cullen*, 2024 WL 898206, at *4 ("The Court may not take judicial notice of [a document] for this purpose.").  Thus, Plaintiff objects to Defendants' Request for Judicial Notice on this ground.  Second, Defendants' argument, in fact, provides additional support for finding scienter.  *See, e.g*, *McIntire v. China MediaExpress Holdings, Inc.*, No. 11 Civ. 0804 VM, 2013 WL 752954, at *16 (S.D.N.Y. Feb. 28, 2013) (holding that allegations that "the CFO, two board members, and the independent auditor resigned" contributed "to support a reasonable finding of scienter"); *In re Diamond Foods, Inc., Sec. Litig.*, No. C 11-05386 WHA, 2012 WL 6000923, at *8 (N.D. Cal. Nov. 30, 2012) (holding that company senior management "had an independent duty to ensure compliance with GAAP and maintain effective internal controls" that "cannot be delegated" to the auditor).

86 (holding that "allegations may be used in any form along with other allegations that, when read together, raise an inference of scienter that is cogent and compelling, thus strong in light of other explanations" and that "such allegations may independently satisfy the PSLRA where they are particular and suggest that defendants had actual access to the disputed information"); *Cutler v. Kirchner*, 696 F. App'x 809, 815 (9th Cir. 2017) ("[G]eneral allegations about management's role in a corporate structure and the importance of the corporate information about which management made . . . misleading statements can satisfy the PSLRA when they are buttressed with detailed and specific allegations about management's exposure to factual information within the company."). Here, many of Plaintiff's allegations focus upon issues related to Ryvyl's payment processing revenue, which is the Company's primary source of revenue. ¶25. "Courts in the Ninth Circuit have imputed scienter where the matters at issue relate to the core operations of the company." *Tarapara v. K12 Inc.*, No. 16-CV-4069-PJH, 2017 WL 3727112, at *23 (N.D. Cal. Aug. 30, 2017).

Additionally, the Company's small size also bolsters the strong inference of scienter alleged. *See, e.g.*, *Curry v. Hansen Medical, Inc.*, No. 4:09-cv-05094-CW, 2012 WL 3242447, at *11-*12 (N.D. Cal. Aug. 10, 2012) (holding that the fact that the company was "small" with "less than 200 employees" contributed to a strong inference of scienter); *Backe v. Novatel Wireless, Inc.*, 642 F. Supp. 2d 1169, 1173, 1186 (S.D. Cal. 2009) (holding that the company's small size of 300 employees supported a strong inference of scienter); *Impax*, 2007 WL 7022753, at *10 (holding that the small size of the company – 453 employees – added to a strong inference of scienter). Here, as of January 29, 2021, the Company had approximately 18 full-time employees, and as of December 31, 2022, the Company had approximately 110 full-time employees. ¶30. Thus, "it is unlikely that transactions of this scope would fly below the radar of top management, particularly the CEO and CFO." *In re Commtouch Software Ltd. Sec. Litig.*, No. C 01-00719 WHA, 2002 WL 31417998, at

*9 (N.D. Cal. July 24, 2002). Indeed, the Court previously held that it "finds that these allegations provide some support for the inference of scienter as to the Individual Defendants, though they do not create the inference on their own." *Cullen*, 2024 WL 898206, at *17 (S.D. Cal. Mar. 1, 2024).

Considering these allegations collectively, however, as required (*Tellabs*, 551 U.S. at 322-22), Plaintiff has adequately alleged scienter under the Exchange Act.

### C.    The Court Properly Held that Plaintiff Adequately Alleged Control Person Liability With Respect to Chairman Errez, CEO Nisan, and CFO Chung

Finally, the Court properly held that Plaintiff adequately alleged control person liability with respect to Chairman Errez, CEO Nisan, and CFO Chung. "Section 20(a) makes defendant employee of a corporation who has violated the securities laws . . . jointly and severally liable to the plaintiff, as long as the plaintiff demonstrates a primary violation of federal securities law and that the defendant exercised actual power or control over the primary violator." *Cullen*, 2024 WL 898206, at *20; 15 U.S.C. § 78t(a). "[A]t the motion to dismiss stage, allegations about an individual's title and duties have been found to be sufficient to establish control." *Cullen*, 2024 WL 898206, at *20; *Mueller v. San Diego Ent. Partners, LLC*, No. 16-cv-2997, 2017 WL 3387732, at *6 (S.D. Cal. Aug. 7, 2017).

As discussed above, Plaintiff has shown a primary violation of Section 10(b) of the Exchange Act. Plaintiff has also adequately alleged that Defendants Errez, Nisan, and Chung controlled the Company. ¶¶13-20; 108-11. Defendants' arguments do not change this fact, and Defendants provide no new authority or facts that would render the Court's previous holding to be incorrect. Motion at 24-25. First, Defendants have waived this argument by failing to previously raise it. *See, e.g.*, *Niantic, Inc. v. Global++*, No. 19-CV-03425-JST, 2020 WL 8620002, at *3 (N.D. Cal. Sept. 2, 2020) ("This Court follows several others within the Ninth Circuit which have found that amending or consolidating a complaint does not give defendants a

second opportunity to raise waived objections."). Second, "a plaintiff is *not* required to show culpable participation to establish that a [defendant] was a controlling person under § 20(a)." *Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1575 (9th Cir. 1990) (italics in original). Finally, because determining whether an individual is a control person is a fact intensive matter (*Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000)), it should not be resolved as a matter of law at the pleading stage.

## V.   CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion. Alternatively, if the Court grants any portion of the Motion, Plaintiff requests leave to amend. *See Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("In this technical and demanding corner of the law, the drafting of a cognizable complaint can be a matter of trial and error.").

DATED:  August 15, 2024      **GLANCY PRONGAY & MURRAY LLP**

By:   *s/ Ex Kano S. Sams II*
Robert V. Prongay
Ex Kano S. Sams II
Charles Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email:  info@glancylaw.com

*Attorneys for Lead Plaintiff Scot S. Cook*

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
Case No. 3:23-CV-0185-GPC-SBC

## **PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On August 15, 2024, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Southern District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 15, 2024.

_s/ Ex Kano S. Sams II_____
Ex Kano S. Sams II