Sean T. Prosser (SBN 163903)
stprosser@mintz.com
Cesar M. Dulanto (SBN 318650)
cmdulanto@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
3580 Carmel Mountain Road Suite 300
San Diego, CA 92130
Telephone:  858 314 1500
Facsimile:   858 314 1501

Attorneys for Defendants
RYVYL INC., BEN ERREZ, FREDI NISAN
AND BENJAMIN CHUNG

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK CULLEN, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> RYVYL INC. F/K/A GREENBOX POS, BEN ERREZ, FREDI NISAN and BENJAMIN CHUNG, <br><br> Defendants. | Case No.  3:23-cv-0185-GPC-SBC <br><br> **REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** <br><br> DATE:      Oct. 4, 2024 <br> TIME:      1:30 p.m. <br> CTRM.:     2D <br> JUDGE:    Hon. Gonzalo P. Curiel |

# TABLE OF CONTENTS

Page

I.   PRELIMINARY STATEMENT ...................................................................................1

II.  ARGUMENT..........................................................................................................2

    A.   Plaintiff's Claims Do Not Support a Strong Inference of Scienter ...........................................................................................................2

        1.   Allegations Attributed to the CWs Do Not Support Scienter ...............................................................................................3

        2.   Plaintiff's Core Operations Theory and the Presence of a Material Weakness Do Not Suffice to Plead Scienter................6

        3.   "Post Class Period Events" Do Not Suffice to Plead Scienter ...................................................................................................8

        4.   A Holistic Review Does Not Cure the Scienter Deficiencies..............................................................................................8

    B.   Plaintiff's Control Person Claims Fail .................................................................9

III. CONCLUSION .........................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AbCellera Biologics Inc. v. Bruker Cellular Analysis, Inc.*.....................................10
  2024 WL 3074381 (N.D. Cal. June 20, 2024)

*Abdo v. Fitzsimmons* ...............................................................................................10
  2017 U.S. Dist. LEXIS 228340 (N.D. Cal. November 3, 2017)

*Backe v. Novatel Wireless, Inc.*,
  642 F. Supp. 2d 1169 (S.D. Cal. 2009) ...............................................................7

*Bielousov v. GoPro, Inc.*.............................................................................................8
  2017 WL 3168522 (N.D. Cal. July 26, 2017)

*Brendon v. Allegiant Travel Co.*,
  412 F. Supp. 3d 1244 (D. Nev. 2019) ...................................................................4

*Carlton v. Cannon*,
  184 F. Supp. 3d 428 (S.D. Tex. 2016)....................................................................4

*Curry v. Hansen Med., Inc.*,
  2012 WL 3242447 (N.D. Cal. Aug. 10, 2012)......................................................7

*Curry v. Yelp Inc.*,
  875 F.3d 1219 (9th Cir. 2017) ...............................................................................2

*Cutler v. Kirchner*,
  696 F. App'x 809 (9th Cir. 2017)...........................................................................7

*Gammel v. Hewlett-Packard Co.*,
  905 F. Supp. 2d 1052 (C.D. Cal. 2012) ................................................................6

*Hamana v. Kholi*,
  2011 WL 5077614 (S.D. Cal. Oct. 25, 2011)........................................................9

*In re Alphabet, Inc. Sec. Litig.*,
  1 F.4th 687 (9th Cir. 2021) ....................................................................................7

*In re CommVault Sys., Inc. Sec. Litig.*,
  2016 WL 5745100 (D. N.J. Sept. 30, 2016)..........................................................4

REPLY ISO DEFS.' MOTION TO DISMISS

*In re Fibrogen, Inc.*,
2022 WL 2793032 (N.D. Cal. July 15, 2022) ................................................... 3, 4

*In re Impax Labs., Inc. Sec. Litig.*,
2007 WL 7022753 (N.D. Cal. July 18, 2007) .................................................. 7, 8

*In re Quality Sys., Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017) .............................................................................. 3

