1
2
3
4
5
6
7

8                          UNITED STATES DISTRICT COURT

9                         SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 MARK CULLEN and SCOT S. COOK, individually and on behalf of all others similarly situated,, | Case No.: 3:23-cv-00185-GPC-SBC |
| | **ORDER:** |
| Plaintiffs, | **(1) PROVISIONALLY APPROVING CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS;** |
| v. | |
| RYVYL INC. F/K/A GREENBOX POS, BEN ERREZ, FREDI NISAN, and BENJAMIN CHUNG, | **(2) APPOINTING CLASS COUNSEL;** |
| Defendants. | **(3) CONDITIONALLY APPROVING THE PROPOSED NOTICE FORM AND METHOD OF NOTICE;** |
| | **(4) APPROVING LEAD PLAINTIFF'S PLAN OF ALLOCATION;** |
| | **(5) GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| | **[ECF No. 106]** |

1

Before the Court is Lead Plaintiff Scot S. Cook's unopposed motion for preliminary approval of Class Settlement.  ECF No. 106 ("motion for preliminary approval" or "Mot.").  On August 18, 2025, the Court held a hearing on this matter.  ECF No. 111.  For the reasons set forth below, the Court provisionally approves certification of the proposed Settlement Class for the limited purposes of Settlement; conditionally approves the proposed Notice Form and the Proof of Claim Form; approves the Plan of Allocation detailed by Lead Counsel in Lead Plaintiff's moving papers; and **GRANTS** preliminary approval of the parties' Settlement of this class action.

## BACKGROUND

### I.    Underlying Action

On February 1, 2023, Plaintiffs Mark Cullen and Scot S. Cook, ("Plaintiffs") individually and on behalf of all others similarly situated, filed a class action complaint against Defendants RYVYL, Inc. ("Ryvyl"); Chairman Ben Errez, CEO Fredi Nisan, CFO Benjamin Chung, and former CFO J. Drew Byelick (the "Ryvyl Defendants"); and brokerage firms EF Hutton and R.F. Lafferty & Co. (the "Underwriter Defendants") for violations of federal securities laws.[1]  *See generally* ECF No. 1 ("Compl.").

Ryvyl is a cryptocurrency company "focused on developing, marketing, and selling blockchain-based payment solutions."  ECF No. 93 ("TAC") ¶ 2.  On November 12, 2024, Plaintiffs filed the operative TAC, alleging that Defendants violated Sections 10(b) and 20(a) Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. §§ 78j(b) and 78t(a)) and SEC Rule 10b-5, which is promulgated thereunder.  *Id.* ¶ 1.  Specifically, Plaintiffs allege that Defendants are liable for several of Ryvyl's SEC filings which contained "materially false and/or misleading" statements about Ryvyl's internal controls, financial statements, and business prospects, and which unlawfully inflated

---

[1] Byelick was formerly a defendant in this matter but the Court dismissed him as a defendant without prejudice.  ECF No. 78.  The Court also dismissed the Underwriter Defendants.  ECF No. 71.  Plaintiffs chose not to name Byelick or the Underwriter Defendants as defendants in the Second Amended Complaint, and thus they are no longer defendants in this action.  *See* ECF No. 80.

Ryvyl's stock price between January 29, 2021 and January 20, 2023. *Id.* ¶ 2; *see also id.* ¶¶ 30–62. Plaintiffs allege that Defendants violated Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and SEC Rule 10b-5 (17 C.F.R. § 240.10b-5) for "disseminat[ing] or approv[ing] … materially false and misleading statements … which they knew, or were deliberately reckless in not knowing, were misleading." *Id.* ¶¶ 118–23. Further, Plaintiffs allege that the Ryvyl Defendants violated Section 20(a) of the Exchange Act (15 U.S.C. § 78t(a)) by influencing and controlling Ryvyl's decision-making, "including the content and dissemination of the various statements alleged to be false and misleading[.]" *Id.* ¶¶ 124–28.

## II.    Procedural History

On February 1, 2023, Plaintiff Mark Cullen filed a putative class action complaint against Ryvyl, the Ryvyl Defendants, and the Underwriter Defendants, alleging violations of the Securities Act of 1933 and the Exchange Act. *See generally* Compl.

On April 3, 2023, Plaintiff Scot S. Cook moved the Court to appoint him Lead Plaintiff and to approve his selection of Glancy. ECF Nos. 5-8, 11, 16, 19. On May 9, 2023, the Court granted the unopposed motion and appointed Plaintiff Scot S. Cook ("Lead Plaintiff") as Lead Plaintiff for the putative class of persons or entities "who purchased the Company's securities between January 29, 2021 and January 20, 2023, inclusive." ECF No. 20. The Court also approved Lead Plaintiff's selection of Glancy Prongay & Murray LLP ("GPM") as Lead Counsel. *Id.*

On June 30, 2023, Lead Plaintiff filed the First Amended Complaint, ECF No. 33 ("FAC"), averring more detailed accounts from former Ryvyl employees to support the same alleged violations from the initial complaint. *See generally* FAC. On August 14, 2023, the Underwriter Defendants filed a motion to dismiss the FAC, ECF No. 41, while Ryvyl and the Ryvyl Defendants (with the exception of Defendant Byelick) filed a separate motion to dismiss the FAC, ECF No. 41. On August 23, 2023, Defendant Byelick filed his own individual motion to dismiss the FAC. ECF No. 53. On September 28, 2023, Plaintiffs filed an omnibus opposition to all the motions to dismiss. ECF No.

58.  On October 24, 2023, Defendant Byelick replied and on October 27, 2023, the Ryvyl Defendants and the Underwriter Defendants replied.  ECF Nos. 60–62.

On November 27, 2023, the Court granted the parties' joint motion to vacate the scheduled hearing on the motions to dismiss to "resolve the litigation through mediation as soon as feasible, and without a ruling on the pending motions to dismiss at this time." ECF Nos. 64–65.  On February 6, 2024, the parties participated in private mediation before Jed Melnick, Esq. of JAMS, but did not reach an agreement.  ECF No. 68.

On March 1, 2024, the Court granted the motions to dismiss by the Underwriter Defendants and Defendant Byelick, and granted in part and denied in part the motion to dismiss by Ryvyl and the other Ryvyl Defendants.  ECF No. 71.  The Court denied the motions to dismiss the Exchange Act claims under Section 10(b) and Rule 10b-5 only as to Defendants Chung and Ryvyl and only as to certain misstatements they made in the 2021 annual report and the first two 2022 interim reports.  *Id.* at 18–39.[2]  The Court also denied the motions to dismiss the Section 20(a) claims as to Defendants Nisan, Errez, and Chung.  *Id.* at 38-40.  The Court granted the motions to dismiss the claims on all other grounds and granted Plaintiffs leave to amend.  *Id.* at 40.

On May 1, 2024, Plaintiffs filed a Second Amended Complaint.  ECF No. 80 ("SAC").  Plaintiffs modified the class period to begin on May 13, 2021 and end on January 20, 2023 (the "Settlement Class Period") and narrowed the claims to only allege Exchange Act violations against Ryvyl, Chairman Errez, CEO Nisan, and CFO Chung (the instant "Defendants").  *See generally* SAC.  On July 1, 2024, the Defendants filed a motion to dismiss the SAC.  ECF No. 85.  On October 21, 2024, the Court granted in part and denied in part the motion to dismiss the Section 10(b) and Rule 10b-5 claims, finding that (i) Plaintiff stated a claim against Defendants Ryvyl, Chung, and Nisan for misstatements in the 2021 annual report and the first two 2022 interim reports; (ii)

---

[2] Page numbers reflect CM/ECF pagination.

Plaintiff stated a claim against Defendants Ryvyl and Nisan for additional misstatements in the 2022 third quarter report; (iii) Plaintiff failed to state a claim against Defendant Ryvyl, Chung, and Nisan for misstatements in the 2021 interim reports; and (iv) Plaintiff failed to state a claim against Defendant Errez. *Id.* at 30.  The Court further denied the motion to dismiss the Section 20(a) claims as to all Defendants. *Id.* at 33.  The Court granted Plaintiffs leave to amend. *Id.*

On November 12, 2024, Plaintiffs filed the TAC, alleging additional facts in an attempt to cure the defects noted in the Court's previous order granting in part and denying in part Defendants' motion to dismiss the SAC. *See generally* TAC.

## III.    The Settlement

From November 2024 to March 2025, the Court granted three separate joint motions for extension of time for Defendants to respond to the TAC as the parties continued private mediation and negotiation talks with Mr. Melnick.  ECF Nos. 94–99.  On February 28, 2025, the parties finalized and executed a Memorandum of Understanding on an agreement to settle the claims.  ECF No. 105 at 2.  The Court stayed the case pending the parties' formal agreement to, and the Court's consideration of, the proposed settlement.  ECF No. 101.

