Robert V. Prongay (SBN 270796)
Ex Kano S. Sams II (SBN 192936)
Joseph D. Cohen (SBN 155601)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Email: rprongay@glancylaw.com
Email: esams@glancylaw.com
Email: jcohen@glancylaw.com

Counsel for Lead Plaintiff Scot S. Cook and
the Settlement Class

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK CULLEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RYVYL INC. F/K/A GREENBOX POS, BEN ERREZ, FREDI NISAN, J DREW BYELICK, BENJAMIN CHUNG, EF HUTTON F/K/A KINGSWOOD CAPITAL MARKETS, A DIVISION OF BENCHMARK INVESTMENTS, INC., and R.F. LAFFERTY & CO.,<br><br>Defendants. | Case No. 3:23-cv-0185-GPC-SBC<br><br>**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**<br><br><br>Hearing Date: December 19, 2025<br>Hearing Time: 1:30 p.m.<br>Location: Courtroom 12A<br>Judge: Hon. Gonzalo P. Curiel |

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION ......... 4

III.   THE COURT SHOULD APPROVE LEAD COUNSEL'S FEE REQUEST . 4

       A.    Lead Counsel Is Entitled To A Common Fund Fee Award .................. 4

       B.    The Requested Attorneys' Fee Is Reasonable Under Either The
             Percentage-Of-The-Fund Method Or The Lodestar Method ............... 5

             1.    The Quality Of The Result Supports The Fee Request .............. 5

             2.    The Substantial Litigation Risks Support The Fee Request ........ 7

             3.    The Skill Required And The Quality Of The Work ................. 11

             4.    The Contingent Nature Of The Fee And The Financial Burden
                   Carried By Counsel Support The Fee Request ......................... 13

             5.    A 25% Fee Award Is Consistent With Fee Awards In Similar,
                   Complex, Contingent Litigation ............................................... 15

             6.    The Reaction Of The Settlement Class Supports The Requested
                   Fee .......................................................................................... 17

       C.    A Lodestar Cross-Check Supports The Requested Fee ...................... 17

IV.    LEAD COUNSEL'S EXPENSES SHOULD BE REIMBURSED ............... 20

V.     THE COURT SHOULD GRANT LEAD PLAINTIFF'S PSLRA AWARD
       REQUEST ...................................................................................................... 22

VI.    CONCLUSION ............................................................................................... 23

# TABLE OF AUTHORITIES

<u>CASES</u>

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009) ...................................................................................................2

*Ali v. Franklin Wireless Corp.*,
   2024 WL 5179910 (S.D. Cal. Dec. 19, 2024) .........................................................................7

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ...............................................................................................10

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
   77 F.4th 74 (2d Cir. 2023) .....................................................................................................14

*Backman v. Polaroid Corp.*,
   910 F.2d 10 (1st Cir. 1990) ....................................................................................................10

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
   2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) ...........................................................................3

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) .................................................................................................................4

*Brown v. China Integrated Energy Inc.*,
   2016 WL 11757878 (C.D. Cal. July 22, 2016) .......................................................................10

*Cabiness v. Educ. Fin. Sols., LLC*,
   2019 WL 1369929 (N.D. Cal. Mar. 26, 2019) ..................................................................19, 20

*Chun–Hoon v. McKee Foods Corp.*,
   716 F. Supp. 2d 848 (N.D. Cal. 2010) ...................................................................................19

*Davis v. Yelp, Inc.*,
   2023 WL 3063823 (N.D. Cal. Jan. 27, 2023) ........................................................................22

*Destefano v. Zynga*,
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ..........................................................................13

*Edmonds v. U.S.*,
   658 F. Supp. 1126 (D.S.C. 1987) ...........................................................................................12

*Ellison v. Steven Madden, Ltd.*,
2013 WL 12124432 (C.D. Cal. May 7, 2013)..............................................................4

*Fernandez v. Victoria Secret Stores, LLC*,
2008 WL 8150856 (C.D. Cal. 2008) ..........................................................................17

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
307 F.3d 997 (9th Cir. 2002) .....................................................................................19

*Glass v. UBS Fin. Servs.*,
331 F. App'x. 452 (9th Cir. 2009).............................................................................18

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) .....................................................................................14

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) ...........................................................................................8

*Gonzalez v. City of Maywood*,
729 F.3d 1196 (9th Cir. 2013) ...................................................................................18

*Gross v. GFI Grp., Inc.*,
310 F. Supp. 3d 384 (S.D.N.Y. 2018) .......................................................................13

*Guevoura Fund Ltd. v. Sillerman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019).............................................................22

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) .........................................................................................20

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .............................................................8

*Hensley v. Eckerhart*,
461 U.S. 424 (1983).....................................................................................................5

*In re Activision Sec. Litig.*,
723 F. Supp. 1373 (N.D. Cal. 1989)...........................................................................15

*In re Am. Apparel Inc. S'holder Litig.*,
2014 WL 10212865 (C.D. Cal. Jul. 28, 2014) .....................................................15, 18

*In re Amgen Inc. Sec. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ......................................................18

*In re Anthem, Inc. Data Breach Litig.*,
2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) ...........................................................5

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ................................................................6

*In re Apollo Grp. Inc. Sec. Litig.*,
2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ...........................................................18

*In re Apple Computer Sec. Litig.*,
1991 WL 238298 (N.D. Cal. Sept. 6, 1991).......................................................2, 11

*In re Banc of California Sec. Litig.*,
2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) .......................................................17

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011).......................................................2, 11

*In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ....................................................................10

*In re Bluetooth Headsets Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .............................................................................6, 20

*In re Equity Funding Corp. Sec. Litig.*,
438 F. Supp. 1303 (C.D. Cal. 1977)........................................................................12

*In re Genworth Fin. Sec. Litig.*,
2016 WL 5400360 (E.D. Va. Sep. 26, 2016) ..........................................................18

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005)..................................................*passim*

*In re Heritage Bond Litig.*,
2005 WL 1594389 (C.D. Cal. June 10, 2005).............................................................5

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...............................................17, 19, 21, 22

*In re ImmunityBio, Inc. Sec. Litig.*,
2025 WL 1686263 (S.D. Cal. June 16, 2025) ..................................................*passim*

