Robert V. Prongay (SBN 270796)
Ex Kano S. Sams II (SBN 192936)
Joseph D. Cohen (SBN 155601)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Email: rprongay@glancylaw.com
Email: esams@glancylaw.com
Email: jcohen@glancylaw.com

Counsel for Lead Plaintiff Scot S. Cook and
the Settlement Class

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK CULLEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RYVYL INC. F/K/A GREENBOX POS, BEN ERREZ, FREDI NISAN, J DREW BYELICK, BENJAMIN CHUNG, EF HUTTON F/K/A KINGSWOOD CAPITAL MARKETS, A DIVISION OF BENCHMARK INVESTMENTS, INC., and R.F. LAFFERTY & CO.,<br><br>Defendants. | Case No. 3:23-cv-0185-GPC-SBC<br><br>**DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF: (I) LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**<br><br>Hearing Date: December 19, 2025<br>Hearing Time: 1:30 p.m.<br>Location: Courtroom 12A<br>Judge: Hon. Gonzalo P. Curiel |

# TABLE OF CONTENTS

I.    INTRODUCTION ...........................................................................................................3

II.   PROSECUTION OF THE ACTION ...........................................................................7

    A.    Commencement of the Instant Action and Appointment of Lead Plaintiff and Lead Counsel .............................................................................................7

    B.    The Comprehensive Pre-Filing Investigation and Preparation of the Complaint ..........................................................................................................7

    C.    Defendants' Motions to Dismiss the Complaint and the First Mediation ..........................................................................................................8

    D.    The Second Amended Complaint and Motion to Dismiss .....................9

    E.    Third Amended Complaint, Mediation Efforts, and Settlement.............9

    F.    The Court Grants Preliminary Approval of Settlement ........................10

III.  THE RISKS OF CONTINUED LITIGATION ...........................................10

    A.    Ability-to-Pay Risk ....................................................................................11

    B.    Risks to Establishing Liability and Damages .......................................11

    C.    Risks Faced in Obtaining and Maintaining Class Action Status ..........13

    D.    Other Risks..................................................................................................13

    E.    The Settlement is Reasonable in Light of the Maximum Potential Recovery in the Action ..............................................................................14

IV.   LEAD PLAINTIFF'S COMPLIANCE WITH THE COURT'S PRELIMINARY APPROVAL ORDER REQUIRING ISSUANCE OF THE NOTICE ..........................................................................................................15

V.    ALLOCATION OF THE NET PROCEEDS OF THE SETTLEMENT........16

VI.   LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES...................................18

    A.    The Outcome Achieved is the Result of the Significant Time and Labor that Lead Counsel Devoted to the Action...........................................19

i
DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

B.  The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High-Risk Contingent Securities Cases ...........21

C.  The Experience and Expertise of Lead Counsel, and the Standing and Caliber of Defendants' Counsel ..........................................................23

D.  The Reaction of the Settlement Class Supports Lead Plaintiff's Counsel's Fee Request ....................................................................23

E.  Lead Plaintiff Supports Lead Counsel's Fee Request .........................24

F.  Reimbursement of the Requested Litigation Expenses Is Fair and Reasonable ......................................................................................25

VII.  CONCLUSION .............................................................................................26

**TABLE OF EXHIBITS TO DECLARATION**

| EXHIBIT | TITLE |
|---------|-------|
| 1 | Declaration of Lead Plaintiff Scot S. Cook in Support of: (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fee and Reimbursement of Litigation Expenses |
| 2 | Declaration of Jacob Kaminer Concerning: (A) Mailing/Emailing of Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections |
| 3 | Lodestar Reports for Glancy Prongay & Murray LLP |
| 4 | Expense Report for Glancy Prongay & Murray LLP |
| 5 | Excerpts from Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation*: 2024 Full-Year Review (NERA Jan. 22, 2025) |
| 6 | Table of Select Ninth Circuit Cases with 25% and Above Fee Awards |
| 7 | Table of Law Firm Billing Rates |
| 8 | Glancy Prongay & Murray LLP Firm Résumé |
| 9 | Ryvyl's Form 10-Q for the Quarter Ended June 30, 2025 |
| 10 | *In re Interlink Elec., Inc. Sec. Litig.*, No. 05-cv-08133 AG (SH), ECF No. 165 (C.D. Cal. June 1, 2009) |

I, Ex Kano S. Sams II, hereby declare as follows:

1. I am an attorney admitted to practice before this Court. I am a partner at the law firm of Glancy Prongay & Murray LLP ("GPM"), the Court-appointed Lead Counsel in the above-captioned action (the "Action").[1] GPM represents the Court-appointed lead plaintiff, Scot S. Cook ("Lead Plaintiff"), and the proposed Settlement Class. I have personal knowledge of the matters stated herein based upon my participation in the prosecution and settlement of the claims asserted in the Action.

2. I respectfully submit this declaration, together with the attached exhibits, in support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation. As set forth in the Lead Plaintiff's Memorandum in Support of Unopposed Motion for Final Approval of Class Action Settlement and Plan of Allocation ("Final Approval Memorandum"), Lead Plaintiff seeks final approval of the agreement to settle the Action in exchange for $300,000 in cash, 700,000 freely tradable shares of Ryvyl Inc.'s (f/k/a Greenbox POS) ("Ryvyl" or the "Company") common stock (the "Settlement Shares"), and a put option, with a combined value of no less than one million dollars ($1,000,000), for the benefit of the Settlement Class.[2] Lead Plaintiff also seeks final approval of the proposed Plan of Allocation of the Net Settlement Fund to eligible Settlement Class Members.

3. Additionally, I respectfully submit this Declaration in support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (referred to herein as the "Fee and Expense Application"). The Fee and Expense Application seeks an award of attorneys' fees in the amount of 25% of the Settlement Fund (*i.e.*, $250,000.00, plus interest earned at the same rate as the

---

[1] Unless otherwise defined herein, all capitalized terms have the same meaning as set forth in the Stipulation and Agreement of Settlement dated July 9, 2025 (the "Stipulation"), ECF No. 106-3.

[2] It is Lead Counsel's intention to sell the Settlement Shares and distribute the proceeds along with the Cash Settlement Fund to the Settlement Class.

