1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

8
9
10

| | |
|---|---|
| MARK CULLEN and SCOT S. COOK, individually and on behalf of all others similarly situated,,<br><br>                                        Plaintiffs,<br><br>v.<br><br>RYVYL INC. F/K/A GREENBOX POS, BEN ERREZ, FREDI NISAN, and BENJAMIN CHUNG,<br><br>                                        Defendants. | Case No.:  3:23-cv-00185-GPC-SBC<br><br>**ORDER:**<br><br>**(1) GRANTING LEAD PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT;**<br><br>**(2) GRANTING FINAL CERTIFICATION OF THE SETTLEMENT CLASS;**<br><br>**(3) GRANTING LEAD PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**<br><br>**[ECF Nos. 114, 115]** |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

26        Before the Court are two motions: Lead Plaintiff's unopposed motion for final

27  approval of Class Action Settlement, ECF No. 114, and Lead Plaintiff's motion for award

28  of attorney's fees and reimbursement of litigation expenses, ECF No. 115. Defendants have

1

filed a Notice of Non-Opposition as to both motions. ECF No. 118. On December 19, 2025, the Court held a final settlement hearing on this matter. ECF No. 121. For the reasons set forth below, the Court **GRANTS** both motions.

BACKGROUND

## I.    Underlying Action

On February 1, 2023, Plaintiff Mark Cullen, individually and on behalf of all others similarly situated, filed a class action complaint against Defendants RYVYL, Inc. ("Ryvyl"); Chairman Ben Errez, CEO Fredi Nisan, CFO Benjamin Chung, and former CFO J. Drew Byelick (the "Ryvyl Defendants"); and brokerage firms EF Hutton and R.F. Lafferty & Co. (the "Underwriter Defendants") for violations of federal securities laws.[1] *See generally* ECF No. 1.

Ryvyl—formerly known as Greenbox POS—is a cryptocurrency company "focused on developing, marketing, and selling blockchain-based payment solutions." ECF No. 93 ¶ 2. On November 12, 2024, Plaintiffs filed the operative Third Amended Complaint ("TAC"), ECF No. 93, alleging that Defendants violated Sections 10(b) and 20(a) Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. §§ 78j(b) and 78t(a)) and SEC Rule 10b-5, which is promulgated thereunder. *Id.* ¶ 1. Specifically, Plaintiffs allege that Defendants are liable for several of Ryvyl's SEC filings which contained "materially false and/or misleading" statements about Ryvyl's internal controls, financial statements, and business prospects, and which unlawfully inflated Ryvyl's stock price between January 29, 2021, and January 20, 2023. *Id.* ¶ 2; *see also id.* ¶¶ 30–62. Plaintiffs allege that Defendants violated Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and SEC Rule 10b-5 (17 C.F.R. § 240.10b-5) for "disseminat[ing] or approv[ing] . . . materially false and misleading statements . . . which they knew, or were deliberately reckless in not knowing,

---

[1] Byelick was formerly a defendant in this matter, but the Court dismissed him as a defendant without prejudice. ECF No. 78. The Court also dismissed the Underwriter Defendants. ECF No. 71. Plaintiffs did not name Byelick or the Underwriter Defendants as defendants in the Second Amended Complaint, and thus they are no longer defendants in this action. *See* ECF No. 80.

were misleading." *Id.* ¶¶ 118–23. Further, Plaintiffs allege that the Ryvyl Defendants violated Section 20(a) of the Exchange Act (15 U.S.C. § 78t(a)) by influencing and controlling Ryvyl's decision-making, "including the content and dissemination of the various statements alleged to be false and misleading[.]" *Id.* ¶¶ 124–28.

## II.    Procedural History

Plaintiff Mark Cullen filed a putative class action complaint against Ryvyl, the Ryvyl Defendants, and the Underwriter Defendants, on February 1, 2023. ECF No. 1. On April 3, 2023, Plaintiff Scot S. Cook moved the Court to appoint him Lead Plaintiff and to approve his selection of Glancy Prognay & Murray LLP as class counsel. ECF No. 7. On May 9, 2023, the Court granted the unopposed motion and appointed Plaintiff Cook ("Lead Plaintiff") as Lead Plaintiff for the putative class of persons or entities who purchased the Company's securities between January 29, 2021, and January 20, 2023. ECF No. 20. The Court also approved Lead Plaintiff's selection of Glancy Prongay & Murray LLP ("GPM") as Lead Counsel. *Id.*

On June 30, 2023, Lead Plaintiff filed the First Amended Complaint ("FAC"), averring more detailed accounts from former Ryvyl employees to support the same alleged violations from the initial complaint. *See generally* ECF No. 33. On August 14, 2023, the Underwriter Defendants filed a motion to dismiss the FAC, ECF No. 41, while Ryvyl and the Ryvyl Defendants (with the exception of Defendant Byelick) filed a separate motion to dismiss the FAC, ECF No. 41. On August 23, 2023, Defendant Byelick filed his own individual motion to dismiss the FAC. ECF No. 53. On September 28, 2023, Plaintiffs filed an omnibus opposition to all the motions to dismiss. ECF No. 58. On October 24, 2023, Defendant Byelick replied and on October 27, 2023, the Ryvyl Defendants and the Underwriter Defendants replied. ECF Nos. 60–62.

On November 27, 2023, the Court granted the parties' joint motion to vacate the scheduled hearing on the motions to dismiss to "resolve the litigation through mediation as soon as feasible, and without a ruling on the pending motions to dismiss at this time." ECF

Nos. 64, 65.  On February 6, 2024, the parties participated in private mediation before Jed Melnick, Esq. of JAMS, but did not reach an agreement.  ECF No. 68.

On March 1, 2024, the Court granted the motions to dismiss by the Underwriter Defendants and Defendant Byelick and granted in part and denied in part the motion to dismiss by Ryvyl and the other Ryvyl Defendants.  ECF No. 71.  The Court denied the motions to dismiss the Exchange Act claims under Section 10(b) and Rule 10b-5 only as to Defendants Chung and Ryvyl and only as to certain misstatements they made in the 2021 annual report and the first two 2022 interim reports.  *Id.* at 18–39.[2]  The Court also denied the motions to dismiss the Section 20(a) claims as to Defendants Nisan, Errez, and Chung. *Id.* at 38-40.  The Court granted the motions to dismiss the claims on all other grounds and granted Plaintiffs leave to amend.  *Id.* at 40.

On May 1, 2024, Plaintiffs filed a Second Amended Complaint ("SAC").  ECF No. 80.  Plaintiffs modified the class period to begin on May 13, 2021, and end on January 20, 2023 (the "Settlement Class Period") and narrowed the claims to only allege Exchange Act violations against Ryvyl, Chairman Errez, CEO Nisan, and CFO Chung (the instant "Defendants").  *See generally* ECF No. 80.  On July 1, 2024, the Defendants filed a motion to dismiss the SAC.  ECF No. 85.  On October 21, 2024, the Court granted in part and denied in part the motion to dismiss the Section 10(b) and Rule 10b-5 claims, finding that (i) Plaintiff stated a claim against Defendants Ryvyl, Chung, and Nisan for misstatements in the 2021 annual report and the first two 2022 interim reports; (ii) Plaintiff stated a claim against Defendants Ryvyl and Nisan for additional misstatements in the 2022 third quarter report; (iii) Plaintiff failed to state a claim against Defendant Ryvyl, Chung, and Nisan for misstatements in the 2021 interim reports; and (iv) Plaintiff failed to state a claim against Defendant Errez.  ECF No. 92, at 30.  The Court further denied the motion to dismiss the

---

[2] Page numbers reflect CM/ECF pagination.

Section 20(a) claims as to all Defendants. *Id.* at 33. The Court granted Plaintiffs leave to amend. *Id.*

On November 12, 2024, Plaintiffs filed the TAC, alleging additional facts in an attempt to cure the defects noted in the Court's previous order granting in part and denying in part Defendants' motion to dismiss the SAC. *See generally* ECF No. 93. On March 3, 2025, the Parties moved to stay the action pending consideration of class action settlement, which the Court granted. ECF Nos. 100, 101.