*In re Ramp Networks, Inc. Sec. Litig.*,
201 F. Supp. 2d 1051 (N.D. Cal. 2002) ............................................................... 1

*In re UTStarcom, Inc. Sec. Litig*,
617 F. Supp. 2d 964 (N.D. Cal. 2009) ................................................................. 8

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prod. Liab. Litig.*,
2017 WL 66281 (N.D. Cal. Jan. 4, 2017) ............................................................ 8

*Institutional Investors Grp. v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009) ................................................................................. 4

*Lloyd v. CVB Fin. Corp.*,
811 F.3d 1200 (9th Cir. 2016) .............................................................................. 4

*Niantic, Inc v. Global++*,
2020 WL 8620002 (N.D. Cal. Sept. 2, 2020) .................................................... 10

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*,
320 F.3d 920 (9th Cir. 2003) ............................................................................... 9

*Police Ret. Sys. of St. Louis v. Granite Constr. Inc*,
2020 WL 2559939 (N.D. Cal. May 20, 2020) ..................................................... 3

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014) .............................................................................. 6

*Roberts v. Zuora, Inc.*,
2020 WL 2042244 (N.D. Cal. Apr. 28, 2020) ..................................................... 4

*S. Ferry LP v. Killinger*,
542 F.3d 776 (9th Cir. 2008) ............................................................................... 7

REPLY ISO DEFS.' MOTION TO DISMISS

*Tarapara v. K12 Inc.*,
 2017 WL 3727112 (N.D. Cal. Aug. 30, 2017) ........................................................7

*Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*,
 690 F. Supp. 2d 959 (D. Ariz. 2010) ................................................................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007)...........................................................................................9

*Webb v. SolarCity Corp.*,
 884 F.3d 844 (9th Cir. 2018) ..................................................................2, 4, 6, 8

*Zucco Partners, LLC v. Digimarc Corp.*,
 552 F.3d 981 (9th Cir. 2009) .............................................................2, 3, 4, 5, 6

**Statutes**

15 U.S.C. § 78u-4(b)(2)(A) .....................................................................................2

Defendants submit this reply memorandum in further support of their Motion to Dismiss [ECF No. 85] ("Motion") Plaintiff's Second Amended Complaint ("SAC").

## I.       PRELIMINARY STATEMENT

Plaintiff's Opposition [ECF No. 89] ("Opp.") substantially relies on this Court's prior motion to dismiss decision [ECF No. 71] ("MTD Order"), but ignores or downplays key aspects of it. For example, Plaintiff tries to avoid the Court's conclusion that he failed to plead scienter to state <u>any</u> Section 10(b) fraud claims against Defendants Ben Errez and Fredi Nisan, and further downplays the finding that he failed to plead scienter as to *any* Defendant whatsoever, including RYVYL and Benjamin Chung, with respect to any alleged misstatements in the Company's Form 10-Qs filed during 2021. Plaintiff reiterates the same allegations in the SAC without curing the deficiencies identified by the Court.

Plaintiff's amendment does not alter the conclusion that his claims are based on hindsight speculation allegedly supported by water cooler gossip and hearsay from a few anonymous low-level former employees, none of whom had the financial expertise to identify or understand the accounting issues underlying Plaintiff's allegations. Further, the few interactions alleged to purportedly connect the CWs to certain Individual Defendants are not pled with sufficient particularity regarding when or what was said or known. Such allegations are speculative, unreliable, and insufficient to establish scienter under the heightened pleading standards required by Rule 9(b) and the PSLRA. As a result, the SAC's minor adjustments do not change the conclusion that <u>Plaintiff fails to connect any CW to specific knowledge or actions by any Individual Defendant, and especially Errez and Nisan</u>. Nor does the fact that Defendants do not contest the falsity element related to a public accounting restatement save Plaintiff from his failure to satisfy his burden to plead scienter.[1] Finally, the SAC

---

[1] Securities fraud claims are commonly dismissed despite the existence of a restatement where, for example, a plaintiff fails to plead facts with particularity or sufficient to support the required strong inference of scienter. *See, e.g., In re Ramp Networks, Inc.*

1

does not plead control person liability, which requires both a predicate violation and allegations demonstrating actual control. Defendants' motion should be granted.