In the Stipulation and Agreement of Settlement, Defendants and Lead Plaintiff, individually and on behalf of all settlement class members, agreed to settle and release the asserted claims.  ECF No. 106-3 ("Stipulation") at 1–2.  The Stipulation covers "all persons and entities that purchased the publicly traded common stock of Ryvyl Inc. (NASDAQ: RVYL) and/or Greenbox POS (NASDAQ: GBOX) between May 13, 2021 and January 20, 2023, both dates inclusive, and were damaged thereby" (the "Settlement Class"[3]).  *Id.* ¶ 1(zz).  The Stipulation settles and releases

> all claims and causes of action of every nature and description, whether known claims or Unknown Claims, whether arising under federal, state, common or

---

[3] For purposes of this Order, the Court adopts the definitions in the Stipulation for all capitalized terms relating to the Settlement.  *See* Stipulation ¶ 1.

foreign law, that Lead Plaintiff or any other member of the Settlement Class: (i) asserted in the Third Amended Class Action Complaint for Violations of the Federal Securities Laws …; or (ii) could have asserted in any forum that arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint and that relate to the purchase of publicly traded Ryvyl and/or Greenbox common stock during the Settlement Class Period.

Stipulation ¶ 1(rr).  The Stipulation requires Defendants to pay $300,000 in cash into an escrow account for the benefit of the Plaintiffs, as well as 700,000 freely tradable shares of Ryvyl common stock.  *Id.* ¶¶ 1(eee), 8–9.  This amount of cash and shares, plus interest, constitute the "Settlement Fund."  *Id*. ¶ 1(ccc).  After Notice and Administration Expenses, Taxes and Tax Expenses, Court-approved attorneys' fees and expenses, any awards to the Lead Plaintiff, and any other Court-approved deductions have been paid from the Settlement Fund, the remaining amount (the "Net Settlement Fund") shall be distributed pursuant to the Plan of Allocation to claimants who are entitled to a distribution.  *Id*. ¶ 1(dd), 1(ff), 1(jj).  The estimated average recovery is $0.04 per eligible share for each Settlement Class member (accounting for the deduction of fees, expenses, and costs).  Stipulation, Exhibit A-4 (Postcard Notice).

Settlement Class members will be given Notice of the Settlement Agreement after the Court's Preliminary Approval Order.  *Id.* ¶¶ 25–26.  Lead Plaintiff proposes posting downloadable online copies of a long-form Notice (*Id.*, Exhibit A-1) and a Claim Form (*Id.*, Exhibit A-2), publishing a Summary Notice (*Id.*, Exhibit A-3), and mailing a Postcard Notice (*Id.,* Exhibit A-4) to Settlement Class members who would be identified through reasonable effort, including from Ryvyl's stock transfer records.  *Id.* ¶ 26.

As noted, any Settlement Class member who wishes to receive a payment from the Net Settlement Fund must establish that they are entitled to such a distribution by submitting a Proof of Claim and Release Form substantially in the form of Exhibit A-2, along with supporting documents described therein.  *Id.*, Exhibit A-2.  Payments pursuant to the Settlement shall be deemed final and conclusive against all Claimants.  *Id.* ¶ 34. Any "Settlement Class Member who does not submit a valid Claim Form will not be

entitled to receive any distribution from the Net Settlement Fund," and will permanently release any claims they might have against the Released Defendant Parties with respect to the Released Plaintiff's Claims. *Id.* ¶ 29. However, if the Court grants any person or entity's request for exclusion from the Settlement Class, this release will not apply to that person or entity. *Id.* ¶ 1(zz), 6.

After a competitive bidding process, Lead Counsel selected Simpluris (the "Claims Administrator") to serve as Claims Administrator for the Settlement. ECF No. 106-2, Declaration of Ex Kano S. Sams II ("Sams Decl.") ¶ 16. The Claims Administrator will "process claims under the guidance of Lead Counsel, allow Claimants an opportunity to cure any Claim deficiencies or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their pro rata share of the Net Settlement Fund (per the Plan of Allocation), after Court approval." *Id.*

The Parties have the right to terminate the Settlement if it does not become final. Stipulation ¶ 41. Defendants also have the right to terminate the Settlement if requests for exclusion exceed an agreed-upon threshold set forth in a confidential supplemental agreement between the parties. *Id.* ¶ 42. If the parties terminate the Settlement, the parties will revert to their respective positions in the litigation as of February 28, 2025. *Id.* ¶ 40(b).

On July 15, 2025, Lead Plaintiff filed the unopposed motion for preliminary approval of class action settlement. *See generally* Mot.

## DISCUSSION

### I.    Legal Standard

The Ninth Circuit has a strong judicial policy that favors settlements in class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, when the parties settle before class certification, the court must "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). To that end, a reviewing court must engage in two-step process. First, the court must "direct notice in a

reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Federal Rule of Civil Procedure ("Rule") 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Second, after providing the class with notice of the proposed settlement, a reviewing court may then approve it only after a hearing and finding that it is "fair, reasonable, and adequate." Fed. R. Civ. 23(e)(2).

At the preliminary approval stage, the reviewing court is engaged in the first inquiry and therefore only considers whether it is likely to approve of the proposal and certify the class.  Fed. R. Civ. P. 23(e)(1)(B).

## II.    Provisional Class Certification under Rule 23

Rule 23(a) establishes four prerequisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  Fed. R. Civ. P. 23(a). Further, under Rule 23(b)(3), common questions must predominate over individual questions, Fed. R. Civ. P. 23(b)(3), and the class action device must be "superior to other available methods for fairly and efficiently adjudicating the controversy."  *Id*.  The Court does not finally certify a class when granting preliminary approval of a settlement for the purpose of directing notice to class members, but rather determines whether "the court will likely be able to … certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B).

In the context of securities litigation, class actions are "particularly well-suited" because "geographically dispersed shareholders with relatively small holdings" may not otherwise pursue their claims.  *In re VeriSign, Inc. Sec. Litig.*, No. C 02-02270 JW, 2005 WL 7877645, at *9 (N.D. Cal. Jan. 13, 2005).  As such, it is "well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws."  *In re NetSol Techs., Inc. Sec. Litig.,* No. CV 14-5787 PA (PJWx), 2016 WL 7496724, at *3 (C.D. Cal. July 1, 2016) (citation omitted).

1    Lead Plaintiff seeks certification of a settlement class consisting of "all persons

2    and entities that purchased the publicly traded common stock of Ryvyl Inc. (NASDAQ:

3    RVYL) and/or Greenbox POS (NASDAQ: GBOX) between May 13, 2021 and January

4    20, 2023, both dates inclusive (the "Settlement Class Period"), and were damaged

5    thereby," except those specifically excluded in ¶ 1(zz) of the Stipulation.  Mot. at 26.

6        For the following reasons, the Court finds that it will likely be able to certify the

7    class for purposes of settlement under Rule 23.

8        **A. Numerosity**

9        The numerosity requirement under Rule 23(a)(1) is met if "the class is so

10   numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "As a

11   general matter, courts have found that numerosity is satisfied when class size exceeds 40

12   members, but not satisfied when membership dips below 21."  *Slaven v. BP Am., Inc.*,

13   190 F.R.D. 649, 654 (C.D. Cal. 2000).  The exact size of the class does not need to be

14   known as long as general knowledge and common sense support that the class is

15   sufficiently large.  *Vinh Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 56, 569 (C.D. Cal

16   2012).

17       Here, Lead Counsel estimates that the proposed settlement class would consist of

18   "hundreds, if not thousands, of purchasers of Ryvyl/Greenbox POS common stock during

19   the Settlement Class Period."  Mot. at 27.  A class consisting of potentially thousands of

20   purchasers of Ryvyl/Greenbox stock would be too numerous to join.  The Court therefore

21   finds that the settlement class satisfies the numerosity requirement.

22       **B. Commonality**

23       Rule 23(a)(2) requires the existence of "questions of law or fact common to the

24   class."  Fed. R. Civ. P. 23(a)(2).  Commonality is established if plaintiffs and class

25   members' claims "depend upon a common contention . . . capable of class-wide

26   resolution—which means that determination of its truth or falsity will resolve an issue

27   that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores,*

28   *Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Not every question of law or fact must be

common to the class. *Abdullah v. U.S. Sec. Assocs., Inc.,* 731 F.3d 952, 957 (9th Cir. 2013).

Here, the Settlement Class members are those individuals who purchased Ryvyl Inc. or Greenbox POS common stock during the Settlement Class Period. There are clear questions that are common to all class members, including: (1) whether Defendants omitted and/or misrepresented material facts about Ryvyl's internal controls and financial performance in public statements during the Settlement Class Period; (2) whether Defendants made such statements with scienter; (3) whether Defendants violated the federal securities laws through such omissions or misrepresentations; and (4) the extent of damages suffered by the Settlement Class and the appropriate measure. Mot. at 28–30. The proposed class clearly meets Rule 23(a)(2)'s commonality requirement. *See Ansell v. Laikin*, No. CV 10-9292 PA (AGRx), 2012 WL 13034812, at *4 (C.D. Cal. July 11, 2012) (finding commonality for settlement purposes where common questions included (i) whether defendants violated federal securities laws; (ii) whether defendants omitted material facts in statements to the investing public; and (iii) the extent and proper measure of damages); *see also Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) ("[A] class meets Rule 23(a)(2)'s commonality requirement when the common questions it has raised are apt to drive the resolution of the litigation, no matter their number.") (internal quotation marks and citation omitted). The Court therefore finds that the proposed class satisfies the commonality requirement.