*In re JDS Uniphase Corp. Sec. Litig.*,
2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ......................................................14

*In re K12 Inc. Sec. Litig.*,
2019 WL 3766420 (N.D. Cal. July 10, 2019) ......................................................16

*In re LJ Int'l, Inc. Sec. Litig.*,
2009 WL 10669955 (C.D. Cal. Oct. 19, 2009) .................................................7, 10

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ...............................................................................16

*In re Myford Touch Consumer Litig.*,
2019 WL 6877477 (N.D. Cal. Dec. 17, 2019) ......................................................19

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998)......................................................................8, 15

*In re Nuvelo, Inc. Sec. Litig.*,
2011 WL 2650592 (N.D. Cal. July 6, 2011) ........................................................17

*In re Ocean Power Tech., Inc., Sec. Litig.*,
2016 WL 6778218 (D.N.J. Nov. 15, 2016) ...........................................................2

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008).........................................................*passim*

*In re Oracle Corp. Sec. Litig.*,
2009 WL 1709050 (N.D. Cal. June 16, 2009).......................................................14

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ............................................................................11, 15

*In re Portal Software, Inc. Sec. Litig.*,
2007 WL 4171201 (N.D. Cal. Nov. 26, 2007)......................................................19

*In re Stable Rd. Acquisition Corp.*,
2024 WL 3643393 (C.D. Cal. Apr. 23, 2024)......................................7, 18, 20, 22

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig.*,
  2013 WL 12327929 (C.D. Cal. July 24, 2013) ......................................................15

*In re Vivendi Universal, S.A. Sec. Litig.*,
  765 F. Supp. 2d 512 (S.D.N.Y. 2011) ..................................................................14

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ........................................................................13, 15

*In re Xcel Energy, Inc., Sec., Deriv. & ERISA Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ...............................................................8, 14

*Janus Cap. Grp., Inc. v. First Deriv. Traders*,
  564 U.S. 135 (2011)..........................................................................................14

*Jenson v. First Trust Corp.*,
  2008 WL 11338161 (C.D. Cal. June 9, 2008)......................................................12

*Jiangchen v. Rentech, Inc.*,
  2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ......................................................16

*Kendall v. Odonate Therapeutics, Inc.*,
  2022 WL 1997530 (S.D. Cal. June 6, 2022) ........................................................17

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ..............................................................................9

*Lea v. TAL Educ. Grp.*,
  2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ......................................................19

*Leach v. NBC Universal Media, LLC*,
  2017 WL 10435878 (S.D.N.Y. Aug. 24, 2017) ....................................................20

*Marshall v. Northrop Grumman Corp.*,
  2020 WL 5668935 (C.D. Cal. Sept. 18, 2020)......................................................15

*Mild v. PPG Indus., Inc.*,
  2019 WL 3345714 (C.D. Cal. July 25, 2019) .......................................................12

MEMORANDUM IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES
AND LITIGATION EXPENSES

*Morris v. Lifescan, Inc.*,
54 F. App'x 663 (9th Cir. 2003)......................................................................16

*Morrison v. Nat'l Australia Bank Ltd.*,
561 U.S. 247 (2010)........................................................................................14

*Multi-Ethnic Immigrant Workers Org. Network v. City of L.A.*,
2009 WL 9100391 (C.D. Cal. June 24, 2009).................................................15

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989)............................................................................5

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ..................................................................2, 11

*Rodriguez v. Disner*,
688 F.3d 645 (9th Cir. 2012) ............................................................................5

*Schwartz v. TXU Corp.*,
2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ..............................................8, 12

*Silverman v. Motorola Sols., Inc.*,
739 F.3d 956 (7th Cir. 2013) ............................................................................2

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
669 F.3d 632 (5th Cir. 2012) ............................................................................4

*Varljen v. H.J. Meyers & Co., Inc.*,
2000 WL 1683656 n.2 (S.D.N.Y. Nov. 8, 2000) ............................................22

*Vincent v. Hughes Air West, Inc.*,
557 F.2d 759 (9th Cir. 1977) ............................................................................4

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ...................................................................*passim*

*Webb v. Solarcity Corp.*,
884 F.3d 844 (9th Cir. 2018) ............................................................................9

*Wong v. Arlo Tech., Inc.*,
2021 WL 1531171 (N.D. Cal. April 19, 2021) .................................................7

*Yaron v. Intersect ENT, Inc.*,
  2021 WL 5150051 (N.D. Cal. Nov. 5, 2021) ........................................................ 16

*Zaidi v. Adamas Pharm., Inc.*,
  2024 WL 4342186 (N.D. Cal. Sept. 27, 2024) ................................................... 16, 22

<u>STATUTES</u>

15 U.S.C. § 78u-4(a)(4) ................................................................................... 1, 21

15 U.S.C. § 78u-4(a)(6) ........................................................................................ 4

15 U.S.C. § 78u-4(b)(1)-(b)(2)(A), and (b)(3)(B) ................................................... 2

Court-appointed lead counsel, Glancy Prongay & Murray LLP ("GPM" or "Lead Counsel"), respectfully submits this memorandum of law in support of its Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses.[1]

## I.    INTRODUCTION

Lead Counsel have succeeded in obtaining a Settlement with a combined value of no less than $1,000,000 for the benefit of the Settlement Class.[2]  This is an extremely favorable outcome in the face of substantial risks, and it is the result of Lead Counsel's vigorous, persistent, and skilled efforts.  Lead Counsel now respectfully move for an award of attorneys' fees in the amount of 25% of the Settlement Fund (*i.e.*, $250,000, plus interest at the same rate as the Settlement Fund), and reimbursement of $75,288.11 in Litigation Expenses.  The Litigation Expenses consist of $70,288.11 in out-of-pocket costs incurred by Lead Counsel while prosecuting the Action, and a $5,000 award to Court-appointed lead plaintiff Scot S. Cook ("Lead Plaintiff" or "Mr. Cook") for reimbursement of the reasonable costs (including the cost of time spent) incurred in prosecuting the Action on behalf of the Settlement Class pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(4).