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

Settlement Fund), and reimbursement of Litigation Expenses in the total amount of $75,288.11, which consists of out-of-pocket litigation expenses in the amount of $70,288.11, plus $5,000 to Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") for his costs, including lost wages, incurred in connection with his representation of the Settlement Class. As discussed in detail in the Fee and Expense Application, the requested 25% fee represents the benchmark for fee awards in this Circuit in comparable securities class actions and is a fair and reasonable amount considering the work performed and the result obtained. Moreover, the expenses were necessarily incurred by Lead Counsel in litigating this Action and are of the type that Courts routinely reimburse to counsel.

4. The Court granted preliminary approval of the proposed Settlement by its Order dated August 20, 2025 (the "Preliminary Approval Order"). *See* ECF No. 112. Pursuant to the Preliminary Approval Order, Simpluris, Inc. ("Simpluris"), the Court-approved Claims Administrator, implemented a comprehensive notice program whereby notice was given to potential Settlement Class Members by mail and/or email and by publication. *See* ¶¶40-41, *infra* (detailing notice program); *see also* Ex. 2 (Declaration of Jacob Kaminer Concerning: (A) Mailing/Emailing of Notice; (B) Publication of Summary Notice; and (C) Report on Requests for Exclusion and Objections Received to Date) (the "Kaminer Decl."), ¶¶3-12).

5. In total, as of November 10, 2025, notice of the Settlement has been disseminated to 38,915 potential Settlement Class Members and nominees, which includes 23,130 Postcard Notices and Notice Packets mailed and 15,785 emailed links to copies of the Notice and Claim Form. To date, no requests for exclusion have been received by Lead Counsel or the Claims Administrator. *See* Ex. 2 (Kaminer Decl., ¶¶18-19). Moreover, no objections have been filed with Court to date. *Id*.[3]

---

[3] Lead Plaintiff and Lead Counsel will address any objections in the reply memorandum that will be filed after the objection and exclusion deadline.

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

## I.   INTRODUCTION

6.   In this Action, Lead Plaintiff asserts claims pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder.  Lead Plaintiff's claims stem from Defendants' alleged misrepresentations and omissions made between May 13, 2021 and January 20, 2023, inclusive ("Settlement Class Period").

7.   The proposed Settlement presented to the Court for final approval provides for the resolution of all claims in the Action in exchange for $300,000 in cash, 700,000 freely tradable shares of Ryvyl common stock, and a put option, with a combined value of no less than one million dollars ($1,000,000) ("Settlement Amount"), for the benefit of the Settlement Class.  As detailed herein, Lead Plaintiff and Lead Counsel submit that the proposed Settlement represents an extremely favorable result for the Settlement Class considering the significant risks to overcome and remaining in the Action, as well as serious ability-to-pay issues.

8.   Lead Counsel estimates that the *best-case scenario* for class wide damages in this Action is $1.7 million.  This estimate would assume that: (a) the Court certified the same class period as the Settlement Class Period; (b) Lead Plaintiff survived summary judgment on all elements and convinced a jury that liability was proven; (c) the trier of fact accepted Lead Plaintiff's loss causation and damages theory; and (d) Defendants had the assets sufficient to pay the verdict.  This outcome, however, would be far from certain given, among other reasons, Defendants have informed Lead Plaintiff that Ryvyl is self-insured, and: (a) the Company's two 10-Ks (for the years-ending December 31, 2024 and 2023) contained going concern warnings, and reported net losses of $26.8 and $53.1 million, respectively; (b) the Company received delisting notices from NASDAQ in April 2025 for having insufficient shareholder equity (negative $1.49 million versus the required $2.5 million), and in June 2025 because its stock price had closed below $1.00 for 30

consecutive business days; and (c) as of the close of the market on November 10, 2025, Ryvyl's stock was trading at $0.30 and the Company had a market capitalization of approximately $9.08 million.[4]

9.      Thus, the Settlement provides a substantial, certain, and immediate recovery, while avoiding the significant risks and expense of continued litigation, including the risk that the Settlement Class could recover less than the Settlement Amount (or nothing at all) after years of additional litigation and delay.

10.     The Settlement was only achieved after a hard-fought litigation, during which Lead Counsel became well informed of the relative strengths and weaknesses of Lead Plaintiff's claims in the Action.  In prosecuting the Action, Lead Counsel expended great efforts and resources on behalf of the Settlement Class, including, *inter alia*:

a.      conducting a detailed and substantive investigation into the allegedly wrongful acts, which included, among other things: (i) review and analysis of Ryvyl's filings with the SEC, press releases, and other public statements made by Defendants prior to, during, and after the Settlement Class Period, as well as research reports prepared by securities and financial analysts regarding Ryvyl, and publicly available documents, reports, announcements, and news articles concerning Defendants; (ii) retaining and working with a private investigator who conducted an investigation that involved, *inter alia*, numerous interviews of former Company employees and other sources of relevant information; and (iii) consulting with an expert in loss causation and damages;

---

[4] The going concern warnings were also conveyed to investors in Ryvyl's Form 10-Q for the quarter ended June 30, 2025, a true and correct copy of which is attached hereto as Exhibit 9.

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

b. utilizing the comprehensive investigation and additional research to draft and file the 43-page (144-paragraph) Amended Class Action Complaint for Violations of the Federal Securities Laws ("Amended Complaint") asserting claims against defendants pursuant to Section 10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder, and against the Individual Defendants under Section 20(a) of the Exchange Act. ECF No. 33. ¶5. Lead Plaintiff also asserted claims pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act"). *Id.* In addition to claims asserted against Defendants, the Amended Complaint also asserted claims against EF Hutton F/K/A Kingswood Capital Markets and R.F. Lafferty & Co. ("Underwriter Defendants") and against former Company Chief Financial Officer ("CFO") J. Drew Byelick ("Byelick");

c. researching, drafting, and filing an omnibus opposition to Defendants' motion to dismiss the Amended Complaint (ECF No. 58), after which the Court issued an Order Granting in Part and Denying in Part the pending motions to dismiss. ECF No. 71; *Cullen v. Ryvyl Inc.*, 2024 WL 898206 (S.D. Cal. Mar. 1, 2024);

d. conducting additional investigation and analysis, and then filing the 39-page (111-paragraph) Second Amended Class Action Complaint for Violations of the Federal Securities Laws ("Second Amended Complaint") (the "SAC"; ECF No. 80), which incorporated the foregoing research and investigation efforts;

e. researching, drafting, and filing an opposition to defendants' motion to dismiss the SAC (ECF No. 89), after which the Court issued an Order Granting in Part and Denying in Part Defendants' Motion to Dismiss the Second Amended Complaint. ECF No. 92; *Cullen v. Ryvyl Inc.*, 2024 WL 4536471 (S.D. Cal. Oct. 21, 2024);