## III.    The Settlement

Defendants and Lead Plaintiff, individually and on behalf of all Settlement Class members, have agreed to settle and release the asserted claims. *See* ECF No. 106-3 at 1-2. On July 15, 2025, Lead Plaintiff filed an unopposed motion for preliminary approval of the proposed Settlement, ECF No. 106, and the Court held a hearing on the motion on August 18, 2025, ECF No. 111. On August 20, 2025, the Court entered an order granting preliminary approval of the Settlement, provisionally approving certification of the proposed Settlement Class, appointing class counsel, conditionally approving the proposed notice and method of notice, and approving Lead Plaintiff's plan of allocation. ECF No. 112; *Cullen v. RYVYL Inc.*, No. 3:23-CV-00185-GPC-SBC, 2025 WL 2836651 (S.D. Cal. Aug. 20, 2025).

The key terms of the Settlement have not changed since then. *See* ECF No. 114-1, at 14. The Settlement resolves all claims against Defendants in exchange for $300,000 in cash ("Cash Settlement Amount"), 700,000 freely tradable shares of Ryvyl common stock ("Settlement Shares"), and a put option ("Put Option"; and together with the Cash Settlement Amount and Settlement Shares, the "Settlement Amount"), with a combined value of no less than $1,000,000. ECF No. 114-1, at 8; ECF No. 116, ¶ 2. This amount, plus any interest earned thereon, minus taxes, costs and expenses incurred in providing notice and attorneys' fees, constitutes the "Net Settlement Fund." ECF No. 116, ¶ 44 n.7. The Net Settlement Fund shall be distributed pursuant to the proposed Plan of Allocation to claimants who are entitled to a distribution. *Id.* ¶ 44.

### IV.    Notice

When granting preliminary approval, the Court ordered the Claims Administrator, Simpluris, to (1) mail a Postcard Notice to settlement class members, (2) develop a website dedicated to the settlement, where potential settlement members could find the Stipulation, Notice, Claim Form, and Preliminary Approval Order, and Motion for Attorneys' Fees, and (3) publish summary notice in *Investor's Business Daily* and over the *PR Newswire*. ECF No. 112, at 34; *Cullen*, 2025 WL 2836651, at *18. The Court further held that such a notice program satisfied the requirements of Rule 23, the Private Securities Litigation Reform Act ("PSLRA"), and due process. ECF No. 112, at 30.

The Notice program approved by the Court has been carried out. On August 22, 2025, Defendants provided the Case Administrator with a list containing the names and addresses of record holders for the purchasers of Ryvyl Inc. and/or Greebox POS common stock during the Settlement Class Period. ECF No. 116-2, ¶ 4. The Record Holder List contained 13,901 mailing records. ECF No. 116-2, ¶ 4. On September 18, 2025, the Case Administrator mailed the Postcard Notice to all addresses on the Record Holder List, as well as to 3,644 mailing addresses contained in Simpluris' database of banks, brokers and nominees, ECF No. 116-2, ¶¶ 5-6. The Case Administrator also mailed the Postcard Notice to 646 addresses of potential Class Members identified by brokerage firms, banks, institutions, or other nominees, *id.* ¶ 10. Further, brokers and other nominee holders requested 5,606 Postcard Notices to be forwarded by the nominees to their customers. *Id.*

As for email, Broadbridge Financial Solutions requested that the Case Administrator provide a link to the Notice Packet[3] for Broadbridge to disseminate to its list of potential Class Members via email. *Id.* Broadbridge has since emailed the Notice Packet to 15,785

---

[3] The Notice Packet is comprised of: (1) the Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Notice"); and (2) the Proof of Claim and Release Form. ECF No. 19-1, ¶ 3 n.1.

potential Class Members and disseminated physical copies of the Notice Packet to 4,939 potential class members. *Id.*

Between November 10, 2025, and December 2, 2025, the Case Administrator received fifteen more names and addresses of potential Class Members, to whom the Case Administrator promptly mailed a Postcard Notice. ECF No. 119-1, ¶4.

In sum, the Case Administrator mailed 23,145 Postcard Notices and Notice Packets and emailed 15,785 links to the Notice Packets to a total of 38,930 potential Class Members. ECF No. 119-1, ¶¶ 3-4. The United States Postal Service returned 1,750 Postcard Notices as undeliverable. *Id.* ¶ 5. Of the 1,750, the Case Administrator was able to identify new addresses for 1,349 recipients, leaving 505 Postcard Notices undeliverable. *Id.*

Thus, discounting the undeliverable Postcard Notices, the Notice of Settlement has been disseminated to 38,425 potential Settlement Class Members and nominees. *Id.* There have not been any objections to the Settlement or any requests for exclusion received from potential Settlement Class Members, and the time to do so has since passed. ECF No. 119, at 6.

The Notice was also made publicly available. On September 18, 2025, the Case Administrator established the dedicated website www.RyvylSecuritiesSettlement.com ("Settlement Website"), which includes, among other things, a copy of the Notice, Stipulation, Preliminary Approval Order, and Claim Form. ECF No. 119-1, ¶ 16. As of December 2, 2025, the Settlement Website had received 7,200 views from 2,400 unique users. *Id.* ¶ 18. The Summary Notice was also published once in *Investor's Business Daily* and transmitted once over the *PR Newswire* on September 22, 2025. *Id.* ¶ 13.

Additionally, there have not been any objections to the Settlement or any requests for exclusion received from potential Settlement Class Members, and the time to do so has since passed. ECF No. 119-1, ¶¶ 18-19.

## DISCUSSION

### I.    Final Certification of the Settlement Class Is Appropriate.

On August 20, 2025, the Court provisionally certified the proposed Settlement Class. ECF No. 112, at 8-13; *Cullen v. RYVYL Inc*., No. 3:23-CV-00185-GPC-SBC, 2025 WL 2836651, at *4-*7 (S.D. Cal. Aug. 20, 2025). In so doing, the Court found that the Settlement Class met the four prerequisites for class certification outlined by Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *Id.* Further, the Court found that common questions predominate over individual questions and that a class action is the superior device to fairly and efficiently adjudicate this controversy as compared to other available methods. Fed. R. Civ. P. 23(b). *See also Cullen*, 2025 WL 2836651, at *6-*7.

There have been no changes since preliminary approval that would alter the Court's conclusion, ECF No. 114-1, at 29, the Court's findings on these issues have not changed, and no objections to class certification were raised. Accordingly, the Court affirms its determinations in the Preliminary Approval Order and certifies the class for the purpose of settlement. *See*, *e.g.*, *Carlin v. DairyAmerica, Inc*., 380 F. Supp. 3d 998, 1008 (E.D. Cal. 2019) ("The Court's findings on these issues [of class certification] have not changed, and no objections to class certification were raised. Accordingly, there is no need for the Court to repeat the analysis on these issues here.").

## II.    The Settlement is Fair, Adequate and Reasonable.

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of class action claims and states that a class action settlement should be approved if the court finds it "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

### A. Legal Standard

The Ninth Circuit adheres to a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge[.]" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

8

Federal Rule of Civil Procedure 23(e)(2) provides that a court may approve a settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  In making such a determination, the Rule requires a court to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

These factors, added to Rule 23(e) in 2018, do not "displace" any previously adopted factors that courts have used in evaluating the propriety of class action settlements.  *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment).  Courts in the Ninth Circuit have traditionally balanced the so-called *Hanlon* factors, including:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant;[4] and the reaction of the class members to the proposed settlement

---

[4] "Because no government entities are participants in this case, this factor is neutral." *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *4 (C.D. Cal. Oct. 25, 2016).