## II.  ARGUMENT

### A.  Plaintiff's Claims Do Not Support a Strong Inference of Scienter

A Section 10(b) claim requires Plaintiff to "state with particularity facts giving rise to a ***strong inference*** that the defendant[s] acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A) (emphasis added). Pleading scienter is "not easy to satisfy." *Webb v. SolarCity Corp.*, 884 F.3d 844, 855 (9th Cir. 2018). Courts engage in a two part inquiry: (i) examining "whether any of the allegations standing alone are sufficient to create a strong inference of scienter"; and (ii) if not, conducting a "'holistic' review of the same allegations[.]" *Curry v. Yelp Inc.*, 875 F.3d 1219, 1227 (9th Cir. 2017) (citation omitted). Plaintiff focuses on the limited claims where the MTD Order found these standards were met but tries to avoid those where they were not.

For example, the Court dismissed all Section 10(b) fraud claims alleged against Errez and Nisan (MTD Order at 37-38),[2] and all claims against all Defendants related to the SOX certifications in the Form 10-Qs for the quarters ending March 2021, June 2021, and September 2021. *Id.* at 23-24.[3] The SAC adds nothing to change this conclusion. Further, the plausible non-culpable explanations for the restatement are far more compelling than any adverse inference to support scienter.

---

*Sec. Litig.*, 201 F. Supp. 2d 1051 (N.D. Cal. 2002); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009).

[2] "As to Errez and Nisan, there is nothing to suggest that they were involved in designing the internal accounting problems and the allegations that they were aware of the nature or extent of the problems prior to the Restatement are not as compelling as the innocent allegation—that they learned of the problem in late 2022 and then issued the Restatement." MTD Order at 37:5-9.

[3] The Court found Section 10(b) claims to be stated only as to Defendants Chung and RYVYL, and only "for the financial data and statements regarding internal controls in the 2021 annual report and the first two 2022 interim financial reports and the accompanying SOX certifications." MTD Order at 36-37.

REPLY ISO DEFS.' MOTION TO DISMISS

### 1.   Allegations Attributed to the CWs Do Not Support Scienter

The Opposition underscores the shortcomings of the CWs, who do not help Plaintiff to satisfy the high burden of pleading scienter for <u>each</u> Defendant. Though Plaintiff would like the Court to believe that it is enough to provide a witness's job title, description, and responsibilities, it is not. The law is clear: "To rely on confidential witnesses, a complaint must provide 'sufficient detail about a confidential witness' position within the defendant company to provide a basis for attributing the facts reported by that witness to the witness' ***personal knowledge***.'" MTD Order at 26 (quoting *Zucco,* 552 F.3d at 995) (emphasis added). As explained in the Motion, "[s]ome of the confidential witnesses were simply not positioned to know the information alleged, many report only unreliable hearsay, and others allege conclusory assertions of scienter." *Zucco*, 552 F.3d at 996 (finding CWs did not satisfy scienter). Moreover, contrary to Plaintiff's naked assertion (Opp. at 7), the limited additional detail provided in the SAC does not establish reliability.[4] Further, that the CWs were not employed during most of the class period or at the time of the various filings at issue further undercuts any notion that these low-level employees could satisfy the high burden of scienter. *See* Defs.' Opening Brief [ECF No. 85-1] ("Mot.") at 17-18; *Zucco*, 552 F.3d at 996-98 (dismissing accounts because CWs "were simply not positioned to know the information alleged, many report[ed] only unreliable hearsay, and others allege[d] conclusory assertions of scienter").[5] While low-level employees may satisfy