**C. Typicality**

Rule 23(a)(3) demands that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The named plaintiff must be a member of the class they seek to represent and must "possess the same interest and suffer the same injury" as putative class members. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (citation omitted). The representative claims are typical if they are "reasonably co-extensive with those of absent class members," though

they "need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Here, the Court appointed Scot S. Cook as Lead Plaintiff. ECF No. 20. Lead Plaintiff alleges that he lost over $1.5 million because of Defendants' alleged fraud. ECF No. 7-5. Lead Plaintiff, like other class members, "purchased Ryvyl securities during the Class Period and suffered losses" arising "from the artificial inflation of Ryvyl common stock price caused by Defendants' alleged misrepresentations and omissions." ECF No. 7-1 at 7. Thus, Lead Plaintiff's claims for damages are based upon the same legal theory, events, and course of conduct as the Settlement Class' claims. Mot. at 29. The Court therefore finds that Lead Plaintiff satisfies the typicality requirement.

**D. Adequacy**

Under Rule 23(a)(4), representative parties must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In analyzing whether Rule 23(a)(4) has been met, the Court must ask two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. Law Offs. of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (citation omitted). The adequacy of representation requirement is designed to deny certification in instances of "*actual* fraud, overreaching, or collusion." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (emphasis in original).

It does not appear that Lead Plaintiff has any interests in conflict with the Settlement Class. Lead Plaintiff "believes he has the largest financial interest among movants and is presumptively 'the most adequate plaintiff.'" ECF No. 7-1 at 6. His interests in recovering for his financial losses are aligned with those of the other class members. *See Mild v. PPG Indus., Inc*., No. 2:18-CV-04231-RGK-JEM, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) (finding plaintiff's interests to be coextensive with the interests of the settlement class where plaintiff, like other class members, purchased stock at artificially inflated prices due to defendant's materially false or

11

misleading statements).  Lead Plaintiff has demonstrated his commitment to this Action through his retention of qualified counsel, GPM, who are experienced securities litigators who have litigated numerous securities class actions on behalf of stakeholders in district courts throughout the country.  Mot. at 30.  There is no indication that Lead Plaintiff or Lead Counsel have conflicts of interest or that they will not continue to prosecute this lawsuit vigorously.  The Court therefore finds that Lead Plaintiff and Lead Counsel satisfy the adequacy requirement.

### E. Predominance and Superiority

Finally, to certify a class under Rule 23(b)(3), the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Predominance tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).  Superiority asks if class adjudication is "the most efficient and effective means of resolving the controversy."  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted).

Whether the questions addressable with common proof predominate over those that require individual proof depends on "the elements of the underlying cause of action."  *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).  As a fraud-on-the-market case, "the elements of falsity, materiality, scienter, and loss causation present questions common to the class because they all depend on Defendants' actions, and not those of any individual class member."  *Ali v. Franklin Wireless Corp.*, No. 3:21-cv-00687-AJB-MSB, 2023 WL 25718, at *5 (S.D. Cal. Jan. 3, 2023).  Indeed, analysis of these elements "can be made on a class-wide basis" as they "affect[] investors in common."  *Schleicher v. Wendt*, 618 F.3d 679, 687 (7th Cir. 2010); *see also Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging …

securities fraud").  Similarly, there are no individualized issues of reliance because Lead Plaintiff relies on the class-wide presumption of reliance established in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), based on the contention that the market for Ryvyl securities was efficient at all relevant times, *see* TAC ¶¶ 115–16, which Defendants do not oppose for purposes of Settlement.  And while damages may differ among class members, the parties have agreed upon an appropriate amount of class-wide damages that will be split equitably among the class members.  Thus, the proposed Settlement Class satisfies predominance because the common factual and legal questions supersede any individualized inquiry in determining liability for the claims of the Settlement Class.

Moreover, certification of a settlement class here would be far more efficient than any alternative method of resolution.  The numerosity of the class members makes class-wide resolution efficient and appropriate, and it is unlikely that any single member of the class acting alone would have pursued these claims against Defendants.  *See Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims").  In a class action settlement, the Court need not address whether the case, if tried, would present issues of manageability under Rule 23(b)(3)(D).  *Amchem*, 521 U.S. at 620.  Given that the parties have settled the case and there are no case management difficulties, class certification would preserve judicial resources, save time and expenses, and limit duplication of evidence and effort.  Mot. at 31.  The Court therefore finds that the proposed Settlement Class satisfies the predominance and superiority requirements.

For these reasons, Rule 23 is satisfied, and the Court finds that it will likely be able to certify the Settlement Class for purposes of the Settlement.

## III.    Appointment of Class Counsel

When a court certifies as class, it must also appoint class counsel.  *See* Fed. R. Civ. P. 23(g)(1).  Rule 23(g)(1) directs the Court to consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in

handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A).

Since they were appointed Lead Counsel on May 9, 2023, ECF No. 20, GPM has devoted substantial time, effort, and resources to identifying, investigating, litigating, engaging in mediation, and negotiating a settlement in this matter.  Mot. at 31.  GPM has extensive experience prosecuting class actions under the federal securities laws.  *See* ECF No. 7-6 (GPM firm résumé).  GPM frequently serves as lead counsel in securities class actions.  *See In re Stable Road Acquisition Corp.*, No. 2:21-CV-5744-JFW(SHKx), 2024 WL 3643393, at *13 (C.D. Cal. Apr. 23, 2024) ("GPM's attorneys have many years of experience litigating complex federal civil cases, and, in particular, shareholder and securities class actions); *PPG*, 2019 WL 3345714, at *3 (GPM's attorneys "are highly experienced in securities litigation and have vigorously prosecuted the Settlement Class's claims"); *Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMx), 2019 WL 5173771, at *10 (C.D. Cal. Oct. 10, 2019) (finding that lead counsel, GPM, "has significant experience in securities class action lawsuits).  The Court therefore appoints GPM as class counsel.

## IV.    Preliminary Approval of Class Action Settlement

Federal Rule of Civil Procedure 23(e) requires judicial approval for any proposed class action settlement.  Before approving a proposed class action settlement, a court must find that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e).  The Court's evaluation is made against the backdrop of the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *In Re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).  At the preliminary approval stage, the question is whether approval under the "fair, reasonable, and adequate" standard is likely.  Fed. R. Civ. P. 23(e)(1)(B).  This inquiry requires the Court to "focus[ ] primarily upon whether the particular aspects of the decree that directly lend themselves to pursuit of self-interest by class counsel and certain members of the class—

namely attorney's fees and the distribution of any relief, particularly monetary relief, among class members—strictly comport with substantive and procedural standards designed to protect the interests of class members." *Staton*, 327 F.3d at 960. Courts evaluate the "settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012).

Rule 23(e) was amended in 2018 to create uniformity amongst the circuits and to focus the inquiry on whether a proposed class action settlement is "fair reasonable, and adequate." Fed. R. Civ. P. 23(e), advisory committee notes (2018 amendment). As amended, Rule 23(e) provides that a court may approve a proposed class action settlement after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The first and second factors are viewed as "procedural" in nature and the third and fourth factors are viewed as "substantive" in nature. Fed. R. Civ. P. 23(e)(2), advisory committee notes (2018 amendment).

Rule 23(e)'s new factors are not intended to displace the traditional factors courts have considered in evaluating the propriety of class action settlements. *See id.* ("[t]he goal of this amendment is not to displace any factor" courts have traditionally considered). Courts in the Ninth Circuit have traditionally balanced the so-called *Hanlon* factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of

discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). "The key *Hanlon* factors are now baked into the text of Rule 23(e)," but the remaining ones can still be relevant to the Rule 23(e)(2) analysis. *In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025). Accordingly, the Court's analysis will focus on the amended 23(e) factors and address any pertinent *Hanlon* factors. *See Kang v. Wells Fargo Bank, N.A.*, No. 17-cv-06220, 2021 WL 5826230, at *14 (N.D. Cal. Dec. 8, 2021), *aff'd sub nom. Kang v. Fyson*, No. 22-15694, 2022 WL 6943174 (9th Cir. Oct. 12, 2022) ("Because Rule 23 has been amended to list the factors most central to approval of a class action settlement, the Court began its analysis with the Rule 23(e) factors …. The Court considers the remaining [*Hanson*] factors, as relevant.").

For the below reasons, the Court finds that the proposed Settlement Agreement is likely fair, reasonable, and adequate, and therefore GRANTS preliminary approval of the Class Action Settlement.

### A. Adequacy of Representation

Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This analysis is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g), respectively." 4 William B. Rubenstein, Newberg on Class Actions § 13:48 (5th ed. 2020); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019) (noting similarity of inquiry under Rule 23(a)(4) and Rule 23(e)(2)(A)).

The Court found above that Lead Plaintiff and Lead Counsel adequately represent the class for the purposes of conditional class certification. For the same reasons, the Court finds that Lead Plaintiff and Lead Counsel likely meet Rule 23(e)(2)(A)'s adequacy of representation requirement.