---

[1] Unless otherwise defined, all capitalized terms used herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated July 9, 2025 (the "Stipulation"; ECF No. 106-3), or the concurrently filed Declaration of Ex Kano S. Sams II in Support of (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Sams Declaration").  All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in, and Exhibits to, the Sams Declaration.

[2] The Settlement Amount consists of $300,000 in cash, 700,000 freely tradable shares of Ryvyl common stock, and a put option pursuant to which the Company will buy back the shares under certain conditions at a value of $1.00 per share.  Stipulation, ¶¶8, 11.

---

MEMORANDUM IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES
AND LITIGATION EXPENSES

1

Achieving the Settlement was not easy.  Defendants were represented by highly skilled litigators, and Lead Counsel faced numerous hurdles and risks from the outset, including the PSLRA's heightened pleading standards and automatic stay of discovery, the high cost of experts and investigators needed to litigate a complex securities fraud case, and a substantial risk of non-payment.  *See* 15 U.S.C. § 78u-4(b)(1)-(b)(2)(A), and (b)(3)(B).  These are not idle risks.  "To be successful, a securities class action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action."  *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).[3]  As a result, a significant number of cases—like this one—are dismissed in whole or in part at the outset.  *See* ECF Nos. 71, 92.[4]

Nor do the risks end at the pleading stage.  Even when a plaintiff is successful at trial, payment is far from guaranteed.[5]  There was, therefore, a very strong possibility that the case would yield little or no recovery after many years of costly litigation.  *See Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits."); *In re Ocean Power Tech., Inc., Sec. Litig.*, 2016 WL 6778218, at *28 (D.N.J. Nov. 15, 2016)

---

[3] Unless otherwise noted, all internal citations and quotations have been omitted and emphasis has been added.

[4] *See also* Ex. 5 (excerpts from Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review* (NERA Jan. 22, 2025) ("NERA Report")) at 17 (Fig. 15) (61% of decisions on motions to dismiss in securities class actions granted the motion with or without prejudice, 20% were partially granted, and 19% were denied).

[5] *See In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict).

---

MEMORANDUM IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES
AND LITIGATION EXPENSES

2

("The risk of non-payment is especially high in securities class actions, as they are notably difficult and notoriously uncertain.").

Despite these risks, Lead Counsel have vigorously pursued this case for nearly three years—working 768.55 hours, and advancing $70,288.11 in expenses, all on a fully-contingent basis. As compensation for Lead Counsel's significant efforts and achievements on behalf of the Settlement Class, Lead Counsel respectfully request a fee award in the amount of 25% of the Settlement Fund.[6] Lead Counsel believe that an award of 25% (*i.e.*, the Ninth Circuit "benchmark"), properly reflects the many significant risks taken by Lead Counsel, as well as the result achieved in a hard fought and difficult litigation. When examined under either the percentage-of-the-fund or lodestar methods for calculating attorneys' fees, the requested fee is reasonable, and well within the range of attorneys' fees awarded in similar complex, contingency cases.

Lead Counsel also seek reimbursement of $70,288.11 in out-of-pocket litigation expenses. *See* ¶¶73-76. The expenses are reasonable in amount and were necessarily incurred in the successful prosecution of the Action. Accordingly, they should be approved.

Finally, Lead Counsel respectfully request a PSLRA award in the amount of $5,000 to compensate Mr. Cook for the time and effort he expended on behalf of the Settlement Class. The work Lead Plaintiff performed is set forth in his declaration (Ex. 1), and but for his "commitment to pursuing these claims, the successful recovery for the [Settlement] Class would not have been possible." *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at *6 (S.D. Ind. Sept. 4, 2019).

---

[6] As set forth in the Stipulation, "Settlement Fund" means the Cash Settlement Fund, plus the Settlement Shares (and/or any money generated from the sale of the Settlement Shares, including interest earned thereon). Stipulation, ¶1(ccc).

## II. FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION

For the sake of brevity, the Court is respectfully referred to the Sams Declaration for a discussion of, *inter alia*, the Action's history; the nature of the claims asserted; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; a summary of the services Lead Counsel provided for the benefit of the Settlement Class; and additional information on the factors that support the fee and expense application, including the lodestar cross-check.

## III. THE COURT SHOULD APPROVE LEAD COUNSEL'S FEE REQUEST

### A. Lead Counsel Is Entitled To A Common Fund Fee Award

It is well settled that attorneys who represent a class and are successful in recovering a common fund for the benefit of class members are entitled to a reasonable fee from the common fund as compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *see also Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977) (same).

"Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method" when awarding attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Notwithstanding that discretion, where there is an easily quantifiable benefit to the class—such as a cash common fund—the percentage-of-the-fund approach is the prevailing method. *See Ellison v. Steven Madden, Ltd.*, 2013 WL 12124432, at *8 (C.D. Cal. May 7, 2013) (finding "use of the percentage method" to be the "dominant approach in common fund cases"). Moreover, application of the percentage-of-the-fund method is consistent with the PSLRA, which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class. 15 U.S.C. § 78u-4(a)(6); *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669

F.3d 632, 643 (5th Cir. 2012) ("Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation."). For these reasons, among others, Lead Counsel respectfully requests that the Court award attorneys' fees in this case on a percentage-of-the-fund basis.

**B.     The Requested Attorneys' Fee Is Reasonable Under Either The Percentage-Of-The-Fund Method Or The Lodestar Method**

"The Ninth Circuit has established twenty-five percent of the fund as the 'benchmark' award that should be granted in common fund cases." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *5 (C.D. Cal. June 10, 2005). The benchmark is "presumptively reasonable," *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *4 (N.D. Cal. Aug. 17, 2018), and it should only be adjusted upward or downward for "unusual circumstances." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). In making this determination, "[t]he guiding principle is that attorneys' fees be reasonable under the circumstances." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012). Factors that courts have used to determine whether the requested percentage is fair and reasonable include: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; (5) the reaction of the Settlement Class; and (6) awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048-51. The Ninth Circuit has explained that these factors should not be used as a rigid checklist or weighed individually, but, rather, should be evaluated in light of the totality of the circumstances. *Id.* As demonstrated below, each of these factors, along with the lodestar cross-check, militate in favor of approving the requested fee.