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

f.   exchanging mediation briefs containing detailed analyses of the strengths, risks, and potential issues in the litigation with Defendants, participating in an unsuccessful mediation session with a well-respected mediator of complex cases—Jed Melnick, Esq. of JAMS—and engaging in months of further negotiations that culminated in the Settlement for the benefit of the Settlement Class;

g.   drafting and negotiating the terms of the Stipulation (including the exhibits thereto) and Supplemental Agreement with Defendants' Counsel;

h.   working with a damages expert to craft a plan of allocation that treats Lead Plaintiff and all other members of the proposed Settlement Class fairly; and

i.   drafting the preliminary approval motion and supporting papers, and representing Lead Plaintiff and the putative Settlement Class at the hearing on the motion.

11.   Based on the foregoing efforts, Lead Plaintiff and Lead Counsel are well informed of the strengths and weaknesses of the claims and defenses in the Action and believe the Settlement represents a favorable outcome for the Settlement Class. For all the reasons set forth herein and in the accompanying memoranda and declarations, Lead Plaintiff and Lead Counsel respectfully submit that the Settlement is "fair, reasonable, and adequate" in all respects, and that the Court should grant final approval pursuant to Federal Rule of Civil Procedure 23(e).

12.   In addition, Lead Plaintiff seeks approval of the proposed Plan of Allocation as fair and reasonable. As discussed in further detail below, Lead Counsel developed the Plan of Allocation with the assistance of a consulting damages expert. ¶¶44-51, *infra* (discussing Plan of Allocation). The Plan of Allocation provides for the distribution of the Net Settlement Fund to each Authorized Claimant on a *pro rata* basis based on their Recognized Loss amounts. No Settlement Class Member,

including Lead Plaintiff, or segment of the Settlement Class, receives preferential treatment under the plan.

13.     Finally, Lead Counsel seeks approval of the request for attorneys' fees, and reimbursement of Litigation Expenses, as set forth in the Memorandum of Law in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Fee Memorandum").  The requested 25% fee represents the benchmark of percentage awards granted by courts in this Circuit in comparable complex actions, and its fairness is confirmed by a lodestar cross-check.  The requested Litigation Expenses are also fair and reasonable, as they were necessarily incurred in the prosecution of the Action. Accordingly, as set forth in the Fee Memorandum and for the additional reasons set forth below, I respectfully submit that Lead Counsel's request for attorneys' fees and reimbursement of Litigation Expenses should be approved.

## II.     PROSECUTION OF THE ACTION

### A.     Commencement of the Instant Action and Appointment of Lead Plaintiff and Lead Counsel

14.     On February 1, 2023, a class action complaint was filed in the United States District Court for the Southern District of California ("the Court"), styled *Cullen v. Ryvyl Inc. F/K/A Greenbox POS, et al.*, 23-cv-0185-GPC-AGS.  ECF No. 1.  By Order dated May 9, 2023, the Court appointed Scot S. Cook to serve as Lead Plaintiff and approved Lead Plaintiff's selection of GPM as Lead Counsel for the putative class.  ECF No. 20.

### B.     The Comprehensive Pre-Filing Investigation and Preparation of the Complaint

15.     Following Lead Counsel's appointment, counsel conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included, among other things: (a) reviewing and analyzing (i) Ryvyl's filings with the SEC, (ii) public reports, press releases, analyst reports, blog posts, and news articles

7

concerning the Company, (iii) investor call transcripts, press releases and other public statements made by the Defendants prior to, during, and after the Settlement Class Period, and (iv) other publicly available material related to Ryvyl; (b) retaining and working with a private investigator who conducted an investigation that involved, *inter alia*, contacting former Ryvyl employees and other sources of relevant information; and (c) consulting with an expert in loss causation and damages.

16.     On June 30, 2023, Lead Plaintiff filed and served the Amended Complaint.  The Amended Complaint asserted claims against defendants pursuant to Section 10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder, and against the individual defendants under Section 20(a) of the Exchange Act.  ECF No. 33.  Lead Plaintiff also asserted claims pursuant to Sections 11, 12(a)(2), and 15 of the Securities Act.  *Id*.  In addition to claims asserted against Defendants, the Amended Complaint also asserted claims against the Underwriter Defendants and against former CFO Byelick.

### C.     Defendants' Motions to Dismiss the Complaint and the First Mediation

17.     On August 14, 2023, Defendants and the Underwriter Defendants each filed motions to dismiss the Amended Complaint (ECF Nos. 40, 41), and on August 23, 2023, CFO Byelick filed his own motion to dismiss.  ECF No. 53.  Lead Plaintiff filed an omnibus opposition to the motions to dismiss on September 28, 2023 (ECF No. 58), after which the Defendants, Underwriter Defendants and Byelick each filed a reply.  ECF Nos. 60-62.

18.     While the motions were pending, the parties agreed to participate in a private mediation with Jed D. Melnick Esq. of JAMS, a well-respected mediator of complex actions.  Prior to the mediation, the parties exchanged extensive mediation statements and exhibits that addressed, among other things, issues related to liability and damages.  The parties participated in a mediation session on February 6, 2024.

The session ended without an agreement to settle; however, the parties continued to attempt to resolve the Action with Mr. Melnick.