9

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

"The key *Hanlon* factors are now baked into the text of Rule 23(e)," but the remaining ones can still be relevant to the Rule 23(e)(2) analysis. *In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025). Accordingly, the Court's analysis will focus on the amended 23(e) factors and address any pertinent *Hanlon* factors. *See Kang v. Wells Fargo Bank, N.A.*, No. 17-cv-06220, 2021 WL 5826230, at *14 (N.D. Cal. Dec. 8, 2021), *aff'd sub nom. Kang v. Fyson*, No. 22-15694, 2022 WL 6943174 (9th Cir. Oct. 12, 2022) ("Because Rule 23 has been amended to list the factors most central to approval of a class action settlement, the Court began its analysis with the Rule 23(e) factors . . . The Court considers the remaining [*Hanlon*] factors, as relevant.").

Applying the four factors specified in Rule 23(e)(2) alongside the relevant, non-duplicative *Hanlon* factors, the Court finds that the proposed Settlement Agreement is fair, reasonable, and adequate, and therefore **GRANTS** final approval of the Class Action Settlement.

### B. Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class.

In determining whether class representatives adequately represented the class, a court must consider (1) whether the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) if the named plaintiffs and their counsel prosecuted the action vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020 (describing adequacy analysis under Rule 23(a)(4)). *See also* 4 William B. Rubenstein, Newberg on Class Actions § 13:48 (5th ed. 2020) (noting the Rule 23(e)(2) adequacy analysis is "redundant of the requirements of Rule 23(a)(4)); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019) (noting similarity of inquiry under Rule 23(a)(4) and Rule 23(e)(2)(A)).

Here, it does not appear that Lead Plaintiff has any interests in conflict with those of the Settlement Class. Lead Plaintiff's claims are typical of, and coextensive with, the

claims of the Settlement Class, and he has no antagonistic interests; rather, Lead Plaintiff's interest in obtaining the largest possible recovery in this action is aligned with the other Settlement Class Members *See Mild v. PPG Indus., Inc.*, No. 2:18-CV-04231-RGK-JEM, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) (finding plaintiff's interests to be coextensive with the interests of the settlement class where plaintiff had an interest in obtaining the largest possible recovery and, like other class members, purchased stock at artificially inflated prices due to defendant's materially false or misleading statements). Lead Plaintiff has further demonstrated his commitment to this action through his retention of qualified counsel, GPM, who are experienced securities litigators who have litigated numerous securities class actions on behalf of stakeholders in district courts throughout the country. ECF No. 114-1, at 15. Indeed, Lead Plaintiff worked closely with Lead Counsel throughout the pendency of the action to achieve the best possible result for himself and the Settlement Class. *Id.* at 14. There is no indication that Lead Plaintiff or Lead Counsel have conflicts of interest or that they have not prosecuted this lawsuit vigorously. The Court therefore finds that Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class.

### C. The Settlement Is the Result of Arm's Length Negotiations.

The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). When parties reach a settlement "after mediation with a neutral mediator," the settlement is "presumptively the product of a non-collusive, arms-length negotiation." *Saucillo v. Peck*, 25 F.4th 1118, 1124 (9th Cir. 2022).

Here, the parties participated in a mediation session with Jed D. Melnick of JAMS on February 6, 2024. ECF No. 116, ¶ 18. While the case did not settle at the mediation session, the parties continued to engage in settlement talks through Mr. Melnick, and these negotiations resulted in the proposed Settlement ten months later. *Id.* ¶¶ 18, 22; ECF No. 114, at 8-9. The parties' extensive settlement efforts, overseen by a mediator with substantial experience, are indicative of a well-informed, arms-length negotiation. *See In*

*re China Med. Corp. Sec. Litig.*, No. 8:11-1061-JST (ANX), 2013 WL 12126754, at *8 (C.D. Cal. May 16, 2013) ("Mr. Melnick's involvement in the settlement supports the argument that it is non-collusive."); *In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-06352 MMM (JCGx), 2014 WL 10212865, at *8 (C.D. Cal. July 28, 2014) (finding fair settlement where the parties "reached an agreement in principle with the assistance of [Mr. Melnick] following an in-person mediation at with the parties were initially unable to come to an agreement."). Therefore, this factor weighs in favor of a finding that the Settlement is fair, reasonable, and adequate.

### D. The Relief Provided to the Class is Adequate.

Rule 23(e)(2)(C) requires that the Court consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). The amount of relief obtained by the class in the proposed settlement is generally considered to be the most important consideration. *See Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, at *4 (N.D. Cal. Apr. 15, 2015) (citing *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178-79 (9th Cir. 2013)).

### 1.  Costs, risks, and delay of trial and appeal

"To evaluate adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007); *see also Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017) (courts "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of recovery"). While a settlement need not compensate class members for the maximum value of their claims, there is no fixed percentage of the potential recovery that renders a settlement amount reasonable. *See In*

*re Baan Co. Sec. Litig.*, 284 F. Supp. 2d 62, 65 (D.D.C. 2003) (citing *In re Newbridge Networks Sec. Litig.*, No. CIV. A. 94-1678-LFO, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998)). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted).

Here, the parties have agreed to settle this case for an amount of $1,000,000 in cash and stock. ECF No. 114, at 8; ECF No. 116, at 9-10. "Lead counsel estimates that the *best-case scenario* for class wide damages in this Action is $1.7 million."[5] ECF No. 116, ¶ 8. The settlement amount is therefore approximately 59 percent of the maximum recoverable damages. *Id.* ¶37. As a percentage of estimated damages, the settlement amount is well above the median percentage of the recovery level for investor losses in securities class action settlements of similar sizes. *See* ECF No. 116-5, at 5 (National Economic Research Associates ("NERA") analysis showing that between January 2015 and December 2024, the median settlement value as a percentage of investor losses was 24 percent for securities class actions with investor losses of less than $20 million); *see also Farrar v. Workhorse Grp., Inc.*, No. CV 21-02072-CJC (PVCx), 2023 WL 5505981, at *7 (C.D. Cal. July 24, 2023) (collecting cases recognizing that three percent is within the range of average recovery percentages approved in securities class action settlements); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008) (noting that a $5 million settlement representing 25 percent of recoverable damages is "well above that in most securities class actions").

Plaintiffs' also face substantial risks should the litigation continue, as evidenced by the Court's two prior partial dismissals of Plaintiffs' action. ECF Nos. 71, 92; *see also In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D.

---

[5] However, the long-form Notice stated that the "best-case scenario for damages under the remaining Section 10(b) claims was, at most, $2.8 million." *See* ECF No. 116, at 19.

Minn. 2005) ("The court needs to look no further than its own order dismissing the shareholder derivative litigation to assess the risks involved."). While Plaintiffs believe the TAC cures the pleading deficiencies identified in the Court's most recent order dismissing the SAC in part, Plaintiffs still faced the risk of Defendants filing a motion to dismiss the TAC, as well as the risk that the Court would grant the motion. Further, getting past the pleadings stage is only one hurdle Plaintiffs may face, as Lead Counsel expects that Defendants would vigorously litigate their case through summary judgment or trial. ECF No. 114-1, at 17.

In addition to risk and unpredictability, prolonged litigation would also impose substantial costs and delays, especially since "securities fraud class actions are notably complex, lengthy, and expensive cases to litigate." *Baker v. SeaWorld Ent., Inc.*, No. 14-cv-02129-MMA-AGS, 2020 WL 4260712, at *7 (S.D. Cal. July 24, 2020) (citation omitted). Here, the parties would have to go through factual discovery, designation of experts, expert discovery, a likely motion for class certification, likely motions for summary judgment, and trial. Plaintiffs would also expect significant post-trial motions practice and appeals if the Settlement Class were to receive a favorable judgment. ECF No. 114-1, at 18.