---

[4] Plaintiff cites *Police Ret. Sys. of St. Louis v. Granite Constr. Inc*, 2020 WL 2559939, at *7 (N.D. Cal. May 20, 2020), for the proposition that the CWs were pled with sufficient detail, but that case recognizes that a CW's position is not enough. Unlike here, in *Granite Constr.* most of the CWs had deep financial expertise, worked directly on accounting issues at-issue, and had "personal knowledge of defendants' involvement to establish that the defendants had personal knowledge of the cost overruns and GAAP violations that underlie this action." *Id.*

[5] Plaintiff's argument to the contrary relies on inapposite cases. *See In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1145 (9th Cir. 2017) (relying on former executive for his "personal knowledge of executive-level management's real-time access"); *In re*

scienter under specific circumstances, Plaintiff's cases highlight the deficiencies of their own low-level CWs. *See, e.g., Carlton v. Cannon,* 184 F. Supp. 3d 428 (S.D. Tex. 2016) (relying on low-level employees employed for 1.5 years and <u>possessed relevant expertise</u>); *In re CommVault Sys., Inc. Sec. Litig.*, 2016 WL 5745100 (D. N.J. Sept. 30, 2016) (CWs had "<u>firsthand knowledge</u>" and alleged specific accounting numbers that were being "skimmed"). Here, the CWs' alleged office cooler gossip and hearsay is insufficient, and Plaintiff's purported authority to the contrary is readily distinguishable. *See Lloyd v. CVB Fin. Corp.,* 811 F.3d 1200, 1208 (9th Cir. 2016) (relying on hearsay "involv[ing] important communications from a chief executive officer to his Board," where allegations were "specific in time, context, and details"). Plaintiff's other cases stand for the unremarkable proposition that a holistic review of the allegations must be conducted.

CW1 (*HR generalist*), CW2 (*marketing* employee), and CW4 (*assistant*) all are unnamed, short-term, and low-level employees without the financial expertise or personal knowledge necessary to satisfy scienter under these circumstances. *See* Mot. at 17-18*; Zucco*, 552 F.3d at 996 (disregarding witnesses "not employed" during time period in question that "have only secondhand information"). The SAC does not fix those shortcomings, nor does Plaintiff explain how these CWs sufficiently support

---

*Fibrogen, Inc.*, 2022 WL 2793032, at *21 (N.D. Cal. July 15, 2022) (CWs held <u>senior positions</u> during the class period and could testify regarding divergence from usual practice); *Roberts v. Zuora, Inc.,* 2020 WL 2042244, at *11 (N.D. Cal. Apr. 28, 2020) (relying on "high-level" CWs who were employed the majority of the class period and intimately involved with the product at issue); *Brendon v. Allegiant Travel Co.,* 412 F. Supp. 3d 1244, 1260 (D. Nev. 2019) (in case about maintenance and repair issues, CWs occupied "front-line maintenance positions" and all but one CW were employed during class period); *see also Institutional Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 249 n.13 (3d Cir. 2009) (concerning post-class *statements* not CWs). Finally*, Webb*, 884 F.3d at 856 (9th Cir. 2018), reinforces why this Court should dismiss Plaintiff's claims, as the CWs were found to be insufficient to plead scienter, finding that even under a holistic review, at best, the complaint "paint[ed] a picture of a mismanaged organization in need of closer financial oversight."

REPLY ISO DEFS.' MOTION TO DISMISS

scienter with respect to any Defendant. They do not. *See* Mot. at 15-21.

**CW1.** Plaintiff cannot change the fact that CW1 was a junior *human resources* generalist allegedly with rudimentary training regarding the Company's chargebacks system during her first month of employment, and ***zero*** alleged direct communication with any Individual Defendant. While Plaintiff alleges that CW1 had some role related to *volume* (but not revenues, earnings or internal controls), he does not explain (and the SAC does not allege) (i) the percentage of transactions that CW1 was exposed to; (ii) what expertise CW1 had to enable her to connect volume to the reported revenue (the alleged misstatement); and (iii) what specifically CW1 saw or how she saw it. Even if Plaintiff could satisfy those hurdles, the SAC still fails to connect CW1's knowledge to any specific quarter, SEC filing or Individual Defendant. *See, e.g., Zucco*, 552 F.3d at 997 (dismissing vague account based on hearsay). CW1's purported speculation or belief that certain Defendants were informed by *someone else* is woefully insufficient.