/ / /

### B. Arm's Length Negotiation

Rule 23(e)(2)(B) requires the Court to consider whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). When parties reach a settlement "after mediation with a neutral mediator," the settlement is "presumptively the product of a non-collusive, arms-length negotiation." *Saucillo v. Peck*, 25 F.4th 1118, 1124 (9th Cir. 2022).

Here, the parties participated in a mediation session with Jed D. Melnick of JAMS on February 6, 2024. Sams Decl. ¶ 7. While the case did not settle at the mediation session, the parties continued to engage in settlement talks through Mr. Melnick, and these negotiations resulted in the proposed Settlement 10 months later. *Id.* ¶¶ 7, 12; Mot. at 16. The parties' extensive settlement efforts, which a mediator with substantial experience oversaw, are indicative of a well-informed, arms-length negotiation. *See In re China Med. Corp. Sec. Litig.*, No. 8:11-1061-JST (ANx), 2013 WL 12126754, at *8 (C.D. Cal. May 16, 2013) ("Mr. Melnick's involvement in the settlement supports the argument that it is non-collusive."); *In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-06352 MMM (JCGx), 2014 WL 10212865, at *8 (C.D. Cal. July 28, 2014) (finding fair settlement where the parties "reached an agreement in principle with the assistance of [Mr. Melnick] following an in-person mediation at with the parties were initially unable to come to an agreement."). Therefore, this factor weighs in favor of a finding that the proposed Settlement is fair, reasonable, and adequate.

### C. Adequacy of Relief Provided to the Class

Rule 23(e)(2)(C) requires that the Court consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to

be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). The amount of relief obtained by the class in the proposed settlement is generally considered to be the most important consideration. *See Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citing *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178–79 (9th Cir. 2013)).

### i. Costs, risks, and delay of trial and appeal

"To evaluate adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007); *see also Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017) (courts "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of recovery"). While a settlement need not compensate class members for the maximum value of their claims, there is no fixed percentage of the potential recovery that renders a settlement amount reasonable. *See In re Baan Co. Sec. Litig.*, 284 F. Supp. 2d 62, 65 (D.D.C. 2003) (citing *In re Newbridge Networks Sec. Litig.*, No. CIV. A. 94-1678-LFO, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998)). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted).

Here, the parties have agreed to settle this case for an amount of $1,000,000 in cash and stock.[4] Stipulation ¶ 8. "Lead counsel estimates that the *best-case scenario* for class wide damages in this Action is $1.7 million."[5] Sams Decl. ¶ 14. The settlement

---

[4] The estimated average amount of recovery per share of Ryvyl common stock, assuming that all class members elect to participate in the settlement and before deduction of any court-approved fees, expenses, and costs, is $0.01 in cash and 0.03 shares of common stock (or the cash equivalent). Stipulation, Exhibit A-1.

[5] However, the long-form Notice states that the "best-case scenario for damages under the remaining Section 10(b) claims was, at most, $2.8 million." Stipulation, Exhibit A-1, ¶ 32.

amount is therefore approximately 59 percent of the maximum recoverable damages. Mot. at 23. The Court will deduct attorneys' fees and costs of notice only after approving the fees and costs upon motion by Lead Plaintiff. As a percentage of estimated damages, the settlement amount is well above the median percentage of the recovery level for investor losses in securities class action settlements of similar sizes. *See* ECF No. 106-4 at 29 (National Economic Research Associates ("NERA") analysis showing that between January 2015 and December 2024, the median settlement value as a percentage of investor losses was 20 percent for securities class actions with investor losses of less than $20 million); *see also Farrar v. Workhorse Grp., Inc*., No. CV 21-02072-CJC (PVCx), 2023 WL 5505981, at *7 (C.D. Cal. July 24, 2023) (collecting cases recognizing that 3 percent is within the range of average recovery percentages approved in securities class action settlements); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008) (noting that a $5 million settlement representing 25 percent of recoverable damages is "well above that in most securities class actions").

On the other hand, the risks of litigation include the potential that the Court would grant any future motions to dismiss. Mot. at 17–18. Indeed, the Court previously partially dismissed Plaintiffs' claims on two separate occasions. ECF Nos. 71, 92; *see In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("The court needs to look no further than its own order dismissing the shareholder derivative litigation to assess the risks involved."). While Plaintiffs believe the TAC cures the pleading deficiencies identified in the Court's most recent order dismissing the SAC in part, Plaintiffs still faced the risk of Defendants filing a motion to dismiss the TAC, as well as the risk that the Court would grant the motion. And getting past the pleadings stage is only one hurdle Plaintiffs faced.

Lead Counsel expected Defendants to continue to challenge several elements at summary judgment and/or at trial. For instance, Defendants would have continued to challenge whether Plaintiffs established scienter, which was a tall task due to the lack of insider trading. *See Cullen v. Ryvyl Inc.*, No. 3:23-cv-0185-GPC-SBC, 2024 WL

4536471, at *12 (S.D. Cal. Oct. 21, 2024) ("Plaintiffs do not allege that any Individual Defendant sold stock during the class period."); *see also In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *3 (E.D.N.Y. Sept. 18, 2007) ("Establishing scienter is a difficult burden to meet and proving it will be especially challenging where, apparently, neither the individual defendants nor any other Gilat executive profited from their Gilat investments.") (internal quotation marks and citation omitted).  Moreover, even if Plaintiffs proved liability, the determination of loss causation and damages also presented risks, as each side would have presented expert testimony on the issues to a jury.  *See In re Amgen Inc. Sec. Litig.*, No. 7-2536 PSG (PLAx), 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016) ("in a 'battle of experts,' the outcome cannot be guaranteed"); *see also Baker v. SeaWorld Ent., Inc.*, No. 14-cv-02129-MMA-AGS, 2020 WL 4260712, at *7 (S.D. Cal. July 24, 2020) (noting unpredictability and risks of a battle of experts).

In addition to risk and unpredictability, prolonged litigation would also impose substantial costs and delays, especially since "securities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *Baker*, 2020 WL 4260712, at *7 (citation omitted).  Here, the parties would have to go through factual discovery, designation of experts, expert discovery, a likely motion for class certification, likely motions for summary judgment, and trial.  Plaintiffs would also expect significant post-trial motions practice and appeals if the settlement class were to a favorable judgment.  Mot. at 18–19.

Further contributing to the substantial risks of continuing litigation is "[t]he potential inability of Settling Defendants to pay a substantial judgment[.]" *Hayes v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160-JST, 2016 WL 6902856, at *5 (N.D. Cal. Nov. 21, 2016) (internal quotation marks omitted).  Ryvyl is self-insured and its financial condition has deteriorated significantly since this litigation began.  Sams Decl. ¶ 13.  Ryvyl's last two Form 10-Ks included going concern warnings and reported net losses of $26.8 million and $53.1 million, respectively, it received a delisting notice from NASDAQ in April 2025 due to insufficient shareholder equity, and its stock is trading at

23-cv-00185-GPC-SBC

less than a dollar per share.  *Id.* ¶¶ 13–14.  Thus, Plaintiffs face a real risk that Defendant may not be able to pay any damages a jury awards if they continue litigation and eventually obtain a judgment in their favor at trial.  *See Farrar*, 2023 WL 5505981, at *6 ("given Workhorse's dwindling cash, business uncertainties, ongoing regulatory issues, and, particularly, rapidly depleting insurance coverage …, if Plaintiffs continue to litigate the case, any available funds or insurance proceeds may be depleted, resulting in a lower recovery or likely no recovery at all") (internal quotation marks omitted)

As such, the Settlement Amount presents a substantial relief to the settlement class. Although the Settlement Amount is only a portion of Defendants' maximum potential exposure according to Plaintiffs' calculations, the relief appropriately accounts for the not-insubstantial risk that Plaintiff and the class would recover nothing on some or all claims.  And the Court must be wary of "the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526 (citation omitted).  The Court therefore concludes that the costs and risks of further litigation likely render the agreed-upon Settlement Amount to be adequate relief for the Settlement Class.

### ii.  Effectiveness of proposed method of distributing relief

Rule 23(e)(2)(C)(ii) calls for the court to weigh potential relief against "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."  This analysis requires the court to "scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims" without being "unduly demanding." Fed. R. Civ. P. 23(e), advisory committee notes (2018 amendment).

Here, the method for processing claims and distributing relief to eligible Claimants is clear, well-established, and effective.  Lead Counsel has selected Simpluris as the "Claims Administrator."  Sams Decl. ¶ 16.  Within five business days of this Order, Ryvyl will provide the Claims Administrator with "a list of names, addresses, and, to the

extent available, email addresses, of the purchasers of Ryvyl and Greenbox POS common stock during the Settlement Class Period." Stipulation ¶ 26. Then, the Claims Administrator will mail the Postcard Notice to Settlement Class members who can be identified through reasonable effort, post downloadable copies of the Notice and Claim Form online, and direct publication of the Summary Notice. *Id.* The Claims Administrator will then process claims, allow Claimants an opportunity to cure any claim deficiencies or request the Court to review the denial of their claims, and mail or wire Authorized Claimants their pro rata share of the Net Settlement Fund in accordance with the Plan of Allocation. Sams Decl. ¶ 16. "Claims processing, like the method proposed here, is standard in securities class action settlements. It has long been found as effective, as well as necessary, insofar as neither Lead Plaintiff nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund." *Stable Road*, 2024 WL 3643393, at *7; *see Baron v. HyreCar Inc.*, No. 2:21-cv-06918-FWS-JC, 2024 WL 3504234, at *9 (C.D. Cal. July 19, 2024) (finding nearly identical procedures effective for preliminary approval in securities class action); *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *2, 7 (N.D. Cal. Dec. 18, 2018) (same).