**1.     The Quality Of The Result Supports The Fee Request**

"Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award." *In re Heritage Bond Litig.,* 2005 WL 1594389, at *8 (C.D. Cal. June 10, 2005); *Hensley v. Eckerhart*, 461 U.S. 424, 436

(1983) ("most critical factor is the degree of success obtained"); *In re Bluetooth Headsets Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Foremost among these considerations, however, is the benefit obtained for the class.").

Here, Lead Counsel has obtained a significant and certain settlement valued at $1.0 million, plus interest, for the benefit of the Settlement Class without the substantial risk, delay, expense, and uncertainty of continued litigation, trial and the inevitable appeals. Lead Plaintiff's consulting damages expert estimates that *if* the Court certified the same class period as the Settlement Class Period, *if* the class had prevailed on its claims at *both* summary judgment *and* after a jury trial, *and if* the Court and jury accepted Lead Plaintiff's damages theory, including proof of loss causation on the alleged disclosure date (*i.e.*, Lead Plaintiff's *best-case* scenario), estimated total *maximum* class wide damages would be approximately $1.7 million. ¶37. Under this scenario, the recovery is approximately 59% of class-wide damages. This is *more than double* the typical recovery for cases of a similar magnitude. *See* Ex. 5 (NERA Report, at p. 26 (Fig. 23) (between January 2015-December 2024 the median settlement value as a percentage of "NERA-Defined Investor Losses" was 24% for securities class actions with estimated losses of less than $20 million)).

This case was not, however, risk free and there were meaningful barriers to recovery. Obstacles included both the well-known general risks of complex securities litigation, as well as the specific risks inherent in this case. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation" and that "[t]he risk of establish damages [is] equally daunting."). Indeed, as discussed, *infra*, Defendants had challenged, or would likely challenge, virtually every element of the Lead Plaintiff's claims. Less than a complete victory on any aspect of the aforementioned assumptions would decrease recoverable damages or eliminate them altogether.

Moreover, this case presented very real collectability risk, and even if Lead Plaintiff were to obtain a judgment for more than the Settlement Amount, there may have been no money to collect. Ryvyl is self-insured and, as discussed, *infra*, its financial condition has deteriorated significantly since the filing of the initial complaint, and there is no guarantee that the Company will continue as a going concern. ¶¶8, 26.

Given the range of possible results in this litigation, including no recovery at all, there can be no question that the Settlement constitutes a considerable achievement and weighs heavily in favor of the requested fee. *See Ali v. Franklin Wireless Corp.*, 2024 WL 5179910, at *11 (S.D. Cal. Dec. 19, 2024) (where recovery "exceeds recent median recovery percentages both nationwide and in similar securities class action settlements approved by courts in this Circuit … the results achieved by Counsel weigh in favor of an upward adjustment from the 25% benchmark."); *see also In re LJ Int'l, Inc. Sec. Litig.*, 2009 WL 10669955, at *4-5, *7-8 (C.D. Cal. Oct. 19, 2009) (awarding 25% of gross settlement fund in securities fraud class action where $2 million recovery was 4.5% of $44 million maximum possible recovery and significantly below the median recovery in similar sized cases); *In re Stable Rd. Acquisition Corp.*, 2024 WL 3643393, at *12 (C.D. Cal. Apr. 23, 2024) (awarding 25% of gross settlement fund in securities fraud class action where recovery of 10.5% of maximum damages was "two and a half times the typical recovery for cases of a similar magnitude"); *Wong v. Arlo Tech., Inc.*, 2021 WL 1531171, at *9 (N.D. Cal. April 19, 2021) (awarding 25% of $1,250,000 settlement that was "only a fraction [2.35%] of Lead Plaintiff's estimation of potential recoverable damages for the Class at $53,200,000").

**2.     The Substantial Litigation Risks Support The Fee Request**

The second factor courts in this Circuit consider in awarding attorneys' fees is "the risk of litigation." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046-47 (N.D. Cal. 2008); *see also Vizcaino*, 290 F.3d at 1048. While courts have always

recognized that securities class actions are complex and carry significant risks, post-PSLRA rulings and empirical studies make it clear that the risk of no recovery has increased significantly. *See In re ImmunityBio, Inc. Sec. Litig.*, 2025 WL 1686263, at *14 (S.D. Cal. June 16, 2025) ("Courts have consistently recognized that securities class actions are complex and risky."); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018) ("Plaintiffs' Counsel faced substantial risks in pursuing this litigation, given the inherent uncertainties of trying securities fraud cases and the demanding pleading standards of the PLSRA."); *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *32 (N.D. Tex. Nov. 8, 2005) ("the risk of no recovery in complex [securities] cases of this type is very real.").[7]   This Action was no exception.   The risks were present in the beginning of the case, and they have continued throughout the litigation. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 55 (2d Cir. 2000) ("It is well-established that litigation risk must be measured as of when the case is filed."); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 488 (S.D.N.Y. 1998) ("Risk, of course, must be judged as it appeared to counsel at the outset of the case, when they committed their capital (human and otherwise).").

While Lead Counsel believe that the claims of Lead Plaintiff and the Settlement Class are meritorious, Lead Counsel also recognized from the outset that there were a number of substantial risks in the litigation, and that Lead Plaintiff's ability to succeed at trial and obtain a large judgment was far from certain. *See* ¶¶28-35 (discussing litigation risk).   For evidence of this risk, the Court need look no further than its own Orders partially granting Defendants' motions to dismiss. *See In re Xcel Energy, Inc., Sec., Deriv. & ERISA Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("The court needs to look no further than its own order dismissing the shareholder … litigation to assess the risks involved."); *see also* ECF Nos. 71 and 92.   In addition to dismissing the Securities Act claims, the Underwriter Defendants and CFO Byelick,

---

[7] *See also* NERA Report at p. 17 (Fig. 15) (discussing dismissal statistics).

the Court held that some of the false and misleading statements with respect to the Exchange Act claims were not adequately alleged, and that Lead Plaintiff had failed to allege scienter under the Exchange Act with respect to some Defendants.