19.    On March 1, 2024, the Court issued an Order Granting in Part and Denying in Part the pending motions to dismiss. ECF No. 71; *Cullen v. Ryvyl Inc.*, 2024 WL 898206 (S.D. Cal. Mar. 1, 2024). The Court dismissed the claims against the Underwriter Defendants and Byelick. *Id.* at 20. As to Ryvyl and the Individual Defendants, the Court granted the motions to dismiss in part, denied them in part, and granted Lead Plaintiff leave to amend. *Id.*

**D.    The Second Amended Complaint and Motion to Dismiss**

20.    On May 1, 2024, Lead Plaintiff filed and served his 39-page (111-paragraph) Second Amended Complaint. ECF No. 80. Considering the Court's prior order, Lead Plaintiff decided to allege Exchange Act claims, but not Securities Act claims. *Id.* Lead Plaintiff also elected not to pursue claims against the Underwriter Defendants or defendant Byelick. *Id.*

21.    On July 1, 2024, Defendants filed a motion to dismiss the Second Amended Complaint. ECF No. 85. Lead Plaintiff opposed the motion on August 15, 2024, and Defendants replied on September 16, 2024. ECF Nos. 89-90. On October 21, 2024, the Court entered its Order Granting in Part and Denying in Part Defendants' Motion to Dismiss the Second Amended Complaint. ECF No. 92; *Cullen v. Ryvyl Inc.*, 2024 WL 4536471 (S.D. Cal. Oct. 21, 2024).

**E.    Third Amended Complaint, Mediation Efforts, and Settlement**

22.    On November 12, 2024, Lead Plaintiff filed and served his 57-page (128-paragraph) Third Amended Complaint in response to the Court's Order Granting in Part and Denying in Part the Second Amended Complaint. ECF No. 93. In the subsequent months, Defendants sought and received extensions to respond to the Third Amended Complaint as the Parties continued to explore the possibility of settlement through Mr. Melnick. ECF Nos. 94-99. These negotiations culminated in an agreement to settle the Action for the equivalent of one million dollars

($1,000,000) in cash and stock.[5]   Thereafter, the Parties engaged in substantial negotiations related to the Term Sheet and Stipulation.

**F.      The Court Grants Preliminary Approval of Settlement**

23.    On July 15, 2025, Lead Plaintiff filed his Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Motion").  ECF No. 106. On August 18, 2025, the Court held oral argument on the Preliminary Approval Motion and took it under submission.  ECF No. 111.

24.    On August 20, 2025, the Court entered the Preliminary Approval Order. ECF No. 112; *Cullen v. Ryvyl Inc.*, 2025 WL 2836651 (S.D. Cal. Aug. 20, 2025).

## III.   THE RISKS OF CONTINUED LITIGATION

25.    Continued litigation would have posed significant risks, including that the Settlement Class might recover substantially less than the Settlement Amount— or nothing at all—many years in the future.  Indeed, Ryvyl is self-insured, and its financial condition has deteriorated significantly since the filing of the initial complaint.  These facts created the very real risk that Lead Plaintiff would not be able to recover on a judgment as large as the Settlement after trial and appeal. Defendants also had or potentially had substantial arguments with respect to liability, loss causation, and damages in this case. These risks, among many others, were carefully considered in evaluating whether the Settlement was in the Settlement Class's best

---

[5] As described more fully in the Stipulation, pursuant to Section 3(a)(10) of the Securities Act, the Court's entry of the Judgment, or Alternative Judgment, confirming the fairness of the Settlement may serve as a substitute for the registration requirements of the Securities Act with regard to any Settlement Shares used to fund the Settlement Amount.  At the Settlement Fairness Hearing, the Parties agree that the Court will be asked to find with regard to any Settlement Shares being issued as part of the Settlement Amount that: (i) the terms and conditions of the proposed issuance are fair to all those who will receive Settlement Shares in the proposed exchange; and (ii) the terms and conditions of, and the procedures for, the proposed issuance are fair, both substantively and procedurally, to those to whom the Settlement Shares will be issued. *See generally* Stipulation ¶ 10.

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

interests. There was simply no guarantee that Lead Plaintiff and the Settlement Class would achieve any recovery, let alone one greater than $1 million.

### A.    Ability-to-Pay Risk

26.    Ryvyl is self-insured, and its financial condition has deteriorated significantly since the filing of the initial complaint.  Indeed, the Company's two 10-Ks (for the years-ending December 31, 2024 and 2023) contained going concern warnings, and reported net losses of $26.8 and $53.1 million, respectively; (b) the Company received delisting notices from NASDAQ in April 2025 for having insufficient shareholder equity (negative $1.49 million versus the required $2.5 million), and in June 2025 because its stock price had closed below $1.00 for 30 consecutive business days; and (c) as of the close of the market on November 10, 2025, Ryvyl's stock was trading at $0.30.  Accordingly, it is highly unlikely that Lead Plaintiff could have recovered more than the Settlement Amount by continuing to litigate the Action.

### B.    Risks to Establishing Liability and Damages

27.    Lead Plaintiff and Lead Counsel recognize that the risks of continued litigation were considerable.

28.    The motion to dismiss process highlighted many of the risks of the Action, including the potential to recover nothing.  Indeed, there is no better indication of the future risks Lead Plaintiff faced in continuing litigation than the Court's two prior partial dismissals.  In addition to dismissing the Securities Act claims, the Underwriter Defendants and CFO Byelick, the Court held that some of the false and misleading statements with respect to the Exchange Act claims were not adequately alleged, and that Lead Plaintiff had failed to allege scienter under the Exchange Act with respect to some defendants.  While Lead Plaintiff filed a Third Amended Complaint that he believes cured some of the pleading deficiencies, even if he prevailed in total, he would still need to *prove* his case.  Lead Plaintiff would have to establish that, *inter alia*: the remaining challenged statements were materially false

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

and misleading; Defendants knew or were deliberately reckless in not knowing that their statements were misleading when made; and those statements were corrected and caused recoverable damages for the Settlement Class.

29. Lead Counsel anticipated Defendants would present strong arguments challenging all of the aforementioned elements at summary judgment and/or at trial. For example, Defendants would, no doubt, continue to challenge scienter, and the riskiness of the case was heightened by a lack of insider trading. While Lead Plaintiff believes he would have ultimately been able to prove scienter based on the totality of the circumstances, the absence of insider sales made the task much harder.