Further contributing to the substantial risks of continuing litigation is "[t]he potential inability of Settling Defendants to pay a substantial judgment[.]" *Hayes v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160-JST, 2016 WL 6902856, at *5 (N.D. Cal. Nov. 21, 2016) (internal quotation marks omitted). Ryvyl is self-insured and its financial condition has deteriorated significantly since this litigation began. ECF No. 116, ¶ 8. Ryvyl's last two Form 10-Ks included going concern warnings and reported net losses of $26.8 million and $53.1 million, respectively; it received a delisting notice from NASDAQ in April 2025 due to insufficient shareholder equity; and its stock is trading at less than a dollar per share. *Id.* Thus, Plaintiffs face a real risk that Defendant may not be able to pay any damages a jury awards if they continue litigation and eventually obtain a judgment in their favor at trial. *See Farrar*, 2023 WL 5505981, at *6 ("Given Workhorse's dwindling cash, business

uncertainties, ongoing regulatory issues, and, particularly, rapidly depleting insurance coverage . . . , if Plaintiffs continue to litigate the case, any available funds or insurance proceeds may be depleted, resulting in a lower recovery or likely no recovery at all." (internal quotation marks omitted)).

As such, the Settlement Amount presents a substantial relief to the Settlement Class. Although the Settlement Amount is only a portion of Defendants' maximum potential exposure according to Plaintiffs' calculations, the relief appropriately accounts for the not-insubstantial risk that Plaintiff and the class would recover nothing on some or all claims. The Court must be wary of the uncertainty of litigation and "compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526 (citation omitted). The Court therefore concludes that the costs and risks of further litigation weigh in favor of finding the agreed-upon Settlement Amount to be adequate relief for the Settlement Class.

## 2. Effectiveness of proposed method of distributing relief

Rule 23(e)(2)(C)(ii) calls for the court to weigh potential relief against "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." This analysis requires the court to "scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims" without being "unduly demanding." Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment.

Here, the method for processing claims and distributing relief to eligible Claimants is clear, well-established, and effective. Claims Administrator Simpluris will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any Claim deficiencies or request the Court to review a denial of their claims, and mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund after Court Approval. ECF No. 114-1, at 21. "Claims processing, like the method proposed here, is standard in securities class action settlements. It has been long found to be effective, as well as

necessary, insofar as neither Lead Plaintiff nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund." *In re Stable Rd. Acquisition Corp*., No. 2:21-CV-5744-JFW(SHKX), 2024 WL 3643393, at *7 (C.D. Cal. Apr. 23, 2024); *see also Baron v. HyreCar Inc.*, No. 2:21-cv-06918-FWS-JC, 2024 WL 3504234, at *9 (C.D. Cal. July 19, 2024) (finding nearly identical procedures effective for preliminary approval in securities class action); *Hefler v. Wells Fargo & Co*., No. 16-cv-05479-JST, 2018 WL 6619983, at *2, 7 (N.D. Cal. Dec. 18, 2018) (same). Thus, this factor further weighs in favor of finding the Settlement Agreement fair and reasonable.

### 3. Attorneys' fees and administrator fees

Rule 23(e)(2)(C)(iii) requires the Court to account for "the terms of any proposed award of attorney's fees." Fed. R. Civ. P. 23(e)(2)(C)(iii). In considering this factor, the Court will also assess the proposed reimbursement of notice and administration costs.

### a. Terms of proposed award of attorneys' fees

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

Here, the Notice informed Settlement Class members that, as compensation for services rendered on a contingent basis on their behalf, Lead Counsel intended to seek an attorneys' fee award in an amount not to exceed 33 ⅓ percent of the Settlement Fund. ECF No. 116, at 27. Lead Counsel now seeks fee award of 25 percent. ECF No. 115-1, at 10. As discussed further below, "this request is reasonable in light of the work performed and the results obtained, is the Ninth Circuit 'benchmark,' and is below awards in many similar complex class action cases." *In re Stable*, 2024 WL 3643393, at *7 (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995)); *see also In re Illumina, Inc. Sec. Litig.*, No. 3:16-cv-3044-L-MSB, 2019 WL 6894075, at *7 (S.D. Cal. Dec. 18, 2019) ("When applying the percentage-of-the-fund method, an attorneys' fee award of twenty-

five percent is the 'benchmark' that district courts should award." (citations omitted)). More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* ECF 106-3, ¶ 23. Accordingly, the requested attorneys' fees support a finding that the Settlement Agreement is fair and reasonable.

### b.  Claim administration fees

The Settlement also provides for a reimbursement of notice and administration costs in an amount not to exceed $99,000 to be paid from the Settlement Fund. ECF No. 106-2, ¶ 16. The Notice informed all potential Settlement Class Members of such an anticipated request. ECF No 116-2, at 13, 29. Though the parties seek final approval of the Settlement, they have not yet requested a final amount in notice and administration costs due to the Case Administrator's ongoing efforts. Instead, they will specify the case administration costs reimbursement amount in Plaintiffs' motion for distribution of funds. *See* ECF No. 119-1, ¶ 24.

The Court retains the ability to, upon review of Plaintiff's motion for distribution of funds, deem specific elements of the notice and administration costs reimbursement request unreasonable. However, the Court has been assured such a request will be below the $99,000 amount contemplated by the Settlement. Additionally, no Class Member has objected to the potential $99,000 reimbursement request, suggesting that the amount is reasonable. *See, e.g., Mandalevy v. BofI Holding, Inc*., No. 3:17-CV-667-GPC-MSB, 2022 WL 4474263, at *14 (S.D. Cal. Sept. 26, 2022) ("Lead Counsel seeks $70,987.93 for the Claims Administrator for all notice and administration costs incurred . . . No class member objects to this payment. Thus, the Court approve[s] payment to the Claims Administrator for all costs incurred to date."). Finally, the amount has been endorsed by experienced counsel and claims administrators in this case and thus is "presumed reasonable." *Dennis v. Kellogg Co*., No. 09-CV-1786-L WMC, 2013 WL 6055326, at *8 (S.D. Cal. Nov. 14, 2013) (citing *Smith v. CRST Van Expedited, Inc.,* 2013 WL 163293, at *4 (S.D.Cal. Jan.14, 2013)).

Accordingly, while the Court will assess the reasonableness of the requested reimbursement when it is made in conjunction with Plaintiff's motion for distribution of funds, the maximum potential request of $99,000 does not bar the Court from determining that the Settlement is fair, adequate, and reasonable.

### 4. Agreements made in connection with the proposal

Finally, the court must consider "any agreement required to be identified under Rule 23(e)(3)," Fed. R. Civ. P. 23(e)(2)(C)(iv), that is, "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). The parties here have entered into a confidential supplemental agreement "that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members totaling a certain percentage of Ryvyl/Greenbox POS common stock traded during the Settlement Class Period" opt out of the settlement. ECF No. 106-3, ¶ 42. The agreement's terms are confidential "to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts" for themselves at the expense of other settlement class members. *Farrar*, 2023 WL 5505981, at *10 (citation omitted). "[T]his type of agreement is common in securities fraud actions and does not weigh against preliminary approval." *Baron*, 2024 WL 3504234, at *10 (citation omitted); *see Illumina*, 2019 WL 6894075, at *9 (finding the content and confidentiality of similar agreement to be adequate and reasonable). Additionally, no class members have requested exclusion from the settlement. ECF No. 119, at 6. Thus, this factor also supports a finding that the Settlement Agreement is fair and reasonable.

Accordingly, the Court finds the Class Action Settlement to be fair and reasonable when considering the relief provided to the Class in light of the factors outlined in Rule 23(e)(2)(c)(i)-(iii).

### E. Equitable Treatment of Class Members

Rule 23(e)(2)(D) requires the Court to consider whether the Settlement Agreement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). In doing so, the Court determines whether the Settlement "improperly grant[s] preferential

treatment to class representatives or segments of the class." *Tableware*, 484 F. Supp. 2d at 1079. "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D) advisory committee's note to 2018 amendment; *see also* 4 William B. Rubenstein, Newberg on Class Actions § 13:56 (5th ed. 2020) ("Put simply, the court's goal is to ensure that similarly situated class members are treated similarly and that dissimilarly situated class members are not arbitrarily treated as if they were similarly situated.").