**CW2.** CW2 worked in *marketing*, alleges office cooler gossip about the Company's former CFO, and alleges some vague conversations about the Company's accounting (a subject matter over which she has no stated expertise or exposure) with dismissed defendant Byelick "in the office" or "while golfing." Notably, CW2 had no alleged interaction with *any* Individual Defendant, and Byelick's supposed statements to CW2 at unknown locations and times about unidentified financial statements and figures are unreliable and cannot satisfy the high standard required to plead scienter. Mot. at 19-20. CW2's belief that the accounting department was short-staffed and that an unnamed receptionist occasionally assisted with expense reporting adds nothing.

**CW4.** CW4, a former executive assistant *not at the Company during 2021*, alleges vague hearsay about the Company's accounting culture. CW4 alleges that unidentified and unexplained "red flags" were raised during undated meetings by an unknown source, and without any detail alleges that an unnamed individual sent "fake wires without blinking any eye." Not only is it unclear how CW4 could understand the supposed conversations about the Company's financials without any financial expertise

REPLY ISO DEFS.' MOTION TO DISMISS

(*see* Mot. at 21), but such vague recollections of alleged events is plainly insufficient.

**CW3.** CW3 worked in the accounting department but *only for a brief* <u>*three months in mid-2022*</u>. So not only was CW3 not employed at all during the time of the Company's 2021 filings challenged by Plaintiff, but this alleged witness only makes vague assertions without any specifics about documentation that was or was not allegedly uploaded into the accounting system. For example, while CW3 alleges vague undated conversations with Errez, he alleges only that Errez noted unspecified numbers changed based on conversations with unspecified clients. As CW3 admits, he did not see underlying documentation related to the changes. Thus, it is more likely than not that such changes were supported and proper, but no one explained them to CW3. Moreover, the Court previously found "CW3 does not allege having personal knowledge of Individual Defendants' scienter." MTD Order at 30. The only new allegations concerning CW3 are what CW3 supposedly heard from other non-defendants, though CW3 admits he did not personally see support for changes to the figures. SAC ¶ 71. The fact that a short-time, staff-level employee like CW3 did not see documentation does not mean that none existed or that the reasons for changes were fabricated. *See* Mot. at 9, 20-21.

> **2.    Plaintiff's Core Operations Theory and the Presence of a Material Weakness Do Not Suffice to Plead Scienter**

"Proof under th[e core operations] theory is not easy." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014). A plaintiff "must produce either specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations, such as data monitoring . . . or witness accounts demonstrating that executives had actual involvement in creating false reports." *Id.* Plaintiff has done neither and has not satisfied this hefty burden, and simply alleging a hands-on managerial style is not enough. *See* Mot. at 22-23 (citing *Webb*, 884 F.3d at 857; *Zucco*, 552 F.3d at 1000; *Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1078 (C.D. Cal. 2012)). Rather than distinguishing Defendants' on-

point case law or their showing that the facts alleged here are insufficient to find scienter based on the core operations doctrine (*see* Mot. at 22 (citing cases)), Plaintiff instead cites a handful of cases with highly distinguishable fact patterns. Once again, those cases underscore the defects in Plaintiff's own allegations. *See In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 706 (9th Cir. 2021) (finding complaint alleged scienter as to Google's CEO where his direct reporting employee, another defendant, was alleged to have reviewed a memo concerning largest data breach in Google's history; reasoning it was "not plausible" CEO did not know about the breach given the company "depends on data security"); *S. Ferry LP v. Killinger*, 542 F.3d 776, 785 (9th Cir. 2008) (to satisfy scienter, core operations allegations must be "made in conjunction with detailed and specific allegations about management's exposure to factual information within the company."); *Cutler v. Kirchner,* 696 F. App'x 809, 815 (9th Cir. 2017) (similar); *Tarapara v. K12 Inc.*, 2017 WL 3727112 (N.D. Cal. Aug. 30, 2017) (using core operations theory to impute scienter for misstatements where it would have been "absurd" for defendants not to know about key contract that was not being renewed).