### iii. Attorneys' fees and administrator fees

#### a. Terms of proposed award of attorneys' fees

Rule 23(e)(2)(C)(iii) requires the Court to account for "the terms of any proposed award of attorney's fees." Fed. R. Civ. P. 23(e)(2)(C)(iii). "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941.

The Notice informs Settlement Class members that, as compensation for services rendered on a contingent basis on their behalf, Lead Counsel intends to seek an attorneys' fee award in an amount not to exceed 33 ⅓ percent of the Settlement Fund (which, by

1  definition, includes interest earned on the Settlement Amount).  Stipulation, Exhibit A-1.

2  The Notice also informs Settlement Class members that Lead Counsel intends to ask the

3  Court to grant it reimbursement for litigation expenses in an amount not to exceed

4  $85,000, which includes reimbursement of Lead Plaintiff's costs in an amount not to

5  exceed $5,000.  *Id.*  Thus, the estimated average cost per affected share of Ryvyl

6  common stock, if the Court approves Lead Counsel's fee and expense applications, is

7  $0.017 per damaged share.  *Id.*

8         While the Court acknowledges that district courts in this Circuit have approved

9  attorneys' fees awards in the amount of 33 ⅓ percent of the total settlement value, it also

10  notes that this percentage is on the upper end of what courts consider to be typical.  *See*

11  *In re Illumina, Inc. Sec. Litig.*, 2019 WL 6894075, at *7 (S.D. Cal. Dec. 18, 2019).

12  Indeed, "[w]hen applying the percentage-of-the-fund method, an attorneys' fee award of

13  twenty-five percent is the 'benchmark' that district courts should award." *Id.* (citations

14  omitted).

15         Ultimately, the Court need not determine at the preliminary approval stage whether

16  it will approve the 33 ⅓ percent award set out by Lead Counsel.  The Court will closely

17  scrutinize Lead Counsel's request for an award of attorneys' fees, costs, and expenses

18  more closely upon filing of the application for reasonable attorneys' fees and incentive

19  awards.  Further, Lead Counsel is directed to provide information about their fees request

20  and their lodestar calculation in the motion for final approval of class action settlement.

21  At this point, the Court concludes that the attorneys' fee provision in the Settlement

22  Agreement is not so out of proportion with the relief provided to the class that it "calls

23  into question the fairness of the proposed settlement."  *Pokorny v. Quixtar Inc.*, No. 07-

24  0201 SC, 2011 WL 2912864, at *1 (N.D. Cal. July 20, 2011).  The award provision is

25  also reasonable because of its language that Class Counsel will *apply* for an award *not to*

26  *exceed* 33 ⅓ percent of the settlement fund.  In any event, the Settlement Agreement is

27  not conditioned on any court's ruling on attorneys' fees or litigation expenses.

28  Stipulation ¶ 23.

23-cv-00185-GPC-SBC

Thus, for the purposes of preliminary approval, the attorneys' fees and expenses provision does not present a barrier to finding the Settlement Agreement fair, adequate and reasonable.  *See Kendall*, 2022 WL 188364, at *7 (fee "not to exceed 33 ⅓%" supports preliminary approval because it is "within the range of acceptable attorneys' fees").

b. <u>Claim administration fees</u>

As detailed above, the proposed notices provide information material to a class member's decision whether to accept, object to, or opt out of the Settlement Agreement.  However, from the Court's review, the proposed notices do not include any information about any proposed payment to the Claims Administrator.  Information on this is only found in the Stipulation, which states that "Lead Counsel may pay from the Settlement Fund … all Notice and Administration costs," including "the actual costs of printing and mailing the Postcard Notice, publishing the Summary Notice, … [and] the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice Stipulation[.]"  Stipulation ¶ 21.  The Parties agreed to settle this case for approximately $1 million, and the disbursement to class members will depend on the deduction of fees and costs.  This provision for claim administration fees—which does not appear in the proposed notices—could reduce the entire Settlement Amount and, in turn, reduce each class member's recovery per share.

Given these circumstances, the Court directs that the proposed notices, Stipulation, Exhibits A-1 and A-3, must inform class members of the potential maximum amount of administrator fees.  Further, at this time, the Court is not prepared to approve the proposed language granting Lead Counsel with the discretion to authorize disbursement, without further approval from the Court, of these notice and administration costs.  Stipulation ¶ 21.  The Court will determine the reasonableness of such costs at the final approval hearing.

/ / /

/ / /

### iv.    Agreements made in connection with the proposal

Finally, the court must consider "any agreement required to be identified under Rule 23(e)(3)," Fed. R. Civ. P. 23(e)(2)(C)(iv), that is, "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). The parties here have entered into a confidential supplemental agreement "that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members totaling a certain percentage of Ryvyl/Greenbox POX common stock traded during the Settlement Class Period" opt out of the settlement. Stipulation ¶ 42. The agreement's terms are confidential "to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts" for themselves at the expense of other settlement class members. *Farrar*, 2023 WL 5505981, at *10 (citation omitted). "[T]his type of agreement is common in securities fraud actions and does not weigh against preliminary approval." *Baron*, 2024 WL 3504234 (citation omitted); *see Illumina*, 2019 WL 6894075, at *9 (finding the content and confidentiality of similar agreement to be adequate and reasonable).

### v.    Equitable Treatment of Class Members

Rule 23(e)(2)(D) requires the Court to consider whether the Settlement Agreement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). In doing so, the Court determines whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Tableware*, 484 F. Supp. 2d at 1079. "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), advisory committee notes (2018 amendment); *see also* 4 William B. Rubenstein, Newberg on Class Actions § 13:56 (5th ed. 2020) ("Put simply, the court's goal is to ensure that similarly situated class members are treated similarly and that dissimilarly situated class members are not arbitrarily treated as if they were similarly situated.").

a. <u>Equity among class members</u>

Here, under the proposed Plan of Allocation, each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund based on his, her, or its recognized claim divided by the total of recognized claims of all Authorized Claimants, multiplied by the total amount of the Net Settlement Fund. Mot. at 20–21. The proposed Plan of Allocation details how recognized losses will be calculated by considering when Claimants acquired shares, when they sold the shares, and the relative amounts of artificial inflation that affected the stock prices during the period in which they held the shares. Stipulation, Exhibit A-1. If any Authorized Claimant's distribution amount amounts to less than $10.00, it will not be included in the calculation and they will not receive a distribution. *Id.* at 17. Lead Counsel may redistribute funds that remain after nine months to Authorized Claimants who cashed their initial distributions and who would receive at least $10.00 in re-distribution. *Id.* at 18.

The Court finds that the proposed distribution method treats Settlement Class members equally by taking into account the amount of shares held by class members, the time class members held these shares, and how price declines based on "corrective information" affected the price of shares. *See Vinh Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) (finding a similar distribution method equitable); *see also Yang v. Focus Media Holding Ltd.*, No. 11 Civ. 9051(CM)(GWG), 2014 WL 4401280, at *10 (S.D.N.Y. Sept. 4, 2014) ("the Plan of Allocation ensures an equitable *pro rata* distribution of the Net Settlement Fund among all authorized claimants based solely on when they purchased and sold shares, taking into account the relative amounts of artificial inflation prevailing during the Class Period"). And while the proposed Plan of Allocation excludes any Claimant whose distribution amounts calculates to less than $10.00, courts in this Circuit "regularly approve" settlement agreements that include such provisions because it is "no significant indication of preferential treatment." *Baron*, 2024 WL 3504234, at *11 (citation

1    omitted).  Accordingly, the Court finds that the method of distribution treats class

2    members equitably relative to each other.

3                    b.  Equity between unnamed members and class representative

4            The Court also considers whether any proposed service payment or incentive

5    award for a named or lead plaintiff is equitable.  Additional payments to class

6    representatives or named plaintiffs, often referred to as incentive awards, generally do not

7    render a settlement inequitable.  *See Staton*, 327 F.3d at 977.  Incentive awards are "fairly

8    typical in class action cases" and "are intended to compensate class representatives for

9    work done on behalf of the class, to make up for financial or reputational risk undertaken

10   in bringing the action."  *Rodriguez*, 563 F.3d at 958-59.  Courts have refused to

11   countenance settlements that provide for excessively high incentive awards or that give

12   only *de minimis* relief to the rest of the class.  *See id.* at 948, 978 (finding settlement

13   inequitable where class representatives and other "active participants" were to receive up

14   to $50,000 in incentive awards each and collectively receive more than half of the total

15   monetary award despite representing less than 2% of the class).