Moreover, the fact that Lead Plaintiff partially prevailed at the pleading stage did not guarantee a recovery at trial.  Lead Counsel faced significant hurdles in ***proving*** liability and damages.  To prevail, Lead Plaintiff would have to prove each of the elements of 10(b) claim: "(1) a material misrepresentation or omission by the defendant [falsity]; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (cleaned up).  Defendants, on the other hand, would need to negate only one element for Lead Plaintiffs and the class to lose.  Under such circumstances, success was by no means assured.  Indeed, "[j]ury verdicts in favor of plaintiffs are exceedingly uncommon in securities fraud class actions." *ImmunityBio*, 2025 WL 1686263, at *14.

One of the major risks faced by Lead Plaintiff was proving scienter.  Defendants forcefully argued, and would continue to maintain at summary judgment and trial, that Lead Plaintiff could not demonstrate scienter.  *See*, *e.g.*, ECF Nos. 41-1, 61, 85-1 and 90.  Among other things, Defendants would continue to assert that the following cut against a finding of scienter: (i) none of the Individual Defendants sold stock during the class period; (ii) there is no direct evidence showing that Defendants were aware of the errors that led to the restatement; and (iii) the more plausible non-culpable explanation for the Company's restatement is that its new auditor detected previously unknown errors by Ryvyl's former (and now disgraced) auditor (BF Borgers), which Defendants terminated and replaced in April 2022, and that the Company reported the accounting errors to shareholders promptly after the new auditor identified the mistakes.  *See* ECF No. 90 at 9; *see also Webb v. Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018) ("a lack of stock sales can detract from a scienter

finding."). While Lead Plaintiff strongly disagreed with Defendants and believed he would be able to prove scienter, there is no doubt that the issue would have been contested on summary judgment, at trial, and on appeal. *See In re LJ*, 2009 WL 10669955, at *5 ("It is very difficult to predict whether a jury would have believed Plaintiffs' claims regarding state of mind."); *Brown v. China Integrated Energy Inc.*, 2016 WL 11757878, at *11 (C.D. Cal. July 22, 2016) ("To prevail, Plaintiffs would have to establish Defendants acted with scienter, which can be particularly difficult to establish.").

Additional risk was baked into the case by its subject matter. A trial would by necessity involve competing experts on complex issues such as accounting and auditing standards, loss causation, and damages. "Since Lead Plaintiff bears the burden of proof, Defendants could win at summary judgment or trial through a Daubert motion and there would be an 'unpredictable battle of the experts.'" *ImmunityBio*, 2025 WL 1686263, at *8; *see also In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) ("When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured.").

Furthermore, even a victory at trial would not have guaranteed a better result. Lead Plaintiff would face the risk of losing post-trial motions and appeals, as well as potentially negative changes in the law. *See Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1235 (10th Cir. 1996) (overturning securities-fraud class-action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (where the class won a substantial jury verdict and motion for judgment N.O.V. was

denied; on appeal, the judgment was reversed and the case was dismissed – after 11 years of litigation).[8]

Finally, this case presented very real ability-to-pay issues—a risk that was evident at the beginning of the case and that had manifested by the end.  Ryvyl warned in its offering materials that "our management has identified and our auditors agreed that there is a substantial doubt about our ability to continue as a going concern."  ECF No. 33, ¶42.  As such, when the case was filed there was no guarantee that Defendants would have sufficient funds to pay a substantial judgment many years in the future.  Lead Counsel had no knowledge of whether Defendants had D&O coverage when undertaking this litigation and, because of the PSLRA discovery stay, would not be able to obtain the applicable policies, if any, until after Lead Plaintiff prevailed against a motion to dismiss.  Moreover, Ryvyl's financial condition has deteriorated significantly since the filing of the initial complaint.  The Company's stock trades at under a dollar, it has faced delisting, it has included going concern warnings in its SEC filings, and it has reported significant losses.  ¶¶8, 26.

In sum, the risks posed by litigation were substantial, and they were present every step of the way.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (finding attorneys' fees of 33% "justified because of the complexity of the issues and the risks").

### 3.    The Skill Required And The Quality Of The Work

The third factor to consider in determining what fee to award is the skill required and the quality of the work performed.  To this end, courts have recognized that the "prosecution and management of a complex national class action requires unique legal skills and abilities," *Omnivision*, 559 F. Supp. 2d at 1047, and that "[t]he experience of counsel is also a factor in determining the appropriate fee award."

---

[8] *See also Koger Props.*, 116 F.3d at 1441; *BankAtlantic*, 2011 WL 1585605; *Apple Computer*, 1991 WL 238298.

*Heritage Bond*, 2005 WL 1594403, at *12. "This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Omnivision*, 559 F. Supp. 2d at 1047.

As demonstrated by its firm résumé, GPM's attorneys have many years of experience litigating complex federal civil cases, and, in particular, shareholder and securities class actions. *See* Ex. 8. Lead Counsel's experience allowed them to obtain significant investigative materials in spite of the PSLRA's barriers to obtaining formal discovery, identify the complex issues involved in this case, prevail in part against Defendants' three motions to dismiss, formulate strategies to effectively prosecute the Action, and obtain a settlement that exceeds the median recovery in securities class actions with similar damages. Without question, Lead Counsel's skill and experience were a major factor in obtaining the excellent result achieved by this Settlement. *See Edmonds v. U.S.*, 658 F. Supp. 1126, 1137 (D.S.C. 1987) ("prosecution and management of a complex national class action requires unique legal skills and abilities."); *see also Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) (GPM lawyers "are highly experienced in securities litigation and have vigorously prosecuted the Settlement Class's claims[.]").

In evaluating the quality of Lead Counsel's work, it is also important to consider the quality and vigor of opposing counsel. *See Jenson v. First Trust Corp.*, 2008 WL 11338161, at *14 (C.D. Cal. June 9, 2008). Defendants in this Action were represented by experienced, aggressive, and highly skilled counsel from Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. "The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation." *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *30 (N.D. Tex. Jan. 13, 2006); *see also In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) ("[P]laintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly.").