30. Defendants would also contest loss causation and damages. Although Lead Plaintiff believes he had strong arguments regarding loss causation and damages, he would still need to *prove* those elements. Lead Plaintiff would have to proffer expert testimony demonstrating: (a) what the "true value" of Ryvyl and/or Greenbox POS common stock ("Ryvyl Common Stock") would have been had there been no alleged material misstatements and omissions; (b) the amount by which Ryvyl Common Stock was inflated by the alleged material misstatements and omissions; and (c) the amount of artificial inflation removed by the corrective disclosures that occurred after the close of the U.S. financial markets on January 20, 2023. Defendants would almost certainly present their own damages expert(s) to present conflicting conclusions and theories regarding the reasons for Ryvyl common stock price declines on the alleged disclosure date, requiring a jury to decide the "battle of the experts" – an expensive and intrinsically unpredictable process

31. Moreover, expert testimony can often rest on many assumptions, any of which risks being rejected by a jury. A jury's reaction to such expert testimony is highly unpredictable, and Lead Counsel recognized that, in such a battle, there is the possibility that a jury could be swayed by Defendants' expert(s) and could find only a fraction of the amount of damages Lead Plaintiff contended were suffered by the Settlement Class, or none at all. Thus, the amount of damages that the Settlement

12

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

Class would recover at trial, even if successful on liability issues, was uncertain. Similarly, there was no assurance that favorable documents and testimony relating to loss causation and damages could be obtained or would be admitted as evidence by the Court at trial.  These issues could have seriously impaired Lead Plaintiff's ability to successfully prosecute the allegations in this case.

32.    Finally, even if Lead Plaintiff prevailed at trial, Defendants likely would appeal the verdict and award.  The appeals process would have likely spanned several years, including an appeal to the Ninth Circuit, and, potentially, an *en banc* review from the Ninth Circuit or a writ of certiorari to the Supreme Court, or both.  During this time on potential appeals, the Settlement Class would receive no distribution of any damage award.  In addition, an appeal of any judgment would carry the risk of reversal, in which case the Settlement Class would receive no recovery.

**C.    Risks Faced in Obtaining and Maintaining Class Action Status**

33.    Defendants, moreover, would have argued against class certification. While Lead Counsel is confident that all of the Rule 23 requirements would have been met, and that the Court would have certified the proposed class, Defendants would have undoubtedly raised arguments challenging the propriety of class certification.  If the Court accepted any of Defendants' anticipated arguments in opposition to class certification, that would have created significant hurdles for the proposed class to overcome.

**D.    Other Risks**

34.    Had the case not settled, Lead Plaintiff would have needed to complete substantial discovery, including reviewing and analyzing documents produced by Defendants, and other relevant third parties, taking fact depositions and conducting all expert discovery, the costs of which are assuredly high and the fruits of which are highly uncertain.

35.    Lead Counsel knows from painful experience that despite the most vigorous and competent of efforts, attorneys' success in contingent litigation such as

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

this case is never assured.  For instance, Lead Counsel lost a six-week antitrust jury trial in the Northern District of California after five years of litigation, which included many overseas depositions, the expenditure of millions of dollars of attorney and paralegal time, and the expenditure of more than a million dollars in hard costs. *See In re: Korean Ramen Antitrust Litigation*, Case No. 3:13-cv-04115 (N.D. Cal.).

36.    Given the significant risks of continued litigation, I believe that the Settlement represents an excellent result for the Settlement Class.

**E.    The Settlement is Reasonable in Light of the Maximum Potential Recovery in the Action**

37.    In addition to the attendant risks of litigation discussed above, the Settlement is also fair and reasonable considering the potential recovery of available damages.  If Lead Plaintiff had fully prevailed on all of his claims at summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Lead Plaintiff's damages theory, including proof of loss causation—*i.e.*, Lead Plaintiff's ***best-case scenario***—estimated total maximum damages under the Plan of Allocation is approximately $1.7 million. Thus, the $1 million Settlement Amount represents approximately 59% of the total ***maximum*** damages ***potentially*** available in this Action.  This is ***more than double*** the median percentage recovery of damages in a similar sized securities class action.  *See, e.g.,* Ex. 5 (NERA Report), at p. 26 (Fig. 23) (between January 2015-December 2024 the median settlement value as a percentage of "NERA-Defined Investor Losses" was 24% for securities class actions with estimated losses of less than $20 million).

38.    Having evaluated the relative strengths and weaknesses of the Action considering Defendants' arguments, the stage of the litigation, and Defendants' ability to pay, it is the informed judgment of Lead Counsel that the proposed Settlement is fair, reasonable, and adequate and in the best interests of the Settlement Class.

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

## IV.  LEAD PLAINTIFF'S COMPLIANCE WITH THE COURT'S PRELIMINARY APPROVAL ORDER REQUIRING ISSUANCE OF THE NOTICE

39.     The Court-approved Claims Administrator is Simpluris.  Lead Counsel selected Simpluris as the proposed Claims Administrator after a competitive bidding process in which Simpluris provided the lowest cost estimate.

40.     Pursuant to the Preliminary Approval Order, Simpluris mailed the Postcard Notice, or emailed a link to the Notice and Claim Form, to Settlement Class Members who could be identified with reasonable effort, and caused the Summary Notice to be published once in *Investor's Business Daily* and transmitted once over the *PR Newswire*.  *See* Ex. 2 (Kaminer Decl.), ¶¶3-12; Exs. A-E.  Contemporaneously with the mailing and emailing of the Notice and Claim Form, Simpluris posted downloadable copies of the Notice, Claim Form, Stipulation, Preliminary Approval Order, and certain other relevant documents, online at www.RyvylSecuritiesSettlement.com (the "Settlement Website").  *See id.*, ¶16.[6]

41.     As of November 10, 2025, 38,915 potential Settlement Class Members were notified by Postcard Notice and/or by email. *Id.* at ¶42.

42.     The deadline for Settlement Class Members to object to the Settlement, Plan of Allocation, and/or to the application for attorneys' fees and expenses, or to request exclusion from the Settlement Class is November 28, 2025. As of November

---

[6] The Notice contains, among other things: a description of the Action; the definition of the Settlement Class; a summary of the terms of the Settlement and the proposed Plan of Allocation; and a description of Settlement Class Members' right to participate in the Settlement, object to the Settlement, the Plan of Allocation and/or the application for attorneys' fees and expenses, or to exclude themselves from the Settlement Class. The Notice also informs Settlement Class Members of Lead Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed 33⅓% of the Settlement Fund, and for reimbursement of Litigation Expenses in an amount not to exceed $85,500, which may include an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiff directly related to his representation of the Settlement Class. *See* Kaminer Decl., Ex. B at ¶¶5, 79.