Here, under the proposed Plan of Allocation, each Authorized Claimant will receive a *pro rata* share of the Net Settlement Fund. Specifically, "an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund." ECF No. 114-1, at 23. Lead Plaintiff will receive the same level of *pro rata* recovery as all other similarly situated Settlement Class Members. *Id.* Thus, the proposed Settlement Allocation treats class members equitably relative to each other.

Lead Counsel's requested $5,000 incentive award for Lead Plaintiff, *see* ECF No. 115, at 12, does not render the allocation inequitable. *See*, *e.g.*, *Staton*, 327 F.3d at 977. Indeed, such awards are "fairly typical in class action cases" and "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez*, 563 F.3d at 958-59.

In its Preliminary Approval Order, the Court directed Plaintiffs to provide evidence allowing the Court to evaluate Lead Plaintiff's incentive award, including the actions Lead Plaintiff has taken to protect the interests of the class. ECF No. 112, at 27-28. Plaintiffs have done so. In Lead Plaintiff's declaration, he avers that he produced his trading records to Lead Counsel, moved to be appointed Lead Plaintiff, regularly communicated with Lead Counsel regarding the posture and progress of the case, reviewed significant pleadings and

briefs filed in this Action, reviewed the Court's orders and discussed them with Lead Counsel, consulted with Lead Counsel regarding settlement negotiations, and evaluated and approved the proposed Settlement. ECF No. 116-1, ¶ 5. Lead Plaintiff further estimates that he devoted approximately fifty hours to litigation-related activities at the expense of devoting time to his job or other activities. ECF No. 116-1, ¶13

Further, the $5,000 service award represents 0.5 percent of the Settlement Amount. Courts have approved service awards of up to $15,000 for lead plaintiffs who performed similar work. *See Raffin v. Medicredit, Inc.,* No. CV 15-4912 MWF (PJWx), 2018 WL 8621204, at *7 (C.D. Cal. Nov. 30, 2018) (finding reasonable $15,000 award and collecting cases saying the same). Thus, "the service award Lead Plaintiff seeks is reasonable and does not constitute inequitable treatment of class members." *In re Regulus Therapeutics Inc. Sec. Litig.*, No. 3:17-cv-267-BTM-RBB, 2020 WL 6381898, at *5 (S.D. Cal. Oct. 30, 2020).

Accordingly, the Settlement treats class members equitably relative to each other, thereby supporting a finding that it is fair, reasonable, and adequate.

**F. The Remaining Hanlon Factors Weigh in Favor of Final Approval.**

As mentioned above, in addition to the factors outlined in Rule 23(e), courts may still consider the *Hanlon* factors in the exercise of discretion. *See, e.g., Fitzgerald v. Pollard*, No. 20-CV-848-JM-MSB, 2024 WL 4596401, at *5-8 (S.D. Cal. Oct. 28, 2024). Though the *Hanlon* factors mostly overlap with the Rule 23(e) factors, the Court will examine two non-duplicative *Hanlon* factors.

**1. Reaction of the Settlement Class.**

An overwhelmingly positive reaction of class members to a proposed settlement significantly weighs in favor of the settlement's adequacy. *Delacruz v. CytoSport, Inc.*, No. 4:11-CV-03532-CW, 2014 WL 12648451, at *7 (N.D. Cal. Jul. 1, 2014). Indeed, "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms . . . are favorable to the class members." *See In re Omnivision*

*Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (finding only three objections out of 57,630 potential class members weighing in favor of the settlement's adequacy).

The deadline for Settlement Class Members to object to the Settlement, Plan of Allocation, or application for attorney's fees, or to request exclusion from the Settlement Class was November 28, 2025. ECF No. 116, at 70. Among the almost 39,000 copies of the Notice sent to potential class members and nominees, no Settlement Class Member has objected to the Settlement or requested exclusion from the Settlement Class. ECF No. 119, at 6. This demonstrates that the Settlement terms are considered fair, reasonable, and adequate from class members' perspective. *See Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 529 (noting no objection nor request for exclusion from the Settlement as "compelling evidence that the Proposed Settlement is fair, just, reasonable, and adequate"); *see also, e.g., Ali v. Franklin Wireless Corp.*, No. 21-CV-00687-AJB-MSB, 2024 WL 5179910, at *8 (S.D. Cal. Dec. 19, 2024); *Derr v. Ra Medical Sys., Inc.*, No. 19-cv-1079-LAB-AHG, 2022 WL 21306534, at *6 (S.D. Cal. Sept. 23, 2022); *Kendall v. Odonate Therapeutics, Inc.*, No. 3:20-CV-01828-H-LL, 2022 WL 1997530, at *6 (S.D. Cal. June 6, 2022).

### 2.  Discovery Conducted to Date and Stage of Proceedings

Although formal discovery is not required to reach the Settlement stage, the Court considers whether the parties have "carefully investigated the claims" before reaching to the resolution. *Hardy v. Embark Tech., Inc.*, No. 3:22-CV-02090-JSC, 2024 WL 1354416, at *5 (N.D. Cal. Mar. 29, 2024) (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)). "The fact that formal discovery was in its early stages does not weigh against final approval." *Stable Road*, 2024 WL 3643393, at *9.

Here, Lead Counsel conducted an extensive pre-suit investigation that included a thorough review of public records, statements, and research reports; retaining a private investigator who interviewed former Ryvyl employees and other sources; and consulting with an expert in loss causation and damages. ECF No. 116, ¶ 10.  Lead Counsel further drafted three amended complaints and briefed multiple motions to dismiss and a motion for reconsideration. ECF No. 114-1, at 26. The Parties also exchanged detailed mediation

briefs throughout their extended mediation process before an experienced mediator. *Id.* Such significant research, briefing, and negotiations lead the Court to conclude that the Parties carefully investigated the claims before reaching their resolution. Other securities cases throughout the Ninth Circuit have reached the same result on similar facts. *See, e.g., Stable Road*, 2024 WL 3643393, at *9 (finding parities were well-informed as the investigation involved interviews and consultation with experts).

Accordingly, upon consideration of the factors outlined in Rule 23(e), as well as the non-duplicative *Hanlon* factors, the Court determines that the Class Action Settlement is fair, reasonable, and adequate. The Court therefore **GRANTS** final approval of the Class Action Settlement.

### III.    The Court Approves the Plan of Allocation.

Lead Plaintiff also requests approval of the Plan of Allocation. ECF No. 114-1, at 29. A plan for allocation should be "fair, reasonable and adequate," *see Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992), although it "need not be perfect," *Brown v. Brewer*, No. CV-06-3731-GHK-SHx, 2012 WL 12882380, at *1 (C.D. Cal. Jan. 18, 2012). Rather, an allocation formula that has a "reasonable, rational basis" satisfies the requirement, "particularly if recommended by competent class counsel." *Id.* "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *Mauss v. NuVasive, Inc.*, No. 13cv2005 JM-JLB, 2018 WL 6421623, at *4 (S.D. Cal. Dec. 6, 2018) (citation omitted).

The proposed Plan of Allocation intends to "equitably distribute the Settlement proceeds to those Settlement Class Members who suffered economic losses as a proximate result of the alleged wrongdoing." ECF No. 116-2, at 24. The Plan reflects an assessment of damages that Lead Plaintiff alleges resulted from the artificial inflation of Ryvyl common stock during the Settlement Class Period. ECF No. 114-1, at 29.  "An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including how many shares of Ryvyl common stock the Claimant purchased, acquired, or sold during the Settlement Class Period, when that Claimant bought, acquired, or sold the

shares, and the number of valid claims filed by other Claimants." *Id.* at 30; *see also* ECF No. 116-2, ¶¶ 58-78. Each Plaintiff will receive a *pro rata* share of the Net Settlement Fund, "which will be their Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund." ECF No. 114-1, at 30; *see also* ECF No. 116-2, ¶ 68. Thus, the Plan of Allocation reimburses class members based on the extent of their injuries.