Nor do the readily distinguishable cases suggest that RYVYL's smaller size moves the needle on scienter. Unlike in Plaintiff's authorities, RYVYL's restatement had nothing to do with defects in products, services or loss of customers. Rather, it related to technical accounting issues. *Compare Curry v. Hansen Med., Inc.*, 2012 WL 3242447, at *11 (N.D. Cal. Aug. 10, 2012) (revenue came from one product with only 3-14 units of that product sold and defendants admitted they "closely monitored revenue recognition"); *Backe v. Novatel Wireless, Inc.,* 642 F. Supp. 2d 1169, 1191 (S.D. Cal. 2009) (where Sprint canceled contract with Novatel accounting for nearly 40% revenue and those core operation allegations were "coupled with the suspicious [stock] sales"); *In re Impax Labs., Inc. Sec. Litig.,* 2007 WL 7022753, at *10 (N.D. Cal. July 18, 2007) (individual defendants were "a small core of managers" "fully focused" on the sales at issue).

7

### 3.    "Post Class Period Events" Do Not Suffice to Plead Scienter

The SAC refers to several "Post Class Period Events," including three officer departures, two of whom were expressly serving as *interim* officers (and obviously not expected to stay long-term), changes in the Company's compensation plan, the Company's inability to timely file its 2022 Annual Report, and an additional announcement of material weaknesses in internal controls, along with a remediation plan. ¶¶ 76-86. Plaintiff's Opposition focuses only on Chung's resignation, thereby conceding that the other allegations do not support scienter.

As set forth in the Motion, courts in this Circuit are loath to presume officer resignations represent a cogent theory of scienter. *See* Mot. at 23 (citing cases).[6] Somewhat quizzically, Plaintiff focuses on Chung's resignation, which occurred ***several months before*** the Company concluded (with the assistance of its new outside auditor) that its previously issued financials could no longer be relied upon. SAC ¶ 53. None of the cases Plaintiff cites support the conclusion that a CFO's resignation ***months before*** a company knew it would need to restate bolsters a finding of scienter. *See, e.g.,* Opp. at 17-18 (citing *Bielousov v. GoPro, Inc.*, 2017 WL 3168522 (N.D. Cal. July 26, 2017) (resignation after); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prod. Liab. Litig.*, 2017 WL 66281 (N.D. Cal. Jan. 4, 2017) (exits after); *In re Impax Labs.*, 2007 WL 7022753 (resignation after); *In re UTStarcom, Inc. Sec. Litig*, 617 F. Supp. 2d 964 (N.D. Cal. 2009) (resignation amidst SEC investigation).

### 4.    A Holistic Review Does Not Cure the Scienter Deficiencies

A holistic review of Plaintiff's otherwise deficient theories of scienter does not create a "cogent and compelling" strong inference of scienter. At best, Plaintiff's "allegations paint a picture of a[n understaffed and] mismanaged organization in need of closer financial oversight," which is insufficient. *Webb,* 884 F.3d at 856.

---

[6] Plaintiff does not attempt to distinguish these cases in any meaningful way. *See* Opp. at 18 n.5 (distinguishing cases on unrelated points).