16           In the present case, Lead Plaintiff plans to request reimbursement of his reasonable

17   costs and expenses directly related to his representation of the settlement class in an

18   amount not to exceed $5,000—which, at most, represents 0.5 percent of the Settlement

19   Amount.  Courts have approved service awards of up to $15,000 for lead plaintiffs who

20   performed similar work.  *See Raffin v. Medicredit, Inc.,* No. CV 15-4912 MWF (PJWx),

21   2018 WL 8621204, at *7 (C.D. Cal. Nov. 30, 2018) (finding reasonable $15,000 award

22   and collecting cases saying the same).

23           In their motion for final approval of class action settlement, Plaintiffs must provide

24   sufficient evidence to allow the Court to evaluate Lead Plaintiff's award "individually,

25   using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the

26   interests of the class, the degree to which the class has benefitted from those actions, ...

27   [and] the amount of time and effort the plaintiff expended in pursuing the litigation[.]'"

28   *Staton*, 327 F.3d at 977 (citation omitted, alterations in original).  The Court will consider

27

the evidence at the final settlement fairness hearing and evaluate the reasonableness of
the incentive award request.  Nevertheless, because incentive awards are not per se
unreasonable, the Court concludes that the current service award provision should not bar
preliminary approval of the Settlement Agreement.

**V.    Notice**

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice
that is practicable under the circumstances, including individual notice to all members
who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Individual
notice must be sent to all class members "whose names and addresses may be ascertained
through reasonable effort."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

The Rule requires that the notice "clearly and concisely state in plain, easily
understood language" the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the
> class claims, issues, or defenses; (iv) that a class member may enter an
> appearance through an attorney if the member so desires; (v) that the court
> will exclude from the class any member who requests exclusion; (vi) the
> time and manner for requesting exclusion; and (vii) the binding effect of a
> class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B) (paragraph breaks omitted).  "In addition, the PSLRA requires
that notice include (1) '[t]he amount of the settlement [...] determined in the aggregate
and on an average per share basis,' (2) 'the average amount of [the] potential damages
per share,' (3) a statement of any fees or costs that counsel intends to seek from the
settlement fund, (4) class counsel's contact information, and (5) '[a] brief statement
explaining the reasons why the parties are proposing the settlement.'"  *In re Lyft, Inc.
Sec. Litig.*, No. 19-cv-02690-HSG, 2022 WL 17740302, at *7 (N.D. Cal. Dec. 16, 2022)
(citing 15 U.S.C. § 78u-4(a)(7)).  Further, the Ninth Circuit has held that a class action
settlement notice must describe the "terms of the settlement in sufficient detail to alert
those with adverse viewpoints to investigate and to come forward and be heard."  *In re*

*Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015).  The Court finds
that the notice program here satisfies these requirements.

### A. Proposed Method of Notice

What constitutes the "best notice that is practicable under the circumstances" is
measured by a standard of "reasonableness."  *Low v. Trump Univ., LLC*, 881 F.3d 1111,
1117 (9th Cir. 2018).  The best type of notice "depends upon the information available to
the parties about that person."  *Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17cv2335-
GPC(MDD), 2019 WL 718807, at *1 (S.D. Cal. Feb. 5, 2019) (citation omitted).  "[I]f
the names and addresses of class members cannot be determined by reasonable efforts,
notice by publication is sufficient to satisfy the requirements of the due process clause
and Rule 23."  *Id.*  Recent amendments to Rule 23(c)(2) clarify that the "best notice"
practicable under the circumstances may include "electronic means, or other appropriate
means," depending on the type of class and its composition.  Fed. R. Civ. P. 23(c)(2); *id.*,
committee note (2018 amendment).

Lead Plaintiff proposes giving notice of the Settlement to potential Settlement
Class members by: (1) mailing the Postcard Notice and/or emailing a link to the Notice
and Claim Form to all Settlement Class members who can reasonably be identified and
located via first-class mail; and (2) publication in sources that potential Settlement Class
members are reasonably expected to read.  Mot. at 31–32; *see* Stipulation Exhibits A-1,
A-2, A-3, A-4.  Both forms of notice will direct Settlement Class members to a
Settlement-specific website, where they can download copies of all case-related
Settlement documents, including the Stipulation, and submit claims online.  *See*
Stipulation Exhibits A-1, A-2, A-3, A-4.  Courts routinely find that these methods of
notice satisfy the requirements of Rule 23, the PSLRA, and due process in securities class
actions, where the parties often lack access to a complete list of investors who purchased
shares during the class period.  *See, e.g., In re MGM Mirage Sec. Litig.*, 708 F. App'x
894, 896 (9th Cir. 2017); *Fleming v. Impax Lab'ys Inc.*, No. 16-cv-06557-HSG, 2021 WL
5447008, at *12 (N.D. Cal. Nov. 22, 2021); *Khoja v. Orexigen Therapeutics, Inc.*, No.

15-CV-540 JLS (KSC), 2021 WL 1579251, at *9 (S.D. Cal. Apr. 22, 2021); *Vataj v. Johnson*, No. 19-cv-06996-HSG, 2021 WL 1550478, at *11–12 (N.D. Cal. Apr. 20, 2021).

Under recent Rule 23(c) amendments, which permit more cost-efficient notice including "electronic means, or other appropriate means," the Court finds adequate the following notice program: distribution by mail of the Postcard Notice (Stipulation, Exhibit A-4) that directs Settlement Class members to a designated website that includes the long-form Notice and Claim Form (Stipulation, Exhibits A-1, A-2). Mot. at 31–32. As noted above, Settlement Class members will be identified through reasonable effort, including from Ryvyl's "list of names, addresses, and, to the extent available, email addresses, of the purchasers of Ryvyl and Greenbox POS common stock during the Settlement Class Period." Stipulation ¶ 26. The Claims Administrator will mail the Postcard Notice to Settlement Class members within 20 business days of entry of this order. Mot. at 32. The Claims Administrator will also publish the Summary Notice in the *Investor's Business Daily* and over the *PR Newswire*. *Id.* The Court finds this to be a suitable method of notice.

**B. Proposed Form of Notice**

The proposed long-form Notice is attached to the Stipulation as Exhibit A-1. The Notice describes in plain English the salient terms of the Settlement, the rights of each Settlement Class member, and other material information, including, among other things: information about the case; the definition of the Settlement Class; the Settlement Amount; the relief to the Settlement Class and the releases to Defendants and the other Released Defendants; the maximum fee and expense award that may be sought; the procedures and deadlines for submitting objections to the Settlement or seeking exclusion from the Settlement Class; and the date and place of the settlement hearing. *See* Stipulation, Exhibit A-1. The long-form Notice also meets the requirements of the PSLRA by including, among other things: a cover page summarizing the information in the Notice, including each Settlement Class member's rights; a statement of the potential

recovery; a statement on the potential outcome of the case, including the issues on which
the parties disagree; information on how to contact the Claims Administrator and Lead
Counsel; and a discussion of the reasons for the Settlement. *Id*. Thus, the long-form
Notice provides all the information required by due process, Rule 23, and the PSLRA.
The Court approves of the proposed form of Notice and directs Lead Counsel to
effectuate the proposed Notice.

## VI.    CONCLUSION

For the reasons discussed in this order, the Court orders as follows:

1.    Pursuant to Fed. R. Civ. P. 23, the Court provisionally certifies, for purposes
of the Settlement only, the following Settlement Class: all persons and entities that
purchased the publicly traded common stock of Ryvyl Inc. (NASDAQ: RVYL) and/or
Greenbox POS (NASDAQ: GBOX) between May 13, 2021 and January 20, 2023, both
dates inclusive, and were damaged thereby (the "Settlement Class Period"). Excluded
from the class are: (a) persons and entities that suffered no compensable losses; and (b)(i)
Defendants; (ii) any person who served as a partner, control person, officer and /or
director of the Company during the Settlement Class Period, and members of their
immediate families; (iii) present and former parents, subsidiaries, assigns, successors,
affiliates, and predecessors of the Company; (iv) any entity in which any excluded person
or entity has or had a controlling interest; (v) any trust of which an Individual Defendant
is the settlor or which is for the benefit of an Individual Defendant and/or member(s) of
their Immediate Families; and (vi) the legal representatives, heirs, successors,
predecessors, and assigns of any person or entity excluded under provisions (i) through
(v) hereof.[6] Also excluded from the Settlement Class are any persons and entities who or
which submit a request for exclusion from the Settlement Class that is accepted by the
Court.

---

[6] For the avoidance of doubt, "affiliates" are persons or entities that directly, or indirectly through one or
more intermediaries, control, are controlled by or are under common control with one of the Defendants.

2.      Solely for purposes of the proposed Settlement of this Action, the Court finds that each element required for certification of the Settlement Class pursuant to Rule 23 has been met: (a) the members of the Settlement Class are so numerous that their joinder in the Action would be impracticable; (b) there are questions of law and fact common to Settlement Class which would predominate over any individual questions; (c) the claims of Lead Plaintiff in the Action are typical of the claims of the Settlement Class; (d) Lead Plaintiff and Lead Counsel have and will fairly and adequately represent and protect the interests of the Settlement Class; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the Action.