### 4. The Contingent Nature Of The Fee And The Financial Burden Carried By Counsel Support The Fee Request

The fourth factor is the contingent nature of the fee. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("*WPPSS*"); *see also Destefano v. Zynga*, 2016 WL 537946, at \*18 (N.D. Cal. Feb. 11, 2016) ("[W]hen counsel takes on a contingency fee case and the litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award."). Here, Lead Counsel has received no compensation to date, invested 768.55 hours of work equating to a total lodestar of $838,767.50, and advanced expenses of $70,288.11. Additional work in implementing the Settlement and claims administration will also be required. Since the inception of this case, Lead Counsel has borne the risk that any compensation and expense reimbursement would be contingent on the result achieved, as well as on this Court's discretion in awarding fees and expenses.

The risk of no recovery in complex cases like this one is very real. Lead Counsel know from personal experience that despite the most vigorous and competent efforts, success in complex contingent litigation is never guaranteed. *See In re: Korean Ramen Antitrust Litig.*, Case No. 3:13-cv-04115 (N.D. Cal. Dec. 17, 2018) (GPM served as Co-Lead Counsel in case where, after more than five years of litigation, a plethora of foreign discovery, the expenditure of many millions of dollars in attorney time and hard costs, as well as a multi-week trial, the jury returned a verdict in favor of defendants alleged to have conspired to fix the prices of Korean ramen noodles).[9]

And Lead Counsel is not alone. There are many other hard-fought lawsuits

---

[9] *See also Gross v. GFI Grp., Inc.*, 310 F. Supp. 3d 384, 399 (S.D.N.Y. 2018) (GPM served as Co-Lead Counsel in case where the Court granted summary judgment for defendants following four years of litigation, discovery in the U.S. and U.K., and the expenditure of millions of dollars of attorney time and hard costs), *aff'd on other grounds* 784 F. App'x 27 (2d Cir. Sept. 13, 2019).

where, because of the discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts by members of the plaintiffs' bar produced no attorneys' fees for counsel. *See In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533-34 (S.D.N.Y. 2011), *aff'd*, 838 F.3d 223 (2d Cir. 2016) (after jury verdict for plaintiff, court significantly reduced scope of class by amending class definition to exclude purchasers of ordinary shares, based on Supreme Court's reversal, in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010), of unbroken circuit court precedent over 40 years); *Omnivision*, 559 F. Supp. 2d at 1047 (noting in 2008 that "[n]ationwide, Plaintiffs have won only three of eleven [securities class action] cases to reach verdicts since 1996."). Indeed, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel*, 364 F. Supp. 2d at 994.[10] Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. *See Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction in light of *Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135 (2011)).[11]

Here, because Lead Counsel's fee was entirely contingent, the only certainties were that there would be no fee or expense reimbursement without a successful result,

---

[10] *See also Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*, 77 F.4th 74 (2d Cir. 2023) (class decertified following more than 12 years of litigation and appellate and Supreme Court review); *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 16, 2009) (granting summary judgment to defendants after eight years of litigation), *aff'd* 627 F.3d 376 (9th Cir. 2010); *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (jury verdict for defendants following lengthy trial).

[11] *See also supra* n.5.

and that such a result would only be realized after substantial amounts of time, effort, and expense had been expended.  Nevertheless, Lead Counsel committed significant amounts of both time and money to vigorously and successfully prosecute this Action for the benefit of the Settlement Class.  ¶¶58, 75-76; Exs. 3-4.  Under such circumstances, "[t]he contingent nature of counsel's representation strongly favors approval of the requested fee."  *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 488 (S.D.N.Y. 1998); *ImmunityBio*, 2025 WL 1686263, at *14.

### 5.    A 25% Fee Award Is Consistent With Fee Awards In Similar, Complex, Contingent Litigation

"As noted above, the Ninth Circuit has established 25 percent of the common fund as the benchmark for attorney fee awards."  *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig.*, 2013 WL 12327929, at *32 (C.D. Cal. July 24, 2013); *ImmunityBio*, 2025 WL 1686263, at *13. However, "a reasonable fee award is the hallmark of common fund cases" and the guiding principle in this Circuit is that a fee award be "reasonable under the circumstances."  *WPPSS*, 19 F.3d at 1295 n.2.  As applied, this means that "in most common fund cases, the award exceeds that benchmark."  *Omnivision*, 559 F. Supp. 2d at 1047; *see also Marshall v. Northrop Grumman Corp.*, 2020 WL 5668935, at *8 (C.D. Cal. Sept. 18, 2020) (awarding one-third of $12.375 million settlement fund, collecting cases, and stating: "[a]n attorney fee of one third of the settlement fund is routinely found to be reasonable in class actions"); *Multi-Ethnic Immigrant Workers Org. Network v. City of L.A.*, 2009 WL 9100391, at *4 (C.D. Cal. June 24, 2009) (reviewing empirical research and stating: "[n]ationally, the average percentage of the fund award in class actions is approximately one-third").

"This is particularly true in securities class actions such as this."  *In re Am. Apparel Inc. S'holder Litig.*, 2014 WL 10212865, at *23 (C.D. Cal. Jul. 28, 2014); *see also Pac. Enters.*, 47 F.3d at 373 (affirming 33% award from $12 million common fund "because of the complexity of the issues and the risks"); *In re Activision Sec.*

*Litig.*, 723 F. Supp. 1373, 1373 (N.D. Cal. 1989) (surveying securities cases nationwide, awarding 32.8% fee from $3.5 million fund, and noting, "[t]his court's review of recent reported cases discloses that nearly all common fund awards range around 30%"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of one-third of $1.725 million settlement). Indeed, for securities class actions settled between 2015 and 2024 with a gross settlement value of under $5 million, the median attorneys' fee as a percentage of settlement value was 33.0%. *See* NERA Report at 30 (Fig. 27).[12]

The requested fee is, therefore, in line with the Ninth Circuit benchmark and is well within the range of percentages courts in this Circuit and elsewhere that have awarded fees in similarly complex cases. *See Vizcaino*, 290 F.3d at 1051 (affirming award of 28% of $97 million settlement fund); *Yaron v. Intersect ENT, Inc.*, 2021 WL 5150051, at *1-2 (N.D. Cal. Nov. 5, 2021) (awarding 33⅓% of $1.9 million in securities class action); *Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *9-11 (C.D. Cal. Oct. 10, 2019) (awarding 33⅓% of $2,050,000 in securities class action); *In re K12 Inc. Sec. Litig.*, 2019 WL 3766420, at *1 (N.D. Cal. July 10, 2019) (awarding 33% of $3.5 million settlement fund); *Zaidi v. Adamas Pharm., Inc.*, 2024 WL 4342186, at *1 (N.D. Cal. Sept. 27, 2024) (awarding 33⅓% of $4.65 million settlement fund); *In re Interlink Elec., Inc. Sec. Litig.*, No. 05-cv-08133 AG (SH), ECF No. 165 at 4 (C.D. Cal. June 1, 2009) (awarding 33⅓% of $5 million settlement fund) (Ex. 10); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming attorneys' fee award of 33% of a $14.8 million cash class action settlement); *Heritage Bond*, 2005 WL 1594403, at *23 (awarding fee of 33.33% of