10, 2025, no requests for exclusion have been received. *Id.* at ¶18. Simpluris will file a supplemental affidavit after the deadline for requesting exclusion addressing whether any additional requests for exclusion have been received.

43. To date, no objections have been entered on this Court's docket. No other objections have been received by Lead Counsel. Lead Counsel will address any objections received in its reply papers that are due after the objection deadline has run.

## V.    ALLOCATION OF THE NET PROCEEDS OF THE SETTLEMENT

44. Pursuant to the Preliminary Approval Order and as set forth in the Notice, all Settlement Class Members who want to participate in the distribution of the Net Settlement Fund[7] must submit a valid Claim Form with all required information submitted online or postmarked no later than December 27, 2025. *See* Ex. 2-B (Notice at p.3 & ¶47). The Net Settlement Fund will be distributed among Authorized Claimants according to the proposed Plan of Allocation, as subject to approval by the Court.

45. The Plan of Allocation is detailed in the Notice. *See* Ex. 2-B (Notice, ¶¶58-78). The Notice is posted on, and downloadable from, the Settlement Website. The Plan of Allocation's objective is to equitably distribute the Net Settlement Fund to those Settlement Class Members who suffered losses as a proximate result of the alleged violations of the Exchange Act as opposed to losses caused by market, industry, or Company-specific factors or factors unrelated to the alleged violations of

---

[7] The "Net Settlement Fund" is the Settlement Amount plus any and all interest earned thereon less: (a) all federal, state and/or local taxes on any income earned by the Settlement Fund and the reasonable costs incurred in connection with determining the amount of and paying taxes owed by the Settlement Fund (including reasonable expenses of tax attorneys and accountants); (b) the costs and expenses incurred in connection with providing notice to Settlement Class Members and administering the Settlement on behalf of Settlement Class Members; and (c) any attorneys' fees and Litigation Expenses awarded by the Court.

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

law. Under the Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund based on his, her, or its total Recognized Loss Amount as compared to the total Recognized Loss Amounts of all Authorized Claimants. *See* Ex. 2-B (Notice at ¶¶67-68). Calculations under the Plan of Allocation are not intended to be estimates of, nor indicative of, the amounts that Settlement Class Members might have been able to recover after a trial or estimates of the amounts that will be paid to Authorized Claimants pursuant to the Settlement. Instead, the calculations under the Plan of Allocation are a method to weigh the claims of Settlement Class Members against one another for the purposes of making an equitable allocation of the Net Settlement Fund. *Id.* at ¶58.

46. The Plan of Allocation, developed by one of Lead Plaintiff's consulting damages consultant, working in conjunction with Lead Counsel, is based on an out-of-pocket theory of damages consistent with Section 10(b) of the Exchange Act, and reflects an assessment of the damages that Lead Plaintiff contends could have been recovered under the theories of liability and damages asserted in the Action. More specifically, the Plan of Allocation reflects, and is based on, Lead Plaintiff's allegation that the prices of Ryvyl Common Stock were artificially inflated due to Defendants' materially false and misleading statements and omissions.

47. The Plan of Allocation is based on the premise that the price decreases of Ryvyl common stock on January 20, 2023 may be used to measure the alleged artificial inflation in the price of Ryvyl common stock prior to this disclosure.

48. An individual Claimant's recovery under the Plan of Allocation will depend on several factors, including when the Claimant purchased, acquired, or sold Ryvyl Common Ctock during the Settlement Class Period, in what amounts, and if any Ryvyl Common Stock was sold, when it was sold and in what amounts, as well as the number of valid claims filed by other Claimants.

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

49.     If a Claimant has an overall market gain with respect to his, her, or its overall transactions in Ryvyl Common Stock during the Settlement Class Period, the Claimant's recovery under the Plan of Allocation will be zero.

50.     If the prorated payment to be distributed to any Authorized Claimant is less than $10.00, no distribution will be made to that Authorized Claimant.  Any prorated amounts of less than $10.00 will be included in the pool distributed to those Authorized Claimants whose prorated payments are $10.00 or greater.  In Lead Counsel's experience, processing and sending a check for less than $10.00 is cost prohibitive.

51.     In sum, the Plan of Allocation was designed to fairly allocate the proceeds of the Net Settlement Fund among Settlement Class Members based on the losses they suffered on transactions in Ryvyl Common Stock that were attributable to the conduct alleged in the Third Amended Complaint.  Lead Counsel believes that the proposed Plan of Allocation will result in a fair and equitable distribution of the Net Settlement Fund among Settlement Class Members.

## VI.   LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

52.     In addition to seeking final approval of the Settlement and Plan of Allocation, Lead Counsel is applying for a fee award of 25% of the Settlement Fund (*i.e.*, $250,000.00, plus interest accrued thereon).  Lead Counsel also requests reimbursement in the amount of $70,288.11 for out-of-pocket expenses incurred by Lead Counsel in connection with the prosecution and resolution of the Action and an award of $5,000 for Lead Plaintiff for his costs, including for time spent, in connection to his role as a representative plaintiff in the Action. The requested Litigation Expenses of $75,288.11 are below the maximum amount of $85,000 set forth in the Notice.

53.     As set forth in the accompanying Fee Memorandum, the requested 25% award is in line with the Ninth Circuit benchmark and well within the range of fee

awards in other comparable class action settlements. Moreover, the resulting fractional multiplier on Lead Counsel's lodestar of approximately 0.30 strongly supports the reasonableness of the requested attorneys' fee. The legal authorities supporting the requested fees and expenses are set forth in the concurrently filed Fee Memorandum. The primary factual bases for the requested fees and expenses are set forth below.

### A. The Outcome Achieved is the Result of the Significant Time and Labor that Lead Counsel Devoted to the Action

54. The work undertaken by Lead Counsel in investigating and prosecuting the Action and arriving at the present Settlement in the face of substantial risks has been time-consuming and challenging. At all times throughout the pendency of the Action, for a period of over two years, Lead Counsel's efforts were driven and focused on advancing the Action to bring about the most successful outcome for the Settlement Class, whether through settlement or trial. That work is summarized in ¶10 above.