If a claimant's distribution amount calculates to less than $10.00, then no distribution will be made. ECF No. 116-2, ¶ 68. Not paying these *de minimis* claims does not disturb the fairness of the allocation plan. Such small checks are frequently discarded by recipients and "cause a disproportionate administrative expense to the fund," and, thus, other Settlement Class members. *In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 897 (9th Cir. 2017). For this reason, courts regularly approve plans with similar minimum thresholds. *Id.*; *see also Baron*, 2024 WL 3504234, at *11 ("courts within the Ninth Circuit regularly approve settlement agreements including such provisions"); *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *11 (N.D. Cal. Dec. 18, 2023) (same), aff'd sub nom. *Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). Moreover, the lack of any objections to the Plan of Allocation after distributing the Notice further evinces that it is fair. *See Mauss*, 2018 WL 6421623, at *4.

Courts have found nearly identical allocation plans to be fair, reasonable, and adequate in other securities class action settlements. *See, e.g., Ali*, 2024 WL 5179910, at *9 (collecting cases). Indeed, plans of this type are "customary" and "standard" in securities class action settlements. *Bernstein v. Ginkgo Bioworks Holdings, Inc.*, No. 4:21-cv-08943-KAW, 2024 WL 5112227, at *5 (N.D. Cal. Dec. 13, 2024). Accordingly, the Court approves the Plan of Allocation as fair, reasonable, and adequate.

## IV. The Requested Attorneys' Fees and Costs Are Reasonable.

Together with his motion for final approval, Lead Plaintiff has also filed an unopposed motion for attorney's fees, reimbursement of litigation expenses, and an award to Lead Plaintiff.

### A. Attorney's Fees

Lead Counsel seeks attorneys' fees in the amount of 25 percent of the Settlement Fund, or $250,000 plus interest at the same rate as the Settlement Fund. ECF No. 115-1, at 10. "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941.

Fees can be calculated by either the lodestar method or the percentage-of-the-fund method. *Id.* at 942. Courts may exercise discretion to choose which calculation method they use to achieve a reasonable result. *See id.* Use of the percentage method in common fund cases is the most dominant because of its various advantages, including increased incentive for counsel to litigate and promotion of efficiency. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). Further, the Private Securities Litigation Reform Act provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. § 78u-4(a)(6). Thus, the Court agrees with Plaintiff and elects to use the percentage-of-recovery method to award the attorneys' fees.

The Ninth Circuit recognizes 25 percent as the benchmark percentage for the percentage-of-recovery method. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) (citing *Bluetooth*, 654 F.3d at 942). Courts should analyze the following factors to determine if a percentage is reasonable: (1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of counsel's work; (4) the contingent nature of the fee and financial burden; (5) awards made in similar cases; (6) the reaction of the class; and (7) the lodestar cross-check. *See Omnivision*, 559 F. Supp. 2d at 1046; *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). As noted by other courts, these factors intentionally track the factors used to evaluate the adequacy of a settlement. *Omnivision*, 559 F. Supp. at 1046.

Analysis of these factors supports a finding that 25 percent of Settlement Amount is a reasonable fee in this case.

### 1. Results Achieved

"The most important factor [in determining the reasonableness of attorneys' fees] is the 'overall result and benefit to the class from the litigation.'" *Stemple v. QC Holdings, Inc.*, No. 12-cv-01997-BAS(WVG), 2016 WL 11783383, at *3 (S.D. Cal. Nov. 7, 2016) (citing *Omnivision*, 559 F. Supp. 2d at 1046; *see also In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *8 (C.D. Cal. June 10, 2005) (noting that "courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award") (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)). The one-million-dollar Settlement Fund represents 59 percent of Lead Plaintiff's best outcome at trial. *See* ECF No. 116, ¶ 37. This percentage is well above the median percentage of the recovery level of investor losses in securities class action settlements. *Id.* Thus, this factor supports the 25 percent fee award.

### 2. Risk of Litigation

Courts have consistently recognized that the securities class actions are complex and risky. *Ali*, 2024 WL 5179910, at *11; *see also Redwen v. Sino Clean Energy, Inc.*, No. CV-11–3936-PA-SSx, 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013); *Johnson v. US Auto Parts Network, Inc.*, No. CV-07-2030-GW(JCX), 2008 WL 11343481, at *3 (C.D. Cal. Oct. 9, 2008). In the present case, Lead Plaintiff faced substantial risks in pursuing this litigation given the uncertainty created by the heightened pleading standard established under the PSLRA for trying securities fraud cases. *See Hefler*, 2018 WL 6619983, at *13. Plaintiffs faced a substantial risk of no recovery if they continued to litigate, particularly given the difficulty of establishing scienter and the involvement of expert witnesses on highly technical subject matters. *See Brown v. China Integrated Energy Inc.*, No. CV-11-02559 BRO-PLAx, 2016 WL 11757878, at *11 (C.D. Cal. July 22, 2016). Additionally, jury verdicts in favor of plaintiffs are exceedingly uncommon in securities fraud class actions. *See Omnivision*, 559 F. Supp. 2d at 1047 (plaintiffs prevailed in only three out of

eleven jury trials on securities claims from 1996 to 2008). These obstacles to recovery are heightened by the fact that Plaintiffs have already survived two prior partial dismissals. Hence, this factor weighs in favor of the proposed fee award.

### 3. Skill Required and Quality of Counsel's Work

Prosecuting complex class actions takes skill and experience. This is particularly true in securities class actions given the PSLRA's heightened pleading standard. *Omnivision*, 559 F. Supp. 2d at 1047; *see also Stable Rd.*, 2024 WL 3643393, at *13; *Am. Apparel*, 2014 WL 10212865, at *22. In this case, a pleading that has withstood two motions to dismiss shows skillful work. *Omnivision*, 559 F. Supp. 2d at 1047; *see also Illumina*, 2021 WL 1017295, at *7. Further, GPM's attorneys have many years of experience litigating complex federal civil cases, specifically shareholder and securities class actions. ECF No. 115-1, at 21; ECF No. 116-8. Thus, this factor supports the 25 percent fee award.

### 4. Contingent Nature of the Fee and Financial Burden

Lead Counsel's fees were entirely contingent on a successful outcome, and they risked non-payment of 768.55 billable hours and $70,288.11 of litigation expenses. ECF No. 115-1, at 22. Lead Counsel assumed considerable risk of non-reimbursement for the time and costs they spent on this litigation, which was further "demonstrated by the fact that settlements were not easily achieved." *In re Heritage Bond Litig.*, 2005 WL 1594389, at *14. Thus, this factor also weighs in favor of the requested fee.

### 5. Awards in Similar Cases

The Ninth Circuit has recognized that 25 percent is the benchmark attorneys' fee in securities class actions. *Hanlon*, 150 F.3d at 1029. Some courts in the Ninth Circuit have even awarded up to 33 percent of the common fund. *See e.g., Singer v. Becton Dickinson & Co.*, No.08-cv-821-IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (awarding 33 percent); *In re Banc of California Sec. Litig.*, No. SA-CV-17-00138-DMG-DFMX, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (same). Thus, the

23-cv-00185-GPC-SBC

benchmark award of 25 percent requested by Lead Counsel is within the usual range compared to other cases.

### 6. Reaction of the Class

The Parties disseminated Notice of Settlement to 38,915 potential Settlement Class Members and nominees. ECF No. 116, ¶ 5. They also created a Settlement website. *Id.* ¶ 40. The Notice informed the class members that Lead Counsel would seek (1) attorneys' fees not to exceed 33 ⅓ percent of the Settlement Fund, (2) reimbursement for litigation expenses not to exceed $85,000, (3) an award for Lead Plaintiff not to exceed $5,000, and (4) reimbursement of notice and administration costs not to exceed $99,000. ECF No. 116-2, at 13. Although class members were notified of their right to object to these terms, no class member has objected to the requested fees or expenses. ECF No. 116, ¶ 5; ECF No. 119, at 6. "The lack of objection from any Class Member supports the attorneys' fees award." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). Accordingly, this factor weighs in favor of Lead Counsel's 25 percent fee request.