REPLY ISO DEFS.' MOTION TO DISMISS

As set forth in Defendants' Motion, a far more plausible and innocent explanation for the Company's restatement is that its <u>new</u> auditor detected previously unknown errors by RYVYL's former (and now disgraced) auditor (BF Borgers), which RYVYL terminated and replaced in April 2022. (*See* Mot. at 5, 15; SAC ¶ 41). While the accounting errors are known now, they were not at the time of the SEC filings at issue, and Plaintiff alleges no specific contemporaneous facts indicating otherwise. Plaintiff fails to allege any specific facts demonstrating any Individual Defendant "'knowingly and recklessly engaged in an improper accounting practice,'" such as where an external auditor had "counseled against a practice." Mot. at 15 (citing cases). And while Plaintiff points out that insider stock sales (which do not exist here) are not necessary to plead scienter, that Plaintiff has failed to articulate ***any motive*** to commit securities fraud, much less a cogent and compelling one, tips the scale in favor of finding no scienter. Here, the far more logical inference is that accounting errors were inadvertent and previously unknown, and the Company reported them to shareholders promptly after the new auditor identified prior errors. This more logical inference prevails. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

**B.     Plaintiff's Control Person Claims Fail**

The Section 20(a) claim against all Individual Defendants fails because it requires both: (1) a primary violation of federal securities laws ***and*** (2) facts demonstrating that *each* Individual Defendant exercised ***actual power or control*** over the primary violator. *See No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 945 (9th Cir. 2003) (emphasis added). Plaintiff argues that Defendants waived the argument that the SAC fails to plead facts sufficient to satisfy the "power or control" element, and he otherwise is not required to plead allegations demonstrating control. *See* Opp. at 20. Plaintiff is wrong on both fronts.

The law is clear that Defendants have not waived an argument first made in connection with an amended complaint. *See Hamana v. Kholi*, 2011 WL 5077614, at *1 (S.D. Cal. Oct. 25, 2011) ("Under Fed.R.Civ.P. 12(g)(2), a defendant can move to

9

dismiss *an amended complaint* for failure to state a claim based on arguments not raised in its first motion to dismiss.") (emphasis added) (citing, *e.g.*, *In re Harmonic, Inc., Sec. Litig.*, 2006 WL 3591148, at *12 (N.D. Cal. Dec. 11, 2006) ("defenses for failure to state a claim may be presented at any time . . . and under Rule 12(g), a party does not waive a ground for moving to dismiss for failure to state a claim by not including that ground in an earlier motion to dismiss")). In fact, *AbCellera Biologics Inc. v. Bruker Cellular Analysis, Inc. recently rejected the same argument* raised by Plaintiff and clarified that "the defense of failure to state a claim upon which relief can be granted cannot be waived." 2024 WL 3074381, *3 (N.D. Cal. June 20, 2024) (explicitly rejecting notion that *Niantic, Inc v. Global++,* 2020 WL 8620002, at *3 (N.D. Cal. Sept. 2, 2020) required waiver of a motion to dismiss argument).

Additionally, Plaintiff must allege facts demonstrating control. *See* Mot. at 25 (citing *Abdo v. Fitzsimmons,* 2017 U.S. Dist. LEXIS 228340, at *67-69 (N.D. Cal. Nov. 3, 2017).[7] Rather than distinguishing this case law or demonstrating that Plaintiff has sufficiently alleged Defendants' actual exercise of power over RYVYL, he merely argues that such allegations are not required.

## III.   CONCLUSION

Based on the reasons set forth in Defendants' moving papers, as well as those presented herein, Defendants' motion to dismiss should be granted.

DATED:  September 16, 2024

MINTZ LEVIN COHN FERRIS
GLOVSKY AND POPEO P.C.

By:*/s/ Sean T. Prosser*
Sean T. Prosser
Cesar Dulanto
Attorneys for Defendants

---

[7] *See also Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.,* 690 F. Supp. 2d 959, 972 (D. Ariz. 2010) (examining amended complaint "to ascertain whether it sufficiently alleges control" to support claims "against each of the defendants," and concluding that some defendants, including the president and a director, were not alleged to have sufficient control to support a Section 20(a) claim).