3.      The Court hereby finds and concludes that pursuant to Rule 23, and for purposes of the Settlement only, Lead Plaintiff is an adequate class representative and certifies him as the Class Representative for the Settlement Class.  The Court also appoints Lead Counsel, the law firm of Glancy Prongay & Murray LLP, including Ex Kano S. Sams II, Esq., as Class Counsel for the Settlement Class, pursuant to Rule 23(g).

4.      The Court hereby preliminarily approves the Settlement, as provided in the Stipulation, as being fair, reasonable, and adequate to the Settlement Class, subject to further consideration at the Settlement Hearing to be conducted as described below.

5.      The Court will hold a final fairness hearing (the "Settlement Hearing") on December 19, 2025 at 1:30 p.m. at the James M. Carter and Judith N. Keep United States Courthouse, 333 West Broadway, San Diego, California 92101, in Courtroom 12A, for the following purposes: (a) to determine whether the proposed Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate to the Settlement Class, and should be approved by the Court; (b) to determine the fairness of the terms and conditions of the issuance of the Settlement Shares, which shares are to be issued pursuant to the exemption from registration requirements under Section 3(a)(1) of the Securities Act of 1933, 15 U.S.C. § 77c(a)(1), as amended (the "Securities Act"), in exchange for the Settlement and release of the Released Plaintiffs' Claims against the Released Defendant Parties; (c) to determine whether the proposed Plan of Allocation for

the proceeds of the Settlement is far and reasonable and should be approved; (e) to determine whether the motion by Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses should be approved; and (f) to consider any other matters that may properly be brought before the Court in connection with the Settlement. Notice of the Settlement and the Settlement Hearing shall be provided to Settlement Class Members as set forth in paragraph 7, *infra*.

6. The Court may continue or adjourn the Settlement Hearing without further notice to the Settlement Class and may approve the proposed Settlement with such modifications as the Parties may agree to, if appropriate, without further notice to the Settlement Class. The Court reserves the right to hold the Settlement Hearing telephonically or by other virtual means, in which event the Claims Administrator shall update its website regarding the Settlement Hearing's telephonic or virtual format.

7. Lead Counsel is hereby authorized to retain Simpluris (the "Claims Administrator") to supervise and administer the notice procedure in connection with the proposed Settlement as well as the processing of Claims as more fully set forth below. Notice of the Settlement and the Settlement Hearing shall be provided as follows:

    a. Within five business days of the date of entry of this Order, Ryvyl will provide or cause to be provided to the Claims Administrator in an electronic format such as Excel (at no cost to the Settlement Fund, Lead Plaintiff, the Settlement Class, Lead Counsel, or the claims administrator), a list of names, addresses, and, to the extent available, email addresses, of the purchasers of Ryvyl and Greenbox POS common stock during the Settlement Class Period;

    b. Not later than 20 business days after the date of entry of this Order (the "Notice Date"), the Claims Administrator shall cause a copy of the Postcard Notice to be mailed by first-class mail to potential Settlement Class Members at the addresses set forth in the records provided by Ryvyl or in the records which Ryvyl caused to be

provided, or who otherwise may be identified through further
reasonable effort;

c.  Contemporaneously with the mailing of the Postcard Notice, the
Claims Administrator shall cause copies of the Stipulation, the Notice,
the Claim Form, and this Order to be posted on website to be
developed for the Settlement, from which copies of those documents
can be downloaded.  The Claims Administrator shall also post copies
of the motion for attorneys' fees and Litigation Expenses and the
motion for final approval on the website once they become available;

d.  Not later than 10 business days after the Notice Date, the Claims
Administrator shall cause the Summary Notice to be published once in
*Investor's Business Daily* and to be transmitted once over the *PR
Newswire*; and

e.  Proof of such mailing and publication shall accompany Lead
Plaintiff's motion for final approval.

8.  The Court (a) approves, as to form and content, the Notice, the Claim Form,
the Summary Notice, and the Postcard Notice as attached as Exhibits A-1, A-2, A-3, and
A-4 to the Stipulation; and (b) finds that the mailing and distribution of the Postcard
Notice, the posting of the Stipulation, the Notice, the Claim Form, and this Order, and
other relevant documents online, and the publication of the Summary Notice in the
manner and form set forth in paragraph 7 *supra* (i) is the best notice practicable under the
circumstances; (ii) constitutes notice that is reasonably calculated, under the
circumstances, to apprise Settlement Class Members of the pendency of the Action, of
the effect of the proposed Settlement (including the Releases to be provided thereunder),
of Lead Counsel's motion for an award of attorneys' fees and reimbursement of
Litigation Expenses, of their right to object to the Settlement, the Plan of Allocation
and/or Lead Counsel's motion for attorneys' fees and reimbursement of Litigation
Expenses, of their right to exclude themselves from the Settlement Class, and of their

34

right to appear at the Settlement Hearing; (iii) constitutes due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (iv) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 (as amended). The date and time of the Settlement Hearing shall be included in the Postcard Notice, Notice, and Summary Notice before they are mailed, posted online, and published, respectively.

9.     The Claims Administrator shall make all reasonable efforts to give notice to nominees or custodians who purchased Ryvyl and Greenbox POS common stock during the Settlement Class Period as record owners but not as beneficial owners.  Brokers and other nominees who purchased publicly traded Ryvyl and Greenbox POS common stock during the Settlement Class Period for the benefit of another person or entity shall, within seven (7) calendar days of receipt of the Claims Administrator's notice of the Settlement either: (a) request from the Claims Administrator sufficient copies of the Postcard Notice to forward to all such beneficial owners and within seven (7) calendar days of receipt of those Postcard Notices forward them to all such beneficial owners; (b) request from the Claims Administrator a link to the Notice and Claim Form and, within seven (7) calendar days of receipt of the link, email the link to all such beneficial owners for whom valid email addresses are available; or (c) provide a list of the names, mailing addresses and email addresses (to the extent available) of all such beneficial owners to the Claims Administrator at *Ryvyl Securities Settlement*, c/o Claims Administrator, P.O. Box 25419, Santa Ana, CA 92799, in which event the Claims Administrator shall promptly mail the Postcard Notice, or email a link to the Notice and Claim Form, to such beneficial owners. Nominees that choose to follow procedures (a) or (b) shall also send a statement to the Claims Administrator confirming that the mailing or emailing was made as directed. Upon full and timely compliance with this Order, such nominees may seek reimbursement of their reasonable expenses actually incurred, not to exceed: (a) $0.02 per name, mailing address, and email address (to the extent available) provided to Claims

23-cv-00185-GPC-SBC

Administrator; (b) $0.02 per email for emailing notice; or (c) $0.02 per postcard, plus
postage at the pre-sort rate used by the Claims Administrator, for mailing the Postcard
Notice, by providing the Claims Administrator with proper documentation supporting the
expenses for which reimbursement is sought.  Such properly documented expenses
incurred by nominees in compliance with the terms of this Order shall be paid from the
Settlement Fund, with any disputes as to the reasonableness or documentation of
expenses incurred subject to review by the Court.  Nominees are not authorized to print
the Postcard Notice themselves for mailing.  Postcard Notices may only be printed by the
Claims Administrator.

10.    Settlement Class Members who wish to participate in the Settlement and to
be eligible to receive a distribution from the Net Settlement Fund must complete and
submit a Claim Form in accordance with the instructions contained therein.  Unless the
Court orders otherwise, all Claim Forms must be postmarked no later than 100 calendar
days after the Notice Date.  Notwithstanding the foregoing, Lead Counsel may, at its
discretion, accept for processing late Claims provided such acceptance does not delay the
distribution of the Net Settlement Fund to the Settlement Class.  By submitting a Claim, a
person or entity shall be deemed to have submitted to the jurisdiction of the Court with
respect to his, her, or its Claim and the subject matter of the Settlement.

11.    Each Claim Form submitted must satisfy the following conditions: (a) it
must be properly completed, signed, and submitted in a timely manner in accordance
with the provisions of the preceding paragraph; (b) it must be accompanied by adequate
supporting documentation for the transactions and holdings reported therein, in the form
of broker confirmation slips, broker account statements, an authorized statement from the
broker containing the transactional and holding information found in a broker
confirmation slip or account statement, or such other documentation as is deemed
adequate by Lead Counsel or the Claims Administrator; (c) if the person executing the
Claim Form is acting in a representative capacity, a certification of his, her, or its current
authority to act on behalf of the Settlement Class Member must be included in the Claim

Form to the satisfaction of Lead Counsel or the Claims Administrator; and (d) the Claim Form must be complete and contain no material deletions or modifications of any of the printed matter contained therein and must be signed under penalty of perjury.

12.    Any Settlement Class Member who does not timely and validly submit a Claim Form or whose Claim is not otherwise approved by the Court: (a) shall be deemed to have waived his, her, or its right to share in the Net Settlement Fund; (b) shall be forever barred from participating in any distributions therefrom; (c) shall be bound by the provisions of the Stipulation and the Settlement and all proceedings, determinations, orders, and judgments in the Action relating thereto, including, without limitation, the Judgment or Alternate Judgment, if applicable, and the Releases provided for therein, whether favorable or unfavorable to the Settlement Class; and (d) will be barred from commencing, maintaining, or prosecuting any of the Released Plaintiff Claims against each and all of the Released Defendant Parties, as more fully described in the Stipulation and Notice.  Notwithstanding the foregoing, late Claim Forms may be accepted for processing as set forth in paragraph 10, *supra*.