---

[12] For securities class actions settled during the 1996-2014 timeframe with a gross settlement value of under $5 million, the median attorneys' fee as a percentage of settlement value was 30%. Ex. 5 (NERA Report) at p.30 (Fig. 27). Thus, for a case like this one—with a $1 million settlement value—fee awards have remained remarkably consistent since the passage of the PSLRA in 1995.

$27,783,000 settlement fund because "courts in this circuit, as well as other circuits have awarded attorneys' fees of 30% or more in complex class actions"); *In re Banc of California Sec. Litig.*, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding one-third of a $19.75 million settlement fund); *In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592, at *2 (N.D. Cal. July 6, 2011) (30% of $8.9 million); *OmniVision*, 559 F. Supp. 2d at 1049 (28% of $13.75 million); *Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 1997530, at *6 (S.D. Cal. June 6, 2022) (awarding 33⅓% of $12.75 million settlement fund in securities class action).[13]

*A fortiori*, this factor also weighs in favor of granting Lead Counsel's 25% fee request.

### 6.    The Reaction Of The Settlement Class Supports The Requested Fee

"The existence or absence of objectors to the requested attorneys' fee is a factor in determining the appropriate fee award." *Heritage Bond*, 2005 WL 1594403, at *21. While the time to object to the fee and expense application does not expire until November 28, 2025, to date, not a single objection has been filed with the Court.[14] "The lack of objection from any Class Member supports the attorneys' fees award." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007); *Omnivision*, 559 F. Supp. 2d at 1048 (same); *see also Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856, at *13 (C.D. Cal. 2008) (three members objected and 29 opted out, indicating favorable result and award of "generous fee").

### C.    A Lodestar Cross-Check Supports The Requested Fee

Although Lead Counsel seek approval of a fee based on a percentage of the fund, as "[a] final check on the reasonableness of the requested fees, courts often

---

[13] *See also* Ex. 6 (collecting Ninth Circuit cases).

[14] Lead Counsel will address the objection and any others that are received in its reply papers, which will be filed on December 5, 2025.

compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis." *Omnivision*, 559 F. Supp. 2d at 1048; *see also In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) ("Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness").

"A lodestar cross-check first computes the plaintiffs' attorneys' reasonable hourly rate for the litigation and multiplies that rate by the number of hours dedicated to the case." *In re Genworth Fin. Sec. Litig.*, 2016 WL 5400360, at *7 (E.D. Va. Sep. 26, 2016); *ImmunityBio*, 2025 WL 1686263, at *15. In the second step of the analysis, a court adjusts the lodestar to consider, among other things, the time and labor required, the result achieved, the quality of representation, whether the fee is fixed or contingent, the novelty and difficulty of the questions involved, and awards in similar cases. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209, n.11 (9th Cir. 2013); *Vizcaino*, 290 F.3d at 1051-52 ("courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases"); *Heritage Bond*, 2005 WL 1594403, at *22 ("In securities class actions, it is common for a counsel's lodestar figure to be adjusted upward by some multiplier reflecting a variety of factors such as the effort expended by counsel, the complexity of the case, and the risks assumed by counsel.").

"When the lodestar is used as a cross-check, the focus is not on the necessity and reasonableness of every hour of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *Stable Rd.*, 2024 WL 3643393, at *15; *Glass v. UBS Fin. Servs.*, 331 F. App'x. 452, 456 (9th Cir. 2009).[15] In this case, the lodestar method – whether

---

[15] *See also In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *7 (D. Ariz. Apr. 20, 2012) ("an itemized statement of legal services is not necessary for an appropriate lodestar cross-check"); *In re Am. Apparel*, 2014 WL 10212865, at *23 ("the lodestar

used directly or as a "cross-check" on the percentage method – strongly demonstrates the reasonableness of the requested fee.

Here, Lead Counsel (including attorneys, paralegals, and professional support staff) collectively devoted a total of 768.55 hours to the prosecution of the Action. ¶58; Ex. 3.    As is customary when seeking a percentage-of-the-fund award in common fund cases and submitting data for a lodestar cross-check, Lead Counsel is submitting a declaration that includes charts breaking down the firm's lodestar by individual, position, billing rate, tasks, and hours billed.[16]  Ex. 3.  Based on current hourly rates,[17] Lead Counsel's lodestar is $838,767.50.  ¶58.[18]  Thus, the 25% fee request (equal to $250,000), yields a fractional or "negative" multiplier of 0.30.  *Id.*

A "multiplier of less than one … suggests that the negotiated fee award is a reasonable and fair valuation of the services rendered to the class."  *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) (requested fee award was not unreasonable when lodestar cross-check revealed a multiplier of 0.59); *see also In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007) ("The resulting so-called negative multiplier suggests that the percentage-based amount is reasonable and fair based on the time and effort expended by class

---

cross-check can be performed with a less exhaustive cataloging and review of counsel's hours.").

[16] *See Immune Response*, 497 F. Supp. 2d at 1176 ("Here, counsel have provided sworn declarations from attorneys attesting to the experience and qualifications of the attorneys who worked on the case, the hourly rates, and the hours expended.").

[17] Courts use current rather than historic rates to ensure that "[a]ttorneys in common fund cases [are] compensated for any delay in payment." *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002).