55. Attached as Exhibit 3 are summaries indicating (in the aggregate and broken down by certain categories) the amount of time spent by attorneys and professional support staff of my firm who, from inception of the Action through and including October 24, 2025, billed five or more hours to the Action. The lodestar calculation for those individuals is based on Lead Counsel's current billing rates. For personnel who are no longer employed by Lead Counsel, the lodestar calculation is based on the billing rates for such personnel in his or her final year of employment. The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by Lead Counsel.

56. I reviewed these daily time records in connection with the preparation of this declaration. The purpose of this review was to confirm both the accuracy of the records, as well as the necessity for, and reasonableness of, the time committed to the litigation. As a result of this review, I made reductions to certain of the firm's time

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

entries such that the time included in Exhibit 3 reflects that exercise of billing judgment. Based on this review and the adjustments made, I believe that the time of Lead Counsel attorneys and staff reflected in Exhibit 3 was reasonable and necessary for the effective and efficient prosecution and resolution of the Action. No time expended on the Fee and Expense Application has been included.

57. The hourly rates for GPM's attorneys and professional support staff are similar to the rates that have been accepted in other securities or shareholder litigation in this District in the context of a lodestar cross-check. Additionally, the rates billed by Lead Counsel's attorneys (ranging from $900 to $1,225 per hour for partners) are comparable to peer plaintiff and defense firms litigating matters of similar magnitude. *See* Ex. 7 (table of peer law firm billing rates).

58. The total number of hours reflected in Exhibit 3 is 768.55 hours. The total lodestar reflected in Exhibit 3 is $838,767.50, consisting of $804,727.50 for attorneys' time and $34,040.00 for professional support staff time. The requested fee amount of 25% of the Settlement Fund equals $250,000.00 (plus interest earned at the same rate as the Settlement Fund), and therefore represents a fractional multiplier of 0.30 on Lead Counsel's lodestar.

59. Additionally, as is customary when seeking a percentage-of-the-fund award in common fund cases and submitting data for a lodestar cross-check, attached as Ex. 3 is a schedule reflecting Lead Counsel's lodestar by individual, position, billing rate, hours billed, and categorizing work performed.

60. Moreover, Lead Counsel will continue to work towards effectuating the Settlement, in the event the Court grants final approval. Among other things, Lead Counsel will continue working with the Claims Administrator to resolve issues with Settlement Class Member claims, will respond to shareholder inquiries, will draft and file a motion for distribution, and will oversee the distribution process. No additional compensation will be sought for this work. Thus, the multiplier will be smaller by the time the case concludes.

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

61.     As detailed above, throughout this case, Lead Counsel devoted substantial time to the prosecution of the Action.  I personally devoted substantial time to this case and was involved in drafting, reviewing, and editing pleadings and other court filings, and communicating with other lawyers about the case on a regular basis.  Other experienced attorneys were also involved in drafting, reviewing and/or editing pleadings, court filings, and the mediation submissions, participating in the mediation process, negotiating the terms of the Stipulation, and other matters.  Throughout the litigation, Lead Counsel maintained an appropriate level of staffing that avoided unnecessary duplication of effort and ensured the efficient prosecution of this litigation.

62.     Based on the work performed and the quality of the results achieved, Lead Counsel respectfully submits that a 25% fee is fully merited under the "percentage of the fund" methodology.  Furthermore, as shown in Lead Counsel's accompanying Fee Memorandum, I also respectfully submit that the requested fee is fully supported by a "lodestar multiplier cross-check" because the requested fractional (or "negative") multiplier is below the range of multipliers that courts often award in comparably complex securities class actions, which is a strong indication that the percentage request is fair and reasonable.

**B.     The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High-Risk Contingent Securities Cases**

63.     This prosecution was undertaken by Lead Counsel on a pure contingency fee basis.  From the outset, Lead Counsel understood that they were embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would require.  In undertaking that responsibility, Lead Counsel were obligated to ensure that sufficient resources were dedicated to the prosecution of the Action, that funds were available to compensate attorneys and staff, and to cover the considerable litigation costs required by a case like this one.

21
DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

64. With an average lag time of many years for complex cases like this case to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. Indeed, Lead Counsel received no compensation during more than two years of litigation and incurred $70,288.11 in out-of-pocket expenses in prosecuting the Action.

65. Lead Counsel also bore the risk that no recovery would be achieved. As discussed above, from the outset, this case presented multiple risks and uncertainties that could have prevented any recovery whatsoever. Despite the most vigorous and competent of efforts, success in contingent-fee litigation like this one is never assured. As set forth above, Lead Counsel knows from experience that the commencement of a class action does not guarantee a settlement. To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint or win at trial, or to induce sophisticated defendants to engage in serious settlement negotiations at meaningful levels. And, even when that effort is put forth, sometimes you lose.

66. Moreover, courts have repeatedly recognized that it is in the public interest to have experienced and able counsel enforce the securities laws and regulations pertaining to the duties of officers and directors of public companies. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320 n.4 (2007) ("private securities litigation is an indispensable tool with which defrauded investors can recover their losses – a matter crucial to the integrity of domestic capital markets.") (internal quotation marks omitted). As recognized by Congress through the passage of the PSLRA, vigorous private enforcement of the federal securities laws can only occur if private investors take an active role in protecting the interests of shareholders. If this important public policy is to be carried out, the courts should award fees that adequately compensate plaintiffs' counsel, considering the risks undertaken in prosecuting a securities class action.

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

**C.    The Experience and Expertise of Lead Counsel, and the Standing and Caliber of Defendants' Counsel**

67.    As demonstrated by Lead Counsel's firm résumé, Lead Counsel have extensive and significant experience in the specialized area of securities litigation. *See* Ex. 8 (GPM firm résumé).  The attorneys who were principally responsible for leading the prosecution of this case have prosecuted securities claims throughout their careers and have recovered tens of millions of dollars on behalf of investors.  This experience allowed Lead Counsel to develop and implement litigation strategies to address the complex obstacles that are inherent in securities class actions and those specific to this case that were raised by Defendants.  I believe that the recovery achieved here for the Settlement Class reflects the high quality of Lead Counsel's representation.

68.    Additionally, the quality of the work performed by Lead Counsel in obtaining the Settlement should also be evaluated considering the quality of the opposition. Here, Defendants have been vigorously represented by Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo P.C., which is a well-respected law firm that vigorously represented the interests of their clients throughout this Action.  In the face of this experienced and formidable opposition, Lead Counsel were nonetheless able to persuade Defendants to settle the case on terms that I believe are favorable to the Settlement Class.