### 7. Lodestar Cross-Check

Lastly, the seventh factor encourages the Court to do a lodestar cross-check on the requested percentage. Courts calculate lodestar by multiplying reasonable hourly rates by the number of hours spent. Here, Lead Counsel states that GPM spent 768.55 hours prosecuting this case. ECF No. 116-3, at 2. The hourly rate for GPM ranged from $325 for a paralegal to $1,225 for a partner. *Id.* Using those rates, the total lodestar calculation amounts to $838,767.50. *Id.* This results in a lodestar multiplier of 0.30. ECF No. 116, ¶ 53. A lodestar "multiplier of less than one … suggests that the negotiated fee award is a reasonable and fair valuation of the services rendered to the class." *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) (requested fee award was not unreasonable when lodestar cross-check revealed a multiplier of 0.59). Accordingly, Lead Counsel's fee request is well within the range of reasonableness.

Considering all factors, Lead Counsel's requested fee award of 25 percent of the Settlement Fund is reasonable.

### B. Lead Counsel's Reimbursement Request is Reasonable

As to the requested expenses, "Class Counsel are entitled to reimbursement of the out-of-pocket costs that they reasonably incurred investigating and prosecuting [the] case." *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1049 (S.D. Cal. 2015) (citing *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996)). Further, "an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. Oct. 8, 2014) (quoting *In re Heritage Bond Litig.*, 2005 WL 1594403, at *23).

Lead Counsel has provided a breakdown of all costs incurred pursuing this action, totaling $70,288.11. ECF No. 116, ¶ 75. The expenses outlined were both necessary to Lead Counsel's procurement of the Settlement and typical for similar litigation. *See Immune Response*, 497 F. Supp. 2d at 1177-78 (approving counsel's request for reimbursement "for 1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees"). The Court further agrees with Lead Counsel that, because of the contingent nature of this action, Counsel had no incentive to accrue unnecessary or unreasonable expenses. Additionally, the reimbursement request is significantly less than the $85,000 maximum set forth in the Notice. ECF No. 116-2, at 13. As such, the Court finds that reimbursement of expenses in the amount of $70,288.11 plus interest is reasonable.

### C. Award to Lead Plaintiff is Reasonable

Lead Counsel seeks an award of $5,000 to reimburse Lead Plaintiff for his time spent prosecuting this action. ECF No. 115-1, at 31. The PSLRA authorizes the Court to award class representatives "reasonable costs and expenses (including lost wages) that were directly related to their role in representing the class." 15 U.S.C. § 78u-4(a)(4). In common fund cases, named plaintiffs may also be granted "reasonable incentive payments" in

addition to reimbursement for their "litigation expenses, and identifiable services rendered to the class directly under the supervision of class counsel." *Staton*, 327 F.3d at 977 (citing *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989)). Courts have granted incentive awards of $10,000 or more to individuals who carry out litigation efforts on behalf of absent class members. *See, e.g., In re Illumina, Inc. Sec. Litig.*, 2021 WL 1017295, at *8 (S.D. Cal. Mar. 17, 2021) (awarding $25,000 in incentive award to one plaintiff and $27,000 total); *see also Stable Rd.*, 2024 WL 3643393, at *16 (granting $10,000 to Lead Plaintiff); *Davis v. Yelp, Inc.*, No. 18-CV-00400-EMC, 2023 WL 3063823, at *2 (N.D. Cal. Jan. 27, 2023) (granting $15,000 to Lead Plaintiff). When deciding whether an incentive award is reasonable and fair, the Ninth Circuit considers the number of class representatives, the average incentive award amount, and the proportion of the total settlement that is spent on incentive awards. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947-48 (9th Cir. 2015).

Here, Lead Counsel has requested an award of $5,000 to reimburse Lead Plaintiff for his time and efforts. Such an award makes up 0.5 percent of the total Settlement Fund. Lead Plaintiff spent approximately fifty hours litigating this action, including meeting with counsel, reviewing filings, and evaluating the Settlement. ECF No. 116-1, ¶¶ 5, 13. Additionally, the lack of any objections to the proposed award to Lead Plaintiff also supports the reasonableness of the award. *See Khoja v. Orexigen Therapeutics, Inc*., No. 15-CV-00540-JLS-AGS, 2021 WL 5632673, at *11 (S.D. Cal. Nov. 30, 2021). As such, the Court finds the $5,000 incentive award reasonable.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Lead Plaintiff's Motion for Final Approval of Class Action Settlement, ECF No. 114, and Motion for Award of Attorneys' Fees and Reimbursement of Litigation Expenses, ECF No. 115. It is hereby ORDERED:

1. **Jurisdiction** – The Court has jurisdiction over the subject matter of the Action, and all matters relating to the Settlement, as well as personal jurisdiction over all of the Parties and each of the Settlement Class Members.

2. **Incorporation of Settlement Documents** – This Judgment incorporates and makes a part hereof: (a) the Stipulation filed with the Court on July 15, 2025, ECF No. 106-3; and (b) the Notice, ECF No. 116-2, at 11-33; the Summary Notice, ECF No. 106-3, at 109-111; and the Postcard Notice, ECF No. 116-2, at 9.

3. **Class Certification for Settlement Purposes** – The Court hereby affirms its determinations in the Preliminary Approval Order certifying, for the purposes of the Settlement only, the Action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Settlement Class consisting of all persons and entities that purchased the publicly traded common stock of Ryvyl Inc. (NASDAQ: RVYL) and/or Greenbox POS (NASDAQ: GBOX) between May 13, 2021 and January 20, 2023, inclusive, and were damaged thereby (the "Settlement Class Period"). Excluded from the Settlement Class are: (a) persons and entities that suffered no compensable losses; and (b)(i) Defendants; (ii) any person who served as a partner, control person, officer and/or director of the Company during the Settlement Class Period, and members of their Immediate Families; (iii) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors of the Company; (iv) any entity in which any excluded person or entity has or had a controlling interest; (v) any trust of which an Individual Defendant is the settlor or which is for the benefit of an Individual Defendant and/or member(s) of their Immediate Families; and (vi) the legal representatives, heirs, successors, predecessors, and assigns of any person or entity excluded under provisions (i) through (v) hereof.[6]

---

[6] For the avoidance of doubt, "affiliates" are persons or entities that directly, or indirectly through one or more intermediaries, control, are controlled by or are under common control with one of the Defendants.

23-cv-00185-GPC-SBC

4. **Adequacy of Representation** – Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, the Court hereby affirms its determinations in the Preliminary Approval Order certifying Lead Plaintiff as the Class Representative for the Settlement Class and appointing Lead Counsel as Class Counsel for the Settlement Class.  Lead Plaintiff and Lead Counsel have fairly and adequately represented the Settlement Class both in terms of litigating the Action and for purposes of entering into and implementing the Settlement and have satisfied the requirements of Federal Rules of Civil Procedure 23(a)(4) and 23(g), respectively.

5. **Notice** – The Court finds that the dissemination of the Postcard Notice, the online posting of the Notice, and the publication of the Summary Notice:  (a) were implemented in accordance with the Preliminary Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of (i) the pendency of the Action; (ii) the effect of the proposed Settlement (including the Releases to be provided thereunder); (iii) Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses; (iv) their right to object to any aspect of the Settlement, the Plan of Allocation and/or Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses; (v) their right to exclude themselves from the Settlement Class; and (vi) their right to appear at the Settlement Hearing; (d) constituted due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, Due Process Clause of the United States Constitution, and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended.

6. **Final Settlement Approval and Dismissal of Claims** – Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, this Court hereby fully and finally approves the Settlement set forth in the Stipulation in all respects

(including, without limitation: the amount of the Settlement; the Releases provided for therein; and the dismissal with prejudice of the claims asserted against Defendants in the Action), and finds that the Settlement is, in all respects, fair, reasonable and adequate to the Settlement Class. The Parties are directed to implement, perform and consummate the Settlement in accordance with the terms and provisions contained in the Stipulation.

7. The Action and all the claims asserted against Defendants in the Action by Lead Plaintiff and the other Settlement Class Members are hereby dismissed with prejudice. The Parties shall bear their own costs and expenses, except as otherwise expressly provided in the Stipulation.

8. **Settlement Shares** – This Court also finds with regard to any Settlement Shares being issued as part of the Settlement Fund that: (a) the Settlement Shares are to be issued solely in exchange for bona fide outstanding claims; (b) adequate notice has been given to all Settlement Class Members, and there have been no improper impediments to the appearance of such persons and entities at the Settlement Fairness Hearing; (c) the terms and conditions of the proposed issuance are fair to all those who will receive such shares in the proposed exchange; and (d) the terms and conditions of, and the procedures for, the proposed issuance are fair. The Court hereby acknowledges that it was advised prior to the Settlement Fairness Hearing that, pursuant to the terms of the Stipulation, the Settlement Shares may be issued in reliance upon the exemption from registration provided by Section 3(a)(10) of the Securities Act, based on this Court's approval of the Settlement. By virtue of the Court's approval of the fairness of the Settlement, pursuant to section 3(a)(10) of the Securities Act, 15 U.S.C. § 77c(a)(l0), the issuance of the Settlement Shares as part of the Settlement Fund may serve as a substitute for the registration requirements of the Securities Act with regard to any Settlement Shares. In the alternative, Ryvyl, in its sole discretion, shall have the right to file a registration statement with the

Securities and Exchange Commission covering the issuance of the Settlement
Shares.

9. **Binding Effect** – The terms of the Stipulation and of this Judgment shall be forever
binding on Defendants, Lead Plaintiff and all other Settlement Class Members
(regardless of whether any individual Settlement Class Member submits a Claim
Form or seeks or obtains a distribution from the Net Settlement Fund), as well as
their respective successors and assigns.

10. **Releases** – The Releases set forth in paragraphs 5 and 6 of the Stipulation, together
with the definitions contained in paragraph 1 of the Stipulation relating thereto, are
expressly incorporated herein in all respects.  The Releases are effective as of the
Effective Date.  Accordingly, this Court orders that:

    (a) Without further action by anyone, and subject to paragraph 11 below, upon
the Effective Date of the Settlement, Lead Plaintiff and the other members
of the Settlement Class, on behalf of themselves, and on behalf of any other
person or entity legally entitled to bring Released Plaintiff's Claims on
behalf of the respective Settlement Class Members in such capacity only,
shall be deemed to have, and by operation of law and of the judgment shall
have, fully, finally and forever released each and every Released Plaintiff's
Claim against the Defendants and the other Released Defendants' Parties,
and shall forever be barred and enjoined from prosecuting, directly or
indirectly, representatively, or in any other capacity, against any of the
Released Defendants' Parties any or all of the Released Plaintiff's Claims.
This Release shall not apply to any of the Excluded Claims (as that term is
defined in paragraph 1(v) of the Stipulation).

    (b) Without further action by anyone, and subject to paragraph 11 below, upon
the Effective Date of the Settlement, Defendants, and any person or entity
that can assert claims on their behalf, in such capacity only, shall be
deemed to have, and by operation of law and of the judgment shall have,

33

fully, finally and forever released each and every Released Defendants' Claim against Lead Plaintiff and the other Released Plaintiff's Parties, and shall forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Released Plaintiff's Parties.

11. Notwithstanding paragraphs 10(a) – (b) above, nothing in this Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of the Stipulation or this Judgment.

12. **Rule 11 Findings** – The Court finds and concludes that the Parties and their respective counsel have complied in all respects with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with the institution, prosecution, defense, and settlement of the Action.

13. **No Admissions** – Neither this Judgment, the Term Sheet, the Stipulation (whether or not consummated), including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of the Term Sheet and the Stipulation, nor any proceedings taken pursuant to or in connection with the Term Sheet, the Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a) shall be offered against any of the Released Defendants' Parties as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Released Defendants' Parties with respect to the truth of any fact alleged by Lead Plaintiff or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Released Defendants' Parties or in any way referred to for any other reason as against any of the Released Defendants' Parties, in any

civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation;

(b) shall be offered against any of the Released Plaintiff's Parties, as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by any of the Released Plaintiff's Parties that any of their claims are without merit, that any of the Released Defendants' Parties had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Released Plaintiff's Parties, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; or

(c) shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given under the Settlement represents the amount which could be or would have been recovered after trial; *provided, however*, that the Parties and the Releasees and their respective counsel may refer to this Judgment and the Stipulation to effectuate the protections from liability granted hereunder and thereunder or otherwise to enforce the terms of the Settlement.

14. **Retention of Jurisdiction** – Without affecting the finality of this Judgment in any way, this Court retains continuing and exclusive jurisdiction over: (a) the Parties for purposes of the administration, interpretation, implementation and enforcement of the Settlement; (b) the disposition of the Settlement Fund; (c) any motion for an award of attorneys' fees and/or Litigation Expenses by Lead Counsel in the Action that will be paid from the Settlement Fund; (d) any motion to approve the Plan of Allocation; (e) any motion to approve the Class Distribution Order; and (f) the Settlement Class Members for all matters relating to the Action.

15. **Modification of the Agreement of Settlement** – Without further approval from the Court, Lead Plaintiff and Defendants are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that: (a) are not materially inconsistent with this Judgment; and (b) do not materially limit the rights of Settlement Class Members in connection with the Settlement. The parties are directed to notify the Court of any amendments or modifications within seven (7) days of such actions. Without further order of the Court, Lead Plaintiff and Defendants may agree to reasonable extensions of time to carry out any provisions of the Settlement.

16. **Termination of Settlement** – If the Settlement is terminated as provided in the Stipulation or the Effective Date of the Settlement otherwise fails to occur, this Judgment shall be vacated, rendered null and void and be of no further force and effect, except as otherwise provided by the Stipulation, and this Judgment shall be without prejudice to the rights of Lead Plaintiff, the other Settlement Class Members and Defendants, and the Parties shall revert to their respective positions in the Action as of February 28, 2025, as provided in the Stipulation.

17. **Attorneys' Fees and Costs** – Lead Counsel is hereby awarded attorneys' fees in the amount of 25 % of the Settlement Fund after the sale of the Settlement Shares and $70,288.11 in reimbursement of Lead Counsel's litigation expenses (which fees and expenses shall be paid from the Settlement Fund). Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiffs' Counsel in a manner which they, in good faith, believe reflects the contributions of such counsel to the institution, prosecution and settlement of the Action.

18. **Award to Lead Plaintiff** –Lead Plaintiff Scot S. Cook is hereby awarded $5,000 from the Settlement Fund as reimbursement for his reasonable costs and expenses directly related to his representation of the Settlement Class.

19. **Plan of Allocation** – The Court finds and concludes that the formula for the calculation of the claims of Claimants as set forth in the Plan of Allocation provides

23-cv-00185-GPC-SBC

a fair and reasonable basis upon which to allocate the proceeds of the Net Settlement Fund among Settlement Class Members, and that the Plan of Allocation is, in all respects, fair and reasonable to the Settlement Class. Thus, the Court approves the Plan of Allocation.

20. **<u>Entry of Final Judgment</u>** – There is no just reason to delay the entry of this Judgment as a final judgment in this Action. Accordingly, the Clerk of the Court is expressly directed to immediately enter this final judgment in this Action.

**IT IS SO ORDERED.**

Dated: December 19, 2025

Hon. Gonzalo P. Curiel
United States District Judge

23-cv-00185-GPC-SBC