13.    Any member of the Settlement Class who wishes to exclude himself, herself, or itself from the Settlement Class must request exclusion in writing within the time and in the manner set forth in the Notice, which shall provide that: (a) any such request for exclusion from the Settlement Class must be mailed or delivered such that it is received by, or postmarked no later than, 21 calendar days prior to the Settlement Hearing, at the following address: *Ryvyl Securities Settlement*, EXCLUSIONS, c/o Claims Administrator, P.O. Box 25419, Santa Ana, CA 92799, and (b) each request for exclusion must (i) state the name, address, and telephone number of the person or entity requesting exclusion, and in the case of entities, the name and telephone number of the appropriate contact person; (ii) state that such person or entity "requests exclusion from the Settlement Class in *Cullen v. Ryvyl Inc. et al.*, Case No. 2:23-cv-00185-GPC-SBC"; (iii) state the number of shares of publicly traded Ryvyl and Greenbox POS common stock that the person or entity requesting exclusion purchased and sold during the Settlement

37

Class Period, as well as the dates and price of each such purchase and sale; and (iv) be signed by the person or entity requesting exclusion or an authorized representative.  A request for exclusion shall not be effective unless it provides all the required information and is received by, or postmarked within, the time stated above or is otherwise accepted by the Court.

14.    Any person or entity who or which timely and validly requests exclusion in compliance with the terms stated in this Order and is excluded from the Settlement Class shall not be a Settlement Class Member, shall not be bound by the terms of the Settlement or any orders or judgments in the Action, and shall not receive any payment out of the Net Settlement Fund.

15.    Any Settlement Class Member who or which does not timely and validly request exclusion from the Settlement Class in the manner stated in this Order: (a) shall be deemed to have waived his, her, or its right to be excluded from the Settlement Class; (b) shall be forever barred from requesting exclusion from the Settlement Class in this or any other proceeding; (c) shall be bound by the provisions of the Stipulation and Settlement and all proceedings, determinations, orders, and judgments in the Action, including, but not limited to, the Judgment or Alternative Judgment, if applicable, and the Releases provided for therein, whether favorable or unfavorable to the Settlement Class; and (d) will be barred from commencing, maintaining, or prosecuting any of the Released Plaintiff's Claims against any of the Released Defendant Parties, as more fully described in the Stipulation and Notice.

16.    The Court recognizes and acknowledges that a determination of fairness at the Final Approval Hearing will include the findings necessary to exempt the distribution of common stock by Ryvyl from registration pursuant to Section 3(a)(1) of the Securities Act, 15 U.S.C. Section 77(c)(a)(10), and that the Settlement Shares will be delivered to the Settlement Brokerage Account in accordance with the written instructions of Lead Counsel upon the final approval of the Settlement by this Court, without registration and compliance with the prospectus delivery requirements of the securities laws.

17.    Any Settlement Class Member who does not request exclusion from the Settlement Class may enter an appearance in the Action, at his, her, or its own expense, individually or through counsel of his, her, or its own choice, by filing with the Clerk of the Court and delivering a notice of appearance to both Lead Counsel and Defendants' Counsel, at the addresses set forth in paragraph 18, *infra*, such that is received no later than 21 calendar days prior to the Settlement Hearing, or as the Court may otherwise direct.  Any Settlement Class Member who does not enter an appearance will be represented by Lead Counsel.

18.    Any Settlement Class Member who does not request exclusion from the Settlement Class may submit a written objection to the proposed Settlement, the proposed Plan of Allocation, and/or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses and appear and show cause, if he, she, or it has any cause, why the proposed Settlement, the proposed Plan of Allocation, and/or Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses should not be approved; *provided, however*, that no Settlement Class Member shall be heard or entitled to contest the approval of the terms and conditions of the proposed Settlement, the proposed Plan of Allocation, and/or the motion for attorneys' fees and reimbursement of Litigation Expenses unless that person or entity has filed a written objection with the Court and served copies of such objection on Lead Counsel and Defendants' Counsel at the addresses set forth below such that they are received by, or postmarked no later than, 21 calendar days prior to the Settlement Hearing.

| **Lead Counsel** | **Defendants' Counsel** |
|---|---|
| Glancy Prongay & Murray LLP | Mintz, Levin, Cohn, Ferris, Glovsky and |
| Ex Kano S. Sams II, Esq. | Popeo, P.C. |
| 1925 Century Park East, Suite 2100 | Sean T. Prosser, Esq. |
| Los Angeles, CA, 90067 | 3580 Carmel Mountain Rd., Suite 300 |
| | San Diego, CA 92130 |

19.    Any objections, filings, and other submissions by the objecting Settlement Class Member: (a) must state the name, address, and telephone number of the person or

entity objecting and must be signed by the objector; (b) must contain a statement of the Settlement Class Member's objection or objections, and the specific reasons for each objection, including any legal and evidentiary support the Settlement Class Member wishes to bring to the Court's attention; and (c) must include documents sufficient to prove membership in the Settlement Class, including the number of shares of Ryvyl and Greenbox POS stock that the person or entity objecting purchased and sold during the Settlement Class Period, as well as the dates and prices of each such purchase and sale. Objectors who enter an appearance and desire to present evidence at the Settlement Hearing in support of their objection must include in their written objection or notice of appearance the identity of any witnesses they may call to testify and any exhibits they intend to introduce into evidence at the hearing.

20.     Any Settlement Class Member who or which does not make his, her, or its objection in the manner provided herein shall be deemed to have waived his, her, or its right to object to any aspect of the proposed Settlement, the proposed Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, and shall be forever barred and foreclosed from objecting to the fairness, reasonableness, or adequacy of the Settlement, the Plan of Allocation, or the requested attorneys' fees and Litigation Expenses, or from otherwise being heard concerning the Settlement, the Plan of Allocation, or the requested attorneys' fees and Litigation Expenses in this or any other proceeding.

21.     Until otherwise ordered by the Court, the Court stays all proceedings in the Action other than proceedings necessary to carry out or enforce the terms and conditions of the Stipulation.  Pending final determination of whether the Settlement should be approved, the Court bars and enjoins Lead Plaintiff, and all other members of the Settlement Class, from commencing or prosecuting any and all of the Released Plaintiff's Claims against each and all of the Released Defendant Parties.

22.     Lead Counsel shall not disburse any reasonable costs incurred in identifying Settlement Class Members and notifying them of the Settlement as well as in

administering the Settlement, Stipulation ¶ 21, until the Court determines that the costs are reasonable at the Final Approval Hearing.

23.    The contents of the Settlement Fund held by the Huntington National Bank (which the Court approves as the Escrow Agent) shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as they shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.

24.    Lead Counsel is authorized and directed to prepare any tax returns and any other tax reporting form for or in respect to the Settlement Fund, to pay from the Settlement Fund any Taxes owed with respect to the Settlement Fund, and to otherwise perform all obligations with respect to Taxes and any reporting or filings in respect thereof without further order of the Court in a manner consistent with the provisions of the Stipulation.

25.    If the Settlement is terminated as provided in the Stipulation, the Settlement is not approved, or the Effective Date of the Settlement otherwise fails to occur, this Order shall be vacated, rendered null and void, and be of no further force and effect, except as otherwise provided by the Stipulation, and this Order shall be without prejudice to the rights of Lead Plaintiff, the other Settlement Class Members, and Defendants, and the parties shall revert to their respective positions in the Action as of February 28, 2025, as provided in the Stipulation.

26.    Neither this Order, the Term Sheet, the Stipulation (whether or not consummated), including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of the Term Sheet and the Stipulation, nor any proceedings taken pursuant to or in connection with the Term Sheet, the Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith): (a) shall be offered against any of the Released Defendant Parties as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the

Released Defendant Parties with respect to the truth of any fact alleged by Lead Plaintiff or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Released Defendant Parties or in any way referred to for any other reason as against any of the Released Defendant Parties, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; (b) shall be offered against any of the Released Plaintiff Parties, as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by any of the Released Plaintiff Parties that any of their claims are without merit, that any of the Released Defendant Parties had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault, or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Released Plaintiff Parties, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; or (c) shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given under the Settlement represents the amount which could be or would have been recovered after trial; *provided, however*, that if the Stipulation is approved by the Court, the Parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted thereunder or otherwise to enforce the terms of the Settlement.

27.    Lead Counsel shall file the motion for final approval and the motion for an award of attorneys' fees and reimbursement of Litigation Expenses no later than 35 calendar days prior to the Settlement Hearing; and reply papers, if any, shall be filed and served no later than 14 calendar days prior to the Settlement Hearing.

28.    The Court retains jurisdiction to consider all further applications arising out of or connected with the proposed Settlement.

1      **IT IS SO ORDERED.**

2

3 Dated:  August 20, 2025

4                              Hon. Gonzalo P. Curiel

5                              United States District Judge

23-cv-00185-GPC-SBC