[18] Lead Counsel's rates (*see* Ex. 3) "are comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude." *Lea v. TAL Educ. Grp.*, 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021) (approving GPM's 2021 rates); *see also* Ex. 7 (chart of rates charged by peer plaintiff and defense counsel in complex litigation).

counsel."); *In re Myford Touch Consumer Litig.*, 2019 WL 6877477, at *1 (N.D. Cal. Dec. 17, 2019) ("[T]he negative multiplier … suggests the request is reasonable."). Indeed, "an award exceeding 25 percent is reasonable where the total fee award is lower than the lodestar calculation." *Cabiness v. Educ. Fin. Sols., LLC*, 2019 WL 1369929, at *7 (N.D. Cal. Mar. 26, 2019). This is because, as is true here, "the requested award would not 'yield windfall profits for class counsel in light of the hours spent on the case.'" *Id.* (quoting *Bluetooth*, 654 F.3d at 942).

"The fact that [Lead] Counsel's fee award will not only compensate them for time and effort already expended, but for the time that they will be required to spend administering the settlement going forward, also supports their fee request." *Leach v. NBC Universal Media, LLC*, 2017 WL 10435878 at ¶49 (S.D.N.Y. Aug. 24, 2017). Lead Counsel will oversee the claims administration process, respond to shareholder inquiries, and prepare and present a Motion for Distribution of the Net Settlement Fund to the Court. The multiplier will, therefore, diminish as the case moves forward.

In sum, Lead Counsel's fee request is well within the range of reasonableness in complex class actions such as this one, whether calculated as a percentage of the fund or in relation to Lead Counsel's lodestar.

## IV.    LEAD COUNSEL'S EXPENSES SHOULD BE REIMBURSED

"In addition to an award of attorneys' fees, attorneys who create a common fund for the benefit of a class are also entitled to payment of reasonable litigation expenses and costs from the fund." *Stable Rd.*, 2024 WL 3643393, at *15; *Omnivision*, 559 F. Supp. 2d at 1048. The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client.").

From the beginning of the case, Lead Counsel were aware that they might not recover any of their expenses and would not recover anything unless and until the Action was successfully resolved.  Lead Counsel also understood that, even assuming that the case was ultimately successful, an award of expenses would not compensate for the lost use of the funds advanced.  Thus, Lead Counsel were motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action.  ¶74; *see also ImmunityBio*, 2025 WL 1686263, at *15 ("[B]ecause of the contingent nature of this action, Counsel had no incentive to accrue unnecessary or unreasonable expenses.").

In the aggregate, Lead Counsel have incurred out-of-pocket expenses in the amount of $70,288.11 while prosecuting the Action, and these expenses are set forth in the Sams Declaration. ¶73.  The vast majority of expenses ($69,256.67, or approximately 99%) were for the retention of experts ($22,443.00), the mediator ($18,621.88), and a private investigation firm ($13,951.99), as well as online research ($14,239.80).  Each of these expenses were critical to Lead Counsel's success in achieving the Settlement and, like the other categories of expenses for which counsel seek reimbursement, are the types of expenses routinely charged to clients who pay hourly.  They should, therefore, be reimbursed out of the common fund.  *See Immune Response*, 497 F. Supp. 2d at 1177-78 (approving counsel's request for reimbursement "for 1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees").[19]

---

[19] Lead Counsel's requested reimbursement of $70,288.11 (plus a PSLRA award of $5,000 for Lead Plaintiff) is less than the $85,000 maximum amount of potential expenses set forth in the Notice.  Ex. 2-B, ¶¶5, 79.

## V.    THE COURT SHOULD GRANT LEAD PLAINTIFF'S PSLRA AWARD REQUEST

In connection with the Lead Counsel's request for payment of Litigation Expenses, Lead Plaintiff respectfully request a PSLRA award in the amount of $5,000 to reimburse Mr. Cook for time spent prosecuting the Action.  15 U.S.C. § 78u-4(a)(4).  "Court[s] have found that the PSLRA permits courts to award lead plaintiffs in federal securities actions reimbursement for their time devoted to participating in and directing the litigation on behalf of the class." *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *22 (S.D.N.Y. Dec. 18, 2019).  Reimbursement of such costs are allowed because they "encourages participation of plaintiffs in the active supervision of their counsel." *Varljen v. H.J. Meyers & Co., Inc.*, 2000 WL 1683656, at *5 n.2 (S.D.N.Y. Nov. 8, 2000).

Here, Mr. Cook took an active role in the litigation by, among other things: (i) moving to serve as Lead Plaintiff in the Action; (ii) producing his trading records to his attorneys; (iii) regularly communicating with his attorneys regarding the posture and progress of the case; (iv) reviewing significant pleadings and briefs filed in this Action; (v) reviewing the Court's orders and discussing them with his attorneys; (vi) consulting with his attorneys regarding the settlement negotiations; and (vii) evaluating and approving the proposed Settlement. *See* Ex. 1 at ¶¶4-5.  "These are precisely the types of activities that support awarding reimbursement of expenses to class representatives" (*see Stable Road*, 2024 WL 3643393, at *16), and the amount requested is consistent with awards in other complex cases. *See id*. ($10,000 PSLRA award).[20]

---

[20] *See also ImmunityBio*, 2025 WL 1686263, at *15-16 ($10,000 PSLRA award); *Immune Response*, 497 F. Supp. 2d at 1173-74 ($40,000 PSLRA award); *Davis v. Yelp, Inc.*, 2023 WL 3063823, at *2 (N.D. Cal. Jan. 27, 2023) ($15,000 PSLRA award); *Zaidi v. Adamas Pharm., Inc.*, 2024 WL 4342186, at *2 (N.D. Cal. Sept. 27, 2024) ($10,000 PSLRA award).

## VI.    CONCLUSION

For the foregoing reasons, Lead Counsel respectfully request that the Court grant the fee and expense application.

DATED:  November 13, 2025          **GLANCY PRONGAY & MURRAY LLP**

By:  _s/ Ex Kano S. Sams II_
Robert V. Prongay
Ex Kano S. Sams II
Joseph D. Cohen
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Email: rprongay@glancylaw.com
Email: esams@glancylaw.com
Email: jcohen@glancylaw.com

*Counsel for Lead Plaintiff Scot S. Cook and the Settlement Class*

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I hereby certify that on this 13th day of November, 2025, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

s/ Ex Kano S. Sams II
Ex Kano S. Sams II