**D.    The Reaction of the Settlement Class Supports Lead Plaintiff's Counsel's Fee Request**

69.    As noted above, as of November 10, 2025, 38,915 potential Settlement Class Members were notified by Postcard Notice and/or by email of the Notice that Lead Counsel would apply for an award of attorneys' fees in an amount not to exceed 33⅓% of the Settlement Fund.  *See* Kaminer Decl. ¶12 & Ex. B (Notice at ¶79).  In addition, on September 22, 2025, Simpluris caused the Summary Notice to be

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

published in *Investor's Business Daily* and to be transmitted once over the *PR Newswire*. *See id.* at ¶13 & Ex. E.

70. The deadline for Settlement Class Members to object to the Settlement, Plan of Allocation, and/or to the application for attorneys' fees and expenses, or to request exclusion from the Settlement Class is November 28, 2025. As of November 10, 2025, no requests for exclusion have been received. *Id.* at ¶18. Simpluris will file a supplemental affidavit after the deadline addressing whether any additional requests for exclusion have been received. Moreover, to date, no objections have been entered on this Court's docket or received by Lead Counsel. To the extent there are any objections, Lead Counsel will address them in its reply papers.

71. In sum, Lead Counsel accepted this case on a fully contingent basis, committed significant resources to it, and prosecuted the case for more than two years without any compensation or guarantee of success. Based on the result obtained, the quality of the work performed, the risks of the Action, and the contingent nature of the representation, Lead Counsel respectfully submits that a fee award of 25%, resulting in a fractional multiplier of 0.30, is fair and reasonable, and is supported by the fee awards courts have granted in other comparable cases. *See* Ex. 6 (table of select Ninth Circuit cases awarding attorneys' fee of 25% or above)

### E.    Lead Plaintiff Supports Lead Counsel's Fee Request

72. As set forth in the declaration submitted by Lead Plaintiff Scot S. Cook, Lead Plaintiff has concluded that Lead Counsel's requested fee is fair and reasonable based on the work performed, the recovery obtained for the Settlement Class, and the risks of the Action. *See* Ex. 1 (Cook Decl.) at ¶¶9-14. Lead Plaintiff has been intimately involved in this case since its early stages, and his endorsement of Lead Counsel's fee request supports the reasonableness of the request and should be given weight in the Court's consideration of the fee award.

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

**F.    Reimbursement of the Requested Litigation Expenses Is Fair and Reasonable**

73.    Lead Counsel seeks a total of $75,288.11 in Litigation Expenses to be paid from the Settlement Fund.  This amount includes $70,288.11 in out-of-pocket expenses reasonably and necessarily incurred by Lead Counsel in connection with commencing, litigating, and settling the claims asserted in the Action, as well as $5,000 for Lead Plaintiff directly related to his representation of the Settlement Class. I respectfully submit that the request for reimbursement of Litigation Expenses is appropriate, fair, and reasonable and should be approved in the amounts submitted herein.

74.    From the inception of this Action, Lead Counsel were aware that they might not recover any of the expenses incurred in prosecuting the claims against Defendants, and, at a minimum, would not recover any expenses until the Action was successfully resolved.  Lead Counsel also understood that, even assuming the Action was ultimately successful, an award of expenses would not compensate Lead Counsel for the lost use or opportunity costs of funds advanced to prosecute the claims against Defendants.  Thus, Lead Counsel were motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action.

75.    The litigation expenses incurred in the Action are reflected in the books and records of my firm.  These books and records are prepared from expense vouchers, check records, and other source materials and are an accurate record of the expenses incurred.  The expenses reflected in Exhibit 4, and set forth below for the Court's convenience, are the expenses actually incurred by my firm.

| CATEGORY OF EXPENSE | AMOUNT PAID |
|---|---|
| COURIER AND SPECIAL POSTAGE | 202.94 |
| EXPERTS | 22,443.00 |
| INVESTIGATIONS | 13,951.99 |
| MEDIATORS | 18,621.88 |

25

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

| CATEGORY OF EXPENSE | AMOUNT PAID |
|---|---|
| ONLINE RESEARCH | 14,239.80 |
| PHOTOIMAGING | 41.00 |
| PRESS RELEASES | 100.00 |
| SERVICE OF PROCESS | 494.50 |
| TRAVEL AUTO | 166.60 |
| TRAVEL PARKING | 26.40 |
| **Grand Total** | **70,288.11** |

76.   As set forth in the chart above, virtually all of the expenses ($69,256.67, or approximately 99%) were for the retention of experts ($22,443.00), the mediator ($18,621.88), and a private investigation firm ($13,951.99), as well as online research ($14,239.80).   Each of these expenses were critical to Lead Counsel's success in achieving the Settlement and, like the other categories of expenses for which counsel seek reimbursement, are the types of expenses routinely charged to clients who pay hourly.   In my opinion, the expenses paid were necessary and appropriate for the prosecution and resolution of this Action.

77.   Finally, Lead Plaintiff seeks reimbursement of his reasonable costs and expenses incurred directly in connection with representing the Settlement Class in the amount of $5,000. The substantial effort devoted to this Action by Lead Plaintiff is detailed in his accompanying declaration. *See* Ex. 1.   Based on the time and effort expended by Lead Plaintiff for the benefit of the Settlement Class, I would respectfully request that the Court grant Lead Plaintiff's request in full.

**VII.   CONCLUSION**

78.   Considering the significant recovery for the Settlement Class under the circumstances and the substantial risks of this Action, as described herein and in the accompanying Final Approval Memorandum, I respectfully submit that the Settlement should be approved as fair, reasonable, and adequate and that the proposed Plan of Allocation should be approved as fair and reasonable.   I further submit that the requested fee in the amount of 25% of the Settlement Fund should be approved as fair and reasonable, and the request for reimbursement of total Litigation Expenses in

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

the amount of $75,288.11 (which includes $5,000 for Lead Plaintiff) should also be approved.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this, the 13th day of November, 2025, at Los Angeles, California.

_s/ Ex Kano S. Sams II_
Ex Kano S. Sams II

27
DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL